## IN THE UNITED STATES COURT OF APPEALS
### FOR THE TENTH CIRCUIT

| | |
|---|---|
| BLAINE FRANKLIN SHAW, et al., <br> *Plaintiffs-Appellees*, <br><br> v. <br><br> ERIK SMITH, in his official capacity as Superintendent of the Kansas Highway Patrol <br> *Defendant-Appellant.* | MARK ERICH, et al., <br> *Plaintiffs-Appellees*, <br><br> v. <br><br> ERIK SMITH, in his official capacity as Superintendent of the Kansas Highway Patrol <br> *Defendant-Appellant.* |

On Appeal from the United States District Court for the District of Kansas
Case Nos. 19-cv-1342-KHV, 20-cv-1067-KHV (Hon. Kathryn H. Vratil)

―――――――――――――――――――

## APPELLEES' RESPONSE IN OPPOSITION TO APPELLANT'S MOTION FOR A STAY PENDING APPEAL AND FOR AN INTERIM ADMINISTRATIVE STAY

―――――――――――――――――――

SHARON BRETT
KUNYU CHING
American Civil Liberties Union
Foundation of Kansas
10561 Barkley Street, Suite 500
Overland Park, KS 66212
(913) 490-4100




Counsel for *Plaintiffs-Appellees*

BRIAN HAUSS
American Civil Liberties Union
Foundation
125 Broad St.
New York, NY 10004
(212) 549-2500

LESLIE GREATHOUSE
PATRICK MCINERNEY
Spencer Fane LLC
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100

Appellant's Motion for a Stay Pending Appeal and for an Interim Administrative Stay consists of repeatedly rejected arguments and vague assertions lacking evidentiary support. None of his arguments are meritorious, and the motion should be denied.

## LEGAL STANDARD

A stay pending appeal is "not a matter of right," but "an exercise of judicial discretion," and Appellant "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (cleaned up). First, Appellant must demonstrate that he will be irreparably injured absent a stay. *Id.* at 434. Second, he must make "a strong showing" of likelihood of success on the merits. *Id.* Beyond those two "most critical" factors, the Court considers whether a stay will harm Appellees and where the public interest lies. *Id.*; 10th Cir. R. 8.1.

A stay pending appeal is granted "only under extraordinary circumstances, and a district court's conclusion that a stay is unwarranted is entitled to considerable deference." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (citation omitted; cited in *Baca v. Hickenlooper*, No. 16-1482, 2016 U.S. App. LEXIS 23391, at *7 (10th Cir. Dec. 16, 2016) (unpublished)). The grant of a permanent injunction is reviewed for abuse of discretion, *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014), and will be overturned only if the district court made an error of law or

clearly erroneous factual findings, exhibiting "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

## ARGUMENT

Appellant cannot satisfy any of the four factors necessary for a stay and thus is not entitled to the extraordinary relief sought.

## I. Appellant's claims of irreparable harm are total conjecture.

Appellant must show more than a "possibility of irreparable injury" for a stay, *Nken*, 556 U.S. at 434–35, but he has not managed even that. Appellant points to no material change in circumstances since the district court's ruling that would justify a stay. Instead, he describes three purported types of irreparable harm without providing any evidence supporting what is otherwise pure attorney argument and speculation. The Court should reject these unsupported assertions of "burden."

*Administrative costs.* Despite the district court's repeated rejection of his unsubstantiated complaints about administrative costs, Appellant continues to advance such claims without evidence. ECF No. [1] 550 at 2; ECF No. 606. Appellant asserts that "KHP will have to hire additional staff to develop and implement the protocols and systems necessary to comply" with the injunction, but he does not

---

[1] Unless otherwise noted, all ECF citations are to the district court docket.

