Case Nos. 23-3264 and 23-3267

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

BLAINE FRANKLIN SHAW, et al.,
*Plaintiffs-Appellees*,

v.

ERIK SMITH, in his official capacity as
Superintendent of the Kansas Highway Patrol,
*Defendant-Appellant*.

———

MARK ERICH, et al.,
*Plaintiffs-Appellees*,

v.

ERIK SMITH, in his official capacity as
Superintendent of the Kansas Highway Patrol,
*Defendant-Appellant*.

# REPLY IN SUPPORT OF APPELLANT'S
# MOTION FOR A STAY PENDING APPEAL

Appeal from the United States District Court for the District of Kansas
Honorable Kathryn H. Vratil, Senior District Court Judge
District Court Case Nos. 19-CV-1343-KHV and 20-CV-1067-KHB-GEB

Anthony J. Powell
 *Solicitor General*
Dwight R. Carswell
 *Deputy Solicitor General*
Kurtis K. Wiard
 *Assistant Solicitor General*

Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
(785) 296-2215
anthony.powell@ag.ks.gov
dwight.carswell@ag.ks.gov
kurtis.wiard@ag.ks.gov

*Attorneys for Defendant-Appellant*

# ARGUMENT

Plaintiffs cannot escape the fact that the district court imposed an intrusive injunction with profound federalism and separation of powers implications based on a showing of (at most) five traffic stops that violated the Fourth Amendment over as many years—in other words, one stop per year. Not only that, but the injunction flies in the face of Supreme Court and Tenth Circuit precedent. Given the serious legal questions raised by the district court's decision and the irreparable harm the injunction will cause the Kansas Highway Patrol (KHP), this Court should grant a stay of the injunction "to preserve the status quo pending appellate determination." *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020-21 (10th Cir. 1996).

***Colonel Smith is likely to succeed on appeal.***

As Colonel Smith's stay motion explained, this appeal presents at least four serious legal questions on which he is likely to prevail. Plaintiffs' response fails to demonstrate otherwise.

First, Plaintiffs lack standing to obtain prospective injunctive relief. Contrary to Plaintiffs' argument, the Supreme Court did not adopt a "small probability of injury" standard for standing in *Massachusetts v. EPA*, 549 U.S. 497 (2007). That phrase is found in a parenthetical quotation in a

footnote in the redressability section of the Court's opinion. *Id.* at 525 n.23.[1]

If the Court had adopted a small probability of injury standard, the plaintiffs in *Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013), would have had standing. But they did not because their hypothetical future injuries were not "certainly impending," *id.* at 409-10, 422, or at the very least, because they did not demonstrate a "*substantial* risk of harm." *Id.* at 414 n.5 (emphasis added).

Plaintiffs' remaining standing argument relies entirely on inapposite district court cases.[2] But *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is not only Supreme Court precedent, it is squarely on point. Like the plaintiff

---

[1] Cases involving probabilistic injuries arise mainly in the environmental context where, for example, exposure to a carcinogen may constitute an injury even though there is a small probability that a plaintiff will develop cancer. But in those cases, the plaintiff is being subjected to the challenged conduct; it is only the harm from that conduct that is uncertain. That is a far cry from cases like this, where it is speculative that plaintiffs will even be subjected to the challenged law enforcement conduct in the future. In this context, *Lyons* and *Clapper* are much more germane.

[2] For instance, *Floyd v. City of New York*, 283 F.R.D. 153 (S.D.N.Y. 2012), involved "tens of thousands of facially unlawful stops," *id.* at 170, while here, Plaintiffs have shown at most five. And in *Roe v. City of New York*, 151 F. Supp. 2d 495 (S.D.N.Y. 2001), the court distinguished *Lyons* by noting that in *Lyons*, "the plaintiff had committed a traffic violation," *id.* at 503, which would also be the basis for KHP stopping Plaintiffs here in the future. The court also noted that needle exchange participants on their way to a needle exchange center would likely be carrying injection equipment, thus subjecting them to arrest, *id.* at 504, while here it is purely speculative to believe that Plaintiffs—even if stopped by a KHP trooper—would be detained following that traffic stop.