describe why current staff are insufficient, nor does he explain why the KHP's current information systems are inadequate to implement the injunction's substantive terms. Mot. at 18–19. Additionally, Appellant's gripe about an independent monitor is entirely speculative, as the district court has not yet decided that one is necessary, much less appointed one. ECF No. 582 at 14 ("*To the extent that the Court determines that additional monitoring is necessary*, it will appoint an independent monitor to help achieve this goal. *If the appointment of a monitor is necessary*, the KHP shall be liable for all fees and expenses of the monitor." (emphases added)). Finally, his claim of "administrative burdens" on troopers of additional documentation has nothing to do with financial costs; instead, it amounts to a complaint about troopers having to fill out more paperwork. ECF No. 581 at 6–10 (ruling on competing proposed forms); ECF Nos. 576-3, 376-4 (agreed written consent forms and detention log). There is no evidence in the record that this paperwork—which the district court acknowledged was necessary to hold Appellant and his troopers accountable—will interfere with effective or efficient law enforcement at all, much less create a "burden" sufficient to overcome the presumption that the district court's injunction be allowed to go into effect.

    *State sovereignty.*  Relying on cases having nothing to do with violations of individual federal constitutional rights, Appellant contends that the injunction "encroach[es] on the State's sovereign interest." Mot. at 20 (citing *Kansas v. United*

4

*States*, 249 F.3d 1213 (10th Cir. 2001); *Texas v. U.S. EPA*, 829 F3d 405 (5th Cir. 2016)). But "it is the resolution of the case on the merits, not whether the injunction is stayed pending appeal, that will affect those principles." *Texas v. United States*, 787 F.3d 733, 767–68 (5th Cir. 2015); *accord Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017). In any event, Appellant's argument disregards the Supremacy Clause and basic concepts of federalism. Decades of jurisprudence affirm that requiring state actors to comply with the Constitution—and particularly the Bill of Rights as applied to state law enforcement—does not violate state sovereign interests.[2] Adopting Appellant's position would render 42 U.S.C. § 1983—which Congress enacted specifically to address state actors, *Mitchum v. Foster*, 407 U.S. 225, 242 (1972)—null and void. This Court should decline to do so.

*Interference with potential crime investigation.* Again, Appellant offers only conjecture and generalities when asserting that the injunction will interfere with law enforcement activities. *Cf.* ECF No. 539 at 5 n.11 ("The KHP has presented no evidence that its war on motorists is necessary for effective enforcement of drug laws, or even that such law enforcement tactics are effective . . . ."). His notion that

---

[2] *See, e.g.*, *Ex parte Young*, 209 U.S. 123, 155–56 (1908); *O'Rourke v. Norman*, 875 F.2d 1465, 1469 n.10 (10th Cir. 1989) ("In the Constitution, the power to regulate criminal law has been left to the individual States . . . . *All the federal government can do is insure that the States do not, via police powers, . . . deprive any citizen of rights guaranteed by the federal Constitution*." (cleaned up; emphasis added)).

the injunction—which aims to ensure the KHP's constitutional compliance—"interfere[s] with KHP's ability to enforce the law" not only speaks volumes on the KHP's recalcitrance, it demonstrates a desire to continue violating this Circuit's law. Mot. at 21. As KHP personnel acknowledged at trial, troopers must conduct themselves in accordance with the Constitution. *See, e.g.*, ECF No. 570 at 449:19–450:1, 515:2-5. If Appellant's position is that KHP troopers are incapable of investigating crimes without violating the Constitution, then the agency's problems go even deeper than this suit has revealed.

Importantly, these latter two "burdens" Appellant alleges could conceivably apply in all situations where courts are called upon to correct law enforcement agencies' unconstitutional practices. Accepting such unsubstantiated and expansive claims of burden would lead to the absurd outcome of staying all injunctions against any state actor. Appellant has not made a proper showing of burden here and his motion should be denied.

## II.    Appellant has not made a strong showing that he is likely to succeed on the merits of his appeal.

None of Appellant's arguments regarding likelihood of success withstand scrutiny.