2

in *Lyons*, the district court found that Plaintiffs were subjected to an unconstitutional police encounter in the past, but it is pure speculation to believe that they will not only be stopped by KHP in the future but also unconstitutionally detained without reasonable suspicion following such a stop. They therefore lack standing.

Second, Plaintiffs cannot demonstrate the sort of "extraordinary circumstances" under *Rizzo v. Goode*, 423 U.S. 362 (1976), sufficient to place an entire state law enforcement agency under federal court supervision. Plaintiffs claim that an injunction is warranted because of inadequate KHP supervisor review and discipline, but that is exactly the sort of argument the Supreme Court rejected in *Rizzo*. *Id.* at 376 (noting the district court's injunction was based on "petitioners' failure to act in the face of a statistical pattern"); *id.* at 378 (rejecting respondents' assertion of a right to injunctive relief "when those in supervisory positions do not institute steps to reduce the incidence of unconstitutional police misconduct").

Plaintiffs also refer to (disputed) evidence that KHP troopers have disproportionately stopped out-of-state drivers, but that evidence does not demonstrate that even a single stop was made without reasonable suspicion. The only evidence of drivers being detained without reasonable suspicion comes from five individual stops over the course of five years. One Fourth

Amendment violation a year does not justify equitable relief. If it did, nearly every major law enforcement agency in the country would be subject to similar injunctions. *See Rizzo*, 423 U.S. at 375 ("[T]here was no showing that the behavior of the Philadelphia police was different in kind or degree from that which exists elsewhere."). An injunction is particularly inappropriate given that adequate relief remains available in the form of damages actions under 42 U.S.C. § 1983 and when the exclusionary rule also provides a compelling deterrent to police misconduct. *See Rahman v. Chertoff*, 530 F.3d 622, 626-27 (7th Cir. 2008) ("Improper arrests are best handled by individual suits for damages (and potentially through the exclusionary rule), not by a structural injunction designed to make every error by the police an occasion for a petition to hold the officer (and perhaps the police department as a whole) in contempt of court.").

Third, Plaintiffs cannot reconcile the Two-Step provisions of the district court's injunction with this Court's precedents. The fact that prior Tenth Circuit decisions involving the Two-Step arose in the context of motions to suppress, not § 1983 cases, is beside the point—the same Fourth Amendment principles apply in both contexts. And while Plaintiffs argue that the district court merely found the *manner* in which KHP troopers conduct the Two-Step unconstitutional, the district court did not rest its holding on any of the

4

factors that this Court has previously indicated may render an encounter nonconsensual. *See, e.g.*, *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007). Rather, the district court's holding was based solely on factors equally present in cases where this Court has held Two-Steps constitutional: the authority of the officers, short periods of disengagement, the fact the officers only took a few steps away from the vehicle, and the fact that the officers did not affirmatively inform the drivers they were free to leave. *Compare* Mem. and Order at 65-66, *with United States v. Hunter*, 663 F.3d 1136, 1140, 1144-45 (10th Cir. 2011); *United States v. Velazquez*, 349 Fed. Appx. 339, 341-42 (10th Cir. 2009) (unpublished) (Gorsuch, J.); *United States v. Guerrero*, 472 F.3d 784, 786, 789 (10th Cir. 2007); *United States v. West*, 219 F.3d 1171, 1174-1177 (10th Cir. 2000).

More importantly, even if the Two-Steps here were carried out in an unconstitutional manner, that does not mean every Two-Step is unconstitutional such that it would be appropriate to categorically enjoin the practice. Plaintiffs argue that the district court has broad discretion to fashion a remedy for constitutional violations. But if there truly were an issue with how KHP troopers carry out the Two-Step, the remedy would be to prohibit troopers from doing whatever it is that allegedly renders the encounters nonconsensual. Requiring troopers to affirmatively inform drivers

5

of their right to refuse to reengage and to obtain consent in writing is not a "remedy" unless not doing those things violates the Constitution.