### A.    Appellees have standing.

Appellant repeatedly challenged Appellees' standing to obtain injunctive

relief below—at the pleading stage, summary judgment, closing argument, and in post-bench trial Proposed Findings of Fact and Conclusions of Law—relying on the same case law he does now. ECF No. 296 at 33–39; ECF No. 567 at 853:1-7, 874:10–875:6; ECF No. 531 at 20–25. Each time, the district court rejected his arguments. ECF No. 355; ECF No. 539 at 56–59. From the outset, the district court ruled that *O'Shea*'s standing analysis "merely applied the 'real and immediate threat' test to the plaintiffs' claims" and did not hold that plaintiffs categorically lack standing for injunctive relief based on anticipated future encounters with law enforcement. ECF No. 36 at 15 n.8 (distinguishing *O'Shea v. Littleton*, 414 U.S. 488 (1974)). Appellant offers no new arguments that would call the district court's prior rulings against him into question.

Under established law, a plaintiff demonstrates standing for injunctive relief by showing a "realistic threat" that he will be wronged similarly in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 109 (1983); *Harris v. Champion*, 51 F.3d 901, 907 (10th Cir. 1995) (citing *Lyons*), *abrogated on other grounds by statute*, Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 96 Stat. 25, *as recognized in Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011); *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004). A future injury need not be certain; rather, "[e]ven a small probability of injury is sufficient to create a case or controversy . . . ." *Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) (quotation

omitted)). Where there is an ongoing law enforcement policy or practice that violates the Constitution, the fact that a plaintiff has experienced the harm sought to be enjoined only once does not undermine their standing to sue for prospective relief. *See, e.g.*, *Floyd v. City of New York* ("*Floyd I*"), 283 F.R.D. 153, 170 (S.D.N.Y. 2012) ("Even [a] single stop, in light of the tens of thousands of facially unlawful stops, would likely confer standing."); *Roe v. City of New York*, 151 F. Supp. 2d 495, 503 (S.D.N.Y. 2001) ("[T]there is no per se rule requiring more than one past act . . . as a basis for finding a likelihood of future injury"). To the contrary, courts have consistently found standing for prospective relief against law enforcement profiling practices even where the statistical likelihood of the plaintiff being stopped again was unknown or low.[3]

---

[3] *See, e.g.*, *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979 (D. Ariz. 2011) (finding standing to challenge stop policy where "likelihood that any particular named Plaintiff will again be stopped in the same way may not be high"); *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 752 (N.D. Ill. 2015) (holding that "Plaintiffs have alleged ongoing constitutional violations pursuant to an unconstitutional policy or practice in tandem with allegations . . . which lead[] to the reasonable inference of the likelihood that CPD officers will unlawfully stop and frisk Plaintiffs in the future"); *Md. State Conf. of NAACP Branches v. Md. Dep't of State Police*, 72 F. Supp. 2d 560, 564 (D. Md. 1999) (distinguishing *Lyons*, because the plaintiffs had "allege[d] a pattern and practice of racially discriminatory stops, [and] 'clearly . . . made a reasonable showing that there was a pattern and practice of stops by the Maryland State Police based upon race' . . . . The *Lyons* complaint, on the other hand, did not assert that there was a pattern and practice . . . ."); *Floyd v. City of New York* ("*Floyd II*"), 959 F. Supp. 2d 540 (S.D.N.Y. 2013) (granting injunction reforming NYPD's stop and frisk program, even though the annual total number of stops and frisks was small compared to the city's total population).