Finally, Plaintiffs offer hardly any argument in defense of the injunction's restrictions on consent searches. They claim that these provisions are intended to remedy constitutional violations involving the Two-Step, but as noted in Colonel Smith's stay motion, *none* of the stops in this case involved a consent search. Plaintiffs simply ignore this fact. Colonel Smith is likely to prevail on this issue too, particularly given that the injunction directly conflicts with the U.S. Supreme Court's decision in *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996).

### ***KHP will suffer irreparable harm if a stay is not entered.***

Colonel Smith's stay motion identified three irreparable harms that KHP will suffer if a stay is not granted: (1) accrual of unrecoverable compliance costs; (2) intrusion on state sovereignty; and (3) interference with KHP's ability to investigate crimes and enforce the law. Plaintiffs' attempt to dismiss these harms is without merit.

Plaintiffs argue that the administrative costs of the injunction are unsubstantiated. But by its own terms, the injunction requires additional documentation, data analysis and reporting, performance compliance reviews, audits, training, and testing. Obviously, someone will have to do this

6

work. It is therefore indisputable that the injunction imposes administrative costs on KHP, and those costs will not be recoverable in the event Colonel Smith prevails on appeal. As explained in the stay motion, this constitutes irreparable harm.

Plaintiffs try to dismiss the harms the injunction causes to state sovereignty by arguing that there can be no harm from complying with the Constitution. But as they admit, the injunction goes beyond the requirements of the Constitution. In fact, it is doubtful that any of the injunction's remedial actions are compelled by the Constitution. Whether or not these remedies are ultimately justified, there can be no question that they interfere with state sovereignty.

Plaintiffs' argument regarding interference with KHP's ability to investigate crimes and enforce the law suffers from the same flaw. Colonel Smith is not arguing that KHP is harmed by following the Constitution. Rather, the irreparable harm arises because the injunction goes beyond the Constitution. These extra-constitutional requirements constrain KHP's ability to enforce the law in the manner it determines most appropriate, consistent with the Constitution. In addition, KHP has finite resources, so allocating staff time and money toward complying with the injunction necessarily diverts these resources from other law enforcement priorities.

### *A stay will not harm Plaintiffs.*

The third stay factor is concerned with harm to Plaintiffs, not motorists who are not parties to the case. *See McClendon*, 79 F.3d at 1020 (referencing "the absence of harm to *opposing parties* if the stay or injunction is granted" (emphasis added)). As speculative as it is that Plaintiffs will suffer future harm for purposes of standing, it is even more speculative that any hypothetical harm will occur while this case is pending on appeal. And while Plaintiffs argue that the existence of the injunction helps address Plaintiff Bosire's anxiety, it is well established that "fears of hypothetical future harm that is not certainly impending" do not constitute a legally cognizable injury. *See Clapper*, 568 U.S. at 416.

### *Granting a stay is in the public interest.*

Plaintiffs argue that a stay would not be in the public interest because the injunction requires KHP to comply with the Constitution. But again, the injunction's provisions go well beyond what the Constitution requires. Given the significant federalism and separation of powers implications of the injunction, and the availability of adequate remedies for any Fourth Amendment violation, the public interest is best served by staying the injunction until this Court resolves the appeal. *See McClendon*, 79 F.3d at 1024.

## CONCLUSION

Colonel Smith's motion to stay the district court's permanent injunction pending appeal should be granted.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL

/s/ Dwight R. Carswell
Anthony J. Powell
  *Solicitor General*
Dwight R. Carswell
  *Deputy Solicitor General*
Kurtis K. Wiard
  *Assistant Solicitor General*
Office of the Kansas Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
(785) 296-2215
anthony.powell@ag.ks.gov
dwight.carswell@ag.ks.gov
kurtis.wiard@ag.ks.gov

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system and that the CM/ECF system will serve all participants in the case that are registered CM/ECF users.

/s/ Dwight R. Carswell

## CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 1,862 words, excluding the parts of the filing exempted under Rule 32(f), according to the word-count function of Microsoft Word.

I further certify that this filing complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in 13-point Century Schoolbook, a proportionally spaced font, using Microsoft Word.

/s/ Dwight R. Carswell