Appellant's claim that Appellees lack standing because they have not demonstrated a KHP practice of stopping vehicles absent an actual traffic infraction is belied by the district court's findings and the evidence adduced at trial. The district court found that Mr. Erich and Ms. Maloney did not commit a traffic infraction at all; that video evidence did not credibly substantiate Trooper McCord's claim that Daniel Kelly was following a vehicle too closely; and that although it could not determine whether Suzanne Dunn unquestionably committed a traffic infraction, her stop was, at minimum, "exceedingly pretextual." ECF No. 539 at 21–23, 30 n.35, 34 n.39. Appellants' repeated attempts to analogize this case with *City of Los Angeles v. Lyons* ignore the actual evidence heard at trial that supports the Court's ruling. Regardless, whether an actual traffic infraction occurs prior to a roadside detention is beside the point—at issue is the KHP's practice of unconstitutionally extending detentions based on residency and travel plans.

As the district court consistently and correctly found, Appellees possess standing for injunctive relief.

## B. Injunctive relief is the only appropriate remedy for a state agency that violates the Constitution as a practice.

Next, Appellant argues that injunctive relief is inappropriate because the evidence is insufficient for an injunction, relying on *Rizzo v. Goode*, 423 U.S. 362 (1976). Appellant cited *Rizzo* extensively during closing argument and in post-trial briefing, making many of the same arguments he does now. ECF No. 567 at 853:1-

5, 867:7–868:18, 873:23, 874:25–875:6, 896:20, 897:11-13; ECF No. 531 at 22–25.

The district court rejected those arguments. *E.g.*, ECF No. 539 at 57 ("Plaintiffs have demonstrated an injury in fact by establishing violations of their Fourth Amendment constitutional rights, and have shown a causal connection between their injuries and the complained-of conduct by Jones."). Appellant offers no reason why this Court is likely to find an abuse of discretion.

Appellant concocts a bright line rule requiring more than 19 instances of misconduct in order for a court to grant prospective relief, but *Rizzo* articulated no such rule. In *Rizzo*, the district court identified 20 unrelated instances of unconstitutional police misconduct over a year. 423 U.S at 367–68, 373. The district court "found that the evidence did not establish the existence of any policy on the part of the named petitioners to violate the legal and constitutional rights of the plaintiff classes," and "no affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners -- express or otherwise -- showing their authorization or approval of such misconduct." *Id.* at 368–69, 371. Nevertheless, the district court voluntarily fashioned "prophylactic procedures for a state agency designed to minimize this kind of misconduct on the part of a handful of its employees." *Id.* at 378. The Supreme Court rejected this prophylactic injunction because it was untethered to any particular unconstitutional law enforcement policy or practice, or even any particular

constitutional right.

This situation is entirely different. Appellees proved that the KHP engages in an unconstitutional practice is widespread among its troopers, not merely "a small, unnamed minority of policemen" engaging in separate, unrelated incidents of misconduct. *Id.* at 372. Specifically, KHP troopers target out-of-state drivers for prolonged roadside detentions by inappropriately relying on residency and travel plans in violation of the Fourth Amendment. ECF No. 539 at 44–45, 62–63. The evidence for this pattern is not limited to testimony concerning specific individual troopers, but also includes testimony from Appellant himself regarding a systemic practice attributable to his conduct as agency head, bolstered by expert statistical analysis of KHP activities. *Id.* at 11–12, 47–50, 56, 63–64. Appellant encourages and trains his troopers to engage in pretextual traffic stops of out-of-state motorists and to use the Kansas Two-Step maneuver to trick them into giving up additional information, which troopers then use to justify prolonged detentions for canine sniffs. *Id.* at 4–8. Appellees also demonstrated that Appellant allows troopers to violate *Vasquez v. Lewis*, 834 F.3d 1132 (10th Cir. 2016)—a decision directed at KHP troopers—with impunity and, until recently, did not implement a policy requiring troopers to document detention decisions for supervisor review. *Id.* at 46–49, 58 ("It is also undisputed that Jones permits troopers to consider a driver's out-of-state residence and travel plans as—at the very least—'a' factor contributing to

reasonable suspicion."). At trial, Appellant offered no evidence of compliance with the new policy or meaningful efforts to discipline troopers adjudged to have violated constitutional rights. *Id.* at 16, 30, 35, 49.

Because the evidence showed that Appellees' experiences were part of a broader KHP effort to target certain motorists for detention absent sufficient reasonable suspicion, *Rizzo* does not provide a useful comparison here. Rather, this case resembles *Allee v. Medrano*, where the Supreme Court identified a "persistent pattern" of unconstitutional law enforcement intimidation that "flowed from an intentional, concerted, and indeed conspiratorial effort to deprive the [plaintiff] organizers of their First Amendment rights." 416 U.S. 802, 814–15 (1974) Integrating *Allee* and *Rizzo*, courts have held that "[s]pecific findings of a persistent pattern of misconduct supported by a fully defined record can support broad injunctive relief" against state law enforcement agencies. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) (cleaned up); *see also Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 WL 3996453, at *6 (D. Ariz. July 26, 2016) (distinguishing *Rizzo* and upholding the court's authority to fashion broad injunctive relief to remedy pervasive law enforcement policies and practices related to the unconstitutional detention of individuals without adequate reasonable suspicion), *aff'd sub nom. Melendres v. Maricopa Cnty.*, 897 F.3d 1217 (9th Cir. 2018). Appellees established just such a persistent pattern here, and *Rizzo*

poses no obstacle to the relief ordered. Thus, despite initial concerns regarding comity and federalism, the district court proceeded with the bench trial on injunctive relief and ultimately ruled for Appellees after hearing evidence of persistent unconstitutional practices in unabashed defiance of this Court's rulings (*see* ECF No. 356 at 30:12–31:2; ECF No. 358; ECF No. 378)—certainly an "extraordinary circumstance[]" justifying injunctive relief under *Rizzo*. 423 U.S. at 379.

The district court rightly found that legal remedies are not sufficient to halt the KHP's systemic Fourth Amendment violations. *See* Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2944 (3d ed.) ("Probably the most common method of determining that there is no adequate legal remedy is by showing that plaintiff will suffer irreparable harm if the court does not intervene and prevent the impending injury."); *cf. Steagald v. United States*, 451 U.S. 204, 215–16 (1981) ("The Government recognizes the potential for such abuses, but contends that existing remedies—such as motions to suppress illegally procured evidence and damages actions for Fourth Amendment violations—provide adequate means of redress. We do not agree. As we observed on a previous occasion, '[t]he [Fourth] Amendment is designed to prevent, not simply to redress, unlawful police action.'" (cleaned up)).

As the district court repeatedly ruled, damages suits are inadequate for many reasons: victims may not know their rights were violated, may not be able to find representation, or may not be willing to bring and pursue such a case. ECF No. 539

at 66–68; ECF No. 550 at 2; *see also* ECF No. 358 at 20–22. A motion to suppress cannot serve as a remedy if the motorist—like Appellees and other trial witnesses—is not prosecuted. Neither the exclusionary rule nor the remote possibility of a damages award deters KHP troopers from engaging in unconstitutional behavior, as trial evidence and the KHP's post-*Vasquez* behavior revealed.[4] A cycle of constitutional violations followed only by repeated damages awards or fighting to suppress evidence *if charged* is precisely what the equitable relief authorized in § 1983 is intended to avoid. *See Mitchum*, 407 U.S. at 242 ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' In carrying out that purpose, Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress.").

Finally, Appellant's emphasis on the district court's denial of qualified

---

[4] *See also State v. Gonzalez*, 57 Kan. App. 2d 510, 513 (2019); First Am. Compl., ECF No. 7, Exs. 2, 3, 4, 5 (collected Kansas state court cases where evidence seized by KHP troopers was suppressed because troopers improperly relied on driver's travel plans to or from states with legalized cannabis). *Cf. United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018) ("[W]hether to apply the exclusionary rule in a given case turns on whether such application will be an effective deterrent against future Fourth Amendment violations.").

immunity in Appellees' related, unappealed damages claims is misplaced. Mot. at 13–14. The fact that qualified immunity did not apply in *Vasquez* or to Appellees' damages claims here does not prevent its future application in cases brought by motorists against KHP troopers, because qualified immunity is a situation-specific inquiry that turns on the individual facts of each case. *See, e.g.*, *Maresca v. Bernalillo Cnty.*, 804 F.3d 1301, 1308 (10th Cir. 2015). And even where qualified immunity can ultimately be overcome, the burden, uncertainty, and delay associated with qualified immunity defenses still pose serious obstacles to obtaining monetary relief.

For these reasons, Appellant will not succeed on the merits of his appeal. Based on the trial evidence, the district court correctly concluded that the KHP engages in ongoing constitutional violations for which injunctive relief is the only appropriate and effective remedy. Appellant has not demonstrated why this conclusion constitutes an abuse of discretion.

### C. The district court's ruling and injunction provisions concerning the Kansas Two-Step and consent searches are proper.

Appellant's Kansas Two-Step argument likewise misses the mark. As an initial matter, he mischaracterizes the injunction's terms. The district court did not "conclude that the 'Kansas Two-Step' is categorically unconstitutional," Mot. at 15; rather, it held that the KHP engages in a pattern or practice of using the Two-Step in

a manner that violates the Fourth Amendment. ECF No. 582 at 75; *see also* ECF No. 582 at 1, 2.

Appellant's attempt to hide behind prior Two-Step rulings is unpersuasive for multiple reasons. Mot. at 15–16. First, those cases concerned motions to suppress in individual criminal cases that did not reveal the true extent of the KHP's constitutional violations through use of the Two-Step.[5] The evidence at trial demonstrated a practice of using the Two-Step to engage in unconstitutional policing. ECF No. 539 at 9, 13, 17–18, 33, 38, 42. KHP troopers employed the Two-Step against Appellees and others in such a way that a reasonable driver would not have felt free to leave, allowing troopers to coerce information and detain drivers without reasonable suspicion. *Id.* at 15, 17–18, 26 n.32, 33, 34–35, 42.

Appellant's argument completely ignores the practice of unconstitutional activity revealed at trial. Based on that evidence, the district court found that it is the *manner* in which the KHP conducts the Two-Step that creates highly coercive encounters that drivers do not feel free to leave, *id.* at 50–53, and the injunction terms concerning consent are intended to remedy the specific constitutional violations that result from the KHP's particular use of the Two-Step. Appellant complains that the

---

[5] *United States v. Hunter*, 663 F.3d 1136, 1141 (10th Cir. 2011); *United States v. Velazquez*, 349 F. App'x 339, 341 (10th Cir. 2009); *United States v. Guerrero*, 472 F.3d 784, 786 (10th Cir. 2007); *United States v. West*, 219 F.3d 1171, 1175–76 (10th Cir. 2000); *State v. Thompson*, 166 P.3d 1015, 1023 (Kan. 2007).

injunction goes beyond constitutional requirements in obliging troopers to inform drivers that they are free to leave, but in fashioning equitable remedies, a court may go beyond the Constitution's minimum requirements if it determines such steps are necessary to cure the underlying constitutional violation.[6]

"'[I]n federal equity cases[,] the nature of the violation' of a federal right 'determines the scope of the remedy' available." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 902 (10th Cir. 2017) (quoting *Rizzo*, 423 U.S. at 378; internal quotation marks omitted). "Once a constitutional violation is established, remedial decrees may require actions not independently required by the Constitution if those actions are, in the judgment of the court, necessary to correct the constitutional deficiencies." *Duran*, 678 F. Supp. at 847 (citing *Green v. Cnty. Sch. Bd.*, 391 U.S. 430, 438 (1968); *Milliken v. Bradley,* 433 U.S. 267 (1977); *Gilmore v. City of Montgomery,* 417 U.S. 556 (1974)). That is precisely what the district court did here: the injunction terms regarding written consent rectify the KHP's coercive

---

[6] *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) (courts have broad remedial powers to address state officials' intransigent refusal to implement constitutional requirements); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (upholding injunctive relief where "the police chief has expressed her intent to continue to use the program until a judge stops her"); *Duran v. Carruthers*, 678 F. Supp. 839, 846–47 (D.N.M. 1988) ("[T]he Tenth Circuit has directly applied to institutional reform litigation the vital principle that a federal court's equitable powers are inherently sufficiently broad to allow federal courts to fashion effective injunctive relief to cure federal constitutional violations"), *aff'd,* 885 F.2d 1492 (10th Cir. 1989).

use of the Two-Step, which results in detentions and searches based on consent that is not knowingly, intelligently, or voluntarily given. The district court did not abuse its discretion in this regard.

Similarly, the injunction provisions concerning consent searches remedy the KHP's unconstitutional use of the Two-Step. A stricter remedy is justified where a state actor not only engages in an unconstitutional practice, but also has a demonstrated penchant for disregarding this Court's instructions regarding its constitutional obligations. *See, e.g.*, *Swann*, 402 U.S. at 15; *Mills*, 571 F.3d at 1312; *Safe Streets Alliance*, 859 F.3d at 902; *Duran*, 678 F. Supp. at 846–47. The injunction terms are thus narrowly tailored to cure the KHP's persistent unconstitutional practices, and the evidence the district court heard at trial amply supports the remedies imposed. Moreover, Appellant is responsible for the injunction provisions of which he now complains, as he repeatedly failed to provide the district court with alternatives. *Cf.* ECF No. 550 at 2 (overruling Appellant's objections that the proposed injunction is "unduly burdensome" and not "narrowly tailored" because he failed to propose any less burdensome or more narrowly tailored alternatives).

In sum, Appellant has not shown "more than a mere possibility of relief," and certainly not the "strong showing" of an abuse of discretion necessary for a stay. *Nken*, 556 U.S. at 434 (cleaned up). None of these rehashed arguments is likely to

succeed, and a stay is unwarranted.

Because Appellant shows neither likelihood of success nor irreparable harm, the Court need not proceed with further analysis before denying his motion. *See id.* at 435; *United States v. Various Tracts of Land*, 74 F.3d 197, 198 (10th Cir. 1996). Nevertheless, Appellees address the remaining factors.

## III.    A stay would harm Appellees.

Appellant's assertion that Appellees will not be harmed by a stay is incorrect. Each testified that they continue to travel on interstate highways through Kansas. ECF No. 539 at 8, 20–21, 30. In fact, Mr. Bosire recently drove to Colorado from his home in Wichita to visit his daughter for the holidays. ECF No. 600-1 ¶¶ 2-3. He continues to experience anxiety on such trips without an injunction in place. A stay would delay justice for Appellees, who have patiently endured—and continue to endure—years of litigation and negative effects from their encounters with the KHP. Furthermore, the injunction benefits not just Appellees, but all motorists on Kansas interstates. Conversely, a delay in correcting the KHP's unconstitutional practice poses harm not just to Appellees, but to all motorists. And as described above, people subject to unjustified prolonged detentions while this appeal remains pending will suffer injury to their Fourth Amendment rights. *See supra* Section II.B.

## IV.    The public interest favors immediate enforcement.

The district court has found that the KHP is engaged in a persistent and

pervasive practice that violates the Constitution and, in the absence of clear error, the strong interest in protecting constitutional rights supports upholding the district court's injunction until the appeal is resolved. Preventing constitutional violations is "always in the public interest," and the district court's injunction aims to achieve just that. *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 807 (10th Cir. 2019); *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (noting that the public has a "profound and long-term interest in upholding an individual's constitutional rights"). Again, Appellant provides no evidence that the injunction prevents the KHP from engaging in effective law enforcement. To the contrary, law enforcement is most effective when complying with the Constitution.[7] Correcting its constitutional deficiencies is the best and most effective way for the KHP to fulfill its mission.

---

[7] Statement of Interest, U.S. Dep't of Justice, *Floyd v. City of New York*, No. 08-cv-1034, ECF No. 365 (S.D.N.Y. June 12, 2013) ("[T]here is significant evidence that unlawfully aggressive police tactics are not only unnecessary for effective policing, but are in fact detrimental to the mission of crime reduction. Officers can only police safely and effectively if they maintain the trust and cooperation of the communities within which they work, but the public's trust and willingness to cooperate with the police are damaged when officers routinely fail to respect the rule of law."); *see also* Stephen Schulhofer et al., <u>American Policing at a Crossroads: Unsustainable Policies and the Procedural Justice Alternative</u>, 101 J. Crim. L. & Criminology 335, 346–74 (2011); J. McDevitt et al., COPS Evaluation Brief No. 1: Promoting Cooperative Strategies to Reduce Racial Profiling 21 (Office of Cmty. Oriented Policing Servs., U.S. Dep't of Justice 2008) ("Being viewed as fair and just is critical to successful policing in a democracy. When the police are perceived as unfair in their enforcement, it will undermine their effectiveness.").

Finally, the "principles of federalism" on which Appellant so heavily relies militate *against* a stay.[8] "When a plaintiff seeks to enjoin the activity of a government agency, . . . his case must contend with 'the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs.'" *Rizzo*, 423 U.S. at 378–79 (cleaned up). The KHP has been given latitude to conduct its own internal affairs, but not only did it fail to course-correct post-*Vasquez*, it deliberately chose not to abide by this Court's ruling. ECF No. 539 at 43–46. Far from counseling against a stay, federalism obliges the KHP to comply with the Constitution—the supreme law of the land—and authorizes federal courts to enforce compliance when confronted with state officials' blatant intransigence. *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.").

## CONCLUSION

Appellant has not satisfied any of the four factors required for the

---

[8] 17A Fed. Prac. & Proc. Juris. § 4231 (3d ed.) ("*Ex parte Young* bring[s] within the scope of federal judicial review *actions that might otherwise escape such review, and . . . subject[s] the states to the restrictions of the United States Constitution that they might otherwise be able safely to ignore*." (emphasis added)); 17A Moore's Fed. P. Civil 123.40 ("[W]hen a plaintiff alleges a continuing or future violation of federal law, the federal government's interest in ensuring compliance with federal law predominates, and a federal court has jurisdiction to enjoin the violation.").

extraordinary relief he seeks. Because Appellant has failed to show that the district court abused its discretion or made an error of law or clearly erroneous factual findings, Appellees respectfully request the Court deny his motion to stay the district court's carefully considered injunction grounded on evidence from three separate trials.

Dated: February 5, 2024

Respectfully submitted by,

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS**
s/ Kunyu Ching
Sharon Brett          KS # 28696
Kunyu Ching          KS # 29807
10561 Barkley St., Ste. 500
Overland Park, KS 66212
Phone: (913) 490-4110
Fax: (913) 490-4119
sbrett@aclukansas.org
kching@aclukansas.org

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Brian Hauss
125 Broad Street, Floor 18
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
bhauss@aclu.org

and

**SPENCER FANE LLP**

s/ Leslie A. Greathouse

Leslie A. Greathouse    KS # 18656
Patrick McInerney      KS # 22561
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100
Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February 2024, a copy of the foregoing was filed and served via the Court's electronic filing system on all counsel of record.

s/Kunyu Ching
Attorney for Appellees

## CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,185 words, excluding the parts of the filing exempted under Rule 32(f), according to the word-count function of Microsoft Word.

I further certify that this filing complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in 14-point Times New Roman, a proportionally spaced font, using Microsoft Word.

s/Kunyu Ching