IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

BLAINE FRANKLIN SHAW, et al.,
*Plaintiffs-Appellees,*

v.

ERIK SMITH, in his official capacity as
Superintendent of the Kansas Highway Patrol,
*Defendant-Appellant.*

———

MARK ERICH, et al.,
*Plaintiffs-Appellees,*

v.

ERIK SMITH, in his official capacity as
Superintendent of the Kansas Highway Patrol,
*Defendant-Appellant.*

## APPELLANT'S APPENDIX VOLUME I

Appeal from the United States District Court for the District of Kansas
Honorable Kathryn H. Vratil, Senior District Court Judge
District Court Case Nos. 19-CV-1343-KHV and 20-CV-1067-KHV-GEB

120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
(785) 296-2215
anthony.powell@ag.ks.gov
dwight.carswell@ag.ks.gov
kurtis.wiard@ag.ks.gov

**OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH**

Anthony J. Powell
  *Solicitor General*
Dwight R. Carswell
  *Deputy Solicitor General*
Kurtis K. Wiard
  *Assistant Solicitor General*

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

**Vol. I** (*Shaw v. Jones*, No. 19-CV-1343)

District Court Docket Entries in *Shaw v. Jones*, No. 19-CV-1343........... 1

First Amended Complaint
    (ECF No. 7)..................................................................... 71

Memorandum and Order
    (ECF No. 36)................................................................ 103

Answer by Defendant Jones
    (ECF No. 39)................................................................ 120

Certain Plaintiffs' Response to Show Cause Order re Class Certification
    (ECF No. 165).............................................................. 130

Defendant Jones's Response to Show Cause Order re Class Certification
    (ECF No. 166).............................................................. 137

Plaintiffs' Motion to Amend the Pretrial Order
    (ECF No. 357).............................................................. 141

Defendant Jones's Opposition to Motion to Amend Pretrial Order
    (ECF No. 389).............................................................. 201

Order Granting Motion to Amend Pretrial Order
    (ECF No. 415).............................................................. 208

Memorandum in Support of Motion for Judgment
    (ECF No. 515; *Erich* ECF No. 62)............................... 209

Plaintiffs' Response to Motion for Judgment
    (ECF No. 519; *Erich* ECF No. 66)............................... 234

Defendant Jones's Proposed Findings of Fact and Conclusions of Law
    (ECF No. 531; *Erich* ECF No. 78)............................... 238

**Vol. II** (*Shaw v. Jones*, No. 19-CV-1343)

Memorandum and Order and Order to Show Cause
(ECF No. 539; *Erich* ECF No. 86) ..................................................... 1

Defendant Jones's Response to the Order to Show Cause Why the Court
Should Not Enter the Proposed Injunction
(ECF No. 547; *Erich* ECF No. 93) .................................................. 80

Plaintiffs' Reply Regarding the Order to Show Cause Why the Court
Should Not Enter the Proposed Injunction
(ECF No. 549; *Erich* ECF No. 95) .................................................. 93

Order
(ECF No. 550; *Erich* ECF No. 96) ................................................ 114

Memorandum and Order
(ECF No. 575; *Erich* ECF No. 122) .............................................. 126

Plaintiffs' Response to Show Cause Order re Scope of Injunction
(ECF No. 576; *Erich* ECF No. 123) .............................................. 141

Defendant Jones's Response to Show Cause Order re Scope of
Injunction
(ECF No. 577; *Erich* ECF No. 124) .............................................. 175

Memorandum and Order
(ECF No. 581; *Erich* ECF No. 128) .............................................. 200

Permanent Injunction
(ECF No. 582; *Erich* ECF No. 129) .............................................. 211

Judgment
(ECF No. 583; *Erich* ECF No. 130) .............................................. 226

Notice of Appeal
(ECF No. 585; *Erich* ECF No. 132) .............................................. 228

Plaintiff's Opposition to Stay Motion
(ECF No. 600) ................................................................................ 230

**Vol. III** (*Erich v. Jones*, No. 20-CV-1067)

District Court's Docket Entries in *Erich v. Jones*, No. 20-CV-1067 ........1

Complaint
    (ECF No. 1).................................................................22

Answer by Defendant Jones
    (ECF No. 13)...............................................................38

Judgment in a Civil Case
    (ECF No. 130).............................................................44

Notice of Appeal
    (ECF No. 132).............................................................46

**Vol. IV**

Transcript of Motion Hearing
    (ECF No. 356)...............................................................1

**Vol. V**

Transcript of Shaw Trial, Day 1
    (ECF No. 597)...............................................................1

**Vol. VI**

Transcript of Shaw Trial, Day 2 (Excluding Hassan Aden Testimony)
    (ECF No. 598)...............................................................1

**Vol. VII**

Transcript of Shaw Trial, Hassan Aden Testimony
    (ECF No. 599)...............................................................1

**Vol. VIII**

Transcript of Bosire Trial, Day 1
    (ECF No. 618) ...............................................................1

**Vol. IX**

Transcript of Bosire Trial, Day 2
    (ECF No. 619) ...............................................................1

**Vol. X**

Transcript of Bosire Trial, Day 3
    (ECF No. 620) ...............................................................1

**Vol. XI**

Transcript of Bosire Trial, Day 4
    (ECF No. 621) ...............................................................1

**Vol. XII**

Transcript of Bench Trial, Day 1
    (ECF No. 564) ...............................................................1

**Vol. XIII**

Transcript of Bench Trial, Day 2
    (ECF No. 568) ...............................................................1

**Vol. XIV**

Transcript of Bench Trial, Day 3
    (ECF No. 565) ...............................................................1

**Vol. XV**

Transcript of Bench Trial, Day 4
    (ECF No. 564) ...............................................................1

**Vol. XVI**

Transcript of Bench Trial, Day 5
    (ECF No. 570) ...................................................................1

**Vol. XVII**

Transcript of Bench Trial, Day 6
    (ECF No. 589) ...................................................................1

**Vol. XVIII**

Transcript of Bench Trial, Day 7
    (ECF No. 566) ...................................................................1

**Vol. XIX**

Transcript of Bench Trial, Day 8
    (ECF No. 567) ...................................................................1

**Vol. XX**

Transcript of Deposition Designations
    (ECF No. 521) ...................................................................1

**Vol. XXI**

Transcript of Deposition Designations (Continued)
    (ECF No. 521) ...................................................................1

**Vol. XXII**

Transcript of Deposition Designations (Continued)
    (ECF No. 521) ...................................................................1

**Vol. XXIII**

Deposition of Randy Moon
    (Trial Exhibit No. 134A) ...................................................1

# U.S. District Court
## DISTRICT OF KANSAS (Wichita)
## CIVIL DOCKET FOR CASE #: 6:19-cv-01343-KHV

Shaw et al v. Schulte
Assigned to: District Judge Kathryn H. Vratil
Demand: $250,000
related Case: 6:20-cv-01067-KHV-GEB
Case in other court:  10CCA, 21-03130
      10CCA, 21-03131
      10CCA, 23-03264
Cause: 42:1983 Civil Rights Act

Date Filed: 12/19/2019
Date Terminated: 11/21/2023
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

**Blaine Franklin Shaw**
*individually and on behalf of a class*

represented by **Brian M. Hauss**
American Civil Liberties Union Foundation
- NY
125 Broad Street, 18th Floor
New York, NY 10004
212-549-2500
Fax: 212-549-2654
Email: bhauss@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kunyu L. Ching**
ACLU Foundation of Kansas
10561 Barkley Street, Suite 500
Overland Park, KS 66212
913-491-4100
Email: kching@aclukansas.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie A. Greathouse**
Spencer Fane, LLP - KC
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
816-474-8100 ext 8115
Fax: 816-474-3216
Email: lgreathouse@spencerfane.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madison A. Perry**
Spencer Fane, LLP - KC
1000 Walnut Street, Suite 1400

Kansas City, MO 64106
816-292-8814
Fax: 816-474-3216
Email: mperry@spencerfane.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olawale O. Akinmoladun**
Spencer Fane, LLP - KC
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
816-292-8231
Email: wakinmoladun@spencerfane.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick A. McInerney**
Spencer Fane, LLP - KC
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
816-474-8100
Fax: 816-474-3216
Email: pmcinerney@spencerfane.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua M. Pierson**
ACLU Foundation of Kansas
10561 Barkley Street, Suite 500
Overland Park, KS 66212
913-359-1807
Email: joshua.pierson@eeoc.gov
*TERMINATED: 08/10/2022*
*PRO HAC VICE*

**Kayla DeLoach**
ACLU Foundation of Kansas
6701 W. 64th Street, Suite 210
Overland Park, KS 66202
813-802-8610
Email: kdeloach@aclukansas.org
*TERMINATED: 11/28/2022*

**Lauren Bonds**
National Police Accountability Project
1403 Southwest Blvd
Kansas City, KS 66103
620-664-8584
Email: legal.npap@nlg.org
*TERMINATED: 01/08/2021*

**Sharon Brett**
ACLU Foundation of Kansas
10561 Barkley Street, Suite 500

Overland Park, KS 66212
609-529-8775
Email: sharon.brett@gmail.com
*TERMINATED: 03/27/2024*

**Zal Kotval Shroff**
ACLU Foundation of Kansas
10561 Barkley Street, Suite 500
Overland Park, KS 66212
913-303-3641
Email: zal.shroff@yale.edu
*TERMINATED: 01/08/2021*

**Plaintiff**

| | | |
|---|---|---|
| **Samuel James Shaw**<br>*individually and on behalf of a class* | represented by | **Brian M. Hauss**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Kunyu L. Ching**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie A. Greathouse**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madison A. Perry**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olawale O. Akinmoladun**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick A. McInerney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua M. Pierson**
(See above for address)
*TERMINATED: 08/10/2022*
*PRO HAC VICE*

**Kayla DeLoach**
(See above for address)
*TERMINATED: 11/28/2022*

**Lauren Bonds**
(See above for address)
*TERMINATED: 01/08/2021*

**Sharon Brett**
(See above for address)
*TERMINATED: 03/27/2024*

**Zal Kotval Shroff**
(See above for address)
*TERMINATED: 01/08/2021*

<u>**Plaintiff**</u>

**Joshua Bosire**                         represented by    **Brian M. Hauss**
*individually and on behalf of a class*                      (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Kunyu L. Ching**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Leslie A. Greathouse**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Madison A. Perry**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Olawale O. Akinmoladun**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Patrick A. McInerney**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Joshua M. Pierson**
                                                             (See above for address)
                                                             *TERMINATED: 08/10/2022*
                                                             *PRO HAC VICE*

                                                             **Kayla DeLoach**
                                                             (See above for address)
                                                             *TERMINATED: 11/28/2022*

**Lauren Bonds**
(See above for address)
*TERMINATED: 01/08/2021*

**Sharon Brett**
(See above for address)
*TERMINATED: 03/27/2024*

**Zal Kotval Shroff**
(See above for address)
*TERMINATED: 01/08/2021*

V.

**Consol Plaintiff**

**Mark Erich**
*Plaintiff in member case 6:20-cv-01067-KHV-GEB*

represented by **Brian M. Hauss**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kunyu L. Ching**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie A. Greathouse**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madison A. Perry**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olawale O. Akinmoladun**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick A. McInerney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James T. McIntyre**
6235 W. Kellogg Drive
Wichita, KS 67209
316-264-8857
Fax: 316-239-2641

*TERMINATED: 11/29/2021*

**Joshua M. Pierson**
(See above for address)
*TERMINATED: 08/10/2022*
*PRO HAC VICE*

**Kayla DeLoach**
ACLU Foundation of Kansas
10561 Barkley Street, Suite 500
Overland Park, KS 66212
813-802-8610
Email: kdeloach@aclukansas.org
*TERMINATED: 11/28/2022*

**Sharon Brett**
(See above for address)
*TERMINATED: 03/27/2024*

**Consol Plaintiff**

**Shawna Maloney**                            represented by  **Brian M. Hauss**
*Plaintiff in member case 6:20-cv-01067-*                    (See above for address)
*KHV-GEB; individually and as the mother*                    *LEAD ATTORNEY*
*and natural guardian of*                                    *PRO HAC VICE*
*minor*                                                      *ATTORNEY TO BE NOTICED*
D. M.
*minor*                                                      **Kunyu L. Ching**
M. M.                                                        (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Leslie A. Greathouse**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Madison A. Perry**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Olawale O. Akinmoladun**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Patrick A. McInerney**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **James T. McIntyre**
                                                             (See above for address)

*TERMINATED: 11/29/2021*

**Joshua M. Pierson**
(See above for address)
*TERMINATED: 08/10/2022*
*PRO HAC VICE*

**Kayla DeLoach**
(See above for address)
*TERMINATED: 11/28/2022*

**Sharon Brett**
(See above for address)
*TERMINATED: 03/27/2024*

V.

**Defendant**

| | | |
|---|---|---|
| **Doug Schulte**<br>*Master Trooper, in his individual capacity* | represented by | **Stanley R. Parker**<br>Kansas Attorney General - Topeka<br>120 SW 10th Avenue, 2nd Floor<br>Topeka, KS 66612<br>785-368-8423<br>Fax: 785-291-3767<br>Email: stanley.parker@ag.ks.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Arthur S. Chalmers**<br>Kansas Attorney General - Topeka<br>120 SW 10th Avenue, 2nd Floor<br>Topeka, KS 66612<br>785-368-6244<br>Email: art.chalmers@ag.ks.gov<br>*TERMINATED: 06/01/2023* |

**Defendant**

| | | |
|---|---|---|
| **Herman Jones**<br>*in his official capacity as the Superintendent*<br>*of the Kansas Highway Patrol*<br>*TERMINATED: 08/08/2023* | represented by | **Stanley R. Parker**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Arthur S. Chalmers**<br>(See above for address)<br>*TERMINATED: 06/01/2023* |

**Defendant**

| | | |
|---|---|---|
| **Brandon McMillan**<br>*Technical Trooper, in his individual capacity* | represented by | **Stanley R. Parker**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Arthur S. Chalmers** |

(See above for address)
*TERMINATED: 06/01/2023*

**Defendant**

**Erik Smith**                                    represented by **Stanley R. Parker**
*the current Superintendent of the Kansas*                      (See above for address)
*Highway Patrol*                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

V.

**Consol Defendant**

**Herman Jones**                                  represented by **Stanley R. Parker**
*Defendant in member case 6:20-cv-01067-*                        (See above for address)
*KHV-GEB; in his official capacity as the*                       *LEAD ATTORNEY*
*Superintendent of the Kansas Highway*                           *ATTORNEY TO BE NOTICED*
*Patrol*
*TERMINATED: 08/08/2023*                                         **Arthur S. Chalmers**
                                                                (See above for address)
                                                                *TERMINATED: 06/01/2023*

**Consol Defendant**

**Erik Smith**                                    represented by **Stanley R. Parker**
*Defendant in member case 6:20-cv-01067-*                        (See above for address)
*KHV-GEB; the current Superintendent of*                         *LEAD ATTORNEY*
*the Kansas Highway Patrol*                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/19/2019 | 1 | COMPLAINT with trial location of Wichita, filed by Blaine Franklin Shaw, Samuel James Shaw. (Attachments: # 1 Additional signature page signed by both Plaintiffs received by fax on 12/20/2019) (jk) (Entered: 12/20/2019) |
| 12/19/2019 | 2 | CIVIL COVER SHEET re 1 Complaint by Plaintiffs Blaine Franklin Shaw, Samuel James Shaw. (jk) (Entered: 12/20/2019) |
| 12/19/2019 | 3 | MOTION for Leave to Proceed in forma pauperis by Plaintiff Blaine Franklin Shaw. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Affidavit of Financial Status) NOTE - Access to document is restricted pursuant to the courts privacy policy. (jk) (Entered: 12/20/2019) |
| 12/19/2019 | 4 | MOTION for Leave to Proceed in forma pauperis by Plaintiff Samuel James Shaw. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Affidavit of Financial Status) NOTE - Access to document is restricted pursuant to the courts privacy policy. (jk) (Entered: 12/20/2019) |
| 01/08/2020 | 5 | ORDER granting 3 Motion for Leave to Proceed in forma pauperis ; granting 4 Motion for Leave to Proceed in forma pauperis. The Clerk of the Court shall undertake service of process pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3). Signed by Magistrate Judge Gwynne E. Birzer on 1/07/2020. Mailed to pro se parties Blaine Franklin Shaw at 2716 N. Redmond Ave., Oklahoma City, OK 73127 and Samuel James Shaw at 4173 NW 22nd St., Oklahoma City, OK 73107 by regular mail. (jk) (Entered: 01/08/2020) |

| | | |
|---|---|---|
| 01/08/2020 | | SUMMONS ISSUED as to Doug Schulte (issued to US Marshal for service). (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry) Copy of NEF mailed to pro se Plaintiffs Blaine Franklin Shaw at 2716 N. Redmond Ave., Oklahoma City, OK 73127 and Samuel James Shaw at 4173 NW 22nd St., Oklahoma City, OK 73107. (jk) (Entered: 01/08/2020) |
| 01/15/2020 | 6 | SUMMONS RETURNED EXECUTED -- Certified Mail by Blaine Franklin Shaw, Samuel James Shaw upon Doug Schulte served on 1/14/2020, answer due 2/4/2020. Copy of NEF mailed to pro se Plaintiffs Blaine Franklin Shaw at 2716 N. Redmond Ave., Oklahoma City, OK 73127 and Samuel James Shaw at 4173 NW 22nd St., Oklahoma City, OK 73107. (jk) (Additional attachment(s) added on 3/17/2020: # 1 certified mail receipt) (jk). (Entered: 01/15/2020) |
| 01/30/2020 | 7 | AMENDED COMPLAINT *Class Action* against Herman Jones, Brandon McMillan, Doug Schulte, filed by Blaine Franklin Shaw, Joshua Bosire, Samuel James Shaw. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13)(Greathouse, Leslie) (Entered: 01/30/2020) |
| 01/30/2020 | 8 | ORDER REASSIGNING CASE: Case reassigned to District Judge Kathryn H. Vratil for all further proceedings. District Judge Eric F. Melgren no longer assigned to case. Signed by District Judge Eric F. Melgren on 1/30/2020. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.)(cm) (Entered: 01/30/2020) |
| 01/30/2020 | | SUMMONS ISSUED as to Herman Jones, Brandon McMillan, Doug Schulte (issued to US Marshal for service). (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry) (jk) (Entered: 01/30/2020) |
| 02/14/2020 | 9 | SUMMONS RETURNED EXECUTED -- Certified Mail by Blaine Franklin Shaw, Joshua Bosire, Samuel James Shaw upon Doug Schulte served on 2/13/2020, answer due 3/5/2020. (jk) (Additional attachment(s) added on 3/17/2020: # 1 certified mail receipt) (jk). (Entered: 02/14/2020) |
| 02/14/2020 | 10 | SUMMONS RETURNED EXECUTED -- Certified Mail by Blaine Franklin Shaw, Joshua Bosire, Samuel James Shaw upon Brandon McMillan served on 2/13/2020, answer due 3/5/2020. (jk) (Additional attachment(s) added on 3/17/2020: # 1 certified mail receipt) (jk). (Entered: 02/14/2020) |
| 02/18/2020 | 11 | SUMMONS RETURNED EXECUTED -- Certified Mail by Blaine Franklin Shaw, Joshua Bosire, Samuel James Shaw upon Herman Jones served on 2/13/2020, answer due 3/5/2020. (jk) (Additional attachment(s) added on 3/17/2020: # 1 certified mail receipt) (jk). (Entered: 02/18/2020) |
| 02/28/2020 | 12 | ENTRY OF APPEARANCE by Arthur S. Chalmers on behalf of Herman Jones (Chalmers, Arthur) (Entered: 02/28/2020) |
| 02/28/2020 | 13 | DESIGNATION OF PLACE OF TRIAL filed by Defendant Herman Jones - trial to be held in Wichita. (Chalmers, Arthur) (Entered: 02/28/2020) |
| 02/28/2020 | 14 | MOTION to Dismiss for Lack of Jurisdiction */ lack of standing* by Defendant Herman Jones (Chalmers, Arthur) (Entered: 02/28/2020) |
| 02/28/2020 | 15 | MEMORANDUM IN SUPPORT of 14 MOTION to Dismiss for Lack of Jurisdiction */ lack of standing* by Defendant Herman Jones(Chalmers, Arthur) (Entered: 02/28/2020) |
| 03/17/2020 | | DOCKET ANNOTATION: 6 , 9 , 10 , 11 certified mail receipts were provided by USMS and added to returns of service. (jk) (Entered: 03/17/2020) |

| 03/17/2020 | 16 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Status Conference set for 3/24/2020 at 10:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749, using ACCESS CODE 9686294. The parties/counsel should be prepared to discuss the status of this case, including service/answer issues. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 03/17/2020) |
|---|---|---|
| 03/20/2020 | 17 | MEMORANDUM IN OPPOSITION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re 14 MOTION to Dismiss for Lack of Jurisdiction / *lack of standing* (Greathouse, Leslie) (Entered: 03/20/2020) |
| 03/24/2020 | 18 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 3/24/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 03/24/2020) |
| 03/24/2020 | 19 | ORDER. On 3/24/20 the Court held a status conference. Plaintiffs appeared through counsel, Lauren Bonds, Leslie Greathouse, Patrick McInerney, and Zal Shroff. Defendant Herman Jones appeared through counsel, Arthur Chalmers. Individual trooper defendants Doug Schulte and Brandon McMillan did not appear, and Mr. Chalmers made clear he was not authorized to represent those Defendants. After discussion, the Court enters the following orders: For good cause shown, the Court extends the service period under Fed. R. Civ. P. 4(m) to 4/24/20. Counsel are ordered to confer regarding the issues surrounding service on Defendants Schulte and McMillan. In the event the parties cannot agree to acceptance of service, defense counsel is ordered to produce addresses for the individual defendants to Plaintiffs' counsel no later than 3/31/20. Plaintiffs' counsel is to address whether newly-added Plaintiff Joshua Bosire intends to proceed in forma pauperis or pay the filing fee and file any necessary documents. Additionally, Plaintiffs' counsel is to address whether they intend to pursue service on the individual troopers themselves, or whether they will rely upon the U.S. Marshal Service to do so. In any event, service should be completed no later than 4/24/20, and the Court will reconvene the parties for scheduling after the individual trooper defendants have responded to the Amended Complaint. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 3/24/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 03/24/2020) |
| 03/27/2020 | 20 | ENTRY OF APPEARANCE by Arthur S. Chalmers on behalf of Brandon McMillan, Doug Schulte (Chalmers, Arthur) (Entered: 03/27/2020) |
| 03/27/2020 | 21 | NOTICE OF SERVICE by Doug Schulte of Offers of Judgment (Chalmers, Arthur) (Entered: 03/27/2020) |
| 03/30/2020 | | FILING FEE PAID in the amount of $400, receipt number W4631021727. (mam) (Entered: 03/30/2020) |
| 04/01/2020 | 22 | MOTION to Dismiss *Punitive Damage Claims* by Defendants Brandon McMillan, Doug Schulte (Chalmers, Arthur) (Entered: 04/01/2020) |
| 04/01/2020 | 23 | MEMORANDUM IN SUPPORT of 22 MOTION to Dismiss *Punitive Damage Claims* by Defendants Brandon McMillan, Doug Schulte(Chalmers, Arthur) (Entered: 04/01/2020) |
| 04/03/2020 | 24 | REPLY TO RESPONSE TO MOTION by Defendant Herman Jones re: 14 MOTION to Dismiss for Lack of Jurisdiction / *lack of standing* (Attachments: # 1 Exhibit A Excepts from Complaint, # 2 Exhibit B Civil asset forfeiture in Kansas_ Law enforcement tool or highway robbery_)(Chalmers, Arthur) (Entered: 04/03/2020) |
| 04/08/2020 | 25 | ANSWER to 7 Amended Complaint, by Brandon McMillan.(Chalmers, Arthur) (Entered: 04/08/2020) |

| 04/08/2020 | 26 | DEMAND FOR TRIAL BY JURY by Brandon McMillan. (Chalmers, Arthur) (Entered: 04/08/2020) |
|---|---|---|
| 04/08/2020 | 27 | DESIGNATION OF PLACE OF TRIAL filed by Defendants Brandon McMillan, Doug Schulte - trial to be held in Wichita. (Chalmers, Arthur) (Entered: 04/08/2020) |
| 04/08/2020 | 28 | ANSWER to 7 Amended Complaint, by Doug Schulte.(Chalmers, Arthur) (Entered: 04/08/2020) |
| 04/08/2020 | 29 | DEMAND FOR TRIAL BY JURY by Doug Schulte. (Chalmers, Arthur) (Entered: 04/08/2020) |
| 04/10/2020 | 30 | MOTION to Strike *Settlement Offer* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Greathouse, Leslie) Modified on 4/14/2020 to remove referral information. (mam) (Entered: 04/10/2020) |
| 04/10/2020 | 31 | MEMORANDUM IN SUPPORT of 30 MOTION to Strike *Settlement Offer* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw(Greathouse, Leslie) (Entered: 04/10/2020) |
| 04/14/2020 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 30 MOTION to Strike *Settlement Offer*. The motion will be resolved by the District Judge.(adc)** (Entered: 04/14/2020) |
| 04/16/2020 | 32 | MEMORANDUM IN OPPOSITION by Defendant Doug Schulte re 30 MOTION to Strike *Settlement Offer by offers of judgment* (Chalmers, Arthur) (Entered: 04/16/2020) |
| 04/18/2020 | 33 | INITIAL ORDER REGARDING PLANNING AND SCHEDULING: Scheduling Conference set for 6/8/2020 at 10:00 AM by telephone before Magistrate Judge Gwynne E. Birzer. Participants shall dial into the conference call at 888-363-4749, enter access code 9686294#, and follow the prompts to join the call. Report of Parties Planning Conference and Rule 26 Initial Disclosures due 6/1/2020. Signed by Magistrate Judge Gwynne E. Birzer on 4/17/20. (ala) (Entered: 04/18/2020) |
| 04/22/2020 | 34 | RESPONSE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re 22 MOTION to Dismiss *Punitive Damage Claims* (Shroff, Zal) (Entered: 04/22/2020) |
| 04/30/2020 | 35 | REPLY TO RESPONSE TO MOTION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re: 30 MOTION to Strike *Settlement Offer* (Greathouse, Leslie) (Entered: 04/30/2020) |
| 05/01/2020 | 36 | MEMORANDUM AND ORDER overruling 14 Motion to Dismiss Defendant Herman Jones. Signed by District Judge Kathryn H. Vratil on 5/1/2020. (smc) (Entered: 05/01/2020) |
| 05/07/2020 | 37 | MEMORANDUM AND ORDER overruling 30 Motion to Strike Settlement Offer. Signed by District Judge Kathryn H. Vratil on 5/7/2020. (ydm) (Entered: 05/07/2020) |
| 05/07/2020 | 38 | MEMORANDUM AND ORDER overruling 22 Motion to Dismiss Punitive Damage Claims. Signed by District Judge Kathryn H. Vratil on 5/7/2020. (ydm) (Entered: 05/07/2020) |
| 05/07/2020 | 39 | ANSWER to 7 Amended Complaint, by Herman Jones.(Chalmers, Arthur) (Entered: 05/07/2020) |
| 05/29/2020 | 40 | NOTICE OF SERVICE by Herman Jones, Brandon McMillan, Doug Schulte of Initial Rule 26 Disclosures (Chalmers, Arthur) (Entered: 05/29/2020) |
| 06/01/2020 | 41 | NOTICE OF SERVICE by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of Plaintiffs' Rule 26 Initial Disclosures (Shroff, Zal) (Entered: 06/01/2020) |

| 06/05/2020 | 42 | NOTICE OF COURTROOM (METHOD) CHANGE. The Scheduling Conference set for Monday, 6/8/2020 at 10:00 a.m. will be held by Zoom video conference before Magistrate Judge Gwynne E. Birzer. Counsel will receive a Zoom invitation email prior to the conference. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 06/05/2020) |
|---|---|---|
| 06/08/2020 | 43 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: SCHEDULING CONFERENCE held on 6/8/2020. (Zoom recording in chambers file).) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 06/08/2020) |
| 06/08/2020 | 44 | PHASE I SCHEDULING ORDER: Mediation Notice Due 9/25/2020. Mediation Discovery deadline 10/30/2020. Mediation deadline 11/13/2020. Jury and Court Trial(s) set for 11/1/2021 at 09:00 AM in Wichita Courtroom (Unknown) before District Judge Kathryn H. Vratil. Estimated combined trial time 8-9 days. See order for additional deadlines. Signed by Magistrate Judge Gwynne E. Birzer on 6/8/20. (adc) (Entered: 06/08/2020) |
| 06/10/2020 | 45 | NOTICE OF SERVICE by Brandon McMillan, Doug Schulte of written discovery to plaintiffs (Chalmers, Arthur) (Entered: 06/10/2020) |
| 06/10/2020 | 46 | NOTICE OF SERVICE by Brandon McMillan, Doug Schulte of amended notice re written discovery from defs (Chalmers, Arthur) (Entered: 06/10/2020) |
| 06/10/2020 | 47 | NOTICE OF SERVICE by Herman Jones of written discovery to plaintiffs (Chalmers, Arthur) (Entered: 06/10/2020) |
| 06/15/2020 | 48 | NOTICE OF SERVICE by Herman Jones, Brandon McMillan, Doug Schulte of DOCUMENTS DESCRIBED IN DEFENDANTS' INITIAL RULE 26 DISCLOSURES (Chalmers, Arthur) (Entered: 06/15/2020) |
| 06/15/2020 | 49 | NOTICE OF SERVICE by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of Documents Described in Plaintiffs' Rule 26 Disclosures (Shroff, Zal) (Entered: 06/15/2020) |
| 06/15/2020 | 50 | (DISREGARD, wrong document attached.) -- AGREED PROTECTIVE ORDER. See order for details. Signed by Magistrate Judge Gwynne E. Birzer on 6/15/20. (adc) Modified on 6/15/2020, see 51 . (mam) (Entered: 06/15/2020) |
| 06/15/2020 | 51 | AGREED PROTECTIVE ORDER. See order for details. Signed by Magistrate Judge Gwynne E. Birzer on 6/15/20. (adc) (Entered: 06/15/2020) |
| 06/18/2020 | 52 | NOTICE OF SERVICE by Brandon McMillan, Doug Schulte of Rule 26(a)(1) Initial Disclosures (Chalmers, Arthur) (Entered: 06/18/2020) |
| 07/20/2020 | 53 | CERTIFICATE OF SERVICE of Discovery Responses by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 07/20/2020) |
| 08/03/2020 | 54 | NOTICE OF SERVICE by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of Plaintiffs' First Set of Written Discovery (Bonds, Lauren) (Entered: 08/03/2020) |
| 08/14/2020 | 55 | Unopposed MOTION for extension of time *to file motion to compel discovery* by Defendants Herman Jones, Brandon McMillan, Doug Schulte (referred to Magistrate Judge Gwynne E. Birzer) (Chalmers, Arthur) (Entered: 08/14/2020) |
| 08/17/2020 | 56 | ORDER granting 55 Defendants' Unopposed Motion for Extension of Time to File a motion to compel. Defendants' deadline to file a motion compel concerning the Plaintiffs' responses to the Defendants' written discovery is extended to August 26, 2020. Signed by |

| | | |
|---|---|---|
| | | Magistrate Judge Gwynne E. Birzer on 8/17/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 08/17/2020) |
| 08/20/2020 | 57 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Telephone Conference set for 8/21/2020 at 08:30 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. (adc) (Entered: 08/20/2020) |
| 08/21/2020 | 58 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: TELEPHONE CONFERENCE held on 8/21/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 08/21/2020) |
| 08/21/2020 | 59 | CERTIFICATE OF SERVICE of First Supplemental Responses and Privilege Log by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 08/21/2020) |
| 08/24/2020 | 60 | ORDER. A discovery conference was held on 8/21/2020. Plaintiffs appeared through counsel, Madison A. Perry, Leslie A. Greathouse, Lauren Bonds, and Sharon Brett (appearance not yet entered). Defendants appeared through counsel, Arthur S. Chalmers. After discussion with counsel regarding the discovery disputes, the Court ordered Plaintiffs to supplement their responses to Defendants' Interrogatory No. 9 no later than close of business on 8/21/20. In addition, the Court expects the parties to continue to confer regarding the other discovery disputes and anticipates production will occur pursuant to the discussions held during this conference. The parties are encouraged to continue to confer and work toward a meaningful mediation according to the previously-established deadlines (Phase I Scheduling Order, ECF No. 44.) IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 8/24/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 08/24/2020) |
| 08/27/2020 | 61 | CERTIFICATE OF SERVICE of First and Second Supplemental Responses by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 08/27/2020) |
| 09/01/2020 | 62 | NOTICE OF SERVICE by Herman Jones, Brandon McMillan, Doug Schulte of NOTICE OF SERVICE OF DEFENDANTS' RESPONSES TO WRITTEN DISCOVERY (Chalmers, Arthur) (Entered: 09/01/2020) |
| 09/01/2020 | 63 | NOTICE OF SERVICE by Herman Jones, Brandon McMillan, Doug Schulte of NOTICE OF SERVICE OF DOCUMENTS DESCRIBED IN DEFENDANTS' INITIAL RULE 26 DISCLOSURES (Chalmers, Arthur) (Entered: 09/01/2020) |
| 09/03/2020 | 64 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Telephone Conference regarding mediation set for 9/4/2020 at 9:00 AM before Magistrate Judge James P. O'Hara. All parties participating in this phone conference are directed to dial the conference center line 888-363-4749, using access code 8914911 to join the conference. (ss) (Entered: 09/03/2020) |
| 09/08/2020 | 65 | MOTION for attorney Sharon Brett to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC-5249583.) by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 ECF Registration Form)(Bonds, Lauren) (Entered: 09/08/2020) |
| 09/08/2020 | 66 | SETTLEMENT CONFERENCE ORDER: Settlement Conference set for 10/19/2020 at 09:00 AM in KC Courtroom 223 (JPO)before Magistrate Judge James P. O'Hara. Signed by Magistrate Judge James P. O'Hara on 9/8/2020. (ydm) (Entered: 09/08/2020) |

| 09/09/2020 | 67 | ORDER granting 65 Motion to Appear Pro Hac Vice of Sharon I. Brett for Joshua Bosire, Blaine Franklin Shaw, and Samuel James Shaw pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Gwynne E. Birzer on 9/9/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 09/09/2020) |
|---|---|---|
| 09/10/2020 | 68 | NOTICE by Defendants Brandon McMillan, Doug Schulte of taking deposition of Blaine Shaw on 10/02/2020 (Chalmers, Arthur) (Entered: 09/10/2020) |
| 09/10/2020 | 69 | NOTICE by Defendants Brandon McMillan, Doug Schulte of taking deposition of Joshua Shaw on 10/02/2020 (Chalmers, Arthur) (Entered: 09/10/2020) |
| 09/10/2020 | 70 | NOTICE by Defendants Brandon McMillan, Doug Schulte of taking deposition of Joshua Boshire on 09/28/2020 (Chalmers, Arthur) (Entered: 09/10/2020) |
| 09/25/2020 | 71 | JOINT MEDIATION NOTICE - Mediation to be held 10/19/2020 by Herman Jones, Brandon McMillan, Doug Schulte (Chalmers, Arthur) (Entered: 09/25/2020) |
| 09/30/2020 | 72 | CERTIFICATE OF SERVICE of Revised First Request for Production by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Bonds, Lauren) (Entered: 09/30/2020) |
| 10/14/2020 | 73 | NOTICE of Hearing: **THIS IS AN OFFICIAL NOTICE FOR THIS HEARING** (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 10/15/2020 at 10:00 AM by Telephone before Magistrate Judge James P. O'Hara. The parties will discuss logistics and the possible need to reschedule the mediation set 10/19/2020. All parties participating in this phone conference are directed to dial the conference center line 888-363-4749, using access code 8914911 to join the conference.(ss) (Entered: 10/14/2020) |
| 10/19/2020 | 74 | MINUTE ENTRY for proceedings held before Magistrate Judge James P. O'Hara: SETTLEMENT CONFERENCE held on 10/19/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 10/19/2020) |
| 10/19/2020 | 75 | MEDIATION MINUTE ORDER - As contemplated by the Phase I Scheduling Order filed by U.S. Magistrate Judge Gwynne E. Birzer on June 8, 2020 (ECF No. 44), the undersigned magistrate judge conducted a settlement conference today with the parties and counsel today in this putative class-action proceeding. No settlement was reached with regard to the three named plaintiffs' individual claims for damages, nor with regard to their request for declaratory and injunctive relief on a class-wide basis. The undersigned defers to Judge Birzer whether to require counsel to submit a proposed Phase II Scheduling Order or an updated Rule 26(f) report, but in any event assumes she will convene a status and scheduling conference in due course (see ECF No. 44 at 4). Signed by Magistrate Judge James P. O'Hara on 10/19/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(O'Hara, James) (Entered: 10/19/2020) |
| 10/19/2020 | 76 | ORDER SETTING STATUS CONFERENCE: Given the outcome of mediation in this matter, the completion of the Phase I order, and the pending issue of consolidation (see No. 20-1067-KHV, ECF No. 28), both matters are set for a Status Conference on 11/10/2020 at 09:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. Counsel must confer and submit a proposed schedule to govern the anticipated consolidated actions no later than 11/3/2020 to KSD_Birzer_Chambers@ksd.uscourts.gov. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 10/19/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 10/19/2020) |
| 11/09/2020 | 77 | NOTICE OF SERVICE by Herman Jones, Brandon McMillan, Doug Schulte of |

| | | |
|---|---|---|
| | | documents responsive to RFP (Chalmers, Arthur) (Entered: 11/09/2020) |
| 11/09/2020 | 78 | NOTICE OF SERVICE by Herman Jones, Brandon McMillan, Doug Schulte of NOTICE OF SERVICE OF SUPP DEFENDANTS RESPONSES TO WRITTEN DISCOVERY (Chalmers, Arthur) (Entered: 11/09/2020) |
| 11/09/2020 | 79 | CERTIFICATE OF SERVICE of First Supplemental Rule 26(a)(1) Initial Disclosures by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 11/09/2020) |
| 11/09/2020 | 80 | MOTION to Certify Class by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Greathouse, Leslie) (Entered: 11/09/2020) |
| 11/09/2020 | 81 | MEMORANDUM IN SUPPORT of 80 MOTION to Certify Class by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Attachments: # 1 Exhibit 1- Affidavit of Esmie Tseng, # 2 Exhibit 2-Declaration of Sharon Brett, # 3 Exhibit 3- Attorney Resumes)(Greathouse, Leslie) (Entered: 11/09/2020) |
| 11/10/2020 | 82 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 11/10/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 11/10/2020) |
| 11/10/2020 | 83 | PHASE II SCHEDULING ORDER: Class and merits Discovery deadline 7/1/2021. Proposed Pretrial Order due by 7/16/2021. Final Pretrial Conference set for 7/23/2021 at 11:00 AM before Magistrate Judge Gwynne E. Birzer by Telephone. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. Dispositive motion deadline 8/9/2021. Jury Trial set for 4/18/2022 at 09:00 AM in Wichita Courtroom (Unknown) before District Judge Kathryn H. Vratil. Estimated trial time 10 days. Signed by Magistrate Judge Gwynne E. Birzer on 11/10/20. (adc) (Entered: 11/10/2020) |
| 11/10/2020 | 84 | (VACATED per 378 ) -- ORDER OF CONSOLIDATION. Blaine Franklin Shaw, et al. v. Doug Schulte, et al., Case No. 6:19-cv-01343-KHV-GEB, and Mark Erich v. Herman Jones, 6:20-cv-01067-KHV-GEB, are consolidated for all purposes. Case No. 6:19-cv-01343-KHV-GEB shall be designated as the lead case and both cases shall follow the Phase II Scheduling Order and any following Scheduling Orders entered therein. All future non-dispositive filings shall be made in the lead case bearing a consolidated caption. Signed by Magistrate Judge Gwynne E. Birzer on 11/10/2020. (mam) Modified on 1/23/2023, see 378 . (mam) (Entered: 11/10/2020) |
| 11/19/2020 | 85 | UNOPPOSED MOTION for Extension of Time to File a Response as to 80 Motion for Class Certification by Defendant/Consol Defendant Herman Jones. (Chalmers, Arthur) Modified on 11/19/2020 to re-title and remove referral information. (mam) (Entered: 11/19/2020) |
| 11/19/2020 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 85 Unopposed MOTION for extension of time Unopposed MOTION for Extension of Time to File response as to 80 MOTION to Certify Class . The motion will be resolved by the District Judge.(adc)** (Entered: 11/19/2020) |
| 11/23/2020 | 86 | ORDER **sustaining**, for substantially the reasons stated in the motion, 85 Unopposed Motion For Extension. On or before December 7, 2020, defendant Herman Jones shall file a response to 80 Plaintiffs' Motion For Class Certification. Signed by District Judge Kathryn H. Vratil on 11/23/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 11/23/2020) |
| 11/25/2020 | 87 | CERTIFICATE OF SERVICE of Plaintiff's Second Set of IROGs and Third set of RFP to Defs. Schulte, McMillian and Jones by Joshua Bosire, Blaine Franklin Shaw, Samuel |

| | | |
|---|---|---|
| | | James Shaw (Perry, Madison) (Entered: 11/25/2020) |
| 12/07/2020 | 88 | RESPONSE by Defendant Herman Jones, Consol Defendant Herman Jones re 80 Motion to Certify Class (Attachments: # 1 Affidavit 1 DECLARATION OF ARTHUR CHALMERS, # 2 Exhibit 2 Shaw Interrog answers, # 3 Exhibit 3 Shaw RFP responses) (Chalmers, Arthur) (Entered: 12/07/2020) |
| 12/09/2020 | 89 | Unopposed MOTION for extension of time *To File Motion To Compel* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (referred to Magistrate Judge Gwynne E. Birzer) (Perry, Madison) (Entered: 12/09/2020) |
| 12/11/2020 | 90 | ORDER granting 89 Plaintiffs' Unopposed Motion for Extension of Time to File Motion to Compel. Plaintiffs shall file any Motion to Compel discovery with respect to Defendants' Responses to Plaintiffs' requests for production servedNovember 9, 2020, including their amended privilege log, as well as issues addressed in Plaintiffs' golden rule letter to Defendants dated December 4, 2020, on or before December 23, 2020. Signed by Magistrate Judge Gwynne E. Birzer on 12/11/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 12/11/2020) |
| 12/21/2020 | 91 | ORDER. A Discovery Hearing is set for 1/12/2021 11:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. Plaintiffs' motion to compel deadline set by prior order 90 is extended until further discussion is held at this conference. The parties' position statements regarding the discovery dispute are due by email to the undersigned no later than 5 p.m. on 1/8/2021. The parties are encouraged to continue to confer regarding these issues. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 12/21/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 12/21/2020) |
| 12/21/2020 | 92 | MEMORANDUM IN SUPPORT of 80 MOTION to Certify Class by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Attachments: # 1 Exhibit A-Declaration of Sharon Brett)(Greathouse, Leslie) (Entered: 12/21/2020) |
| 12/21/2020 | 93 | REPLY MEMORANDUM OF LAW IN SUPPORT OFPLAINTIFFS' MOTION FOR CLASS CERTIFICATION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re: 80 Motion to Certify Class. (This is a duplicate of de 92 and has been refiled with the correct event to satisfy the Reply deadline.) (sz) (Entered: 12/22/2020) |
| 12/28/2020 | 94 | NOTICE OF SERVICE by Herman Jones, Brandon McMillan, Doug Schulte of Defendants' Responses to Written Discovery (Chalmers, Arthur) (Entered: 12/28/2020) |
| 12/30/2020 | 95 | NOTICE OF SERVICE by Herman Jones, Herman Jones, Brandon McMillan, Doug Schulte of documents (Chalmers, Arthur) (Entered: 12/30/2020) |
| 12/30/2020 | 96 | MOTION to Compel *Rule 26(a)(1)(iii) disclosures* by Defendants Brandon McMillan, Doug Schulte (referred to Magistrate Judge Gwynne E. Birzer) (Chalmers, Arthur) (Entered: 12/30/2020) |
| 12/30/2020 | 97 | NOTICE OF SERVICE by Herman Jones, Herman Jones, Brandon McMillan, Doug Schulte of amended notice of service of documents (Chalmers, Arthur) (Entered: 12/30/2020) |
| 12/30/2020 | 98 | NOTICE OF SERVICE by Herman Jones, Herman Jones, Brandon McMillan, Doug Schulte of supp and amended answers to interrogs (Chalmers, Arthur) (Entered: 12/30/2020) |
| 01/05/2021 | 99 | CERTIFICATE OF SERVICE of Second Supplemental Rule 26(a)(1) Initial Disclosures by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: |

| | | |
|---|---|---|
| | | 01/05/2021) |
| 01/08/2021 | 100 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Lauren Bonds & Zal Shroff as to All Plaintiffs (Bonds, Lauren) (Entered: 01/08/2021) |
| 01/08/2021 | 101 | RESPONSE by Defendants Brandon McMillan, Doug Schulte re 96 Motion to Compel *notice of withdrawal of motion* (Chalmers, Arthur) (Entered: 01/08/2021) |
| 01/08/2021 | 102 | ORDER finding as moot 96 Motion to Compel in light of the Notice of Withdrawal (ECF No. 101 ). Signed by Magistrate Judge Gwynne E. Birzer on 1/8/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 01/08/2021) |
| 01/12/2021 | 103 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: DISCOVERY HEARING held on 1/12/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 01/12/2021) |
| 01/12/2021 | 104 | ORDER. At the parties' request, an informal discovery conference was held on 1/12/21. Plaintiffs appeared through counsel, Sharon Brett, Madison A. Perry, Leslie A. Greathouse, and Patrick McInerney. Also appearing were Plaintiff Joshua Bosire and Spencer Fane's IT consultant, Andreas Mueller. Defendants appeared through counsel, Arthur S. Chalmers. After discussion regarding the discovery disputes, the Court ordered the parties' IT consultants to continue to confer, specifically regarding the capabilities of searching the KHP's records management system, and counsel should continue to confer regarding a search "test" to further investigate said search capabilities. Such conference and search testing is necessary for the Court to reasonably determine the proportionality of the searches Plaintiffs wish to conduct. Plaintiffs are encouraged to narrow their search terms to assist in this endeavor. Additionally, Defendants are ordered to produce the first item listed on their Amended Privilege Log, which is being withheld solely on the basis of the "deliberative process privilege", for in camera review and the Court's determination of the applicability of the asserted privilege. In the event the parties find the current schedule does not allow for the ESI searches to conclude within the current deadlines, counsel are encouraged to confer and submit any agreed revisions to the schedule as necessary pursuant to the discussions held during the conference. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 1/12/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 01/12/2021) |
| 01/13/2021 | 105 | NOTICE OF SERVICE by Herman Jones, Herman Jones, Brandon McMillan, Doug Schulte of delivery of documents and video (Chalmers, Arthur) (Entered: 01/13/2021) |
| 01/21/2021 | 106 | NOTICE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of taking deposition of Brandon McMillan on 02/17/2021 (McInerney, Patrick) (Entered: 01/21/2021) |
| 01/21/2021 | 107 | NOTICE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of taking deposition of Doug Schulte on 02/19/2021 (McInerney, Patrick) (Entered: 01/21/2021) |
| 01/27/2021 | 108 | NOTICE OF INTENT TO ISSUE SUBPOENA by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw Subpoena to be issued to: County Sheriff's Offices (Attachments: # 1 Exhibit Subpoenas)(Perry, Madison) (Entered: 01/27/2021) |
| 01/27/2021 | 109 | Unopposed MOTION for extension of time *to File Motion to Compel* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (referred to Magistrate Judge Gwynne E. Birzer) (Perry, Madison) (Entered: 01/27/2021) |
| 01/27/2021 | 110 | ORDER granting 109 Unopposed Motion for Extension of Time to File Motion to Compel. Plaintiffs shall file a Motion to Compel regarding Defendants' Responses to |

| | | |
|---|---|---|
| | | Plaintiffs' Second Set of Interrogatories, Defendants' Responses to Plaintiffs' Third Request for Production, and Defendants' Amended Supplemental Responses to First Set of Interrogatories on or before 2/12/2021. Signed by Magistrate Judge Gwynne E. Birzer on 1/27/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 01/27/2021) |
| 02/15/2021 | 111 | Second Unopposed MOTION for extension of time *to File Motion to Compel* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (referred to Magistrate Judge Gwynne E. Birzer) (Perry, Madison) Modified title on 2/16/2021 (ctv). (Entered: 02/15/2021) |
| 02/18/2021 | 112 | ORDER granting 111 Plaintiffs Second Unopposed Motion for Extension of Time to File. Plaintiffs are granted an extension of time up to and including March 15, 2021 to file a Motion to Compel regarding Defendants' Responses to Plaintiffs' Second Set of Interrogatories, Defendants' Responses to Plaintiffs' Third Request for Production, and Defendants' Amended Supplemental Responses to First Set of Interrogatories. Signed by Magistrate Judge Gwynne E. Birzer on 2/18/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 02/18/2021) |
| 02/18/2021 | 113 | NOTICE OF SERVICE by Herman Jones, Herman Jones of Written Discovery to Erich Plaintiffs (Chalmers, Arthur) (Entered: 02/18/2021) |
| 02/18/2021 | 114 | NOTICE OF SERVICE by Herman Jones, Herman Jones, Brandon McMillan, Doug Schulte of delivery of documents and video (Chalmers, Arthur) (Entered: 02/18/2021) |
| 02/19/2021 | 115 | CERTIFICATE OF SERVICE of Production Thirdparty000001-Thirdparty000262 by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 02/19/2021) |
| 02/26/2021 | 116 | NOTICE OF INTENT TO ISSUE SUBPOENA by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw Subpoena to be issued to: Midwest HIDTA (Attachments: # 1 Exhibit Subpoena to HIDTA)(Perry, Madison) (Entered: 02/26/2021) |
| 02/26/2021 | 117 | NOTICE OF INTENT TO ISSUE SUBPOENA by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw Subpoena to be issued to: Global Software Corporation (Attachments: # 1 Exhibit Subpoena to Global Software Corporation)(Perry, Madison) (Entered: 02/26/2021) |
| 03/01/2021 | 118 | NOTICE OF SERVICE by Brandon McMillan, Doug Schulte of 2d RFPs to Shaw plaintiffs (Chalmers, Arthur) (Entered: 03/01/2021) |
| 03/01/2021 | 119 | NOTICE OF SERVICE by Herman Jones, Herman Jones of response to informal interrog (Chalmers, Arthur) (Entered: 03/01/2021) |
| 03/02/2021 | 120 | NOTICE OF INTENT TO ISSUE AMENDED SUBPOENA by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw Subpoena to be issued to: Global Software Corporation (Attachments: # 1 Exhibit Amended Subpoena to Global Software Corporation)(Perry, Madison) Modified document title on 3/3/2021 (ctv). (Entered: 03/02/2021) |
| 03/04/2021 | 121 | NOTICE OF INTENT TO ISSUE SUBPOENA by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw Subpoena to be issued to: DEA-HIDTA Program (Attachments: # 1 Exhibit DEA- HIDTA Program)(Perry, Madison) (Entered: 03/04/2021) |
| 03/04/2021 | 122 | CERTIFICATE OF SERVICE of Third Supplemental Initial Disclosures by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 03/04/2021) |

| 03/08/2021 | 123 | CERTIFICATE OF SERVICE of fourth Request for Production to all Defendants by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 03/08/2021) |
|---|---|---|
| 03/11/2021 | 124 | NOTICE OF SERVICE by Herman Jones, Herman Jones of second interrog and requests for production to all plaintiffs (Chalmers, Arthur) (Entered: 03/11/2021) |
| 03/15/2021 | 125 | Third Unopposed MOTION for extension of time *to File Motion to Compel* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (referred to Magistrate Judge Gwynne E. Birzer) (Perry, Madison) Modified document title on 3/16/2021 (ctv). (Entered: 03/15/2021) |
| 03/17/2021 | 126 | ORDER granting 125 Third Unopposed Motion for Extension of Time to File Motion to Compel. Plaintiffs are granted an extension of time up to and including April 15, 2021 to file a Motion to Compel regarding Defendants' Responses to Plaintiffs' Second Set of Interrogatories, Defendants' Responses to Plaintiffs' Third Request for Production, and Defendants' Amended Supplemental Responses to First Set of Interrogatories. Signed by Magistrate Judge Gwynne E. Birzer on 3/17/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 03/17/2021) |
| 03/17/2021 | 127 | NOTICE OF SERVICE by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of Subpoena to Produce Documents, Information, or Objections or to Permit Inspection of Premises *to Midwest HIDTA* (Perry, Madison) (Entered: 03/17/2021) |
| 03/19/2021 | 128 | NOTICE OF INTENT TO ISSUE SECOND AMENDED SUBPOENA by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw Subpoena to be issued to: Global Software Corporation (Attachments: # 1 Ex Deposition Subpoena, # 2 Ex A to Deposition Subpoena)(Perry, Madison) Modified document title on 3/22/2021 (ctv). (Entered: 03/19/2021) |
| 03/19/2021 | 129 | MOTION for Hearing re 83 Scheduling Order by Plaintiffs Joshua Bosire, Blaine Franklin Shaw. (referred to Magistrate Judge Gwynne E. Birzer) (Greathouse, Leslie) (Entered: 03/19/2021) |
| 03/19/2021 | 130 | ORDER granting 129 Plaintiff's unopposed Request for a Scheduling Conference. Deadlines in this matter are stayed. A Status Conference to discuss further scheduling is set for 4/7/2021 at 10:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. No later than 48 hours prior to said conference, the parties should submit a joint statement of the status of discovery and suggested deadlines to govern this matter. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 3/19/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 03/19/2021) |
| 03/22/2021 | 131 | NOTICE of RESCHEDULED Hearing. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference RESET for 4/9/2021 at 11:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. (adc) (Entered: 03/22/2021) |
| 03/29/2021 | 132 | NOTICE OF SERVICE by Herman Jones, Herman Jones of Supplemental answers to informal interrogatories (Chalmers, Arthur) (Entered: 03/29/2021) |
| 04/05/2021 | 133 | NOTICE OF SERVICE by Herman Jones, Herman Jones, Brandon McMillan, Doug Schulte of response to 4th RFP (Chalmers, Arthur) (Entered: 04/05/2021) |
| 04/09/2021 | 134 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 4/9/2021. (This is a TEXT ENTRY ONLY. There is |

| | | |
|---|---|---|
| | | no.pdf document associated with this entry.) (adc) (Entered: 04/09/2021) |
| 04/12/2021 | 135 | ORDER on conference and REVISED SCHEDULING ORDER: On 4/9/21 the Court held a status conference. Plaintiffs appeared through counsel, Madison Perry, Leslie Greathouse, Patrick McInerney, and Sharon Brett. Defendants appeared through counsel, Arthur Chalmers. On review of the parties' proposed revised schedule, discussion with the parties, and review of the docket, the following orders were entered. Upon in camera review of the document withheld by Defendants on the basis of the "deliberative process privilege," Plaintiffs are ordered to file any motion to compel the document by 5/20/21; Defendants will have the statutory response time. No replies are necessary, as the Court will set the issue for oral argument following briefing. As for Plaintiffs' deadline to file any motion to compel regarding Defendant KHP's pending ESI issues (see ECF No. 126), the Court postpones that deadline indefinitely pending the outcome of the parties' continued conferral efforts, particularly in light of the recent deposition of the Global Systems representative. Any motion to amend the complaint to add a proposed class representative is due 5/20/21. The schedule is modified as follows: Status Conference set for 7/14/2021 at 11:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. Plaintiffs' expert disclosure deadline is set for 9/17/21; Defendants' expert disclosures due 11/19/21; any rebuttal disclosures are due 12/3/21. Merits and class discovery close 12/31/2021. Proposed Pretrial Order due by 1/7/2022. Final Pretrial Conference set for 1/13/2022 at 10:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer unless issues with the pretrial order require an in-person conference. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. Dispositive motion and Daubert motion deadline reset to 1/28/2022. Jury Trial reset for 9/6/2022 at 09:00 AM in Wichita before District Judge Kathryn H. Vratil. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 4/9/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 04/12/2021) |
| 04/13/2021 | 136 | CERTIFICATE OF SERVICE of Discovery Responses *to Defendant Herman Jones* by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 04/13/2021) |
| 04/15/2021 | 137 | NOTICE OF SERVICE by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of documents responsive to Defendant Jones' Second Set of Request for Production (Perry, Madison) (Entered: 04/15/2021) |
| 04/15/2021 | 138 | NOTICE OF SERVICE by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of Subpoena to Testify at Deposition on Global Software Corporation (Perry, Madison) (Entered: 04/15/2021) |
| 04/23/2021 | 139 | MOTION for Summary Judgment *against the Shaws' claims* by Defendant Doug Schulte (Chalmers, Arthur) (Entered: 04/23/2021) |
| 04/23/2021 | 140 | MEMORANDUM IN SUPPORT of 139 MOTION for Summary Judgment *against the Shaws' claims* by Defendant Doug Schulte (Attachments: # 1 Exhibit List, # 2 Exhibit Schulte Declaration, # 3 Exhibit B. Shaw Dep Excerpts, # 4 Exhibit S. Shaw Dep Excerpts, # 5 Exhibit - Redacted Report, OAG02-03, # 6 Exhibit copy of phot, P07) (Chalmers, Arthur) (Entered: 04/23/2021) |
| 04/23/2021 | 141 | MOTION for Leave to file to file certain SJ exhibits conventionally by Defendant Doug Schulte. (Chalmers, Arthur) (Entered: 04/23/2021) |
| 04/23/2021 | 142 | (DISREGARD ENTRY - DUPLICATE FILING OF DOC 139) MOTION for Summary Judgment *against Bosire's claim* by Defendants Brandon McMillan, Doug Schulte |

| | | |
|---|---|---|
| | | (Chalmers, Arthur) Modified on 4/26/2021 to block from public view (ctv). (Entered: 04/23/2021) |
| 04/23/2021 | 143 | MOTION for Summary Judgment *against Bosire's claim* by Defendants Brandon McMillan, Doug Schulte (Chalmers, Arthur) (Entered: 04/23/2021) |
| 04/23/2021 | 144 | MEMORANDUM IN SUPPORT of 143 MOTION for Summary Judgment *against Bosire's claim* by Defendants Brandon McMillan, Doug Schulte (Attachments: # 1 Exhibit List, # 2 Exhibit McMillan Declaration, # 3 Exhibit Schulte Declaration, # 4 Exhibit - Redacted Warning ticket, # 5 Exhibit Bosire Depo Excerpts)(Chalmers, Arthur) (Entered: 04/23/2021) |
| 04/23/2021 | 145 | MOTION for Leave to file 2a 2b and 4, MOTION FOR LEAVE to File 2a 2b and 4 Conventionally (Response deadline 5/7/2021) by Defendants Brandon McMillan, Doug Schulte. (Chalmers, Arthur) (Entered: 04/23/2021) |
| 04/23/2021 | 146 | SEALED MOTION for Leave to File Under Seal by Defendants Brandon McMillan, Doug Schulte. (Chalmers, Arthur) (Entered: 04/23/2021) |
| 04/23/2021 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 141 MOTION for Leave to file to file certain SJ exhibits conventionally , 145 MOTION for Leave to file 2a 2b and 4 MOTION FOR LEAVE to File 2a 2b and 4 Conventionally , 146 SEALED MOTION for Leave to File Under Seal . The motions relate to dispositive motions and will be resolved by the District Judge.(adc)** (Entered: 04/23/2021) |
| 04/23/2021 | | DOCKET ANNOTATION: PLEASE DISREGARD 142 - FILED IN ERROR; ATTACHED PDF IS A DUPLICATE OF DOC 139. (ctv) Modified on 4/26/2021 to add language (ctv). (Entered: 04/26/2021) |
| 04/27/2021 | 147 | Unopposed MOTION for Extension of Time to File Response as to 139 MOTION for Summary Judgment *against the Shaws' claims*, 143 MOTION for Summary Judgment *against Bosire's claim* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 04/27/2021) |
| 04/27/2021 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 147 Unopposed MOTION for Extension of Time to File Response as to 139 MOTION for Summary Judgment *against the Shaws' claims*, 143 MOTION for Summary Judgment *against Bosire's claim* . The motion will be resolved by the District Judge.(ala)** (Entered: 04/27/2021) |
| 05/04/2021 | 148 | ORDER **sustaining**, for substantially the reasons stated in the motion, 141 Motion For Leave To File Audio/Video Files Conventionally. Defendant Schulte shall be permitted to conventionally file a disk or disks that contain three data files, which are identified as Exhibits 2a, 2b & 4 for the purpose of the defendant's motion for summary judgment. Signed by District Judge Kathryn H. Vratil on 5/4/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 05/04/2021) |
| 05/04/2021 | 149 | ORDER **sustaining**, for substantially the reasons stated in the motion, 145 Motion For Leave To File Audio/Video Files Conventionally. Defendants McMillian and Schulte shall be permitted to conventionally file a disk or disks that contain three data files, which are identified as Exhibits 4, 6 & 7 for the purpose of these defendants' motion for summary judgment. Signed by District Judge Kathryn H. Vratil on 5/4/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 05/04/2021) |
| 05/04/2021 | 150 | ORDER **sustaining**, for substantially the reasons stated in the motion, 147 Unopposed Motion For Extension Of Time To File Response To Motions For Summary Judgment. On or before June 4, 2021, plaintiffs shall file their responses to 139 Defendant Schulte's |

| | | |
|---|---|---|
| | | Motion for Summary Judgment and 143 Defendants McMillian and Schulte's Motion for Summary Judgment. Signed by District Judge Kathryn H. Vratil on 5/4/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 05/04/2021) |
| 05/04/2021 | 151 | NOTICE of Hearing. <span style="color:red">THIS IS AN OFFICIAL NOTICE FOR THIS HEARING.</span> Hearing on 80 Plaintiffs' Motion For Class Certification is set for 5/13/2021 at 10:00 AM in KC Courtroom 440 (JWL/KHV) before District Judge Kathryn H. Vratil. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 05/04/2021) |
| 05/05/2021 | 152 | MEMORANDUM AND ORDER sustaining in part and overruling in part 146 Motion for Leave to File Under Seal. Defendant shall be permitted to conventionally file a disk or disks that contain three data files, which are identified as Exhibits 2a, 2b and 4 for the purpose of defendant's motion for summary judgment. Defendant's motion is otherwise OVERRULED. Signed by District Judge Kathryn H. Vratil on 5/5/2021. (kas) Modified on 5/6/2021 to correct docket text per KHV chambers(kas). (Entered: 05/05/2021) |
| 05/07/2021 | 153 | Unopposed MOTION to Continue hearing on Plaintiffs' Motion for Class Certification by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Greathouse, Leslie) (Entered: 05/07/2021) |
| 05/07/2021 | | <span style="color:purple">**MOTION REFERRAL to Magistrate Judge REMOVED as to: 153 Unopposed MOTION to Continue hearing on Plaintiffs' Motion for Class Certification . The motion will be resolved by the District Judge.**</span>(adc) (Entered: 05/07/2021) |
| 05/10/2021 | 154 | MEMORANDUM IN SUPPORT of 80 MOTION to Certify Class by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Attachments: # 1 Exhibit B- Ms. Tseng's Supplemental Declaration, # 2 Exhibit C- Deposition of McMillan, # 3 Exhibit D- Deposition of Schulte, # 4 Exhibit E- Declaration of Chief Hassan Aden)(Greathouse, Leslie) (Entered: 05/10/2021) |
| 05/11/2021 | 155 | NOTICE OF CANCELLED HEARING: Hearing on 80 Plaintiffs' Motion For Class Certification previously set for 5/13/2021 at 10:00 AM before District Judge Kathryn H. Vratil is **cancelled** due to the unavailability of plaintiffs' counsel. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 05/11/2021) |
| 05/13/2021 | 156 | MOTION for attorney Joshua Pierson to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC-5486799.) by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 ECF Registration Form)(Brett, Sharon) (Entered: 05/13/2021) |
| 05/13/2021 | 157 | ORDER granting 156 Motion to Appear Pro Hac Vice of Joshua M. Pierson for Plaintiffs Joshua Bosire, Blaine Franklin Shaw, and Samuel James Shaw pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Gwynne E. Birzer on 5/13/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 05/13/2021) |
| 05/13/2021 | 158 | ORDER **sustaining** 153 Unopposed Request To Continue Hearing On Plaintiffs' Motion For Class Certification. Hearing on 80 Plaintiffs' Motion For Class Certification previously set for 5/13/2021 at 10:00 AM was cancelled as stated in a previous notice. A new hearing date will be set a later date if deemed appropriate. Signed by District Judge Kathryn H. Vratil on 5/13/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 05/13/2021) |
| 05/13/2021 | 159 | ORDER TO SHOW CAUSE. In light of the cancellation of Hearing on Plaintiffs' Motion For Class Certification due to the unavailability of plaintiffs' counsel, the Court orders |

| | | |
|---|---|---|
| | | that the parties show cause in writing by <u>May 20, 2021</u>, why class certification is necessary if all putative class members would benefit from an injunction and the injunction would save money. Signed by District Judge Kathryn H. Vratil on 5/13/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(as) (Entered: 05/13/2021) |
| 05/14/2021 | 160 | NOTICE of Telephone Conference: <span style="color:red">THIS IS AN OFFICIAL NOTICE FOR THIS HEARING</span> (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Discovery conference set for <u>5/17/2021 02:00 PM</u> by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. (adc) (Entered: 05/14/2021) |
| 05/17/2021 | 161 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: DISCOVERY HEARING held on 5/17/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 05/17/2021) |
| 05/17/2021 | 162 | ORDER. On 5/17/20 the Court held a discovery conference. Plaintiffs appeared through counsel, Sharon Brett, Joshua M. Pierson, Madison Perry, and Leslie Greathouse. Defendants appeared through counsel, Arthur Chalmers. After discussion, the Court enters the following orders: For good cause shown, the Court permits Plaintiffs the opportunity to modify the existing Protective Order (ECF No. 51) to include the redaction, in public filings, of certain non-party witnesses' full names. Within 10 days, Plaintiffs' counsel is to prepare redacted supplemental Rule 26(a)(1) disclosures, and/or one using pseudonyms, for Defendants' possible use in later Court filings. Also within 10 days, the parties are to confer and Plaintiffs' counsel must submit a revised proposed Protective Order to the undersigned for review in accordance with the discussions held at the conference. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 5/17/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 05/17/2021) |
| 05/19/2021 | <u>163</u> | CONVENTIONALLY FILED EXHIBITS 2a, 2b, and 4 IN SUPPORT of <u>139</u> Motion for Summary Judgment received in the clerk's office on 5/19/2021 (2 flash drives total). Exhibits 2a, 2b, and 4 were filed conventionally per 148 . Chambers copy forwarded to District Judge Kathryn H. Vratil and the original will be stored in the Wichita clerk's office. (jk) (Entered: 05/19/2021) |
| 05/19/2021 | <u>164</u> | CONVENTIONALLY FILED EXHIBITS 4, 6, and 7 IN SUPPORT of <u>143</u> Motion for Summary Judgment received in the clerk's office on 5/19/2021 (2 flash drives total). Exhibits 4, 6, and 7 were filed conventionally per 149 . Chambers copy forwarded to District Judge Kathryn H. Vratil and the original will be stored in the Wichita clerk's office. (jk) (Entered: 05/19/2021) |
| 05/20/2021 | <u>165</u> | RESPONSE to 159 Order to Show Cause by Plaintiffs Samuel James Shaw, Blaine Franklin Shaw, Joshua Bosire(Greathouse, Leslie) (Entered: 05/20/2021) |
| 05/20/2021 | <u>166</u> | RESPONSE to 159 Order to Show Cause by Defendant Herman Jones, Consol Defendant Herman Jones(Chalmers, Arthur) (Entered: 05/20/2021) |
| 05/20/2021 | <u>167</u> | MOTION to Compel *Documents Withheld Based on the Deliberative Process Privilege and Memorandum in Support* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4, # <u>5</u> Exhibit 5)(Perry, Madison) (Entered: 05/20/2021) |
| 05/20/2021 | <u>168</u> | MOTION to Strike <u>154</u> Memorandum in Support of Motion, *doc 154 suppl memo* by Defendant Herman Jones, Consol Defendant Herman Jones. (Chalmers, Arthur) (Entered: 05/20/2021) |

| 05/20/2021 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 168 MOTION to Strike 154 Memorandum in Support of Motion, *doc 154 suppl memo*. The motion will be resolved by the District Judge.(adc)** (Entered: 05/20/2021) |
|---|---|---|
| 05/20/2021 | 169 | AMENDED PROTECTIVE ORDER. Signed by Magistrate Judge Gwynne E. Birzer on 5/20/21. (adc) (Entered: 05/20/2021) |
| 05/28/2021 | 170 | RESPONSE by Defendants Herman Jones, Brandon McMillan, Doug Schulte, Consol Defendant Herman Jones re 167 Motion to Compel, *production of privileged document* (Attachments: # 1 Exhibit excerpt of RFP answers, # 2 Exhibit initial privilege log, # 3 Exhibit KHP policy ADM-07)(Chalmers, Arthur) (Entered: 05/28/2021) |
| 05/28/2021 | 171 | EXHIBIT(S) IN SUPPORT of 143 MOTION for Summary Judgment *against Bosire's claim* by Defendants Brandon McMillan, Doug Schulte *Substituted Ex 2 Schulte declaration re Bosire stop* (Chalmers, Arthur) (Entered: 05/28/2021) |
| 05/28/2021 | 172 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. The Status conference already scheduled on the same date will also proceed as a Motion Hearing set for 7/14/2021 at 11:00 AM by Zoom Video Conference before Magistrate Judge Gwynne E. Birzer. The parties should be prepared to discuss the status of discovery as well as present oral argument on the 167 MOTION to Compel *Documents Withheld Based on the Deliberative Process Privilege and Memorandum in Support.* (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 05/28/2021) |
| 06/01/2021 | 173 | Second MOTION for Extension of Time to File Response as to 143 MOTION for Summary Judgment *against Bosire's claim* by Plaintiff Joshua Bosire. (Perry, Madison) (Entered: 06/01/2021) |
| 06/01/2021 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 173 Second MOTION for Extension of Time to File Response as to 143 MOTION for Summary Judgment *against Bosire's claim* . The motion will be resolved by the District Judge. (adc)** (Entered: 06/01/2021) |
| 06/02/2021 | 174 | RESPONSE by Defendants Brandon McMillan, Doug Schulte re 173 Motion for Extension of Time to File Response/Reply *in opposition to motion* (Chalmers, Arthur) (Entered: 06/02/2021) |
| 06/02/2021 | 175 | REPLY TO RESPONSE TO MOTION by Plaintiff Joshua Bosire re: 173 Motion for Extension of Time to File Response/Reply (Perry, Madison) (Entered: 06/02/2021) |
| 06/04/2021 | 176 | SEALED MOTION for Leave to File Under Seal *and conventionally* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Attachments: # 1 Exhibit 8 to Shaw Opposition- CAD Report, # 2 Exhibit 9 to Shaw Opposition- KHP Training Transforming Temporary Detention into Consensual Encounter, # 3 Exhibit 10 to Shaw Opposition- KHP Criminal Interdiction Training Excerpt, # 4 Exhibit 11 to Shaw Opposition- KHP Training, # 5 Exhibit 14 to Shaw Opposition- KHP Arrest Training, # 6 Exhibit 11 to Bosire Opposition- KHP Training, # 7 Exhibit 12 to Bosire Opposition- KHP Training Domestic Highway)(Perry, Madison) (Entered: 06/04/2021) |
| 06/04/2021 | 177 | MEMORANDUM IN OPPOSITION by Plaintiffs Blaine Franklin Shaw, Samuel James Shaw re 139 MOTION for Summary Judgment *against the Shaws' claims* (Attachments: # 1 Exhibit 1- Shaw Dash Camera Video Under Seal, # 2 Exhibit 2- Blaine Shaw Affidavit, # 3 Exhibit 3- Samuel Shaw Deposition, # 4 Exhibit 4- Blaine Shaw Deposition, # 5 Exhibit 5- Samuel Shaw Affidavit, # 6 Exhibit 6- Blaine Shaw Camera Video filed under seal, # 7 Exhibit 7- Schulte Deposition, # 8 Exhibit 8- CAD Report filed under seal, # 9 Exhibit 9- KHP Training Excerpt Transforming Temporary Detention into Consensual Encounter filed under seal, # 10 Exhibit 10- KHP Criminal Interdiction |

| | | |
|---|---|---|
| | | Training Excerpt filed under seal, # [11] Exhibit 11- KHP Training Excerpts filed under seal, # [12] Exhibit 12- What to Do if You are Stopped, # [13] Exhibit 13- Trooper McMillan Deposition, # [14] Exhibit 14- KHP Arrest Training Excerpt filed under seal, # [15] Exhibit 15- Rule 56(d) Declaration, # [16] Exhibit List Exhibit Index)(Perry, Madison) (Entered: 06/04/2021) |
| 06/04/2021 | [178] | MEMORANDUM IN OPPOSITION by Plaintiff Joshua Bosire re [143] MOTION for Summary Judgment *against Bosire's claim* (Attachments: # [1] Exhibit 1- Bosire Deposition, # [2] Exhibit 2- McMillan Deposition, # [3] Exhibit 3- McMillan PSU Statement, # [4] Exhibit 4- Bosire Affidavit, # [5] Exhibit 5- Bosire Dash Camera Video, # [6] Exhibit 6- Schulte Deposition, # [7] Exhibit 7- PSU Closing Letter to McMillan, # [8] Exhibit 8- Video from Loves, # [9] Exhibit 9- PSU Findings Letter to Bosire, # [10] Exhibit 10- Captain Vanderweide Email, # [11] Exhibit 11- KHP Training, # [12] Exhibit 12- KHP Training, Domestic Highway Enforcement, # [13] Exhibit 13- Rule 56 (d) Affidavit, # [14] Exhibit List Exhibit Index)(Perry, Madison) (Entered: 06/04/2021) |
| 06/07/2021 | 179 | ORDER TO SHOW CAUSE. Plaintiffs are hereby directed to show good cause in writing, on or before 5:00 PM on June 11, 2021 why, based on defendant's Response To Court's Show Cause Order Concerning Class Certification (Doc. #166) filed May 20, 2021, the Court should not overrule as moot Plaintiffs' Motion for Class Certification (Doc. #80) filed November 9, 2020. Signed by District Judge Kathryn H. Vratil on 6/7/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(as) (Entered: 06/07/2021) |
| 06/07/2021 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: [176] SEALED MOTION for Leave to File Under Seal** *and conventionally*. **The motion will be resolved by the District Judge.(adc)** (Entered: 06/07/2021) |
| 06/07/2021 | [180] | SEALED DOCUMENT *Plaintiffs' Sealed Notice of Filing Amended Exhibit* re [176] SEALED MOTION for Leave to File Under Seal *and conventionally* (Attachments: # [1] Exhibit 1- Exhibit 12 to Plaintiff Bosire's Memorandum in Opposition to Defendants' Motion for Summary Judgment)(Perry, Madison) (Entered: 06/07/2021) |
| 06/08/2021 | 181 | ORDER **overruling as moot** [173] Second Motion For Extension Of Time To File Response To Defendants McMillan And Schulte's Motion For Summary Judgment Against Plaintiff Bosire. Plaintiff Bosire filed his opposition timely on June 4, 2021. Signed by District Judge Kathryn H. Vratil on 6/8/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 06/08/2021) |
| 06/11/2021 | [182] | RESPONSE re 179 Order to Show Cause by Plaintiffs Samuel James Shaw, Blaine Franklin Shaw, Joshua Bosire. (Greathouse, Leslie) (Entered: 06/11/2021) |
| 06/16/2021 | [183] | NOTICE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of taking deposition of Sarah Washburn, Chandler Rule, Doug Rule, Ryan Wolting, Greg Jirak, Doug Carr, Dax Lewis, James McCord, Joe Bullock, Brent Hogelin, Herman Jones on 7/7/2021, 7/8/2021, 7/9/2021, 7/20/2021, 8/17/2021, 8/23/2021, 9/16/2021, 9/17/2021, 10/6/2021 (Perry, Madison) (Entered: 06/16/2021) |
| 06/16/2021 | [184] | NOTICE OF INTENT TO ISSUE SUBPOENA by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw Subpoena to be issued to: Randy Moon (Attachments: # [1] Exhibit 1- Subpoena)(Perry, Madison) (Entered: 06/16/2021) |
| 06/16/2021 | 185 | ORDER. On May 20, 2021 plaintiffs represented to the Court that "if Defendant Jones would agree...that any equitable relief obtained by the Named Plaintiffs... would inure to the benefit of the putative class members without certification of a class, then there is no need to certify a class." Certain Plaintiffs' Response to Order To Show Cause (Doc. 165 ) filed May 20, 2021 at 2. Defendant Jones so stipulated. Defendant's Response To Court's Show Cause Order Concerning Class Certification (Doc. 166 ) filed May 20, 2021 at 2. |

| | | |
|---|---|---|
| | | Plaintiffs' Motion for Class Certification filed November 9, 2020, is therefore moot and is hereby **overruled**. Signed by District Judge Kathryn H. Vratil on 6/16/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 06/16/2021) |
| 06/22/2021 | 186 | ORDER **overruling as moot** 168 Motion To Strike Supplemental Memorandum Of Law In Support Of Plaintiffs' Motion For Class Certification. The Motion to Strike is found moot as 80 Plaintiffs' Motion for Class Certification is also moot and has already been overruled. Signed by District Judge Kathryn H. Vratil on 6/22/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 06/22/2021) |
| 06/22/2021 | 187 | ORDER **overruling** 143 Motion For Summary Judgment Against Plaintiff Bosire's Claims for substantially the reasons stated in 178 Plaintiff Bosire's Memorandum In Opposition To Defendants' Motion For Summary Judgment. Signed by District Judge Kathryn H. Vratil on 6/22/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 06/22/2021) |
| 06/22/2021 | 188 | ORDER **overruling** 139 Motion For Summary Judgment Against The Plaintiff Shaws' Claims for substantially the reasons stated in 177 Memorandum In Opposition To Defendant's Motion For Summary Judgment Against B. Shaw and S. Shaw's Claims. Signed by District Judge Kathryn H. Vratil on 6/22/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 06/22/2021) |
| 06/23/2021 | 189 | (STRICKEN PER 236 MINUTE ENTRY) REPLY TO RESPONSE TO MOTION by Defendants Brandon McMillan, Doug Schulte re: 143 Motion for Summary Judgment (Attachments: # 1 Exhibit additional Bosire depo excerpts, # 2 Exhibit place conventionally filed video)(Chalmers, Arthur) Modified on 9/7/2021. (jsh) (Entered: 06/23/2021) |
| 06/23/2021 | 190 | MOTION to Alter Judgment *doc 187* by Defendants Brandon McMillan, Doug Schulte (Chalmers, Arthur) (Entered: 06/23/2021) |
| 06/23/2021 | 191 | MOTION for extension of time *to file reply out of time* by Defendants Brandon McMillan, Doug Schulte (referred to Magistrate Judge Gwynne E. Birzer) (Chalmers, Arthur) (Entered: 06/23/2021) |
| 06/23/2021 | 192 | (STRICKEN PER 236 MINUTE ENTRY) REPLY TO RESPONSE TO MOTION by Defendant Doug Schulte re: 139 Motion for Summary Judgment (Attachments: # 1 Exhibit Hogelin Declaration)(Chalmers, Arthur) Modified on 9/7/2021. (jsh) (Entered: 06/23/2021) |
| 06/23/2021 | 193 | MOTION to Alter Judgment *187* by Defendant Doug Schulte (Chalmers, Arthur) (Entered: 06/23/2021) |
| 06/23/2021 | 194 | MOTION for extension of time *to file reply out of time* by Defendant Doug Schulte. (Chalmers, Arthur) (Entered: 06/23/2021) |
| 06/24/2021 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 194 MOTION for extension of time *to file reply out of time*, 191 MOTION for extension of time *to file reply out of time*. The motion will be resolved by the District Judge.(adc)** (Entered: 06/24/2021) |
| 06/28/2021 | 195 | NOTICE OF SERVICE by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of Subpoena to Testify at Deposition to Randy Moon (Perry, Madison) (Entered: 06/28/2021) |
| 07/01/2021 | 196 | RESPONSE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re 193 Motion to Alter Judgment, 194 Motion for Extension of Time, 191 Motion for |

| | | |
|---|---|---|
| | | Extension of Time, [190] Motion to Alter Judgment (Greathouse, Leslie) (Entered: 07/01/2021) |
| 07/07/2021 | [197] | AMENDED NOTICE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of taking deposition of Chandler Rule, Doug Rule, Ryan Wolting, Greg Jirak, Sarah Washburn, Doug Carr, Dax Lewis, James McCord, Joe Bullock, Brent Hogelin, Herman Jones on 7/8/2021, 7/8/2021, 7/12/2021, 7/20/2021, 8/9/2021, 8/17/2021, 8/23/2021, 8/23/2021, 9/16/2021, 9/17/2021, 10/6/2021 (Perry, Madison) (Entered: 07/07/2021) |
| 07/08/2021 | [198] | MEMORANDUM AND ORDER sustaining in part and overruling in part [176] SEALED MOTION for Leave to File Under Seal and Conventionally. See Order for details. Signed by District Judge Kathryn H. Vratil on 7/8/2021. (kas) (Entered: 07/08/2021) |
| 07/13/2021 | 222 | CONVENTIONALLY FILED EXHIBIT IN SUPPORT of [178] Memorandum in Opposition and [177] Memorandum in Opposition. One flash drive received by Judge Vratil's Chambers on 7/13/2021 and will be maintained in Chambers. Per KHV Chambers, counsel has been notified to provide an additional copy. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kas) (Entered: 08/02/2021) |
| 07/14/2021 | 199 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: MOTION HEARING held on 7/14/2021 re [167] MOTION to Compel *Documents Withheld Based on the Deliberative Process Privilege and Memorandum in Support* filed by Joshua Bosire, Samuel James Shaw, Blaine Franklin Shaw; STATUS CONFERENCE held on 7/14/2021. (Zoom recording.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 07/14/2021) |
| 07/15/2021 | [200] | EXHIBITS IN SUPPORT of [178] Memorandum in Opposition to Motion & [177] Memorandum in Opposition to Motion by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Attachments: # [1] Exhibit)(Perry, Madison) (Entered: 07/15/2021) |
| 07/16/2021 | [201] | NOTICE OF SERVICE by Herman Jones, Herman Jones, Brandon McMillan, Doug Schulte of Response to 5th RFP and mailing of documents (Chalmers, Arthur) (Entered: 07/16/2021) |
| 07/19/2021 | 202 | ORDER. On 7/14/21 the Court held a motion hearing in Case No. 19-1343-KHV-GEB, and a status conference in both 19-1343 and consolidated action No. 20-1067-KHV-GEB. The Shaw and Bosire Plaintiffs (19-1343) appeared through counsel, Sharon Brett, Leslie Greathouse, Madison Perry, and Joshua Pierson. The Erich and Maloney Plaintiffs (20-2076) did not appear. Defendants appeared through counsel, Arthur Chalmers. After review of the docket, thorough review of briefing, and discussion with counsel, the Court enters the following orders: Plaintiffs' motion to compel [167] is DENIED in part, in that the email chain withheld by Defendants on the basis of deliberative process privilege will not be ordered produced in full. Plaintiffs' motion is GRANTED in part, in that a portion of the communications may be produced as discussed because the email is found to not be deliberative. A written opinion on this issue will follow. Following discussion of discovery disputes and concerns regarding the current schedule, the Court anticipates the parties will continue to confer and act accordingly with the discussions during the conference. Defendants are expected to conclude the previously-discussed Global Systems discovery issue by 7/30/21. In light of this and other ESI concerns, the schedule is modified as follows: Plaintiffs' expert disclosure deadline extended to 12/31/21. Defendants' expert disclosures are due 2/25/22. Any rebuttal disclosures are due 3/25/22. Discovery deadline 4/29/2022. Proposed Pretrial Order due by 5/10/2022. Final Pretrial Conference set for 5/17/2022 at 10:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. Dispositive motion & Daubert motion deadlines reset to 6/7/2022. Jury Trial set for 2/6/2023 at 09:00 AM in KC Courtroom 440 before District |

| | | Judge Kathryn H. Vratil. In light of the lack of participation by the Erich and Maloney Plaintiffs (20-2076), the Court will reach out to counsel by letter. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 7/19/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 07/19/2021) |
|---|---|---|
| 07/19/2021 | 203 | NOTICE of Intent to Issue Amended Subpoena to Randy Moon by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Attachments: # 1 Exhibit Amended Subpoena to Randy Moon)(Perry, Madison) (Entered: 07/19/2021) |
| 07/20/2021 | | **Set Deadlines/Hearings: CORRECTION to Order, ECF No. 202: Jury Trial set for 2/6/2023 at 09:00 AM in Wichita Courtroom (Unknown) before District Judge Kathryn H. Vratil.(adc)** (Entered: 07/20/2021) |
| 07/20/2021 | 204 | NOTICE OF INTERLOCUTORY APPEAL as to 187 Order on Motion for Summary Judgment by Defendants Brandon McMillan, Doug Schulte. Filing fee $505, Internet Payment Receipt Number AKSDC-5540511. (Chalmers, Arthur) (Entered: 07/20/2021) |
| 07/20/2021 | 205 | NOTICE OF INTERLOCUTORY APPEAL by Defendant Doug Schulte Filing fee $505, Internet Payment Receipt Number AKSDC-5540549. (Chalmers, Arthur) (Entered: 07/20/2021) |
| 07/20/2021 | 206 | CERTIFICATE OF SERVICE of subpoena to testify at a deposition on Randy Moon by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re 203 Notice (Other). (Perry, Madison) (Entered: 07/20/2021) |
| 07/20/2021 | 207 | MOTION FOR LEAVE to File Exhibit 9 to reply Doc 189 Conventionally by Defendants Brandon McMillan, Doug Schulte. (Chalmers, Arthur) (Entered: 07/20/2021) |
| 07/20/2021 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 207 MOTION FOR LEAVE to File Exhibit 9 to reply Doc 189 Conventionally . The motion will be resolved by the District Judge.(adc)** (Entered: 07/20/2021) |
| 07/20/2021 | 208 | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 205 Notice of Interlocutory Appeal. (Attachments: # 1 Preliminary Packet)(sz) (Entered: 07/20/2021) |
| 07/20/2021 | 209 | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 204 Notice of Interlocutory Appeal. (Attachments: # 1 Preliminary Packet)(sz) (Entered: 07/20/2021) |
| 07/20/2021 | 210 | APPEAL DOCKETED in 10CCA on 7/20/2021 and assigned Appeal No. 21-3130 re 204 Notice of Interlocutory Appeal filed by Brandon McMillan, Doug Schulte. (mam) (Entered: 07/22/2021) |
| 07/20/2021 | 211 | APPEAL DOCKETED in 10CCA on 7/20/2021 and assigned Appeal No. 21-3131 re 205 Notice of Interlocutory Appeal filed by Doug Schulte. (mam) (Entered: 07/22/2021) |
| 07/22/2021 | 212 | ORDER of 10CCA as to 204 Notice of Interlocutory Appeal filed by Brandon McMillan, Doug Schulte. This appeal is ABATED. Within 5 days after the district court enters its order(s) disposing of the motions to alter or amend, the clerk of the district court is directed to supplement the preliminary records in accordance with 10th Cir. R. 3.2(B). (Appeal No. 21-3130) (mam) (Entered: 07/22/2021) |
| 07/22/2021 | 213 | ORDER of 10CCA as to 205 Notice of Interlocutory Appeal filed by Doug Schulte. This appeal is ABATED. Within 5 days after the district court enters its order(s) disposing of the motions to alter or amend, the clerk of the district court is directed to supplement the preliminary records in accordance with 10th Cir. R. 3.2(B). (Appeal No. 21-3131) (mam) (Entered: 07/22/2021) |
| 07/23/2021 | 214 | TRANSCRIPT ORDER FORM: No Transcript Required filed by Brandon McMillan, Doug Schulte re 204 Notice of Interlocutory Appeal (Chalmers, Arthur) (Entered: |

| | | |
|---|---|---|
| | | 07/23/2021) |
| 07/23/2021 | 215 | TRANSCRIPT ORDER FORM: No Transcript Required filed by Doug Schulte re 205 Notice of Interlocutory Appeal (Chalmers, Arthur) (Entered: 07/23/2021) |
| 07/23/2021 | 216 | NOTICE of Amendment for Randy Moon Deposition by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 07/23/2021) |
| 07/26/2021 | 217 | AMENDED PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 205 Notice of Interlocutory Appeal. (Appeal No. 21-3131). (Attachments: # 1 Preliminary Packet) (sz) (Entered: 07/26/2021) |
| 07/29/2021 | 218 | LETTER TO 10CCA stating record is complete re 204 Notice of Interlocutory Appeal. (Appeal No. 21-3130) (sz) (Entered: 07/29/2021) |
| 07/29/2021 | 219 | LETTER TO 10CCA stating record is complete re 205 Notice of Interlocutory Appeal. (Appeal No. 21-3131) (sz) (Entered: 07/29/2021) |
| 07/29/2021 | 220 | MOTION for Protective Order by Defendants Herman Jones, Brandon McMillan, Doug Schulte, Consol Defendant Herman Jones (referred to Magistrate Judge Gwynne E. Birzer) (Chalmers, Arthur) (Entered: 07/29/2021) |
| 07/30/2021 | 221 | NOTICE of Telephone Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Motion Hearing set for 8/10/2021 at 02:00 PM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. The Court will be prepared to discuss 220 Defendants' MOTION for Protective Order. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 07/30/2021) |
| 08/02/2021 | 223 | MEMORANDUM IN OPPOSITION by Plaintiff Joshua Bosire re 207 MOTION FOR LEAVE to File Exhibit 9 to reply Doc 189 Conventionally (Perry, Madison) (Entered: 08/02/2021) |
| 08/09/2021 | 224 | MEMORANDUM IN OPPOSITION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re 220 MOTION for Protective Order (Attachments: # 1 Exhibit Jirak Deposition Excerpt)(Brett, Sharon) (Entered: 08/09/2021) |
| 08/10/2021 | 225 | REPLY TO RESPONSE TO MOTION by Defendants Herman Jones, Brandon McMillan, Doug Schulte, Consol Defendant Herman Jones re: 220 Motion for Protective Order (Attachments: # 1 Exhibit Depo excerpt)(Chalmers, Arthur) (Entered: 08/10/2021) |
| 08/10/2021 | 226 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: MOTION HEARING held on 8/10/2021 re 220 MOTION for Protective Order filed by Brandon McMillan, Doug Schulte, Herman Jones. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 08/10/2021) |
| 08/11/2021 | 227 | ORDER. On 8/10/21 the Court held a motion hearing. The Shaw and Bosire Plaintiffs (19-1343) appeared through counsel, Patrick McInerney, Sharon Brett, Madison Perry, and Joshua Pierson. The Erich and Maloney Plaintiffs (20-1067) did not appear. Defendants appeared through counsel, Arthur Chalmers. After review of the docket, thorough review of the briefing, and discussion with counsel, the Court enters the following orders: Defendants' Motion for Protective Order 220 is GRANTED in that neither Trooper Jirak nor KHP's employees/deponents are required to answer the two unanswered deposition questions asked in the recent deposition of Trooper Jirak. Similar questions requiring Troopers not directly involved in the traffic stops at issue in this suit to form and express new opinions are not to be asked in future KHP employee depositions. In the event a related dispute arises in any future deposition, counsel are expected to contact the undersigned by phone for efficient resolution. A written opinion will follow. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on |

| | | |
|---|---|---|
| | | 8/11/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 08/11/2021) |
| 08/11/2021 | 228 | ORDER TO SHOW CAUSE. In light of these Plaintiffs' complete failure to participate in this case, the Court hereby ORDERS Plaintiffs Mark Erich and Shawna Maloney, through their counsel James T. McIntyre, to show cause in writing to the undersigned U.S. Magistrate Judge why she should not recommend to the District Judge that the claims by Mark Erich and Shawna Maloney, individually and as the mother and natural guardian of minor D. M. and minor M. M., against defendant Herman Jones in his official capacity as the Superintendent of the Kansas Highway Patrol be dismissed with prejudice for lack of prosecution under Fed. R. Civ. P. 41(b). Show Cause Response due by 9/10/2021. Signed by Magistrate Judge Gwynne E. Birzer on 8/11/21. Emailed to James T. McIntyre through electronic noticing and also by certified mail to 6235 West Kellogg Drive, Wichita, KS 67209; Certified Tracking Number: 7020 0640 0000 5372 9618. Also mailed to Plaintiff Mark Erich, 2605 Logan Dr., Loveland, Colorado, 80538 by certified mail; Certified Tracking Number: 7020 0640 0000 5372 9625. (adc) (Entered: 08/11/2021) |
| 08/13/2021 | 229 | CERTIFIED MAIL RECEIPT returned re 228 addressed to James T. McIntyre, Law Offices of James T. McIntyre, 6235 West Kellogg Drive, Wichita, KS 67209. (jk) (Entered: 08/13/2021) |
| 08/13/2021 | 230 | TRANSCRIPT of Motion Hearing held August 10, 2021 before Judge Gwynne E. Birzer, Court Reporter Jana McKinney, 316-315-4268, jana_mckinney@ksd.uscourts.gov. Transcript purchased by: Mr. Patrick McInerney.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the reporter or through PACER. Release of Transcript Restriction set for 11/12/2021. (jlm) (Entered: 08/13/2021) |
| 08/17/2021 | 231 | RETURN Certified Mail received re 228 addressed to Mark Erich 2605 Logan Dr., Loveland, CO 80538. Remailed on 8/17/2021 to Mark Erich, PO Box 1372, Loveland, CO 80539-1372 by certified mail (tracking no. 7019 0700 0000 5927 4605) and by regular mail. (jk) (Entered: 08/17/2021) |
| 08/18/2021 | 232 | NOTICE OF SERVICE by Herman Jones, Herman Jones, Brandon McMillan, Doug Schulte of Documents (Chalmers, Arthur) (Entered: 08/18/2021) |
| 08/27/2021 | 233 | NOTICE of Hearing. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Motion Hearing set for 9/3/2021 at 01:00 PM in KC Courtroom 440 (JWL/KHV) before District Judge Kathryn H. Vratil. Oral Argument to be heard on the following motions: 190 Motion To Alter And Amend, 191 Motion To [sic] For Extension To File Reply In Support Of Motion For Summary Judgment Out-Of-Time, 193 Motion To Alter And Amend, 194 Motion To [sic] For Extension To File Reply In Support Of Motion For Summary Judgment Out-Of-Time, and 207 Motion For Leave To File Video File Conventionally. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 08/27/2021) |

| | | |
|---|---|---|
| 08/30/2021 | 234 | RETURN Certified Mail received re 231 addressed to Mark Erich PO Box 1372 Loveland, CO 80539-1372. Not Remailed. (jk) (Entered: 08/30/2021) |
| 08/30/2021 | 235 | RETURN Mail received re 231 addressed to Mark Erich PO Box 1372 Loveland, CO 80539-1372. Not Remailed. (jk) (Entered: 08/30/2021) |
| 09/03/2021 | 236 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: MOTION HEARING held on 9/3/2021. See Minute Sheet for details. (Court Reporter Kelli Stewart.) (as) (Entered: 09/03/2021) |
| 09/10/2021 | 237 | TRANSCRIPT of Motion Hearing (48 pgs) held 09/03/2021 before Judge Kathryn H. Vratil, Court Reporter Kelli Stewart, 913-735-2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Spencer Fane-Plaintiffs. <br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 12/9/2021. (ks) (Entered: 09/10/2021) |
| 09/13/2021 | 238 | SUPPLEMENTAL PRELIMINARY RECORD ON APPEAL transmitted to 10CCA Volume(s) 1 re 205 Notice of Interlocutory Appeal, 204 Notice of Interlocutory Appeal (Appeal Nos. 21-3130 and 21-3131) (Attachments: # 1 Supplemental Preliminary Record on Appeal Volume 1)(sz) (Entered: 09/13/2021) |
| 09/15/2021 | 239 | ORDER and NOTICE OF SHOW CAUSE HEARING. On 8/11/21, the undersigned issued an Order to Show Cause 228 requiring Plaintiffs Mark Erich and Shawna Maloney, through their counsel James T. McIntyre, to show cause in writing to the undersigned U.S. Magistrate Judge on or before 9/10/21, why she should not recommend to the District Judge that these Plaintiffs' claims be dismissed with prejudice under Fed. R. Civ. P. 41(b) for their failure to participate in this action. To date, although Mr. McIntyre contacted the office of the undersigned by phone on 9/1/21 and was instructed to comply with the order, no response has been filed. Therefore, this matter is set for a Show Cause Hearing on 9/29/2021 at 10:00 AM. Counsel James McIntyre is ORDERED to appear IN PERSON in Wichita Courtroom 326 before Magistrate Judge Gwynne E. Birzer. All other parties and counsel are permitted to appear by Zoom videoconference, if they so wish, to reduce the expense to other parties. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 9/15/21. Mailed to attorney James T. McIntyre, 6235 West Kellogg Drive, Wichita, KS 67209 by certified mail; Certified Tracking Number: 7020 0640 0000 5372 9731. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 09/15/2021) |
| 09/21/2021 | 240 | MEMORANDUM AND ORDER granting in part and denying in part 167 Plaintiff's Motion to Compel Discovery. See order for details, and prior order 202 . Signed by Magistrate Judge Gwynne E. Birzer on 9/21/21. (adc) (Entered: 09/21/2021) |
| 09/23/2021 | 241 | CERTIFIED MAIL RECEIPT returned re 239 addressed to James T. McIntyre Law Offices of James T. McIntyre 6235 West Kellogg Drive Wichita, KS 67209. (jk) (Entered: 09/23/2021) |

| 09/28/2021 | 242 | NOTICE OF SERVICE by Brandon McMillan, Doug Schulte of Supplemental Discovery Answers & Documents (Chalmers, Arthur) (Entered: 09/28/2021) |
|---|---|---|
| 09/28/2021 | 243 | MEMORANDUM AND ORDER granting 220 Motion for Protective Order. See order for details. Signed by Magistrate Judge Gwynne E. Birzer on 9/28/21. (adc) (Entered: 09/28/2021) |
| 09/29/2021 | 244 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: SHOW CAUSE HEARING held on 9/29/2021. (Zoom recording.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 09/29/2021) |
| 09/29/2021 | 245 | ORDER. A show cause hearing was held 9/29/21. The Shaw and Bosire Plaintiffs (19-1343) appeared through counsel Joshua Pierson (in person) and Leslie Greathouse (by Zoom). Plaintiffs Mark Erich and Shawna Maloney (20-1067) appeared through counsel, James McIntyre (in person). Defendants in both cases appeared through counsel, Arthur Chalmers (by Zoom). Following discussion with counsel, the Court entered the following orders on the record: The undersigned finds Mr. McIntyre has shown cause why a briefing schedule on potential dismissal of his clients' claims should not be established at this time. Defendants Erich and Maloney must, through their counsel Mr. McIntyre, submit Rule 26(a)(1) disclosures to all other parties by no later than 10/6/21. A copy of the disclosures must be emailed to ksd_Birzer_chambers@ksd.uscourts.gov. Additionally, Plaintiffs Erich and Maloney must respond to outstanding written discovery by no later than 10/29/21. No extensions will be provided to these deadlines. In the event the Erich and Maloney Plaintiffs fail to comply with these deadlines, a briefing schedule will be established to address these Plaintiffs' lack of participation in these consolidated actions. If substitute counsel are engaged on behalf of the Erich/Maloney plaintiffs, they must enter their appearance no later than 10/29/21. In the event the Erich/Maloney plaintiffs do not wish to pursue this matter, counsel should promptly notify the Court. IT IS SO ORDERED. (re 228 , 239 Order to Show Cause) Signed by Magistrate Judge Gwynne E. Birzer on 9/29/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Mailed to counsel James McIntyre by US mail at 6235 West Kellogg Drive, Wichita, KS 67209. (adc) (Entered: 09/29/2021) |
| 10/06/2021 | 246 | NOTICE of filing of rule 26 disclosures by Mark Erich, Shawna Maloney (McIntyre, James) (Entered: 10/06/2021) |
| 11/02/2021 | 247 | MOTION for extension of time by Consol Plaintiffs Mark Erich, Shawna Maloney (referred to Magistrate Judge Gwynne E. Birzer) (McIntyre, James) (Entered: 11/02/2021) |
| 11/03/2021 | 248 | NOTICE of Telephone Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Status/Motion Hearing set for 11/8/2021 at 09:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. Counsel must be prepared to discuss the Erich/Maloney Plaintiffs' 247 MOTION for extension of time and general status of the Erich/Maloney Plaintiffs' claims. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 11/03/2021) |
| 11/05/2021 | 249 | ENTRY OF APPEARANCE by Kayla DeLoach on behalf of Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (DeLoach, Kayla) (Entered: 11/05/2021) |
| 11/05/2021 | 250 | ENTRY OF APPEARANCE by Joshua M. Pierson on behalf of Mark Erich, Shawna Maloney (Pierson, Joshua) (Entered: 11/05/2021) |
| 11/05/2021 | 251 | Unopposed MOTION for extension of time by Consol Plaintiffs Mark Erich, Shawna Maloney (referred to Magistrate Judge Gwynne E. Birzer) (Pierson, Joshua) (Entered: |

| | | 11/05/2021) |
|---|---|---|
| 11/08/2021 | 252 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: MOTION HEARING held on 11/8/2021 re 247 MOTION for extension of time filed by Shawna Maloney, Mark Erich; and 251 Unopposed MOTION for extension of time filed by Shawna Maloney, Mark Erich. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 11/08/2021) |
| 11/08/2021 | 253 | ORDER. A motion and status conference was held 11/8/21 before the undersigned. The Shaw and Bosire Plaintiffs (19-1343) appeared through counsel Joshua Pierson, Madison Perry, Sharon Brett and Kayla DeLoach. Plaintiffs Mark Erich and Shawna Maloney (20-1067) appeared through counsel, James McIntyre (in person) and Joshua Pierson. Defendants in both cases appeared through counsel, Arthur Chalmers. After discussion with all counsel, the Court enters the following orders: The Motion for extension of time by consolidated Plaintiffs Mark Erich and Shawna Maloney 251 is GRANTED. Counsel for the Shaw/Bosire Plaintiffs is expected to substitute into the matter on behalf of the Erich/Maloney Plaintiffs as soon as possible, and Mr. McIntyre will withdraw. The Erich/Maloney Plaintiffs' deadline to respond to written discovery is extended to 12/1/21. All other deadlines remain as previously scheduled. In light of these orders, the prior motion for extension 247 filed by Mr. McIntyre is found to be MOOT. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 11/8/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 11/08/2021) |
| 11/17/2021 | 254 | CERTIFICATE OF SERVICE of Supplemental Production of Documents by Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 11/17/2021) |
| 11/23/2021 | 255 | CERTIFICATE OF SERVICE of Answers to Interrogatories and Responses to Requests for Production by Mark Erich, Shawna Maloney. (Pierson, Joshua) (Entered: 11/23/2021) |
| 11/29/2021 | 256 | ENTRY OF APPEARANCE by Joshua M. Pierson on behalf of Mark Erich, Shawna Maloney. (Pierson, Joshua) (Entered: 11/29/2021) |
| 12/07/2021 | 257 | NOTICE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of taking deposition of Trooper Justin Rohr on 12/10/2021 (Perry, Madison) (Entered: 12/07/2021) |
| 12/08/2021 | 258 | ENTRY OF APPEARANCE by Madison A. Perry on behalf of Mark Erich, Shawna Maloney (Perry, Madison) (Entered: 12/08/2021) |
| 12/09/2021 | 259 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Discovery Conference set for 12/17/2021 11:00 AM by Zoom Video Conference before Magistrate Judge Gwynne E. Birzer. (adc) (Entered: 12/09/2021) |
| 12/17/2021 | 260 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: DISCOVERY CONFERENCE held on 12/17/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 12/17/2021) |
| 12/17/2021 | 261 | ORDER. A discovery conference was held 12/17/21 before the undersigned. All Plaintiffs appeared through counsel Madison Perry and Joshua Pierson. All Defendants appeared through counsel, Arthur Chalmers. After review of the parties' position statements and relevant caselaw, and after hearing the arguments of counsel, the Court is inclined to permit Plaintiffs' requested discovery in their RFP No. 24 as most recently limited regarding data from three KHP stationary license plate readers. The Court is inclined to cost-shift/cost-share such that Plaintiffs would bear the expense of the first $5,000 to the vendor producing the data, with Defendants to bear any cost above $5,000. In the event either party wishes to formally brief this issue, they are to contact the Court as soon as |

| | | |
|---|---|---|
| | | practical to seek an expedited briefing schedule. Additionally, after discussion regarding the parties' cooperative extension of their expert disclosure deadlines, the Court invites the parties to contact the undersigned for discussion if at any time they believe formal modifications are needed with regard to the existing schedule. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 12/17/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 12/17/2021) |
| 12/27/2021 | 262 | NOTICE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of taking deposition of Kansas Highway Patrol on January 4-5, 2022 (Pierson, Joshua) (Entered: 12/27/2021) |
| 12/30/2021 | 263 | NOTICE OF SERVICE by Herman Jones, Herman Jones of Rule 30(b)(6) clarifications and limtations *regarding KHP depostion* (Attachments: # 1 Ex A clarification and limitations, # 2 Ex Budget)(Chalmers, Arthur) (Entered: 12/30/2021) |
| 01/03/2022 | 264 | AMENDED NOTICE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of taking deposition of Kansas Highway Patrol on 1/26/22 and 1/27/22 (Pierson, Joshua) Modified title on 1/4/2022. (jsh) (Entered: 01/03/2022) |
| 01/12/2022 | 265 | NOTICE OF TELEPHONE CONFERENCE: A Status Conference before Magistrate Judge Gwynne E. Birzer is set for 1/13/2022 at 01:30 PM by telephone. Participants shall call 1-888-363-4749, use access code 9686294, and follow prompts to join call. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 01/12/2022) |
| 01/13/2022 | 266 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 1/13/2022. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 01/13/2022) |
| 01/14/2022 | 267 | REVISED SCHEDULING ORDER: See order for additional details. Discovery deadline 7/29/2022. Proposed Pretrial Order due by 8/11/2022. Final Pretrial Conference set for 8/18/2022 at 10:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. Dispositive motion deadline 9/8/2022. Jury Trial remains set for 2/6/2023 at 09:00 AM in Wichita before District Judge Kathryn H. Vratil. Estimated trial time 10 days. Signed by Magistrate Judge Gwynne E. Birzer on 1/14/22. (adc) (Entered: 01/14/2022) |
| 01/28/2022 | 268 | AMENDED NOTICE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of taking deposition of Kansas Highway Patrol on 2/4/22 (Pierson, Joshua) (Entered: 01/28/2022) |
| 03/01/2022 | 269 | CERTIFICATE OF SERVICE of Expert Disclosures by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 03/01/2022) |
| 03/14/2022 | 270 | NOTICE OF SERVICE by Herman Jones, Herman Jones of March 2022 RFP to all Plaintiffs (Chalmers, Arthur) (Entered: 03/14/2022) |
| 03/29/2022 | 271 | NOTICE OF SERVICE by Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw of Responses to Requests for Production of Documents (Pierson, Joshua) (Entered: 03/29/2022) |
| 05/12/2022 | 272 | CERTIFICATE OF SERVICE of Plaintiffs' Third Set of Interrogatories and Sixth Set of Requests for Documents by Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw. (Pierson, Joshua) (Entered: 05/12/2022) |
| 05/27/2022 | 273 | NOTICE OF SERVICE by Herman Jones, Herman Jones, Brandon McMillan, Doug Schulte of Def Supp Rule 16(a)(1) Disclosures (Chalmers, Arthur) (Entered: 05/27/2022) |

| 05/27/2022 | 274 | NOTICE OF SERVICE by Herman Jones, Herman Jones of notice of Def Jones opinion discloures (Chalmers, Arthur) (Entered: 05/27/2022) |
|---|---|---|
| 06/10/2022 | 275 | NOTICE OF SERVICE by Herman Jones, Brandon McMillan, Doug Schulte of Discovery Responses. (Chalmers, Arthur) (Entered: 06/10/2022) |
| 06/17/2022 | 276 | NOTICE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw of taking deposition of Christi S. Asbe on June 24, 2022 (Pierson, Joshua) (Entered: 06/17/2022) |
| 06/17/2022 | 277 | CERTIFICATE OF SERVICE of Seventh Set of Requests for Documents- to Defendants by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 06/17/2022) |
| 06/17/2022 | 278 | NOTICE OF SERVICE by Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw of Supplemental Rule 26 Disclosures (Pierson, Joshua) (Entered: 06/17/2022) |
| 06/28/2022 | 279 | APPEAL MANDATE from 10CCA: AFFIRMED in part and REVERSED in part. The case is REMANDED to the District Court for further proceedings. (Appeal No. 21-3130) (Attachments: # 1 Transmittal Letter)(heo) (Entered: 06/28/2022) |
| 06/28/2022 | 280 | APPEAL MANDATE from 10CCA: AFFIRMED in part and REVERSED in part. The case is REMANDED to the District Court for further proceedings. (Appeal No. 21-3131) (Attachments: # 1 Transmittal Letter)(heo) (Entered: 06/28/2022) |
| 06/30/2022 | 281 | NOTICE OF SERVICE by Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw of Rebuttal Expert Disclosures (Pierson, Joshua) (Entered: 06/30/2022) |
| 07/14/2022 | 282 | NOTICE OF SERVICE by Herman Jones, Herman Jones, Brandon McMillan, Doug Schulte of response to 7th RFPs (Chalmers, Arthur) (Entered: 07/14/2022) |
| 08/10/2022 | 283 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Joshua M. Pierson as to Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw. (Pierson, Joshua) (Entered: 08/10/2022) |
| 08/11/2022 | 284 | MOTION for attorney Brian M. Hauss to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC-5842955.) by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Affidavit of Brian Hauss, # 2 Electronic registration form)(Brett, Sharon) (Entered: 08/11/2022) |
| 08/15/2022 | 285 | ORDER granting 284 Motion to Appear Pro Hac Vice of Brian M. Hauss for Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, and Samuel James Shaw pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Gwynne E. Birzer on 8/15/22. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 08/15/2022) |
| 08/18/2022 | 286 | MOTION to Sever or for Separate Trials by Defendants Herman Jones, Brandon McMillan, Doug Schulte. (Chalmers, Arthur) (Entered: 08/18/2022) |
| 08/18/2022 | 287 | MEMORANDUM IN SUPPORT of 286 Motion to Sever or for Separate Trials by Defendants Herman Jones, Brandon McMillan, Doug Schulte. (Chalmers, Arthur) (Entered: 08/18/2022) |
| 08/18/2022 | 288 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: FINAL PRETRIAL CONFERENCE held on 8/18/2022. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (spa) (Entered: 08/18/2022) |

| 08/19/2022 | 289 | MOTION for Extension of Time to File Response as to 286 Motion to Sever or for Separate Trials by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Perry, Madison) (Entered: 08/19/2022) |
|---|---|---|
| 08/19/2022 | 290 | PRETRIAL ORDER ENTERED: Dispositive motion deadline 9/8/2022. Jury Trial set for 2/6/2023 at 09:00 AM in Wichita Courtroom (Unknown) before District Judge Kathryn H. Vratil; estimated trial time 10 days. Signed by Magistrate Judge Gwynne E. Birzer on 8/19/2022. (heo) (Entered: 08/19/2022) |
| 08/19/2022 | 291 | MOTION to Expedite *Consideration of Plaintiffs' Motion for Extension of time to Respond to Defendants' Motion to Sever or for Separate Trials* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney (Perry, Madison) (Entered: 08/19/2022) |
| 08/19/2022 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 286 MOTION to Sever *or for separate trials*, 289 MOTION for Extension of Time to File Response as to 286 MOTION to Sever *or for separate trials* . The motion will be resolved by the District Judge.(spa)** (Entered: 08/19/2022) |
| 08/22/2022 | 292 | ORDER: Defendant's Motion to Sever or for Separate Trials (Doc. 286 ) filed August 18, 2022 is overruled without prejudice. Until the Court has resolved the anticipated cross-motions for summary judgment, and it is clear which claims will proceed against whom, it is premature to consider severance or bifurcation. Signed by District Judge Kathryn H. Vratil on 08/22/2022. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 08/22/2022) |
| 08/22/2022 | 293 | ORDER: Plaintiff's Motion for Extension of Time to File Response to Defendant's Motion to Sever or for Separate Trials (Doc. 289 ) filed August 19, 2022 is hereby overruled as moot. Signed by District Judge Kathryn H. Vratil on 08/22/2022. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 08/22/2022) |
| 08/22/2022 | 294 | ORDER: Plaintiff's Motion for Expedited Consideration of Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion to Sever or for Separate Trials (Doc. 291 ) filed August 19, 2022 is hereby overruled as moot. Signed by District Judge Kathryn H. Vratil on 08/22/2022. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 08/22/2022) |
| 08/24/2022 | 295 | MOTION for Summary Judgment by Defendant/Consol Defendant Herman Jones. (Chalmers, Arthur) (Entered: 08/24/2022) |
| 08/24/2022 | 296 | MEMORANDUM IN SUPPORT of 295 Motion for Summary Judgment by Defendant/Consol Defendant Herman Jones. (Attachments: # 1 Exhibit List, # 2 Affidavit Ex. 1 Hogelin Declaration, # 3 Exhibit 1-1 KHP Training materials, # 4 Exhibit 1-2 KHP policy ENF-01, # 5 Exhibit 1-3 KHP Policy ENF-07, # 6 Exhibit 1-4 KHP Policy OPS-39, # 7 Affidavit 2 Asbe Declaration, # 8 Exhibit 3 Depo Excerpts Hogelin, # 9 Exhibit 4 Depo Excerpts Jirak, # 10 Exhibit 5 Depo Excerpts Jones, # 11 Exhibit 6 Depo Excerpts McMillan, # 12 Exhibit 7 Depo Excerpts Rohr, # 13 Exhibit 8 Depo Excerpts C. Rule, # 14 Exhibit 9 Depo Excerpts J.D. Rule, # 15 Exhibit 9-1 Depo Exhib 41 and 44, # 16 Exhibit 10 Depo Excerpts Washburn, # 17 Exhibit 11 Suppl. Response to Plaintiffs' Informal Interrogatory to Def. Jones, March 29, 2021, # 18 Exhibit 12 Significant seizures summary, # 19 Affidavit 13 McMillan Declaration, # 20 Affidavit 14 Schulte Declaration, # 21 Exhibit 15 Plaintiffs' Interrogatory Answers)(Chalmers, Arthur) (Entered: 08/24/2022) |
| 08/29/2022 | 297 | MOTION FOR SUMMARY JUDGMENT BRIEFING SCHEDULE AND TO EXCEED PAGE LIMITS by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, |

| | | |
|---|---|---|
| | | Consol Plaintiffs Mark Erich, Shawna Maloney. (Perry, Madison) (Entered: 08/29/2022) |
| 08/29/2022 | 298 | MOTION for Expedited Consideration of Plaintiffs' Motion for Summary Judgment Briefing Schedule and to Exceed Page Limits by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Perry, Madison) (Entered: 08/29/2022) |
| 08/30/2022 | 299 | ORDER: Plaintiff's Motion for Summary Judgment Briefing Schedule and to Exceed Page Limits (Doc. 297 ) filed August 29, 2022, is OVERRULED. Separate briefing of independent motions will assist the Court and eliminate any need for additional pages. Signed by District Judge Kathryn H. Vratil on 8/30/2022. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 08/30/2022) |
| 08/30/2022 | 300 | ORDER: Plaintiff's Motion for Expedited Consideration of Plaintiffs' Motion for Summary Judgment Briefing Schedule and to Exceed Page Limits (Doc. 298 ) filed August 29, 2022, is SUSTAINED. Signed by District Judge Kathryn H. Vratil on 8/30/2022. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 08/30/2022) |
| 08/31/2022 | 301 | RESPONSE by Defendant/Consol Defendant Herman Jones re 297 Motion for Summary Judgment Briefing Schedule and to Exceed Page Limits. (Chalmers, Arthur) Modified on 9/6/2022 to remove the link to 295 . (mam) (Entered: 08/31/2022) |
| 09/06/2022 | 302 | ENTRY OF APPEARANCE by Olawale O. Akinmoladun on behalf of Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw. (Akinmoladun, Olawale) (Entered: 09/06/2022) |
| 09/08/2022 | 303 | MOTION to Exclude "Opinion" Testimony from Plaintiffs' Witnesses Hassan Aden and Jonathan Mummolo by Defendants Herman Jones, Brandon McMillan, Doug Schulte. (Chalmers, Arthur) (Entered: 09/08/2022) |
| 09/08/2022 | 304 | MEMORANDUM IN SUPPORT of 303 Motion to Exclude "Opinion" Testimony from Plaintiffs' Witnesses Hassan Aden and Jonathan Mummolo by Defendants Herman Jones, Brandon McMillan, Doug Schulte. (Attachments: # 1 Exhibit 1 Aden Report, # 2 Exhibit 2 Mummolo Report, # 3 Exhibit 3 RFP responses) (Chalmers, Arthur) (Entered: 09/08/2022) |
| 09/08/2022 | 305 | MOTION to Exclude or Limit the Testimony of Christi Asbe by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Perry, Madison) (Entered: 09/08/2022) |
| 09/08/2022 | 306 | MEMORANDUM IN SUPPORT of 305 Motion to Exclude or Limit the Testimony of Christi Asbe by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Perry, Madison) (Entered: 09/08/2022) |
| 09/08/2022 | 307 | MOTION for Summary Judgment Against Defendant Herman Jones by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Perry, Madison) (Entered: 09/08/2022) |
| 09/08/2022 | 308 | EXHIBITS IN SUPPORT of 307 Motion for Summary Judgment Against Defendant Herman Jones by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Attachments: # 1 Exhibit List Plaintiffs' Summary Judgment Exhibit List, # 2 Exhibit #2- Enforcement Guidelines, # 3 Exhibit #3- Colonel Herman T. Jones' Deposition Transcript, # 4 Exhibit #4- Lieutenant John Douglas Rule's Deposition Transcript, # 5 Exhibit #5- KHP Organizational Structure, # 6 Exhibit #6- Captain Brent Hogelin's Deposition Transcript, Volume I, # 7 Exhibit #7- Lieutenant Greg Jirak's Deposition Transcript, # 8 Exhibit #8- Master Trooper Doug Schulte's |

| | | |
|---|---|---|
| | | Deposition Transcript, # 9 Exhibit #9- Lieutenant Justin Rohr's Deposition Transcript, # 10 Exhibit #10- Trooper Brandon McMillan's Deposition Transcript)(Perry, Madison) (Entered: 09/08/2022) |
| 09/08/2022 | 309 | EXHIBITS CONTINUED IN SUPPORT of 307 Motion for Summary Judgment Against Defendant Herman Jones by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Attachments: # 1 Exhibit #11- Lieutenant Colonel Randy Moon's Deposition Transcript, # 2 Exhibit #12- KHP Staff Attorney Sarah Washburn's Deposition Transcript, # 3 Exhibit #13- KHP Code of Ethics, # 4 Exhibit #14- Legal Issues in Car Stops 2020, # 5 Exhibit #15- Defendants' Responses to Plaintiffs' First Set of Requests for Documents to Schulte, McMillan and Jones, # 6 Exhibit #16- Transforming Temporary Detention into Consensual Encounter Training, # 7 Exhibit #17- Laws of Search & Seizure: Traffic Stops, # 8 Exhibit #18- 4th Amendment: "Reasonableness is the touchstone of the Fourth Amendment" Training, # 9 Exhibit #19- Complaint Reporting and Administrative Investigations, # 10 Exhibit #20- Captain Mitchel Clark's Deposition Transcript, # 11 Exhibit #21- Plaintiffs' Notice of Rule 30(b)(6) Video Deposition, # 12 Exhibit #22- Discipline and/or Corrective Actions Policy, # 13 Exhibit #23- Partial KHP Annual Complaint Reports (2018-2021), # 14 Exhibit #24- Advanced Interdiction Training (2020), # 15 Exhibit #25- May 14, 2016, Complaint, # 16 Exhibit #26- November 16, 2016, Complaint, # 17 Exhibit #27- September, 17, 2017, Complaint, # 18 Exhibit #28- July 21, 2017, Complaint, # 19 Exhibit #29- September 12, 2018, Complaint, # 20 Exhibit #30- September 21, 2018, Complaint, # 21 Exhibit #31- September 6, 2019, Complaint)(Perry, Madison) Modified docket relationship on 9/13/2022. (ca) (Entered: 09/08/2022) |
| 09/09/2022 | 310 | EXHIBITS CONTINUED IN SUPPORT of 307 Motion for Summary Judgment Against Defendant Herman Jones by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Attachments: # 1 Exhibit #32 - December 5, 2019, Complaint, # 2 Exhibit #33 - August 12, 2020, Complaint, # 3 Exhibit #34 - Kansas Law Enforcement Training Center, Search and Seizure, # 4 Exhibit #35 - Chief Hassan Aden's Declaration and Report, # 5 Exhibit #36 Domestic Highway Enforcement Training, # 6 Exhibit #37 Lieutenant Jason Edie's November 7, 2018, Email, # 7 Exhibit #38 Trooper Ryan Wolting's Deposition Transcript, # 8 Exhibit #39 Dr., Jonathan Mummolo Declaration with Report, # 9 Exhibit #40 - Sample Incident Narrative Report (HP 133), # 10 Exhibit #41 - Sample Deployment and Incident Narrative Reports, # 11 Exhibit #42 Vehicle Detention Report Policy (FOR-44), # 12 Exhibit #43 Christi Asbe DepositionTranscript, # 13 Exhibit #44 Brent Hogelin Deposition Transcript, Volume II, # 14 Exhibit #45 Blaine Shaw Deposition Transcript, # 15 Exhibit #46 - Master Trooper Doug Schulte's Dash Cam Video, Part 1)(Perry, Madison) (Entered: 09/09/2022) |
| 09/09/2022 | 311 | EXHIBITS CONTINUED IN SUPPORT of 307 Motion for Summary Judgment Against Defendant Herman Jones by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Attachments: # 1 Exhibit #47 Samuel Shaw Deposition Transcript, # 2 Exhibit #48 Blaine Shaw Affidavit, # 3 Exhibit #49 Master Trooper Doug Schulte's Dash Cam Video Part 2, # 4 Exhibit #50 Picture of Blaine Shaw's Bag, # 5 Exhibit #51 B. Shaw's Response to Defendants Schulte and McMillan First Set of Interrogatories to B. Shaw, # 6 Exhibit #52 S. Shaw's Response to Defendants Schulte and McMillan First Set of Interrogatories to S. Shaw, # 7 Exhibit #53 Samuel Shaw Declaration, # 8 Exhibit #54 Joshua Bosire Deposition Transcript, # 9 Exhibit #55 Joshua Bosire's February 10, 2019, Warning Ticket, # 10 Exhibit #56 Trooper Brandon McMillan's May 17, 2019, PSU Letter to Lieutenant Bullock, # 11 Exhibit #57 Trooper Brandon McMillan's Dash Cam Video, # 12 Exhibit #58 Colonel Herman T. Jones' August 9, 2019, PSU Letter to Joshua Bosire, # 13 Exhibit #59 Lieutenant Joseph Bullock Deposition Transcript, # 14 Exhibit #60 Colonel Herman T. Jones' July 25, 2019, |

| | | |
|---|---|---|
| | | PSU Letter to Trooper McMillan, # 15 Exhibit #61 Colonel Herman T. Jones' August 5, 2019, PSU Letter to Joshua McMillan, # 16 Exhibit #62 Mark Erich Declaration, # 17 Exhibit #63 Shawna Maloney Declaration, # 18 Exhibit #64 Lieutenant Justin Rohr's Dash Cam Video)(Perry, Madison) (Entered: 09/09/2022) |
| 09/09/2022 | 312 | SEALED MOTION for Leave to File Under Seal AND MOTION FOR LEAVE to File Conventionally Certain Exhibits in Support of 307 Motion for Summary Judgment Against Defendant Herman Jones by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Attachments: # 1 Exhibit #2 Enforcement Guidelines, # 2 Exhibit #14 Legal Issues in Car Stops 2020 (Marked Confidential), # 3 Exhibit #16 Transforming Temporary Detention into Consensual Encounter Training, # 4 Exhibit #17 Laws of Search & Seizure - Traffic Stops, # 5 Exhibit #18 4th Amendment - Reasonableness is the touchstone of the Fourth Amendment, # 6 Exhibit #24 Advanced Interdiction Training (2020), # 7 Exhibit #25 May 14, 2016, Complaint, # 8 Exhibit #26 November 16, 2016, Complaint, # 9 Exhibit #27 September 17, 2017, Complaint, # 10 Exhibit #28 July 21, 2017, Complaint, # 11 Exhibit #29 September 12, 2018, Complaint, # 12 Exhibit #30 September 21, 2018, Complaint, # 13 Exhibit #31 September 6, 2019, Complaint, # 14 Exhibit #32 December 5, 2019, Complaint, # 15 Exhibit #33 August 12, 2020, Complaint, # 16 Exhibit #34 Kansas Law Enforcement Training Center, Search and Seizure Course, # 17 Exhibit #40 Sample Incident Narrative Report, # 18 Exhibit #41 Sample Deployment and Incident Narrative Reports, # 19 Exhibit #46 Master Trooper Doug Schulte's Dash Cam Video Part 1, # 20 Exhibit #49 Master Trooper Doug Schulte's Dash Cam Video, Part 2, # 21 Exhibit #55 February 10, 2019, Warning Ticket (Marked Confidential), # 22 Exhibit #56 McMillan's May 17, 2019, PSU Letter to Lieutenant Bullock, # 23 Exhibit #57 Trooper Brandon McMillan's Dash Cam Video, # 24 Exhibit #58 Jones' August 9, 2019, PSU Letter to Bosire, # 25 Exhibit #60 Jones' July 25, 2019, PSU Letter to McMillan, # 26 Exhibit #61 Jones' August 5, 2019, PSU Letter to McMillan, # 27 Exhibit #64 Lieutenant Justin Rohr's Dash Cam Video)(Perry, Madison). Modified to add additional motion on 9/13/2022. (ca) (Entered: 09/09/2022) |
| 09/09/2022 | 313 | MOTION to Consider Documents and Exhibits Accompanying Summary Judgment Timely Filed or Motion for One-Day Extension of Time by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Perry, Madison) (Entered: 09/09/2022) |
| 09/12/2022 | 314 | ORDER granting 313 Plaintiffs' Motion to Consider Documents and Exhibits Accompanying Summary Judgment Timely Filed or Motion for One-Day Extension of Time. Plaintiffs deadline to file was extended to 9/9/2022 due to electronic filing issues. Signed by District Judge Kathryn H. Vratil on 09/12/2022. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 09/12/2022) |
| 09/14/2022 | 315 | MEMORANDUM IN OPPOSITION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney re 295 Motion for Summary Judgment. (Attachments: # 1 Exhibit 1 - Plaintiffs' Summary Judgment Exhibit List, # 2 Exhibit 2 - Placeholder - Enforcement Guidelines, # 3 Exhibit 3 - Colonel Herman T. Jones' Deposition Transcript, # 4 Exhibit 4 - Lieutenant John Douglas Rule's Deposition Transcript, # 5 Exhibit 5 - KHP Organizational Structure, # 6 Exhibit 6 - Captain Brent Hogelin's Deposition Transcript, Volume I, # 7 Exhibit 7 - Lieutenant Greg Jirak's Deposition Transcript, # 8 Exhibit 8 - Master Trooper Doug Schulte's Deposition Transcript, # 9 Exhibit 9 - Lieutenant Justin Rohr's Deposition Transcript, # 10 Exhibit 10 - Trooper Brandon McMillan's Deposition Transcript, # 11 Exhibit 11 - Lieutenant Colonel Randy Moon's Deposition Transcript, # 12 Exhibit 12 - KHP Staff Attorney Sarah Washburn's Deposition Transcript, # 13 Exhibit 13 - KHP Code of Ethics, # 14 Exhibit 14 - Placeholder - Legal Issues in Car Stops 2020, # 15 Exhibit 15 - Defendants' Responses to Plaintiffs' First Set of Requests for Documents to Schulte, McMillan and |

| | | |
|---|---|---|
| | | Jones, # [16] Exhibit 16 - Placeholder - Transforming Temporary Detention into Consensual Encounter Training, # [17] Exhibit 17 - Laws of Search & Seizure: Traffic Stops, # [18] Exhibit 18 - 4th Amendment: "Reasonableness is the touchstone of the Fourth Amendment" Training, # [19] Exhibit 19 - Complaint Reporting and Administrative Investigations, # [20] Exhibit 20 - Captain Mitchel Clark's Deposition Transcript)(Perry, Madison) (Entered: 09/14/2022) |
| 09/14/2022 | [316] | EXHIBITS IN SUPPORT of [315] Memorandum in Opposition to Motion by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Attachments: # [1] Exhibit 21 - Plaintiffs' Notice of Rule 30(b)(6) Video Deposition, # [2] Exhibit 22 - Discipline and/or Corrective Actions Policy, # [3] Exhibit 23 - Partial KHP Annual Complaint Reports (2018-2021), # [4] Exhibit 24 - Placeholder - Advanced Interdiction Training (2020), # [5] Exhibit 25 - Placeholder - May 14, 2016, Complaint, # [6] Exhibit 26 - Placeholder - November 16, 2016, Complaint, # [7] Exhibit 27 - Placeholder - September 17, 2017, Complaint, # [8] Exhibit 28 - Placeholder - July 21, 2017, Complaint, # [9] Exhibit 29 - Placeholder - September 12, 2018, Complaint, # [10] Exhibit 30 - Placeholder - September 21, 2018, Complaint, # [11] Exhibit 31 - Placeholder - September 6, 2019, Complaint, # [12] Exhibit 32 - Placeholder - December 5, 2019, Complaint, # [13] Exhibit 33 - Placeholder - August 12, 2020, Complaint, # [14] Exhibit 34 - Placeholder - Kansas Law Enforcement Training Center, Search and Seizure Course, # [15] Exhibit 35 - Chief Hassan Aden's Declaration and Report, # [16] Exhibit 36 - Domestic Highway Enforcement Training, # [17] Exhibit 37 - Lieutenant Jason Edie's November 7, 2018, email, # [18] Exhibit 38 - Trooper Ryan Wolting's Deposition Transcript, # [19] Exhibit 39 - Dr. Jonathan Mummolo Declaration and Report, # [20] Exhibit 40 - Placeholder - Sample Incident Narrative Report (HP 133), # [21] Exhibit 41 - Placeholder - Sample Deployment and Incident Narrative Reports, # [22] Exhibit 42 - Vehicle Detention Report Policy (FOR-44), # [23] Exhibit 43 - Christi Asbe Deposition Transcript, # [24] Exhibit 44 - Captain Brent Hogelin's Deposition Transcript, Volume II, # [25] Exhibit 45 - Blaine Shaw Deposition Transcript, # [26] Exhibit 46 - Placeholder - Master Trooper Doug Schulte's Dash Cam Video, Part 1, # [27] Exhibit 47 - Samuel Shaw Deposition Transcript, # [28] Exhibit 48 - Blaine Shaw Affidavit, # [29] Exhibit 49 - Placeholder - Master Trooper Doug Schulte's Dash Cam Video, Part 2, # [30] Exhibit 50 - Pictures of Blaine Shaw's Bag, # [31] Exhibit 51 - B. Shaw's Responses to Defendants Schulte's and McMillan's First Set of Interrogatories to B. Shaw, # [32] Exhibit 52 - S. Shaw's Responses to Defendants Schulte's and McMillan's First Set of Interrogatories to S. Shaw, # [33] Exhibit 53 - Samuel Shaw Declaration, # [34] Exhibit 54 - Joshua Bosire Deposition Transcript, # [35] Exhibit 55 - Placeholder - Joshua Bosire's February 10, 2019, Warning Ticket, # [36] Exhibit 56 - Placeholder - Trooper Brandon McMillan's May 17, 2019, PSU Letter to Lieutenant Bullock, # [37] Exhibit 57 - Placeholder - Trooper Brandon McMillan's Dash Cam Video, # [38] Exhibit 58 - Placeholder - Colonel Herman T. Jones' August 9, 2019, PSU Letter to Joshua Bosire, # [39] Exhibit 59 - Lieutenant Joseph Bullock's Deposition Transcript, # [40] Exhibit 60 - Placeholder - Colonel Herman T. Jones' July 25, 2019, PSU Letter to Trooper McMillan, # [41] Exhibit 61 - Placeholder - Colonel Herman T. Jones' August 5, 2019, PSU Letter to Trooper McMillan, # [42] Exhibit 62 - Mark Erich Declaration, # [43] Exhibit 63 - Shawna Maloney Declaration, # [44] Exhibit 64 - Placeholder - Lieutenant Justin Rohr's Dash Cam Video, # [45] Exhibit 65 - Aden Rebuttal Report, # [46] Exhibit 66 - Chandler Rule Deposition Transcript, # [47] Exhibit 67 - Mummolo Declaration 9.13.2022, # [48] Exhibit 68 - Affidavit of Bosire, # [49] Exhibit 69 - Affidavit of S. Shaw, # [50] Exhibit 70 - Placeholder - Rohr's Canine Deployment Report OAG005990-91, # [51] Exhibit 71 - Placeholder - Rohr's Canine Deployment Report OAG004650-51; OAG004780-81) (Perry, Madison) (Entered: 09/14/2022) |
| 09/14/2022 | [317] | SEALED MOTION for Leave to File Under Seal Exhibits 2, 14, 16-18, 24-34, 40-41, 55-56, 58, 60-61, and 70-71 AND MOTION FOR LEAVE to File Video Exhibits 46, 49, 57, and 64 Conventionally by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James |

| | | |
|---|---|---|
| | | Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney (Response deadline 9/28/2022) (Attachments: # 1 Exhibit 2 - Enforcement Guidelines, # 2 Exhibit 14 - Legal Issues in Car Stops 2020, # 3 Exhibit 16 - Transforming Temporary Detention into Consensual Encounter Training, # 4 Exhibit 17 - Laws of Search & Seizure - Traffic Stops, # 5 Exhibit 18 - 4th Amendment - Reasonableness is the touchstone of the Fourth Amendment, # 6 Exhibit 24 - Advanced Interdiction Training (2020), # 7 Exhibit 25 - May 14, 2016, Complaint, # 8 Exhibit 26 - November 16, 2016, Complaint, # 9 Exhibit 27 - September 17, 2017, Complaint, # 10 Exhibit 28 - July 21, 2017, Complaint, # 11 Exhibit 29 - September 12, 2018, Complaint, # 12 Exhibit 30 - September 21, 2018, Complaint, # 13 Exhibit 31 - September 6, 2019, Complaint, # 14 Exhibit 32 - December 5, 2019, Complaint, # 15 Exhibit 33 - August 12, 2020, Complaint, # 16 Exhibit 34 - Kansas Law Enforcement Training Center, Search and Seizure Course, # 17 Exhibit 40 - Sample Incident Narrative Report, # 18 Exhibit 41 - Sample Deployment and Incident Narrative Reports, # 19 Exhibit 46 -Placeholder - Master Trooper Doug Schulte's Dash Cam Video Part 1, # 20 Exhibit 49 -Placeholder - Master Trooper Doug Schulte's Dash Cam Video, Part 2, # 21 Exhibit 55 - February 10, 2019, Warning Ticket (Marked Confidential), # 22 Exhibit 56 - McMillan's May 17, 2019, PSU Letter to Lieutenant Bullock, # 23 Exhibit 57 - Placeholder - Trooper Brandon McMillan's Dash Cam Video, # 24 Exhibit 58 - Colonel Herman T. Jones' August 9, 2019, PSU Letter to Joshua Bosire, # 25 Exhibit 60 - Colonel Herman T. Jones' July 25, 2019, PSU Letter to Trooper McMillan, # 26 Exhibit 61 - Colonel Herman T. Jones' August 5, 2019, PSU Letter to Trooper McMillan, # 27 Exhibit 64 - Placeholder - Lieutenant Justin Rohr's Dash Cam Video, # 28 Exhibit 70 - Rohr's Canine Deployment Report OAG005990-91, # 29 Exhibit 71 - Rohr's Canine Deployment Report OAG004650-51; OAG004780-81)(Perry, Madison) (Entered: 09/14/2022) |
| 09/15/2022 | 318 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Discovery Hearing set for 9/16/2022 at 2:00 PM via Telephone before Magistrate Judge Gwynne E. Birzer. Counsel shall call the CONFERENCE LINE at 1-888-363-4749, enter ACCESS CODE 9686294, and follow the prompts to join the conference. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (spa) (Entered: 09/15/2022) |
| 09/16/2022 | 319 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: TELEPHONE CONFERENCE held on 9/16/2022. (Tape #2:00-2:15 ATT.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (spa) (Entered: 09/16/2022) |
| 09/16/2022 | 320 | ORDER. On 9/16/22, upon informal request of the Plaintiffs, the Court convened the parties for a telephone conference regarding the Plaintiffs' discovery of potential new evidence. Plaintiffs appeared by and through Sharon Brett and Madison A. Perry. Defendants appeared by and through Arthur Chalmers. After reviewing the position statements submitted by the parties regarding the re-opening of discovery and hearing the parties' oral arguments, the Court declines to re-open discovery. The pretrial order has been entered (ECF 290), both parties have pending Rule 56 motions (ECF 295, 307), the Defendants have a pending Daubert motion (ECF 303), and trial is scheduled to begin on 2/6/23. At this late juncture, the Court does not find good cause exists to re-open discovery. Signed by Magistrate Judge Gwynne E. Birzer on 9/16/22. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(spa) (Entered: 09/16/2022) |
| 09/20/2022 | 321 | RESPONSE by Defendants Herman Jones, Brandon McMillan, Doug Schulte re 312 Sealed for Leave to File Under Seal and Motion for Leave to File Conventionally and 317 Sealed Motion for Leave to File Under Seal. (Chalmers, Arthur) Modified on 9/21/2022 to remove the link to 313 which was ruled on at 314. (mam) (Entered: 09/20/2022) |

| | | |
|---|---|---|
| 09/21/2022 | 322 | RESPONSE by Defendants Herman Jones, Brandon McMillan, Doug Schulte re 305 Motion to Exclude *or Limit testimony of Christi Asbe* (Attachments: # 1 Exhibit Def Jones Amended Rule 26(a)(2)(C) disclosures, # 2 Exhibit Asbe Depo Excerpts, # 3 Affidavit Asbe Declaration, # 4 Affidavit Asbe Supp Declaration)(Chalmers, Arthur) (Entered: 09/21/2022) |
| 09/21/2022 | 323 | RESPONSE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re 303 Motion to Exclude *"Opinion" Testimony from Plaintiffs' Expert Witnesses* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Brett, Sharon) (Entered: 09/21/2022) |
| 09/28/2022 | 324 | MEMORANDUM IN OPPOSITION by Defendant Herman Jones re 307 MOTION for Summary Judgment *by Plaintiffs against Def Jones* (Chalmers, Arthur) (Entered: 09/28/2022) |
| 09/28/2022 | 325 | EXHIBIT(S) IN SUPPORT of 295 MOTION for Summary Judgment by Defendant Herman Jones *filed as part of Doc 294* (Attachments: # 1 Affidavit Ex. 1 Ganieany Declaration and attachments)(Chalmers, Arthur) (Entered: 09/28/2022) |
| 09/28/2022 | 326 | EXHIBIT(S) IN SUPPORT of 295 MOTION for Summary Judgment by Defendant Herman Jones *filed with doc 324* (Attachments: # 1 Affidavit Ganieany Decl with attachments)(Chalmers, Arthur) (Entered: 09/28/2022) |
| 09/28/2022 | 327 | MOTION FOR LEAVE to File Ex. 2 to Statement of facts Doc 326 , security video Conventionally by Defendant Herman Jones. (Chalmers, Arthur) (Entered: 09/28/2022) |
| 09/28/2022 | 328 | REPLY TO RESPONSE TO MOTION by Defendant Herman Jones re: 295 Motion for Summary Judgment (Chalmers, Arthur) (Entered: 09/28/2022) |
| 09/30/2022 | 329 | REPLY TO RESPONSE TO MOTION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney re: 305 Motion to Exclude *or Limit the Testimony of Christi Asbe* (Perry, Madison) (Entered: 09/30/2022) |
| 10/05/2022 | 330 | REPLY TO RESPONSE TO MOTION by Defendants Herman Jones, Brandon McMillan, Doug Schulte re: 303 Motion to Exclude *Plaintiffs expert testimony* (Attachments: # 1 Exhibit memo and attached declaration)(Chalmers, Arthur) (Entered: 10/05/2022) |
| 10/12/2022 | 331 | REPLY TO RESPONSE TO MOTION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney re: 307 Motion for Summary Judgment *Plaintiffs' Reply Memorandum in Further Further Support of their Motion for Summary Judgment Against Defendant Jones* (Perry, Madison) (Entered: 10/12/2022) |
| 10/13/2022 | 332 | MEMORANDUM AND ORDER sustaining in part 312 Motion for Leave to File Under Seal; sustaining in part 312 Motion for Leave to File Conventionally; sustaining in part 317 Motion for Leave to File Under Seal; sustaining in part 317 Motion for Leave to File Conventionally. Signed by District Judge Kathryn H. Vratil on 10/13/2022. (ca) (Entered: 10/13/2022) |
| 10/24/2022 | 333 | ORDER sustaining 327 Motion for Leave to File Audio/Video File Conventionally. Signed by District Judge Kathryn H. Vratil on 10/24/2022. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 10/24/2022) |
| 10/27/2022 | 334 | EXHIBITS IN SUPPORT of 307 Motion for Summary Judgment and 315 Memorandum in Opposition to Defendant Herman Jones' Motion Summary Judgment by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Attachments: # 1 Exhibit #2 Enforcement Guidelines, # 2 Exhibit #14 Legal Issues in Car Stops 2020 (Marked Confidential), # 3 Exhibit #16 Transforming Temporary Detention into Consensual Encounter Training, # 4 Exhibit #17 Laws of |

| | | |
|---|---|---|
| | | Search & Seizure - Traffic Stops, # 5 Exhibit #18 4th Amendment - Reasonableness is the touchstone of the Fourth Amendment, # 6 Exhibit #24 Advanced Interdiction Training (2020), # 7 Exhibit - Redacted #25 May 14 2016 Complaint_Redacted SB_Redacted, # 8 Exhibit #26 November 16, 2016, Complaint.pdf, # 9 Exhibit #27 September 17, 2017, Complaint.pdf, # 10 Exhibit #28 July 21, 2017, Complaint.pdf, # 11 Exhibit #29 September 12, 2018, Complaint.pdf, # 12 Exhibit - Redacted #30 September 21, 2018, Complaint_Redacted, # 13 Exhibit #31 September 6, 2019, Complaint.pdf, # 14 Exhibit #32 December 5, 2019, Complaint.pdf, # 15 Exhibit - Redacted #33 August 12 2020 Complaint_Redacted.pdf, # 16 Exhibit #34 Kansas Law Enforcement Training Center, Search and Seizure Course.pdf, # 17 Exhibit - Redacted #40 Sample Incident Narrative Report_Redacted.pdf, # 18 Exhibit - Redacted #41 Sample Deployment and Incident Narrative Reports_Redacted.pdf, # 19 Exhibit - Redacted #55 February 10, 2019, Warning Ticket (Marked Confidential)_Redacted.pdf, # 20 Exhibit - Redacted #56 McMillan's May 17, 2019, PSU Letter to Lieutenant Bullock_Redacted.pdf, # 21 Exhibit #58 Jones' August 9, 2019, PSU Letter to Bosire.pdf, # 22 Exhibit #60 Jones' July 25, 2019, PSU Letter to McMillan.pdf, # 23 Exhibit #61 Jones' August 5, 2019, PSU Letter to McMillan.pdf, # 24 Exhibit #70 Rohr's Canine Deployment Report OAG005990-91.pdf, # 25 Exhibit - Redacted #71 Rohr's Canine Deployment Report OAG004650-51; OAG004780-81_Redacted.pdf)(Perry, Madison) Modified on 10/28/2022 to relink. (mam) (Entered: 10/27/2022) |
| 11/01/2022 | | **Remark: Conventionally filed Exhibit 2 in support of 307 MOTION for Summary Judgment and 315 Memorandum in Opposition to Motion. Chambers copy forwarded to KHV chambers. Clerk's copy forwarded to Wichita Clerk's office (msb)** (Entered: 11/01/2022) |
| 11/28/2022 | 335 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Kayla DeLoach as to Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw. (DeLoach, Kayla) (Entered: 11/28/2022) |
| 11/29/2022 | 336 | CERTIFICATE OF SERVICE of Seventh Supplemental Rule 26(a)(1) Initial Disclosures by Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 11/29/2022) |
| 12/07/2022 | 337 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. 303 MOTION to Exclude *opinions of Plaintiffs' experts* and 305 MOTION to Exclude *or Limit the Testimony of Christi Asbe* are set for Oral Argument in Chambers for 12/22/2022 at 01:00 PM in KC Room 529 (KHV) before District Judge Kathryn H. Vratil. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 12/07/2022) |
| 12/12/2022 | 338 | ORDER SETTING PRETRIAL FILING DEADLINES: SEE ORDER FOR ADDITIONAL DEADLINE INFORMATION. Estimated trial time 10 days. Jury Trial set for 2/6/2023 at 09:00 AM in Wichita Courtroom (Unknown) before District Judge Kathryn H. Vratil. Status Conference set for 1/9/2023 at 12:30 PM by Telephone KHV - CONFERENCE LINE 1-888-363-4749 ACCESS CODE 1654737 before District Judge Kathryn H. Vratil. Signed by District Judge Kathryn H. Vratil on 12/12/2023. (ca) (Entered: 12/12/2022) |
| 12/13/2022 | 339 | MOTION for attorney Kunyu Ching to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC-5937104.) by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Brett, Sharon) (Entered: 12/13/2022) |
| 12/19/2022 | 340 | ORDER TO SHOW CAUSE. No later than 5:00 p.m. on 12/23/2022, Arthur S. Chalmers must show just cause in writing why he should not be sanctioned for making a false statement of law to this Court, pursuant to Rule 240(a) of the Kansas Rules of |

| | | |
|---|---|---|
| | | Professional Conduct and reported to the Office of the Disciplinary Administrator of the Kansas Supreme Court. Signed by District Judge Kathryn H. Vratil on 12/19/2022. (mam) (Entered: 12/19/2022) |
| 12/20/2022 | 341 | ORDER REFERRING MOTION 339 MOTION for attorney Kunyu Ching to appear pro hac vice is referred to Magistrate Judge Gwynne E. Birzer. Signed by District Judge Kathryn H. Vratil on 12/20/2022. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.)(alh) (Entered: 12/20/2022) |
| 12/21/2022 | 342 | RESPONSE re 340 Order to Show Cause, by Defendants Herman Jones, Doug Schulte, Brandon McMillan(Chalmers, Arthur) (Entered: 12/21/2022) |
| 12/21/2022 | 343 | ORDER granting 339 Motion to Appear Pro Hac Vice of Kunyu L. Ching for Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, and Samuel James Shaw pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Gwynne E. Birzer on 12/21/22. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 12/21/2022) |
| 12/21/2022 | 344 | NOTICE OF CANCELLED HEARING: (303) MOTION to Exclude opinions of Plaintiffs' experts and (305) MOTION to Exclude or Limit the Testimony of Christi Asbe Hearings that were set for 12/22/22 at 1:00pm have been cancelled due to inclement weather. New hearing date to follow this entry. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 12/21/2022) |
| 12/21/2022 | 345 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. 303 MOTION to Exclude *opinions of Plaintiffs' experts*, 305 MOTION to Exclude *or Limit the Testimony of Christi Asbe* are set for Oral Argument in Chambers for 1/5/2023 at 01:00 PM in KC Room 529 (KHV) before District Judge Kathryn H. Vratil. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 12/21/2022) |
| 12/22/2022 | 346 | Unopposed MOTION to Continue Oral Argument on Jan 5, 2023 by Defendants Herman Jones, Brandon McMillan, Doug Schulte. (Chalmers, Arthur) (Entered: 12/22/2022) |
| 12/22/2022 | 347 | Unopposed MOTION to Continue Oral Argument on Jan 5, 2023 by Defendants Herman Jones, Brandon McMillan, Doug Schulte. (Chalmers, Arthur) (Entered: 12/22/2022) |
| 12/22/2022 | 348 | ORDER sustaining 346 Motion to Continue.; sustaining 347 Motion to Continue. Signed by District Judge Kathryn H. Vratil on 12/22/2022. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 12/22/2022) |
| 12/22/2022 | 349 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. 303 MOTION to Exclude *opinions of Plaintiffs'* and 305 MOTION to Exclude *or Limit the Testimony of Christi Asbe* are set for Oral Argument in Chambers 1/3/2023 at 11:00 AM in KC Room 529. Additionally on 1/3/2023 at 11:00 AM oral arguments will be heard on Plaintiffs' Fourth Amendment claim against defendant Herman Jones in 307 MOTION for Summary Judgment and 295 MOTION for Summary Judgment in KC Room 529 (KHV) before District Judge Kathryn H. Vratil. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 12/22/2022) |
| 12/23/2022 | 350 | Second MOTION to Sever *for separate trials* by Defendants Herman Jones, Brandon McMillan, Doug Schulte (Chalmers, Arthur) (Entered: 12/23/2022) |
| 12/23/2022 | 351 | MEMORANDUM IN SUPPORT of 350 Second Motion to Sever or for separate trials by Defendants Herman Jones, Brandon McMillan, Doug Schulte. (Chalmers, Arthur) (Entered: 12/23/2022) |
| 12/26/2022 | 352 | MEMORANDUM AND ORDER. Defendant's Motion For Summary Judgment concerning claims against Defendant Jones (Doc. 295 ) filed August 24, 2022 is |

| | | |
|---|---|---|
| | | SUSTAINED as to plaintiffs' interstate travel claim against Herman Jones under Article IV and the Fourteenth Amendment. The Court defers ruling on defendants' motion as to plaintiffs' Fourth Amendment claim against Jones. Plaintiffs' Motion For Summary Judgment against Defendant Herman Jones (Doc. 307 ) filed September 8, 2022 is OVERRULED as to plaintiff's claim interstate travel claim against Herman Jones under Article IV and the Fourteenth Amendment for substantially the same reasons. The Court defers ruling on plaintiffs' motion as to plaintiffs' Fourth Amendment claim against Jones. Signed by District Judge Kathryn H. Vratil on 12/23/2022. (mam) (Entered: 12/26/2022) |
| 12/29/2022 | 353 | RESPONSE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re 350 Motion to Sever *or for Separate Trials* (Perry, Madison) (Entered: 12/29/2022) |
| 01/01/2023 | 354 | NOTICE of Hearing CHANGE: Start time for Oral Arguments on 303 MOTION to Exclude opinions of Plaintiffs' experts, 305 MOTION to Exclude or Limit the Testimony of Christi Asbe, Plaintiffs' Fourth Amendment claim against defendant Herman Jones in 307 MOTION for Summary Judgment and 295 MOTION for Summary Judgment have been moved to 1/3/2023 at 2:00 PM in KC Room 529 (KHV) before District Judge Kathryn H. Vratil. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 01/01/2023) |
| 01/03/2023 | 355 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: Hearing on 303 MOTION to Exclude opinions of Plaintiffs' experts, 305 MOTION to Exclude or Limit the Testimony of Christi Asbe, Plaintiffs' Fourth Amendment claim against defendant Herman Jones in 307 MOTION for Summary Judgment and 295 MOTION for Summary Judgment was held on 1/3/2023 at 2:00 PM in KC Room 529 before District Judge Kathryn H. Vratil. 350 Motion to Sever was granted; 303 Motion to Exclude was overruled; 305 Motion to Exclude was overruled as moot. See attached minute sheet for further. (Court Reporter Kim Greiner) (alh) (Entered: 01/03/2023) |
| 01/04/2023 | 356 | TRANSCRIPT of Motion Hearing held January 3, 2023 before Judge Kathryn H. Vratil, Court Reporter Kim Greiner, 913-735-2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Madison Perry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 4/4/2023. (kg) (Entered: 01/04/2023) |
| 01/07/2023 | 357 | MOTION to Amend/Correct 290 Pretrial Order, by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney (Attachments: # 1 Exhibit Redline Comparison of Pretrial Order, # 2 Exhibit Clean Copy of Amended Pretrial Order)(Perry, Madison) (Entered: 01/07/2023) |
| 01/07/2023 | 358 | RESPONSE by Consol Plaintiffs Mark Erich, Shawna Maloney, Plaintiffs Samuel James Shaw, Blaine Franklin Shaw, Joshua Bosire re 355 Order on Motion to Sever, Order on Motion to Exclude, Motion Hearing, *Plaintiffs' Response to Court's Order to Show Cause Regarding Plaintiffs' Claim for Injunctive Relief* (Attachments: # 1 Affidavit Declaration |

| | | |
|---|---|---|
| | | of Curtis Martinez, # 2 Affidavit Declaration of Christopher M Jones)(Perry, Madison) (Entered: 01/07/2023) |
| 01/08/2023 | 359 | RESPONSE by Defendant Herman Jones, Consol Defendant Herman Jones re 355 Order on Motion to Sever, Order on Motion to Exclude, Motion Hearing, *DEFENDANT JONES' RESPONSE IN SUPPORT OF JUDGMENT ON THE PLEADINGS* (Chalmers, Arthur) (Entered: 01/08/2023) |
| 01/08/2023 | 360 | NOTICE of Hearing CHANGE: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING The Telephone Conference set for 1/9/2023 has been moved to 03:00 PM in Telephone KHV - CONFERENCE LINE 1-888-363-4749 ACCESS CODE 1654737 before District Judge Kathryn H. Vratil. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 01/08/2023) |
| 01/09/2023 | 361 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: TELEPHONE CONFERENCE was held on 1/9/2023. (Court Reporter Nancy Wiss.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 01/09/2023) |
| 01/09/2023 | 362 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Pretrial Conference is set for 1/24/2023 at 01:00 PM before District Judge Kathryn H. Vratil. Call in to Telephone KHV - CONFERENCE LINE 1-888-363-4749 and use ACCESS CODE 1654737.(This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 01/09/2023) |
| 01/12/2023 | 363 | Joint MOTION for Judgment *approval of Shaw Consent Judgment regarding Samuel Shaw Claims* by Defendants Herman Jones, Brandon McMillan, Doug Schulte (Attachments: # 1 Exhibit Proposed Consent Judgment)(Chalmers, Arthur) (Entered: 01/12/2023) |
| 01/13/2023 | 364 | MOTION in Limine *regarding Shaw trial* by Defendant Doug Schulte (Chalmers, Arthur) (Entered: 01/13/2023) |
| 01/13/2023 | 365 | MOTION in Limine *regarding Bosire trial* by Defendant Brandon McMillan (Chalmers, Arthur) (Entered: 01/13/2023) |
| 01/13/2023 | 366 | CONSENT JUDGMENT as to Samuel Shaw's claims against Douglas Shulte: Re 363 Motion for Judgment. Signed by District Judge Kathryn H. Vratil on 1/13/23. (msb) (Entered: 01/13/2023) |
| 01/17/2023 | 367 | MOTION in Limine to Exclude Evidence of Awards, Commendations, and Honors by Plaintiffs Joshua Bosire, Blaine Franklin Shaw. (Perry, Madison) (Entered: 01/17/2023) |
| 01/17/2023 | 368 | MOTION in Limine to Limit Evidence and Argument Regarding Defendant McMillan's Wife's Cancer by Plaintiff Joshua Bosire. (Attachments: # 1 Exhibit 1 - Index, # 2 Exhibit 2_ McMillan Deposition, # 3 Exhibit 3 - OAG010453, # 4 Exhibit 4 - OAG008570-71, # 5 Exhibit 5 - OAG008575, # 6 Exhibit 6 - OAG008588) (Perry, Madison) (Entered: 01/17/2023) |
| 01/17/2023 | 369 | MOTION in Limine to Exclude Evidence of his Deposition Conduct by Plaintiff Joshua Bosire. (Attachments: # 1 Exhibit 1, Schulte Deposition)(Perry, Madison) (Entered: 01/17/2023) |
| 01/17/2023 | 370 | MOTION in Limine to Exclude Testimony and Exhibits Regarding Items Found in the Search of his Vehicle by Plaintiff Blaine Franklin Shaw. (Attachments: # 1 Exhibit 1 - Index, # 2 Exhibit 2_ Schulte Declaration, # 3 Exhibit 3_ OAG000002-03, # 4 Exhibit 4_ OAG000007, # 5 Exhibit 5_ OAG000008-9, # 6 Exhibit 6_ Schulte Deposition, # 7 |

| | | |
|---|---|---|
| | | Exhibit 7_ Transcript of OAG000025, # 8 Exhibit 8_ Transcript of OAG000026, # 9 Exhibit 9_ B. Shaw Deposition)(Perry, Madison) (Entered: 01/17/2023) |
| 01/17/2023 | 371 | MOTION in Limine to Limit the Testimony of Sarah Washburn by Plaintiffs Joshua Bosire, Blaine Franklin Shaw. (Attachments: # 1 Exhibit 1 - Index, # 2 Exhibit 2_ Washburn Deposition, # 3 Exhibit 3_ Defendants' Supplemental Rule 26(a)(1) Initial Disclosures, # 4 Exhibit 4_ Defendant Jones' Amended Rule 26(a)(2)(C) disclosures) (Perry, Madison) (Entered: 01/17/2023) |
| 01/17/2023 | 372 | MOTION in Limine to Exclude YouTube Video by Plaintiff Joshua Bosire. (Attachments: # 1 Exhibit 1, Bosire Deposition)(Perry, Madison) (Entered: 01/17/2023) |
| 01/17/2023 | 373 | MOTION in Limine to Exclude Evidence of his Prior Arrests and Criminal Charges by Plaintiff Blaine Franklin Shaw. (Attachments: # 1 Exhibit 1 - Index, # 2 Exhibit 2_ Schulte Deposition, # 3 Exhibit 3 - Transcript of Dash Camera Audio, # 4 Exhibit 4_ Schulte Declaration, # 5 Exhibit 5_ B. Shaw's Interrogatory Responses, # 6 Envelope Exhibit 6_ B. Shaw Deposition)(Perry, Madison) (Entered: 01/17/2023) |
| 01/17/2023 | 374 | DESIGNATION OF DEPOSITION(S) by Joshua Bosire. (Perry, Madison) (Entered: 01/17/2023) |
| 01/17/2023 | 375 | DESIGNATION OF DEPOSITION(S) by Blaine Franklin Shaw. (Perry, Madison) (Entered: 01/17/2023) |
| 01/20/2023 | 376 | AMENDED DOCUMENT by Blaine Franklin Shaw. Amendment to 375 Designation of Depositions. (Perry, Madison) (Entered: 01/20/2023) |
| 01/20/2023 | 377 | AMENDED DOCUMENT by Joshua Bosire. Amendment to 374 Designation of Depositions. (Perry, Madison) (Entered: 01/20/2023) |
| 01/23/2023 | 378 | ORDER. On 1/3/2023, the Court orally granted defendants' Motion To Sever Or For Separate Trials (Doc. 350 ). The Court also ruled that the trials be held in Kansas City, Kansas instead of Wichita, Kansas. Blaine Shaw's Fourth Amendment claim against Doug Schulte is set for a five-day jury trial starting 2/6/2023. Joshua Bosire's Fourth Amendment claim against Brandon McMillan is set for a five-day jury trial starting 2/13/2023. The Order of Consolidation (Doc. 84 ) filed 11/10/2020, which consolidated Case No. 19-1343 and Case No. 20-1067, is VACATED. All claims against Herman Jones in both cases will be jointly tried on a date to be determined. Signed by District Judge Kathryn H. Vratil on 1/23/2023. (mam) (Entered: 01/23/2023) |
| 01/23/2023 | 379 | FINAL WITNESS LIST by Blaine Franklin Shaw. (Perry, Madison) (Entered: 01/23/2023) |
| 01/23/2023 | 380 | FINAL WITNESS LIST by Joshua Bosire. (Perry, Madison) (Entered: 01/23/2023) |
| 01/23/2023 | 381 | SUPPLEMENTAL VOIR DIRE QUESTIONS by Blaine Franklin Shaw. (Perry, Madison) Modified on 1/26/2023 to re-title. (mam) (Entered: 01/23/2023) |
| 01/23/2023 | 382 | SUPPLEMENTAL VOIR DIRE QUESTIONS by Joshua Bosire. (Perry, Madison) Modified on 1/26/2023 to re-title. (mam) (Entered: 01/23/2023) |
| 01/23/2023 | 383 | PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS by Blaine Franklin Shaw. (Attachments: # 1 Exhibit A - Plaintiff's Proposed Jury Instructions and Verdict Forms) (Perry, Madison) Modified on 1/24/2023 to correct exhibit text. (kas) Modified on 1/26/2023 to re-title. (mam) (Entered: 01/23/2023) |
| 01/23/2023 | 384 | PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS by Joshua Bosire. (Attachments: # 1 Exhibit A - Plaintiff's Proposed Jury Instructions and Verdict Forms) |

| | | |
|---|---|---|
| | | (Perry, Madison) Modified on 1/24/2023 to correct exhibit text. (kas) Modified on 1/26/2023 to re-title. (mam) (Entered: 01/23/2023) |
| 01/23/2023 | [385](#) | PLAINTIFFS' JOINT TRIAL BRIEF by Joshua Bosire, Blaine Franklin Shaw. (Perry, Madison) (Entered: 01/23/2023) |
| 01/23/2023 | [386](#) | MEMORANDUM IN OPPOSITION by Plaintiff Blaine Franklin Shaw re [364](#) Motion in Limine regarding Shaw trial. (Perry, Madison) (Entered: 01/23/2023) |
| 01/23/2023 | [387](#) | MEMORANDUM IN OPPOSITION by Plaintiff Joshua Bosire re [365](#) Motion in Limine regarding Bosire trial. (Attachments: # [1](#) Exhibit Index, # [2](#) Exhibit Jones July 25, 2019 PSU Letter to McMillan, # [3](#) Exhibit August 5, 2019 Letter from J. Vanderwalle to B. McMillant 9, 2019 Letter from H. Jones to J. Bosire, # [4](#) Exhibit August 9, 2019 Letter from H. Jones to J. Bosire, # [5](#) Exhibit May 17, 2019 Letter from B. McMillan to J. Bullock, # [6](#) Exhibit Brandon McMillan Deposition Excerpts, # [7](#) Exhibit April 24, 2019 Letter from PSU Investigator to Mr. Bosire, # [8](#) Exhibit Mitchell Clark Deposition Excerpts, # [9](#) Exhibit Excel Sheet, # [10](#) Exhibit Policy Number ADM-07, # [11](#) Exhibit Deposition of Joseph Bullock Excerpts)(Perry, Madison) (Entered: 01/23/2023) |
| 01/23/2023 | [388](#) | JOINT FINAL EXHIBIT LIST by Joshua Bosire, Blaine Franklin Shaw. (Perry, Madison) (Entered: 01/23/2023) |
| 01/23/2023 | [389](#) | RESPONSE by Defendant/Consol Defendant Herman Jones re [357](#) Motion to Amend the Pretrial Order. (Chalmers, Arthur) (Entered: 01/23/2023) |
| 01/23/2023 | [390](#) | RESPONSE by Defendant Doug Schulte re Plaintiff Shaw's [367](#) Motion in Limine, [370](#) Motion in Limine, [371](#) Motion in Limine and [373](#) Motion in Limine. (Chalmers, Arthur) (Entered: 01/23/2023) |
| 01/23/2023 | [391](#) | RESPONSE by Defendant Brandon McMillan re Plaintiff Bosire's [367](#) Motion in Limine, [368](#) Motion in Limine, [369](#) Motion in Limine, [371](#) Motion in Limine, [372](#) Motion in Limine. (Chalmers, Arthur) (Entered: 01/23/2023) |
| 01/23/2023 | [392](#) | OBJECTION(S) to [377](#) Amended Document *and cross depo designation* by Brandon McMillan. (Chalmers, Arthur) (Entered: 01/23/2023) |
| 01/23/2023 | [393](#) | OBJECTION(S) to [376](#) Amended Document *and cross designation by Douglas Schulte* by Herman Jones. (Chalmers, Arthur) (Entered: 01/23/2023) |
| 01/23/2023 | [394](#) | FINAL WITNESS AND EXHIBIT DISCLOSURES by Brandon McMillan. (Chalmers, Arthur) (Entered: 01/23/2023) |
| 01/23/2023 | [395](#) | FINAL WITNESS AND EXHIBIT DISCLOSURES by Doug Schulte. (Chalmers, Arthur) Modified on 1/27/2023 to correct the filer. (mam) (Entered: 01/23/2023) |
| 01/23/2023 | [396](#) | TRIAL BRIEF by Doug Schulte. (Chalmers, Arthur) Modified on 1/27/2023 to correct the filer. (mam) (Entered: 01/23/2023) |
| 01/23/2023 | [397](#) | TRIAL BRIEF by Brandon McMillan.(Chalmers, Arthur) (Entered: 01/23/2023) |
| 01/23/2023 | [398](#) | PROPOSED JURY INSTRUCTIONS by Brandon McMillan.(Chalmers, Arthur) (Entered: 01/23/2023) |
| 01/23/2023 | [399](#) | PROPOSED JURY INSTRUCTIONS by Herman Jones.(Chalmers, Arthur) (Entered: 01/23/2023) |
| 01/24/2023 | [415](#) | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: FINAL PRETRIAL CONFERENCE was held on 1/24/2023. [357](#) Motion to Amend/Correct [290](#) Pretrial Order is GRANTED. See minute sheet attached for further. (Court Reporter Nancy Wiss.) (alh) (Entered: 01/26/2023) |

| | | |
|---|---|---|
| 01/25/2023 | 400 | OBJECTION to 381 Supplemental Voir Dire Questions by Doug Schulte. (Chalmers, Arthur) (Modified on 1/26/2023 to add link. (heo)) Modified on 1/27/2023 to correct the filer. (mam) (Entered: 01/25/2023) |
| 01/25/2023 | 401 | OBJECTION to 382 Supplemental Voir Dire Questions by Brandon McMillan. (Chalmers, Arthur) (Entered: 01/25/2023) |
| 01/25/2023 | 402 | OBJECTION to 381 Supplemental Voir Dire Questions by Doug Schulte. (Chalmers, Arthur) Modified on 1/27/2023 to correct the filer. (mam) (Entered: 01/25/2023) |
| 01/25/2023 | 403 | MEMORANDUM AND ORDER sustaining in part and overruling in part 364 MOTION in Limine regarding Shaw trial. Signed by District Judge Kathryn H. Vratil on 1/25/2023. (kas) (Entered: 01/25/2023) |
| 01/25/2023 | 404 | OBJECTION(S) to 393 Objection(s) *to Defendant Douglas Schulte's Cross- Designations* by Blaine Franklin Shaw. (Perry, Madison) (Entered: 01/25/2023) |
| 01/25/2023 | 405 | OBJECTION(S) to 392 Objection(s) *to Defendant Brandon McMillan's Cross-Designations* by Joshua Bosire. (Perry, Madison) (Entered: 01/25/2023) |
| 01/25/2023 | 406 | OBJECTION(S) to 399 Proposed Jury Instructions *filed by Defendant Doug Schulte* by Blaine Franklin Shaw. (Perry, Madison) (Entered: 01/25/2023) |
| 01/25/2023 | 407 | OBJECTION(S) to 398 Proposed Jury Instructions *filed by Defendant Brandon McMillan* by Joshua Bosire. (Perry, Madison) (Entered: 01/25/2023) |
| 01/25/2023 | 408 | MOTION in Limine *to Exclude Evidence Concerning Social Security Disability Claim and Decision* by Plaintiff Blaine Franklin Shaw (Perry, Madison) (Entered: 01/25/2023) |
| 01/25/2023 | 409 | OBJECTION(S) to 384 Proposed Jury Instructions *by Plaintiff* by Brandon McMillan. (Chalmers, Arthur) (Entered: 01/25/2023) |
| 01/25/2023 | 410 | OBJECTION(S) to 383 Proposed Jury Instructions *by Plaintiff for Def Schulte* by Herman Jones. (Chalmers, Arthur) (Entered: 01/25/2023) |
| 01/25/2023 | 411 | PROVISIONALLY SEALED EXHIBIT(S) IN SUPPORT of 408 MOTION in Limine *to Exclude Evidence Concerning Social Security Disability Claim and Decision* by Plaintiff Blaine Franklin Shaw (Perry, Madison) (Entered: 01/25/2023) |
| 01/25/2023 | 412 | NOTICE OF PROPOSED SEALED RECORD by Blaine Franklin Shaw re 411 PROVISIONALLY SEALED Exhibits in Support of Motion *in Limine to Exclude Evidence Concerning Social Security Disability Claim and Decision* (Perry, Madison) (Entered: 01/25/2023) |
| 01/26/2023 | 413 | RESPONSE by Defendant Doug Schulte re 408 Motion in Limine (Chalmers, Arthur) (Entered: 01/26/2023) |
| 01/26/2023 | 414 | MEMORANDUM AND ORDER. Plaintiffs' Motion In Limine To Exclude Evidence of Awards, Commendations, and Honors (Doc. 367 ) is overruled as moot as to Plaintiff Shaw. Plaintiff Blaine Shaw's Motion In Limine To Exclude Testimony and Exhibits Regarding Items Found in the Search of his Vehicle (Doc. 370 ) is sustained. Plaintiffs' Blaine Shaw and Joshua Bosire's Motion In Limine to Limit the Testimony of Sarah Washburn (Doc. 371 ) is overruled as moot as to Plaintiff Shaw. Plaintiff Blaine Shaw's Motion In Limine to Exclude Evidence of his Prior Arrests and Criminal Charges (Doc. 373 ) is sustained. Signed by District Judge Kathryn H. Vratil on 1/25/2023. (mam) (Entered: 01/26/2023) |
| 01/30/2023 | 416 | OBJECTION(S) to 388 Exhibit List by Doug Schulte. (Chalmers, Arthur) (Entered: 01/30/2023) |

| | | |
|---|---|---|
| 01/30/2023 | [417](#) | OBJECTION(S) to [388](#) Exhibit List by Brandon McMillan. (Chalmers, Arthur) (Entered: 01/30/2023) |
| 01/30/2023 | [418](#) | OBJECTION(S) to [395](#) Witness & Exhibit List by Blaine Franklin Shaw. (Attachments: # [1](#) Exhibit 1 - Proposed redactions of the Police Service Dog Report)(Perry, Madison) Modified on 1/31/2023 to remove duplicate text (kmc). (Entered: 01/30/2023) |
| 01/30/2023 | [419](#) | OBJECTION(S) to [394](#) Witness & Exhibit List by Joshua Bosire. (Perry, Madison) (Entered: 01/30/2023) |
| 01/30/2023 | [420](#) | DESIGNATION OF DEPOSITION(S) by Blaine Franklin Shaw. (Perry, Madison) (Entered: 01/30/2023) |
| 01/30/2023 | [421](#) | DESIGNATION OF DEPOSITION(S) by Joshua Bosire. (Perry, Madison) (Entered: 01/30/2023) |
| 01/31/2023 | [422](#) | NOTICE by Blaine Franklin Shaw re [412](#) Notice of Proposed Sealed Record (Brett, Sharon) (Entered: 01/31/2023) |
| 02/02/2023 | [423](#) | MOTION to Sequester Witnesses under Rule 615 by Defendants Brandon McMillan, Doug Schulte (Chalmers, Arthur) Modified title on 2/3/2023 (kmc). (Entered: 02/02/2023) |
| 02/02/2023 | [424](#) | PROPOSED JURY INSTRUCTIONS by Brandon McMillan, Doug Schulte.(Chalmers, Arthur) (Entered: 02/02/2023) |
| 02/03/2023 | [425](#) | MEMORANDUM IN OPPOSITION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw re [423](#) MOTION Sequestration under Rule 615 (Perry, Madison) (Entered: 02/03/2023) |
| 02/03/2023 | [426](#) | OBJECTION(S) to [424](#) Proposed Jury Instructions by Joshua Bosire, Blaine Franklin Shaw. (Perry, Madison) (Entered: 02/03/2023) |
| 02/03/2023 | 427 | ORDER - [408](#) Plaintiff Blaine Shaw's Motion in Limine to Exclude Evidence Concerning His Social Security Disability Claim and Decision is sustained. Defendant is free to cross-examine plaintiff on the reasons why he did not work after his car accident and why he ceased work as an Uber driver. The ALJ's opinion was based on an application filed in 2014 and an evidentiary record developed in 2016. The ALJ's opinions with regard to plaintiff's credibility, and the extent of his disability (assessed under statutory standards), are of such slight relevance that considerations of undue delay, prejudice and jury confusion require exclusion of testimony and exhibits on the subject of plaintiff's disability claim. Signed by District Judge Kathryn H. Vratil on 2/3/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 02/03/2023) |
| 02/06/2023 | | **Set Additional Jury Trial Days: Jury Trial set for [2/7/2023 at 09:00 AM](#), [2/8/2023 at 09:00 AM](#), [2/9/2023 at 09:00 AM](#), [2/10/2023 at 09:00 AM](#) in KC Courtroom 440 (JWL/KHV) before District Judge Kathryn H. Vratil. (alh)** (Entered: 02/06/2023) |
| 02/06/2023 | 428 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: JURY TRIAL was held on 2/6/2023. Plaintiff and Defendant's opening statements. Evidence begins. Court adjourns at 4:44 PM. Trial will resume 2/7/23 at 9:00 AM. (Court Reporter Nancy Wiss.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 02/06/2023) |
| 02/07/2023 | [429](#) | TRIAL BRIEF *re motorist's obligation to pull over* by Doug Schulte.(Chalmers, Arthur) (Entered: 02/07/2023) |
| 02/07/2023 | [430](#) | PROPOSED JURY INSTRUCTIONS by Blaine Franklin Shaw.(Perry, Madison) (Entered: 02/07/2023) |

| | | |
|---|---|---|
| 02/07/2023 | 431 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: JURY TRIAL was held on 2/7/2023. Plaintiff continues with presentation. Plaintiff rests. Defendant rests. Court adjourns at 4:29 PM. Trial will resume at 10:00 AM and an informal meeting with counsel will be held on the 5th floor, in the Judge's Meeting Room at 8:30 AM.(Court Reporter Nancy Wiss.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 02/07/2023) |
| 02/07/2023 | 432 | PROPOSED JURY INSTRUCTIONS by Doug Schulte.(Chalmers, Arthur) (Entered: 02/07/2023) |
| 02/07/2023 | 433 | MOTION for Judgment *as a Matter of Law Pursuant to Fed. Civ. P. 50* by Plaintiff Blaine Franklin Shaw (Brett, Sharon) (Entered: 02/07/2023) |
| 02/07/2023 | 434 | PROPOSED JURY INSTRUCTIONS by Blaine Franklin Shaw.(Perry, Madison) (Entered: 02/07/2023) |
| 02/08/2023 | 435 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: Plaintiff presents evidence. Plaintiff rests. Defendant rests. Close of Evidence. Instructions conference. Jury instructions read to jurors. Closing arguments by the parties. Jury deliberations begin. Jury returns unanimous verdict. Jury polled. Clerk to enter judgment in accordance with the verdict. JURY TRIAL completed on 2/8/2023. See attached minute sheet for further details. (Court Reporter Nancy Wiss.)(Attachments: #(1) Exhibit List, #(2) Witness Sheet) (alh) (Entered: 02/08/2023) |
| 02/08/2023 | 436 | JURY INSTRUCTIONS.(alh) (Entered: 02/08/2023) |
| 02/08/2023 | 437 | Jury questions filed.(alh) (Additional attachment(s) added on 2/8/2023: # 1 Unredacted Jury Question) (alh). (Entered: 02/08/2023) |
| 02/08/2023 | 438 | JURY VERDICT for Plaintiff and against Defendant.(alh) (Additional attachment(s) added on 2/8/2023: # 1 Unredacted Jury Verdict) (alh). (Entered: 02/08/2023) |
| 02/09/2023 | 439 | (VACATED per 447) -- JUDGMENT. Pursuant to the Verdict returned by a jury on February 8, 2023, judgment is entered for Plaintiff Blaine Franklin Shaw and against Defendant Doug Schulte. Signed by deputy clerk on 2/8/2023. (mam) Modified on 2/13/2023, see 447. (mam) (Entered: 02/09/2023) |
| 02/09/2023 | 440 | MEMORANDUM AND ORDER overruled as moot 368 Plaintiff Joshua Bosire's Motion In Limine To Limit And Argument Regarding Defendant McMillan's Wife's Cancer; overruled 369 Plaintiff Joshua Bosire's Motion In Limine To Exclude Evidence Of His Deposition Conduct; overruled as moot 371 Plaintiffs' Blaine Shaw And Joshua Bosire's Motion In Limine To Limit The Testimony Of Sarah Washburn; overruled in part and sustained in part 372 Plaintiff Joshua Bosire's Motion In Limine To Exclude YouTube Video. Signed by District Judge Kathryn H. Vratil on 02/09/2023. (kmc) (Entered: 02/09/2023) |
| 02/09/2023 | 441 | MEMORANDUM AND ORDER sustained in part and overruled in part 365 Defendant McMillan's Motions In Limine and Supporting Memorandum. Signed by District Judge Kathryn H. Vratil on 02/09/2023. (kmc) (Entered: 02/09/2023) |
| 02/09/2023 | 442 | SUPPLEMENTAL PROPOSED JURY SPECIAL QUESTIONS by Brandon McMillan. (Chalmers, Arthur) (Modified on 2/10/2023 to correct title. (heo)) (Entered: 02/09/2023) |
| 02/10/2023 | 443 | MOTION to Continue Trial Scheduled to Start 2/13/2023 by Defendant Brandon McMillan. (Chalmers, Arthur) (Entered: 02/10/2023) |
| 02/10/2023 | 444 | RESPONSE by Plaintiff Joshua Bosire re 443 Motion to Continue Trial. (Perry, Madison) (Entered: 02/10/2023) |

| | | |
|---|---|---|
| 02/10/2023 | 445 | NOTICE of Hearing: **THIS IS AN OFFICIAL NOTICE FOR THIS HEARING.** Telephone Conference set for 2/10/2023 at 02:00 PM in Telephone KHV - CONFERENCE LINE 1-888-363-4749 ACCESS CODE 1654737 before District Judge Kathryn H. Vratil. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(alh) (Entered: 02/10/2023) |
| 02/10/2023 | 446 | ORDER sustaining 443 Defendant McMillan's Motion for Continuance of Trial. Jury Trial will commence on 4/24/2023 at 09:00 AM in KC Courtroom 440 (JWL/KHV) before District Judge Kathryn H. Vratil. Signed by District Judge Kathryn H. Vratil on 2/10/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 02/10/2023) |
| 02/10/2023 | 447 | ORDER - The Clerk is hereby ordered to Vacate Judgment (Doc. 439), entered on 2/9/23. The judgment was entered prematurely, before the Court has resolved the issue of qualified immunity. Signed by District Judge Kathryn H. Vratil on 2/10/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.)(alh) (Entered: 02/10/2023) |
| 02/13/2023 | 448 | ORDER - For reasons stated on the record on 2/6/2023, during the trial of Shaw v. Schulte, 423 Motion to Sequester Witnesses Under Rule 615 has been OVERRULED. Signed by District Judge Kathryn H. Vratil on 2/13/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 02/13/2023) |
| 02/13/2023 | 449 | ORDER TO SHOW CAUSE: No later than 5:00 p.m. on February 17, 2023, defendant shall show just cause in writing why this Court should find that defendant is entitled to qualified immunity. Plaintiff may respond by February 24, 2023. Show Cause Response due by 2/17/2023. Signed by District Judge Kathryn H. Vratil on February 13, 2023. (mls) Modified signature date (mls). (Entered: 02/13/2023) |
| 02/14/2023 | | **DOCKET ANNOTATION:** Please note that intended signature date on 449 Order to Show Cause is February, 2023. (mls) (Entered: 02/14/2023) |
| 02/17/2023 | 450 | RESPONSE re 449 Order to Show Cause, by Defendant Doug Schulte(Chalmers, Arthur) (Entered: 02/17/2023) |
| 02/17/2023 | 451 | NOTICE OF CHANGE OF FIRM NAME OR ADDRESS by Sharon Brett (Brett, Sharon) (Entered: 02/17/2023) |
| 02/23/2023 | 452 | REPLY TO Response/Objection re 449 Order to Show Cause, by Plaintiff Blaine Franklin Shaw(Perry, Madison) (Entered: 02/23/2023) |
| 02/28/2023 | 453 | MOTION for Order *Requesting Pretrial Conference* by Plaintiff Joshua Bosire (Perry, Madison) Modified motion event on 3/1/2023 (msb). (Entered: 02/28/2023) |
| 03/01/2023 | 454 | ORDER 433 Plaintiff Blaine Shaw's Rule 50 Motion for Judgment as a Matter of Law was previously OVERRULED for reasons stated on the record during trial on February 7, 2023. Signed by District Judge Kathryn H. Vratil on 3/1/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 03/01/2023) |
| 03/02/2023 | 455 | REPLY TO Response/Objection re 449 Order to Show Cause, by Defendant Doug Schulte(Chalmers, Arthur) (Entered: 03/02/2023) |
| 03/02/2023 | 456 | ORDER granting 453 Motion for Pretrial Conference. A pretrial telephone conference has been set for 3/6/2023 at 02:00 PM before District Judge Kathryn H. Vratil. Parties are to call in to Telephone KHV - CONFERENCE LINE 1-888-363-4749 and enter ACCESS CODE 1654737. Signed by District Judge Kathryn H. Vratil on 3/2/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 03/02/2023) |

| | | |
|---|---|---|
| 03/06/2023 | 457 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: STATUS CONFERENCE was held on 3/6/2023. See attached minute sheet for further details. (Court Reporter Sherry Harris.) (alh) (Entered: 03/07/2023) |
| 03/10/2023 | 458 | RENEWED MOTIONS in Limine by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Perry, Madison) (Entered: 03/10/2023) |
| 03/16/2023 | 459 | Joint MOTION to Amend Scheduling Order *Proposed Pretrial Deadlines for Bench Trial* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 03/16/2023) |
| 03/20/2023 | 460 | ORDER: For substantially the reasons set forth in Plaintiff Blaine Shaw's Response to Defendant Douglas Schulte's Show Cause Response (Doc. #452) filed February 23, 2023, the Court finds that plaintiff has proved the violation of a constitutional right and that said right was so clearly established that a reasonable officer in Douglas Schulte's position would have known that his conduct violated plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures. Accordingly, defendant Douglas Schulte is not entitled to qualified immunity in this case. Signed by District Judge Kathryn H. Vratil on 3/20/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.)(alh) (Entered: 03/20/2023) |
| 03/20/2023 | 461 | ORDER REGARDING PRETRIAL DEADLINES FOR BENCH TRIAL granting 459 Motion to Amend Scheduling Order. Signed by District Judge Kathryn H. Vratil on 3/20/2023. (ca) (Entered: 03/20/2023) |
| 03/22/2023 | 462 | RESPONSE IN OPPOSITION by Defendant/Consol Defendant Herman Jones re 458 Renewed Motions in Limine. (Chalmers, Arthur) (Entered: 03/22/2023) |
| 03/27/2023 | 463 | Unopposed MOTION for Order *Motion to Excuse Certain Named Plaintiffs from Attendance at All or Part of the Bench Trial* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 03/27/2023) |
| 03/27/2023 | 464 | ORDER granting 463 Plaintiffs' Unopposed Motion to Excuse Certain Named Plaintiffs From Attendance At All or Part of the Bench Trial. Signed by District Judge Kathryn H. Vratil on 3/27/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 03/27/2023) |
| 04/03/2023 | 465 | MEMORANDUM AND ORDER sustaining 458 Plaintiffs' Renewed Motions In Limine which incorporates Plaintiffs Blaine Shaw and Joshua Bosire's Motion in Limine to Limit the Testimony of Sarah Washburn (Doc. 371 ), is sustained as to Sarah Washburn. Signed by District Judge Kathryn H. Vratil on 4/3/2023. (mam) (Entered: 04/03/2023) |
| 04/03/2023 | 466 | MEMORANDUM AND ORDER. Plaintiffs' Renewed Motions In Limine (Doc. 458 ) which incorporates Plaintiffs' Motion to Exclude or Limit the Testimony of Christi Asbe (Doc. 305 ), is sustained as to Christi Albe. Signed by District Judge Kathryn H. Vratil on 4/3/2023. (mam) (Entered: 04/03/2023) |
| 04/03/2023 | 467 | DEPOSITION DESIGNATIONS by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 04/03/2023) |
| 04/06/2023 | 468 | JOINT EXHIBIT LIST by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 04/06/2023) |
| 04/06/2023 | 469 | JOINT WITNESS LIST by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 04/06/2023) |
| 04/06/2023 | 470 | FINAL WITNESS AND EXHIBIT DISCLOSURES by Herman Jones. (Chalmers, |

| | | Arthur) (Entered: 04/06/2023) |
|---|---|---|
| 04/10/2023 | [471](#) | MOTION to Permit Nonparty Witnesses to Testify Remotely by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 04/10/2023) |
| 04/13/2023 | [472](#) | OBJECTIONS to 442 Supplemental Proposed Jury Special Questions AND SUPPLEMENTAL OBJECTION to 398 Proposed Jury Instructions by Joshua Bosire. (Attachments: # 1 Appendix)(Perry, Madison) Modified on 4/26/2023, now linked to 398. (mam) (Entered: 04/13/2023) |
| 04/13/2023 | [473](#) | AMENDED SUPPLEMENTAL PROPOSED JURY SPECIAL QUESTIONS by Brandon McMillan. (Chalmers, Arthur) (Entered: 04/13/2023) |
| 04/13/2023 | [474](#) | REQUEST OF LIMITING INSTRUCTION by Herman Jones, Brandon McMillan, Doug Schulte. (Chalmers, Arthur) Modified on 4/13/2023 to re-title. (mam) Modified on 4/17/2023 to make pend as a motion per KHV Chambers (sz). (Entered: 04/13/2023) |
| 04/14/2023 | [475](#) | OBJECTIONS to 473 Amended Supplemental Proposed Jury Special Questions by Joshua Bosire. (Perry, Madison) (Entered: 04/14/2023) |
| 04/17/2023 | [476](#) | FINAL WITNESS AND EXHIBIT DISCLOSURES by Herman Jones. (Chalmers, Arthur) (Entered: 04/17/2023) |
| 04/17/2023 | [477](#) | OBJECTIONS CONCERNING PLAINTIFFS' FINAL WITNESS AND EXHIBIT DISCLOSURES (Case 6:20-cv-01067, Docs. 43 & 44; Case 6:19-cv-01343, Docs. 468 & 469 ) by Herman Jones. (Chalmers, Arthur) Modified on 4/18/2023 to update docket text to match document. (kas) (Entered: 04/17/2023) |
| 04/17/2023 | [478](#) | OBJECTIONS CONCERNING PLAINTIFFS' FINAL WITNESS AND EXHIBIT DISCLOSURES (Case 6:20-cv-01067, Docs. 43 & 44; Case 6:19-cv-01343, Docs. 468 & 469 by Herman Jones. (Chalmers, Arthur) (Entered: 04/17/2023) |
| 04/17/2023 | [479](#) | MEMORANDUM IN OPPOSITION by Defendant Herman Jones re 471 Motion to Permit Nonparty Witnesses to Testify Remotely. (Chalmers, Arthur) (Entered: 04/17/2023) |
| 04/17/2023 | [480](#) | OBJECTIONS to 476 Final Witness and Exhibit Disclosures by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 04/17/2023) |
| 04/20/2023 | 481 | NOTICE of Hearing CHANGE IN START TIMES ONLY: Jury Trial is set for 4/24/2023 at 10:00 AM, 4/25/2023 at 12:00 PM, 4/26/2023 at 10:00 AM, 4/27/2023 at 09:00 AM, and 4/28/2023 at 10:00 AM in KC Courtroom 440 (JWL/KHV) before District Judge Kathryn H. Vratil. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 04/20/2023) |
| 04/20/2023 | 482 | ORDER overruling 471 Motion To Permit Nonparty Witnesses To Testify Remotely for substantially the reasons stated in defendant's opposition. Signed by District Judge Kathryn H. Vratil on April 20, 2023. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (lams) (Entered: 04/20/2023) |
| 04/20/2023 | [483](#) | RESPONSE to 477 / 478 Objection to Plaintiffs' Final Witness Disclosure by Plaintiffs Joshua Bosire, Blaine Franklin Shaw. (Perry, Madison) (Entered: 04/20/2023) |
| 04/21/2023 | [484](#) | BENCH BRIEF for the Trial Against Defendant Jones by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 04/21/2023) |
| 04/23/2023 | [485](#) | REVISED PROPOSED JURY INSTRUCTIONS by Joshua Bosire. (Perry, Madison) (Entered: 04/23/2023) |

| 04/24/2023 | 486 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: JURY TRIAL was held on 4/24/2023. Jury selection and opening statements by the parties complete. Jury recesses and evidence will resume on April 25, 2023. (Court Reporter Kim Greiner.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 04/24/2023) |
|---|---|---|
| 04/24/2023 | 487 | OBJECTIONS to 467 Deposition Designations by Herman Jones AND Cross-Designations by Herman Jones. (Chalmers, Arthur) (Entered: 04/24/2023) |
| 04/24/2023 | 488 | OBJECTIONS to 487 Counter Deposition Designations AND MOTION to Strike Untimely Objections and Counter Designations by Joshua Bosire, Blaine Franklin Shaw. (Perry, Madison) Modified on 4/25/2023. (mls) (Entered: 04/24/2023) |
| 04/25/2023 | 489 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: JURY TRIAL was held on 4/25/2023. Plaintiff presents evidence. Jury recesses and evidence will resume 4/26/2023. (Court Reporter Kim Greiner.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 04/25/2023) |
| 04/26/2023 | 490 | RESPONSE by Defendant Herman Jones re 488 Plaintiff's Objections to Counter Deposition Designations and Motion to Strike Untimely Objections and Counter Designations. (Chalmers, Arthur) (Entered: 04/26/2023) |
| 04/26/2023 | 491 | PROPOSED JURY INSTRUCTIONS by Joshua Bosire.(Perry, Madison) (Entered: 04/26/2023) |
| 04/26/2023 | 492 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: JURY TRIAL was held on 4/26/2023. Plaintiff presents evidence. Jury recesses and evidence will resume 4/27/2023. (Court Reporter Kim Greiner.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 04/26/2023) |
| 04/26/2023 | 493 | PROPOSED JURY INSTRUCTIONS by Brandon McMillan.(Chalmers, Arthur) (Entered: 04/26/2023) |
| 04/26/2023 | 494 | PROPOSED JURY INSTRUCTIONS by Joshua Bosire.(Perry, Madison) (Entered: 04/26/2023) |
| 04/27/2023 | 495 | TRIAL BRIEF *Motion to Introduce Evidence Regarding Qualified Immunity* by Joshua Bosire.(Perry, Madison) (Entered: 04/27/2023) |
| 04/27/2023 | 496 | MOTION for Judgment *Rule 50 Motion for Judgment As A Matter of Law* by Plaintiff Joshua Bosire (Perry, Madison) (Entered: 04/27/2023) |
| 04/27/2023 | 497 | MOTION for Judgment *under Rule 50* by Defendant Brandon McMillan (Chalmers, Arthur) (Entered: 04/27/2023) |
| 04/27/2023 | 498 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: Plaintiff presents evidence. Plaintiff rests. Defendant rests. Close of Evidence. Instructions conference. Jury instructions read to jurors. Closing arguments by the parties. Jury deliberations begin. Jury returns unanimous verdict. Jury polled. JURY TRIAL completed on 4/27/2023. See attached minute sheet for further details. (Court Reporter Kim Greiner.) (Attachments: # 1 Exhibit List, # 2 Witness Sheet) (alh) (Entered: 04/28/2023) |
| 04/27/2023 | 499 | JURY VERDICT for Plaintiff and against Defendant.(alh) (Additional attachment(s) added on 4/28/2023: # 1 Jury Verdict Unredacted) (alh). (Entered: 04/28/2023) |
| 04/28/2023 | 500 | NOTICE of Hearing CHANGE IN START TIMES ONLY: Court Trial is set for 5/1/2023 at 10:30 AM, 5/2/2023 at 10:30 AM, 5/3/2023 at 10:30 AM, 5/4/2023 at 12:30 PM, 5/5/2023 at 10:30 AM, 5/10/2023 at 08:00 AM, 5/11/2023 at 12:30 PM, and 5/12/2023 at 01:00 PM in KC Courtroom 440 (JWL/KHV) before District Judge Kathryn H. Vratil. |

| | | |
|---|---|---|
| | | THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 04/28/2023) |
| 05/01/2023 | 501 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: BENCH TRIAL was held on 5/1/2023. Opening statements by Plaintiff. Defendant deferred opening statements. Plaintiff presents evidence. Court recesses for the day. Evidence will continue on 5/2/2023.(Court Reporter Nancy Wiss.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/01/2023) |
| 05/02/2023 | 502 | ORDER finding as moot 496 Plaintiff Joshua Bosire's Rule 50 Motion for Judgment as a Matter of Law. Except for the issues of qualified immunity, this motion is **OVERRULED** as moot in light of the jury verdict on April 27, 2023. The issue of qualified immunity is taken under advisement pending the evidentiary hearing to be set forthwith. Signed by District Judge Kathryn H. Vratil on 5/2/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/02/2023) |
| 05/02/2023 | 503 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: BENCH TRIAL was held on 5/2/2023. Plaintiff presents evidence. Court recesses for the day. Evidence will continue on 5/3/2023. (Court Reporter Dani Murray.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/02/2023) |
| 05/03/2023 | 504 | NOTICE of Hearing: Evidentiary Hearing re Defendant Brandon McMillan's affirmative defense of qualified immunity is set for 6/6/2023 at 01:00 PM and 6/7/2023 at 01:00 PM in KC Courtroom 440 (JWL/KHV) before District Judge Kathryn H. Vratil. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/03/2023) |
| 05/03/2023 | 505 | NOTICE OF CANCELLED HEARING: Evidentiary Hearing that was scheduled for 6/6/2023 and 6/7/2023 at 01:00 PM is cancelled. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/03/2023) |
| 05/03/2023 | 506 | OBJECTION(S) to *Dep testimony of Randy Moon* by Herman Jones. (Chalmers, Arthur) (Entered: 05/03/2023) |
| 05/03/2023 | 507 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: BENCH TRIAL was held on 5/3/2023. Plaintiff presents evidence. Court recesses for the day. Evidence will continue on 5/4/2023. (Court Reporter Nancy Wiss.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/03/2023) |
| 05/04/2023 | 508 | NOTICE of COURTROOM CHANGE ONLY: To accommodate the need for Zoom capabilities Bench Trial that is set for 5/10/2023 at 08:00 AM will be held in KC Courtroom 476 before District Judge Kathryn H. Vratil. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 05/04/2023) |
| 05/04/2023 | 509 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: BENCH TRIAL was held on 5/4/2023. Plaintiff presents evidence. Court recesses for the day. Evidence will continue on 5/5/2023.(Court Reporter Dani Murray.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/05/2023) |
| 05/05/2023 | 510 | ORDER **OVERRULED** as moot 474 Request of Limiting Instruction. Signed by District Judge Kathryn H. Vratil on 5/5/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/05/2023) |

| 05/05/2023 | 511 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: BENCH TRIAL was held on 5/5/2023. Plaintiff presents evidence. Court recesses for the day. Evidence will continue on 5/10/2023. (Court Reporter Dani Murray.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/05/2023) |
|---|---|---|
| 05/05/2023 | 512 | MEMORANDUM AND ORDER overruling 497 Motion for Judgment. See Order for details. Signed by District Judge Kathryn H. Vratil on 5/5/2023. (sz) (Entered: 05/05/2023) |
| 05/08/2023 | 513 | NOTICE of CHANGE IN START TIMES AND COURTROOM ONLY: Court Trial set for 5/10/2023 at 08:00 AM in KC Courtroom 476, 5/11/2023 at 12:30 PM in KC Courtroom 440 (JWL/KHV) and 5/12/2023 at 10:30 AM in KC Courtroom 440 (JWL/KHV) before District Judge Kathryn H. Vratil. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 05/08/2023) |
| 05/09/2023 | 514 | TRIAL BRIEF *regarding "OPINION" TESTIMONY FROM HASSAN ADEN* by Herman Jones.(Chalmers, Arthur) (Entered: 05/09/2023) |
| 05/09/2023 | 515 | TRIAL BRIEF *re Def Rule 52(c) motion* by Herman Jones.(Chalmers, Arthur) (Entered: 05/09/2023) |
| 05/10/2023 | 516 | ATTACHMENT to 51 trial brief: Re Aden testimony by Herman Jones.(Chalmers, Arthur) Modified text and added link on 5/11/2023 (msb). (Entered: 05/10/2023) |
| 05/10/2023 | 517 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: BENCH TRIAL was held on 5/10/2023. Plaintiff presents evidence. Court recesses for the day. Evidence will continue on 5/12/2023. (Court Reporter Kim Greiner.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/10/2023) |
| 05/10/2023 | 518 | NOTICE OF CANCELLED HEARING: Court Trial for 5/11/2023 at 12:30 PM is cancelled. Trial will resume 5/12/2023 at 10:30 AM in Courtroom 476. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/10/2023) |
| 05/11/2023 | 519 | RESPONSE to 515 Trial Brief *Plaintiffs' Response to Defendant Jones's Motion for Judgment* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 05/11/2023) |
| 05/12/2023 | 520 | ORDER - Plaintiffs are to submit proposed findings of fact and conclusions of law no later than May 20, 2023 at 5:00 P.M. Defendant are to submit proposed findings of fact and conclusions of law no later than May 27, 2023 at 5:00 P.M. Plaintiffs may submit a response no later than May 30, 2023 at 5:00 P.M. Signed by District Judge Kathryn H. Vratil on 5/12/2023. (ca) (Entered: 05/12/2023) |
| 05/12/2023 | 522 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: BENCH TRIAL was held on 5/12/2023. Plaintiff presents evidence. Plaintiff rests. Defendant makes oral motion under Rule 52(c) for the court to enter judgment. Defendant rests. Plaintiff gives closing argument. Defendant to give closing argument when court reconvenes. Court recesses for the day. (Court Reporter Nancy Wiss.) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/15/2023) |
| 05/15/2023 | 521 | DESIGNATION OF DEPOSITION(S) by Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Attachments: # 1 Exhibit Trial Ex. 137 Rohr's Transcript all Designations and Objections, # 2 Exhibit Trial Ex. 138 Rule Transcript all Designations and |

| | | Objections, # 3 Exhibit Trial Ex. 139 Jirak Transcript all Designations and Objections, # 4 Exhibit Trial Ex. 140 Wolting Transcript all Designations and Objections)(Perry, Madison) (Entered: 05/15/2023) |
|---|---|---|
| 05/15/2023 | 523 | NOTICE of Hearing: Court Trial is set for 5/26/2023 at 01:00 PM in KC Courtroom 476 before District Judge Kathryn H. Vratil. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/15/2023) |
| 05/16/2023 | 524 | MOTION for Leave to file Motion to Utilize Unofficial Transcripts by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw (Perry, Madison) (Entered: 05/16/2023) |
| 05/17/2023 | 525 | ORDER - Defendant is directed to file a response by 5:00 PM on Friday, 5/19/2023 to Plaintiffs' Motion to Utilize Unofficial Transcripts 524 . Signed by District Judge Kathryn H. Vratil on 5/17/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 05/17/2023) |
| 05/18/2023 | 526 | MEMORANDUM IN OPPOSITION by Defendant Herman Jones re 524 MOTION for Leave to file Motion to Utilize Unofficial Transcripts (Chalmers, Arthur) (Entered: 05/18/2023) |
| 05/18/2023 | 527 | OBJECTION(S) to *AND MOTION TO EXCLUDE EXHIBITS 86b, 119b, 121b, 128b, 954b; TO EXCLUDE EXHIBIT 128a; AND TO CORRECT TRANSCRIPTIONS IN EXHIBITS 86a, 119a & 954a* by Herman Jones. (Chalmers, Arthur) (Entered: 05/18/2023) |
| 05/18/2023 | 528 | REPLY TO RESPONSE TO MOTION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re: 524 Motion for Leave *to Utilize Unofficial Transcripts* (Perry, Madison) (Entered: 05/18/2023) |
| 05/20/2023 | 529 | PROPOSED FINDINGS OF FACT by Joshua Bosire, Blaine Franklin Shaw.(Perry, Madison) (Entered: 05/20/2023) |
| 05/24/2023 | 530 | RESPONSE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw re 527 Objections and Motion to Exclude Exhibits 86b, 119b, 121b, 128b, 954b; to Exclude Exhibit 128a; and to Correct Transcriptions in Exhibits 86a, 119a and 954a (Perry, Madison) (Entered: 05/24/2023) |
| 05/26/2023 | 534 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: BENCH TRIAL completed on 5/26/2023. The Court conducted a bench trial on 5/1/2023 through 5/5/2023, 5/10/2023, 5/12/2023, and 5/26/2023. The Court takes the case under advisement. (Court Reporter Nancy Wiss.) (Attachments: # 1 Exhibit List, # 2 Witness Sheet) (alh) (Entered: 06/01/2023) |
| 05/27/2023 | 531 | PROPOSED FINDINGS OF FACT by Herman Jones.(Chalmers, Arthur) (Entered: 05/27/2023) |
| 05/30/2023 | 532 | REPLY to 529 Proposed Findings of Facts and RESPONSE to 531 Proposed Findings of Fact by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney, Consol Defendant Herman Jones. (Attachments: # 1 Exhibit A - Plaintiffs Proposed initial Terms of Declaratory and Injunctive Relief) (Perry, Madison) (Entered: 05/30/2023) |
| 06/01/2023 | 533 | ENTRY OF APPEARANCE by Stanley R. Parker on behalf of Herman Jones, Brandon McMillan, Doug Schulte. (Parker, Stanley) (Entered: 06/01/2023) |
| 06/13/2023 | 535 | ORDER overruling 527 Motion to Exclude Exhibits 86b, 119b, 121b, 128b, 954b; to Exclude Exhibit 128a; and to Correct Transcriptions in Exhibits 86a, 119a & 954a. Signed |

| | | |
|---|---|---|
| | | by District Judge Kathryn H. Vratil on 6/13/2023. (jal) (Entered: 06/13/2023) |
| 06/13/2023 | 536 | ORDER-Plaintiffs' Motion to Utilize Unofficial Transcripts (Doc. #524) filed May 16, 2023 is OVERRULED. On June 6, 2023 the court reporters supplied official transcripts that will be relied upon. Signed by District Judge Kathryn H. Vratil on 6/13/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 06/13/2023) |
| 06/20/2023 | 537 | ORDER TO SHOW CAUSE. It is therefore ordered that on or before 5:00 P.M. on June 27, 2023, plaintiffs show good cause in writing why this Court should not overrule their motion to strike as moot. Signed by District Judge Kathryn H. Vratil on 06/20/2023. (kmc) (Entered: 06/20/2023) |
| 06/27/2023 | 538 | RESPONSE re 537 Order to Show Cause, by Plaintiffs Samuel James Shaw, Blaine Franklin Shaw, Joshua Bosire(Perry, Madison) (Entered: 06/27/2023) |
| 07/21/2023 | 539 | MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE. In violation of the Fourth Amendment and Vasquez v. Lewis, 834 F.3d 1132 (10th Cir. 2016), Jones is responsible for a policy or practice which unlawfully detains motorists in Kansas (especially out-of-state motorists) without reasonable suspicion or consent, based on out-of-state residency and -- to more than a minimal extent -- based on travel plans that are not implausible or inherently contradictory. When KHP troopers develop reasonable suspicion with regard to motorists on I-70, they must give no weight to the fact that a motorist is traveling (1) toward a "drug source" or "drug destination" state, (2) away from a "drug source" or "drug destination" state, or (3) on a drug corridor. In violation of the Fourth Amendment, Jones is responsible for a policy or practice of using the Kansas Two-Step to extend traffic stops of motorists in Kansas without reasonable suspicion and without the motorists' knowing, intelligent and voluntary consent. All parties, no later than 5:00 p.m. on Monday, 8/7/2023, must show cause in writing why the Court should not substitute Erik Smith, the current Superintendent of the KHP, as defendant in this case. See Hafer v. Melo, 502 U.S. 21, 25 (1991) (when official leaves office, successor automatically assumes his position in official capacity litigation). No later than 5:00 p.m. on 8/14/2023, each party may respond. All parties, no later than 5:00 p.m. on Monday, 8/7/2023, must show cause in writing why the Court should not enter the following injunction (see attached for details). No later than 5:00 p.m. on 8/14/2023, each party may respond. Signed by District Judge Kathryn H. Vratil on 7/21/2023. (mam) (Entered: 07/21/2023) |
| 07/28/2023 | 540 | MOTION for Extension of Time to File response as to 539 Order to Show Cause,,,,,,,, by Defendant Herman Jones (Parker, Stanley) (Entered: 07/28/2023) |
| 08/03/2023 | 541 | RESPONSE re 539 Order to Show Cause by Consol Plaintiffs Mark Erich, Shawna Maloney, Plaintiffs Samuel James Shaw, Blaine Franklin Shaw, Joshua Bosire. (Brett, Sharon) (Entered: 08/03/2023) |
| 08/03/2023 | 542 | RESPONSE re 539 Order to Show Cause by Defendant Herman Jones. (Parker, Stanley) Modified title and added link on 8/4/2023 (kmc). (Entered: 08/03/2023) |
| 08/07/2023 | 543 | ORDER granting Unopposed Motion for Extension of Time (Doc. #540) filed July 28, 2023. Defendant's response deadline is extended to 8/21/2023 by 5:00 PM. Signed by District Judge Kathryn H. Vratil on 8/7/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 08/07/2023) |
| 08/07/2023 | 544 | ORDER 543 is amended to include: Defendant is granted a 14 day extension, to and including August 21, 2023 by 5:00 PM, to respond to the July 21, 2023 order to show cause why the Court should not enter the injunction set forth on pages 76-79 of the July 21, 2023 MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE; as well as granted a 14 day extension of time, to and including August 28, 2023 by 5:00 PM, for |

| | | |
|---|---|---|
| | | Plaintiffs to respond to Defendant's response. Signed by District Judge Kathryn H. Vratil on 8/7/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.)(alh) (Entered: 08/07/2023) |
| 08/08/2023 | 545 | ORDER. The Court substitutes Erik Smith, the current Superintendent of the Kansas Highway Patrol, for Herman Jones. Signed by District Judge Kathryn H. Vratil on 8/8/2023. (mam) (Entered: 08/08/2023) |
| 08/14/2023 | 546 | REPLY *to 541 Plaintiffs response to order to show cause* by Defendant Herman Jones. (Parker, Stanley) Modified docket entry relationship on 8/15/2023 (ca). (Entered: 08/14/2023) |
| 08/21/2023 | 547 | RESPONSE 539 Order to Show Cause regarding injunction by Defendant Erik Smith. (Attachments: # 1 Affidavit)(Parker, Stanley) Modified title and docket entry relationship on on 8/23/2023 (kmc). (Entered: 08/21/2023) |
| 08/22/2023 | 548 | NOTICE of Hearing: Status Conference is set for 9/11/2023 at 01:00 PM in KC Courtroom 476 before District Judge Kathryn H. Vratil. **THIS IS AN OFFICIAL NOTICE FOR THIS HEARING** (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 08/22/2023) |
| 08/28/2023 | 549 | REPLY TO Response/Objection re 539 Order to Show Cause,,,,,,, by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw(Perry, Madison) (Entered: 08/28/2023) |
| 08/30/2023 | 550 | ORDER. Signed by District Judge Kathryn H. Vratil on 8/30/2023. (heo) (Entered: 08/30/2023) |
| 09/06/2023 | 551 | **NOTICE OF COURTROOM CHANGE**. Status Conference Hearing set for 9/11/2023 at 01:00 PM will be held in Courtroom 440. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 09/06/2023) |
| 09/08/2023 | 552 | RESPONSE by Plaintiffs Samuel James Shaw, Blaine Franklin Shaw, Joshua Bosire, Consol Plaintiffs Mark Erich, Shawna Maloney re 550 Order (Attachments: # 1 Appendix A - Proposed Injunction, # 2 Appendix B - Unresolved Issues and Parties' Positions) (Brett, Sharon) (Entered: 09/08/2023) |
| 09/08/2023 | 553 | Unopposed MOTION for extension of time *to submit documents* by Defendant Erik Smith (Parker, Stanley) (Entered: 09/08/2023) |
| 09/08/2023 | 554 | ORDER granting Unopposed Motion for Extension of Time (Doc. #553) for substantially the reasons stated therein. Signed by District Judge Kathryn H. Vratil on 9/8/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 09/08/2023) |
| 09/11/2023 | 555 | ORDER TO SHOW CAUSE. Plaintiffs shall show good cause in writing by 5:00 P.M. on 9/18/2023 why the Court should not overrule their motion to strike (Doc. 488 ). Signed by District Judge Kathryn H. Vratil on 9/11/2023. (mam) (Entered: 09/11/2023) |
| 09/11/2023 | 556 | MINUTE ENTRY for proceedings held before District Judge Kathryn H. Vratil: STATUS CONFERENCE was held on 9/11/2023. The parties appear by counsel. The Court hears from counsel as to the agenda of unresolved issues requested for today's hearing. On or before September 21, 2023, the parties shall file supplemental memoranda on the scope of the proposed injunction. On or before September 26, 2023, the parties may file a reply brief. On or before October 11, 2023, defendant shall submit agreed administrative forms that the Court can require to implement the terms of the proposed injunction. The forms shall include consent forms, logs, reports and all other documents which the Court may |

| | | |
|---|---|---|
| | | require. See attached minute sheet for further details. (Court Reporter Dani Murray.) (alh) (Entered: 09/11/2023) |
| 09/14/2023 | 557 | TRANSCRIPT of Status Conference held 9/11/23 before Judge Kathryn H. Vratil, Court Reporter Dani Murray, 913-907-1434, dani_murray@ksd.uscourts.gov. Transcript purchased by: Ms. Leslie Greathouse.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 12/13/2023. (dm) (Entered: 09/14/2023) |
| 09/18/2023 | 558 | RESPONSE re 555 Order to Show Cause by Consol Plaintiffs Mark Erich, Shawna Maloney, Plaintiffs Samuel James Shaw, Blaine Franklin Shaw, Joshua Bosire(Perry, Madison) (Entered: 09/18/2023) |
| 09/19/2023 | 559 | MEMORANDUM AND ORDER overruling 488 Plaintiffs' Motion to Strike Defendant Jones' Untimely Objections and Counter Designations. Signed by District Judge Kathryn H. Vratil on 9/19/2023. (mam) (Entered: 09/19/2023) |
| 09/21/2023 | 560 | RESPONSE to 556 Status Conference. *Plaintiffs' Position on Unresolved Issues of the Proposed Injunction* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Attachments: # 1 Exhibit 1)(Perry, Madison) (Entered: 09/21/2023) |
| 09/21/2023 | 561 | DEFENDANT'S SUPPLEMENTAL BRIEF ON THE SCOPE OF THE PROPOSED INJUNCTION by Defendant Erik Smith. (Parker, Stanley) Modified on 9/22/2023 to update docket text (kas). (Entered: 09/21/2023) |
| 09/26/2023 | 562 | REPLY to 561 Response *to Defendant's Supplemental Brief on the Scope of the Injunction* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 09/26/2023) |
| 09/26/2023 | 563 | REPLY *to Plaintiffs' Position on Unresolved Issues of the Proposed Injunction* by Defendant Erik Smith. (Parker, Stanley) (Entered: 09/26/2023) |
| 09/28/2023 | 564 | TRANSCRIPT of Bench Trial Volume One held 5/1/2023 before Judge Kathryn H Vratil, Court Reporter Nancy Wiss, 913-735-2354, nancy_wiss@ksd.uscourts.gov. Transcript purchased by: Kansas Attorney General's Office.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that |

| | | | |
|---|---|---|---|
| | | | date it may be obtained through PACER. Release of Transcript Restriction set for 12/27/2023. (nw) (Entered: 09/28/2023) |
| 09/28/2023 | <u>565</u> | | TRANSCRIPT of Bench Trial Volume Three held 5/3/2023 before Judge Kathryn H Vratil, Court Reporter Nancy Wiss, 913-735-2354, nancy_wiss@ksd.uscourts.gov. Transcript purchased by: Kansas Attorney General's Office. |
| | | | <span style="color:red">**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**</span> |
| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 12/27/2023. (nw) (Entered: 09/28/2023) |
| 09/28/2023 | <u>566</u> | | TRANSCRIPT of Bench Trial Volume Seven held 5/12/2023 before Judge Kathryn H Vratil, Court Reporter Nancy Wiss, 913-735-2354, nancy_wiss@ksd.uscourts.gov. Transcript purchased by: Kansas Attorney General's Office. |
| | | | <span style="color:red">**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**</span> |
| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 12/27/2023. (nw) (Entered: 09/28/2023) |
| 09/28/2023 | <u>567</u> | | TRANSCRIPT of Bench Trial Volume Eight held 5/26/2023 before Judge Kathryn H Vratil, Court Reporter Nancy Wiss, 913-735-2354, nancy_wiss@ksd.uscourts.gov. Transcript purchased by: Kansas Attorney General's Office. |
| | | | <span style="color:red">**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**</span> |
| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 12/27/2023. (nw) (Entered: 09/28/2023) |
| 10/02/2023 | <u>568</u> | | TRANSCRIPT of Bench Trial Volume 2 held 5/2/23 before Judge Kathryn H. Vratil, Court Reporter Dani Murray, 913-907-1434, dani_murray@ksd.uscourts.gov. Transcript |

| | | purchased by: Kansas Attorney General's Office. |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |
| | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 1/2/2024. (dm) (Entered: 10/02/2023) |
| 10/02/2023 | 569 | TRANSCRIPT of Bench Trial Volume 4 held 5/4/23 before Judge Kathryn H. Vratil, Court Reporter Dani Murray, 913-907-1434, dani_murray@ksd.uscourts.gov. Transcript purchased by: Kansas Attorney General's Office. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |
| | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 1/2/2024. (dm) (Entered: 10/02/2023) |
| 10/02/2023 | 570 | TRANSCRIPT of Bench Trial Volume 5 held 5/5/23 before Judge Kathryn H. Vratil, Court Reporter Dani Murray, 913-907-1434, dani_murray@ksd.uscourts.gov. Transcript purchased by: Kansas Attorney General's Office. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |
| | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 1/2/2024. (dm) (Entered: 10/02/2023) |
| 10/11/2023 | 571 | NOTICE of Regarding Drafts of Forms, Logs, and Other Materials Due to the Court by Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw re 556 Status Conference,,, (Perry, Madison) (Entered: 10/11/2023) |
| 10/11/2023 | 572 | RESPONSE *to order to submit documents* by Defendant Erik Smith. (Attachments: # 1 form, # 2 form, # 3 form)(Parker, Stanley) (Entered: 10/12/2023) |

| | | |
|---|---|---|
| 10/23/2023 | 573 | ORDER: The parties have attempted to negotiate the content of various administrative forms that the Court can require to implement the terms of the injunction. On or before November 9, 2023, the parties shall submit an agreed version of the administrative forms. In the event that the parties cannot agree on the administrative forms, they shall file no later than 5:00 PM on November 9, 2023, the competing versions of the various forms and an agenda of any unresolved issues which the Court can address at a status conference on November 14, 2023 at 1:00 PM. Signed by District Judge Kathryn H. Vratil on 10/23/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.)(alh) (Entered: 10/23/2023) |
| 10/25/2023 | 574 | NOTICE of Hearing: Status Conference is set for 11/14/2023 at 01:00 PM in KC Courtroom 440 (JWL/KHV) before District Judge Kathryn H. Vratil. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 10/25/2023) |
| 11/01/2023 | 575 | MEMORANDUM AND ORDER ENTERED: On or before November 9, 2023, the parties shall submit an agreed permanent injunction which is consistent with the Court's rulings on plaintiffs' request for injunctive relief. In the event that the parties cannot agree on the form of the injunction, they shall file no later than 5:00 PM on November 9, 2023, the competing versions of the injunction and an agenda of any unresolved issues which the Court can address at the status conference on November 14, 2023 at 1:00 PM. Signed by District Judge Kathryn H. Vratil on 11/1/2023. (jal) (Entered: 11/01/2023) |
| 11/09/2023 | 576 | RESPONSE by Consol Plaintiffs Mark Erich, Shawna Maloney, Plaintiffs Samuel James Shaw, Blaine Franklin Shaw, Joshua Bosire re 573 Order,, 575 Memorandum & Order,, (Attachments: # 1 Exhibit A - Plaintiffs' Proposed Final Injunction, # 2 Exhibit B - Plaintiffs' Proposed Form HP-141, # 3 Exhibit C - Form HP-102, # 4 Exhibit D - Detention Log)(Brett, Sharon) (Entered: 11/09/2023) |
| 11/10/2023 | 577 | RESPONSE *and agenda* by Defendant Erik Smith. (Attachments: # 1 Exhibit, # 2 Exhibit)(Parker, Stanley) (Entered: 11/10/2023) |
| 11/13/2023 | 578 | MOTION to Strike 577 Response *As Untimely* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney (Perry, Madison) (Entered: 11/13/2023) |
| 11/13/2023 | 579 | NOTICE OF CANCELLED HEARING: Status Conference set for 11/14/2023 at 01:00 PM is cancelled. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 11/13/2023) |
| 11/13/2023 | 580 | RESPONSE by Defendant Erik Smith re 578 Motion to Strike (Parker, Stanley) (Entered: 11/13/2023) |
| 11/20/2023 | 581 | MEMORANDUM AND ORDER ENTERED: Plaintiffs' Motion To Strike Defendant's Response As Untimely (Doc. #578 in No. 19-1343 and Doc. #125 in No. 20-1067) filed November 13, 2023 is OVERRULED. Defendant's Response to Plaintiffs' Motion To Strike Defendant's Response As Untimely And Motion For Leave To File Out Of Time (Doc. #580 in No. 19-1343 and Doc. #127 in No. 20-2067) filed November 13, 2023 is SUSTAINED. Signed by District Judge Kathryn H. Vratil on 11/20/2023. (jal) (Entered: 11/20/2023) |
| 11/20/2023 | 582 | PERMANENT INJUNCTION. Signed by District Judge Kathryn H. Vratil on 11/20/2023. (jal) (Entered: 11/20/2023) |
| 11/21/2023 | 583 | JUDGMENT. Signed by deputy clerk on 11/21/2023. (jal) (Entered: 11/21/2023) |
| 12/05/2023 | 584 | MOTION for Attorneys' Fees and Non-Taxable Costs by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw. (Perry, Madison) (Entered: 12/05/2023) |

| | | |
|---|---|---|
| 12/15/2023 | 585 | NOTICE OF APPEAL by Defendant Erik Smith/Erik Smith. Filing fee $605, Internet Payment Receipt Number AKSDC-6228270. (Parker, Stanley) (Entered: 12/15/2023) |
| 12/15/2023 | 586 | MOTION to Stay Injunction Pending Appeal (ECF 582 ) by Defendant/Consol Defendant Erik Smith. (Parker, Stanley) (Entered: 12/15/2023) |
| 12/15/2023 | 587 | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 585 Notice of Appeal - Final Judgment. (Attachments: # 1 Preliminary Packet)(ca) (Entered: 12/15/2023) |
| 12/18/2023 | 588 | APPEAL DOCKETED in 10CCA on 12/15/2023 and assigned Appeal No. 23-3264 re 585 Notice of Appeal. (ca) (Entered: 12/18/2023) |
| 12/19/2023 | 589 | TRANSCRIPT of Bench Trial Volume 6 held May 10, 2023 before Judge Kathryn H. Vratil, Court Reporter Kim Greiner, 913-735-2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Stanley Parker - Kansas Attorney General Office.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 3/18/2024. (kg) (Entered: 12/19/2023) |
| 12/22/2023 | 590 | JOINT MOTION for Extension of Time to File Response and Comply with Injunction-Related Deadlines as to 586 Motion to Stay Injunction Pending Appeal (ECF 582 ) by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Brett, Sharon) (Entered: 12/22/2023) |
| 12/22/2023 | 591 | UNOPPOSED MOTION for Extension of Time to File Memorandum in Support of 584 Motion for Attorneys' Fees and Costs and Bill of Costs by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Brett, Sharon) (Entered: 12/22/2023) |
| 12/26/2023 | 592 | TRANSCRIPT ORDER FORM: Transcript Requested: Trial proceedings. Filed by Erik Smith re 585 Notice of Appeal. (sz) (Entered: 12/26/2023) |
| 12/27/2023 | 593 | ORDER granting 591 Plaintiffs' Unopposed Motion for Extension of Time to File Memorandum in Support of Motion for Attorneys' Fees and Bill of Costs. Plaintiffs' Memorandum is due by February 5, 2024. Signed by District Judge Kathryn H. Vratil on 12/27/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 12/27/2023) |
| 12/27/2023 | 594 | ORDER granting 590 Joint Motion for Extension of Injunction-Related Deadlines. Plaintiffs' deadline to file their opposition to (Doc. #586) Motion to Stay Injunction Pending Appeal is extended to 1/19/2024. In addition, the Court extends by 14 days the deadlines for the Kansas Highway Patrol to implement the procedures and policies ordered in the Permanent Injunction (Doc. #582). Signed by District Judge Kathryn H. Vratil on 12/27/2023. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (alh) (Entered: 12/27/2023) |
| 01/05/2024 | 595 | TRANSCRIPT ORDER FORM by Court Reporter Nancy B Wiss ordering transcripts of 2/6/23 - Testimony Only; 2/7/23 - Testimony Only, Excluding Aden re 585 Notice of |

| | | Appeal - Final Judgment filed by Erik Smith () Transcript due by 2/5/2024. (nw) (Entered: 01/05/2024) |
|---|---|---|
| 01/05/2024 | 596 | NOTICE of Plaintiffs' Designation of Additional Transcripts to be Ordered by Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw (Ching, Kunyu) (Entered: 01/05/2024) |
| 01/19/2024 | 597 | TRANSCRIPT of Jury Trial Testimony Only Volume One held 2/6/2023 before Judge Kathryn H Vratil, Court Reporter Nancy Wiss, 913-735-2354, nancy_wiss@ksd.uscourts.gov. Transcript purchased by: Attorney General's Office. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 4/18/2024. (nw) (Entered: 01/19/2024) |
| 01/19/2024 | 598 | TRANSCRIPT of Jury Trial Testimony Only Volume Two held 2/7/2023 before Judge Kathryn H Vratil, Court Reporter Nancy Wiss, 913-735-2354, nancy_wiss@ksd.uscourts.gov. Transcript purchased by: Attorney General's Office. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 4/18/2024. (nw) (Entered: 01/19/2024) |
| 01/19/2024 | 599 | TRANSCRIPT of Jury Trial Hassan Aden Testimony - Volume Two A held 2/7/2023 before Judge Kathryn H Vratil, Court Reporter Nancy Wiss, 913-735-2354, nancy_wiss@ksd.uscourts.gov. Transcript purchased by: Attorney General's Office. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that |

| | | |
|---|---|---|
| | | date it may be obtained through PACER. Release of Transcript Restriction set for 4/18/2024. (nw) (Entered: 01/19/2024) |
| 01/19/2024 | 600 | RESPONSE by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney re 586 Motion for Stay of Execution (Attachments: # 1 Exhibit A - Declaration of Joshua Bosire)(Ching, Kunyu) (Entered: 01/19/2024) |
| 01/19/2024 | 601 | MOTION to Compel *Defendant Erik Smith to Order Trial Transcripts for Appeal* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney (Ching, Kunyu) (Entered: 01/19/2024) |
| 01/22/2024 | 602 | REPLY TO RESPONSE TO MOTION by Defendant Erik Smith re: 586 Motion for Stay of Execution (Parker, Stanley) (Entered: 01/22/2024) |
| 01/24/2024 | 603 | RESPONSE by Defendant Erik Smith re 601 Motion to Compel (Attachments: # 1 Exhibit A)(Parker, Stanley) Modified on 1/25/2024 to correct filer (kas). (Entered: 01/24/2024) |
| 01/25/2024 | 604 | *Second Unopposed Motion for Extension of Time to File Memorandum in Support of Motion for Attorneys' Fees* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney (Greathouse, Leslie) (Entered: 01/25/2024) |
| 01/25/2024 | 605 | ORDER sustaining 604 Motion for Extension of Time to File Memorandum in Support of Motion For Attorney Fees. On or before February 12, 2024, plaintiffs shall file a memorandum in support of their Motion For Attorney Fees (Doc. #584). Signed by District Judge Kathryn H. Vratil on 1/25/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bg) (Entered: 01/25/2024) |
| 01/26/2024 | 606 | ORDER overruling 586 defendant's Motion To Stay Injunction Pending Appeal for substantially the reasons stated in the Court's prior rulings and in Plaintiffs' Memorandum In Opposition To Motion To Stay Injunction Pending Appeal (Doc. #600) filed January 19, 2024. See Memorandum And Order (Doc. #581) filed November 20, 2023 at 5-11; Memorandum And Order (Doc. #575) filed November 1, 2023 at 3-15; Order (Doc. #550) filed August 30, 2023 at 2-12; Memorandum And Order (Doc. #539) filed July 21, 2023 at 55-79. Signed by District Judge Kathryn H. Vratil on 1/26/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bg) (Entered: 01/26/2024) |
| 01/31/2024 | 607 | ORDER of 10CCA as to 585 Notice of Appeal regarding a temporary stay of the district court's injunctive order. (Appeal No. 23-3264) (ca) (Entered: 01/31/2024) |
| 01/31/2024 | 608 | REPLY TO RESPONSE TO MOTION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney re: 601 Motion to Compel (Ching, Kunyu) (Entered: 01/31/2024) |
| 02/05/2024 | 609 | BILL OF COSTS by Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw. (Greathouse, Leslie) (Entered: 02/05/2024) |
| 02/05/2024 | 610 | MEMORANDUM IN SUPPORT of 609 Bill of Costs by Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw. (Attachments: # 1 Exhibit A- Itemization of Costs, # 2 Exhibit B- Itemization of Costs lines 1-6, # 3 Exhibit C- Itemization of Costs lines 7-35)(Greathouse, Leslie) (Entered: 02/05/2024) |
| 02/06/2024 | 611 | Joint MOTION for extension of time *to file memorandum in support of Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Costs* by Plaintiffs Joshua Bosire, Blaine Franklin |

| | | Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney (Brett, Sharon) (Entered: 02/06/2024) |
|---|---|---|
| 02/07/2024 | 612 | MEMORANDUM AND ORDER sustaining 601 Motion to Compel. Within five days, defendant shall order the complete transcript of the Bosire trial. Signed by District Judge Kathryn H. Vratil on 2/7/2024. (bg) (Entered: 02/07/2024) |
| 02/09/2024 | 613 | ORDER sustaining 611 Motion for Extension of Time to File. On or before March 4, 2024, plaintiffs shall file a memorandum in support of their motion for attorneys' fees and non-taxable costs (Doc. #584). Signed by District Judge Kathryn H. Vratil on 2/9/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bg) (Entered: 02/09/2024) |
| 02/09/2024 | 614 | TRANSCRIPT ORDER FORM: Transcript Requested Trial proceedings 4/24/2023 - 4/27/2023 filed by Erik Smith re 585 Notice of Appeal. (ca) (Entered: 02/12/2024) |
| 02/13/2024 | 615 | TRANSCRIPT ORDER FORM by Court Reporter Kim Greiner ordering transcripts of Testimony of Jury Trial April 24-27, 2024 re 585 Notice of Appeal - Final Judgment filed by Erik Smith () Transcript due by 3/12/2024. (kg) (Entered: 02/13/2024) |
| 02/13/2024 | 616 | ENTRY TO CORRECT DOCKET REGARDING TRIAL DATE ORDERED-TRANSCRIPT ORDER FORM by Court Reporter Kim Greiner ordering transcripts of Testimony of Jury Trial April 24-27, 2023 re 585 Notice of Appeal - Final Judgment filed by Erik Smith () Transcript due by 3/12/2024. (kg) (Entered: 02/13/2024) |
| 02/16/2024 | 617 | ORDER of 10CCA as to 585 Notice of Appeal. District court's permanent injunction dated November 20, 2023, is stayed until further order of this court; temporary stay is vacated. (Appeal No. 23-3264) (ca) (Entered: 02/16/2024) |
| 03/01/2024 | 618 | PARTIAL TRANSCRIPT of Jury Trial (Voir Dire and Opening Statements Excluded) Volume 1 held April 24, 2023 before Judge Kathryn H. Vratil, Court Reporter Kim Greiner, 913-735-2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Dwight Carswell, Kurtis Wiard.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 5/30/2024. (kg) (Entered: 03/01/2024) |
| 03/01/2024 | 619 | TRANSCRIPT of Jury Trial Volume 2 held April 25, 2023 before Judge Kathryn H. Vratil, Court Reporter Kim Greiner, 913-735-2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Dwight Carswell, Kurtis Wiard.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the** |

| | | |
|---|---|---|
| | | **allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 5/30/2024. (kg) (Entered: 03/01/2024) |
| 03/01/2024 | 620 | TRANSCRIPT of Jury Trial Volume 3 held April 26, 2023 before Judge Kathryn H. Vratil, Court Reporter Kim Greiner, 913-735-2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Dwight Carswell, Kurtis Wiard.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 5/30/2024. (kg) (Entered: 03/01/2024) |
| 03/01/2024 | 621 | PARTIAL TRANSCRIPT of Jury Trial (Closing Arguments Excluded) Volume 4 held April 27, 2023 before Judge Kathryn H. Vratil, Court Reporter Kim Greiner, 913-735-2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Dwight Carswell, Kurtis Wiard.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 5/30/2024. (kg) (Entered: 03/01/2024) |
| 03/04/2024 | 622 | Amended MOTION for Attorney Fees by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney (Brett, Sharon) (Entered: 03/04/2024) |
| 03/04/2024 | 623 | MEMORANDUM IN SUPPORT of 584 MOTION for Attorneys' Fees and Non-Taxable Costs, 622 Amended MOTION for Attorney Fees by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney (Attachments: # 1 Ex. A (Declaration of Sharon Brett), # 2 Ex. B (ACLU KS Attorneys' Fees - Bench Trial Only), # 3 Ex. C (ACLU KS Attorneys' Fees - Damages Trials), # 4 Ex. D (ACLU KS Attorneys' Fees - Since November '23), # 5 Ex. E (ACLU National Attorneys' Fees - Bench Trial Only), # 6 Ex. F (ACLU National Attorneys' Fees - Damages Trials), # 7 Ex. G (Spencer Fane LLP Attorneys' Fees - Bench Trial Only), # 8 Ex. H (Spencer Fane LLP Attorneys' Fees - Damages Trials), # 9 Ex. I (ACLU KS |

| | | |
|---|---|---|
| | | Nontaxable Costs - Bench Trial Only), # [10](#) Ex. L (ACLU KS Nontaxable Costs - Damages Trials), # [11](#) Ex. M (Spencer Fane LLP Nontaxable Costs - Bench Trial Only), # [12](#) Ex. N (Spencer Fane LLP Nontaxable Costs - Damages Trials), # [13](#) Ex. O (Statement of Consultation))(Brett, Sharon) (Entered: 03/04/2024) |
| 03/04/2024 | [624](#) | STATEMENT re [622](#) Amended MOTION for Attorney Fees , [623](#) Memorandum in Support of Motion,,,, *Statement of Consultation Required by Local Rule 54.2* by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney. (Brett, Sharon) (Entered: 03/04/2024) |
| 03/15/2024 | [625](#) | LETTER TO 10CCA stating record is complete re [585](#) Notice of Appeal (Appeal No. 23-3264). (ca) (Entered: 03/15/2024) |
| 03/19/2024 | [626](#) | RESPONSE by Defendant Erik Smith re [622](#) Amended Motion for Attorney Fees (Parker, Stanley) Modified on 3/21/2024 to add amended (sz). (Entered: 03/19/2024) |
| 03/20/2024 | [627](#) | REPLY TO RESPONSE TO MOTION by Plaintiffs Joshua Bosire, Blaine Franklin Shaw, Samuel James Shaw, Consol Plaintiffs Mark Erich, Shawna Maloney re: [584](#) Motion for Attorney Fees, [622](#) Motion for Attorney Fees (Brett, Sharon) (Entered: 03/20/2024) |
| 03/27/2024 | [628](#) | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Sharon Brett as to Joshua Bosire, Mark Erich, Shawna Maloney, Blaine Franklin Shaw, Samuel James Shaw (Brett, Sharon) (Entered: 03/27/2024) |
| 04/03/2024 | [629](#) | COSTS TAXED in the amount of $ 52,722.76 against Defendant re Bill of Costs [609](#) as uncontested. (jh) (Entered: 04/03/2024) |
| 04/12/2024 | [630](#) | MEMORANDUM AND ORDER. Plaintiffs' Amended Motion for Attorneys' Fees and Non-Taxable Costs (Doc. [622](#) ) is sustained in part and overruled in part. Defendants Douglas Schulte, Brandon McMillan and Erik Smith in his official capacity as Superintendent of the Kansas Highway Patrol shall pay plaintiffs $1,985,837.10 in attorney fees and $363,148.28 in non-taxable costs. Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Costs (Doc. [584](#) ) is overruled as moot. Signed by District Judge Kathryn H. Vratil on 4/12/2024. (mam) (Entered: 04/12/2024) |
| 04/12/2024 | [631](#) | JUDGMENT as to Attorneys' Fees and Court Costs. Pursuant to the Memorandum and Order (Doc. [630](#) ) filed 4/12/2024, the Court enters judgment as to the awarding of attorneys' fees and court costs only in the instant case and in Case 6:20-cv-01067-KHV-GEB, Erich et al v. Jones et al as follows: Defendants Douglas Schulte, Brandon McMillan and Erik Smith in his official capacity as Superintendent of the Kansas Highway Patrol shall pay plaintiffs $1,985,837.10 in attorney fees and $363,148.28 in non-taxable costs. Signed by deputy clerk on 4/12/2024. (mam) (Entered: 04/12/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/23/2024 09:43:37 | | |
| **PACER Login:** | kurtis.wiard | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:19-cv-01343-KHV |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Blaine Franklin Shaw, Samuel James Shaw, and Joshua Bosire, individually and on behalf of a class, | |
| *Plaintiffs*, | **6:19-cv-01343-EFM-GEB** |
| | **FIRST AMENDED COMPLAINT-CLASS ACTION** |
| v. | |
| Herman Jones in his official capacity as the Superintendent of the Kansas Highway Patrol, Master Trooper Doug Schulte in his individual capacity, and Technical Trooper Brandon McMillan in his individual capacity, | **<u>DEMAND FOR JURY TRIAL</u>** |
| *Defendants*. | |

Plaintiffs Blaine Shaw, Samuel Shaw, and Joshua Bosire, on behalf of themselves and others similarly situated allege as follows:

<u>**INTRODUCTION**</u>

1.     This case is a class action for declaratory and injunctive relief challenging the Kansas Highway Patrol ("KHP")'s practice of targeting motorists traveling on I-70 for unlawful prolonged detentions based on their out-of-state license plates and/or travel plans to Colorado. Many of these out-of-state motorists and their passengers are people of color.

2.     KHP has designated I-70 as a "drug corridor"/"known trafficking corridor" and trained its officers to scrutinize motorists traveling to and from Colorado due to that state's legalization of medicinal and recreational marijuana.[1]

---

[1] Sarah Washburn, *Advanced Interdiction Case Outline* (Kan. Highway Patrol, 2019), pp. 4-5, Ex.1 hereto.

1

3.      KHP has acknowledged that their troopers treat out-of-state motorists and Colorado-based travel plans as indicia of criminal activity.[2] Former Lt. Col. Randy Moon explained that troopers could reasonably expect that travelers "are going to come across the country to go to [Colorado] to purchase marijuana, and then leave [Colorado] and go back to where they came from . . . ."[3]

4.      KHP stop statistics[4] and civil forfeiture actions[5] reveal drivers with out-of-state plates are disproportionately policed by KHP.

5.      In addition to targeting drivers from out-of-state, KHP maintains a practice of scrutinizing drivers and passengers with travel plans to or from Colorado and other states the agency has designated as "drug source" areas.

6.      In particular, and in direct violation of the prohibition established by the United States Tenth Circuit Court of Appeals,[6] KHP maintains a practice of illegally detaining drivers for

---

[2] *Id.*

[3] Katie Moore, *KHP says out-of-state license plates not a factor in stops; agency can't provide records substantiating claim,* TOPEKA CAPITOL JOURNAL, Mar. 4, 2017, https://www.cjonline.com/news/crime-courts/2017-03-04/khp-says-out-state-license-plates-not-factor-stops-agency-can-t-provide.

[4] William Joy, *Law enforcement tool or highway robbery? Civil asset forfeiture law is centuries old,* KMBC 9, May 16, 2018, https://www.kmbc.com/article/civil-asset-forfeiture-in-kansas-law-enforcement-tool-or-highway-robbery/20268079 ("Records obtained by KMBC 9 News showed in the past three years, 90 percent of the Kansas Highway Patrol's significant seizures have been vehicles with out-of-state plates. . . . In 2017, vehicles with Kansas license plants accounted for just 7 percent of stops by the Highway Patrol. Neighboring Missouri tied Colorado for the top of the out-of-state list—along with vehicles licensed out of California.")

[5] Kan. Bureau of Investigation, *Kansas Asset Forfeiture Reporting,* KANSAS ASSET SEIZURE AND FORFEITURE REPOSITORY, *available at* https://kasfr.kbi.ks.gov/res/p/download/(last downloaded Jan. 23, 2020) (capturing civil forfeiture data and revealing that 27 of 28—or 96%—of KHP forfeiture actions on I-70 from 2018 to 2019 targeted out-of-state drivers.

[6] *Vasquez v. Lewis*, 834 F.3d 1132, 1138-39 (10th Cir. 2016).

2

questioning beyond the purpose of the stop to inquire about their travel plans, absent reasonable suspicion of criminal activity.

7.    KHP also maintains and continues a practice of unlawfully detaining drivers for canine drug searches based only on the drivers' out-of-state plates and/or Colorado-based travel plans (referred to herein as "innocent-travel indicia") and, absent any other facts that would support reasonable suspicion, are solely relying on factors consistent with innocent travel (in combination, referred to herein as "factors consistent with innocent travel").

8.    Kansas state courts regularly suppress evidence seized by KHP troopers where, in their decision to detain the driver for a canine drug search, the KHP improperly relied on the driver's travel plans to or from states that have legalized cannabis.[7]

9.    Similarly, in civil forfeiture actions, KHP troopers have pervasively identified the driver's travel origin or destination as the primary reason for detaining drivers for a canine drug search.[8]

10.    Joshua Bosire, Blaine Shaw, and Samuel Shaw (collectively referred to herein as "Named Plaintiffs") were all in cars with out-of-state plates on I-70 to or from Colorado when they were stopped by KHP and detained while awaiting a canine unit absent reasonable suspicion.

---

[7] *See e.g., State v. Gonzalez*, No. 119,212, 2019 WL 6334041, at **2-3, 6 (Kan. Ct. App. Nov. 27, 2019); *State v. Arrizabalaga*, 57 Kan. App. 2d 79, 96, 447 P.3d 391, 403 (2019);  Motion to Quash Stop, Detention, and Arrest and Suppress Evidence at p.3, *State of Kansas v. Joshua C. Jones*, No. 2018-CR-000674 (Dist. Ct. Shawnee County Feb. 24, 2019) (Ex. 2 hereto); Minutes of hearing, *Jones,* No. 2018-CR-000674 (Dist. Ct. Shawnee County Mar. 22, 2019) ("Court grants Defendant's Motion to Suppress Evidence") (Ex. 3 hereto); *see also* Motion to Suppress Evidence at pp. 4-6, *State of Kansas v. Marquis Burton*, 2018-CR-003217 (Dist. Ct. Shawnee County May 2, 2019) (Ex. 4 hereto) (case dismissed by state after filing, *see* Ex. 5 hereto).

[8] *See e.g.,* Notice of Pending Forfeiture at Ex. A thereto, Affidavit of Lt. John Rule at ¶ 1.c., *State of Kansas, ex. rel. Kansas Highway Patrol v. $27,000 in US Currency, M/L 3 Marijuana Cigarettes*, No. 2019-cv-000014 (Dist. Ct. Wabaunsee County Feb. 19, 2019) (Ex. 6 hereto); Notice of Pending Forfeiture at Ex. A thereto, Affidavit of Trooper Bryan Clark at ¶ 1.c., *State of Kansas ex. Rel. Kansas Highway Patrol v. $16,000 in U.S. Currency, M/L*, 2019-cv-000032 (Dist. Ct. Wabaunsee County Aug. 6, 2019) (Ex. 7 hereto).

11.     As regular innocent travelers on I-70 who travel through Kansas to visit Colorado, Named Plaintiffs fear that absent an injunction, they will be subject to future unlawful detentions on account of their travel plans to a "drug source state."

12.     Through proper training, education and discipline, Defendant Herman Jones, as Superintendent of the KHP, has ultimate statutory authority to oversee and direct the conduct of KHP troopers and specifically to prevent future unlawful detentions of Named Plaintiffs and similarly situated individuals.

13.     Defendant Master Trooper Doug Schulte violated Named Plaintiffs' constitutional rights, by detaining them for a canine search absent reasonable suspicion of criminal activity.

14.     Defendant Trooper Brandon McMillan violated Plaintiff Joshua Bosire's constitutional rights by detaining him for a canine search absent reasonable suspicion of criminal activity.

15.     Named Plaintiffs bring this action against Defendant Jones, in his official capacity, and against the individually named troopers under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to and the Privileges and Immunities Clause in Article IV of the United States Constitution.

## JURISDICTION AND VENUE

16.     This civil rights action arises under 42 U.S.C. § 1983 and seeks vindication of Named Plaintiffs' rights under the Fourth and Fourteenth Amendments to and the Privileges and Immunities Clause in Article IV of the United States Constitution.

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

18.     This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §2201 and 2202.

4

19.     Venue is properly set within the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391.

## PARTIES

20.     Plaintiff Joshua Bosire ("Bosire") is a Black man in his mid-30s who resides in Wichita, Kansas, where he works as an engineer in the aviation industry and is pursuing a Master's Degree in engineering management at Wichita State University. Mr. Bosire travels on I-70 twice a month to visit his 4-year old daughter who resides in Littleton, Colorado.

21.     Elontah Blaine Shaw ("B. Shaw") is a Native American man in his mid-30s who resides in Oklahoma City, Oklahoma. He is a member of the Osage Nation and wears a scalplock. Mr. B. Shaw is employed as an Uber driver. He travels on I-70 through Kansas several times per year to visit family and friends in Colorado.

22.     Samuel Shaw ("S. Shaw") is a Native American man who resides in Oklahoma City, Oklahoma. He regularly travels on I-70 through Kansas to Colorado to visit family as both a passenger and a driver.

23.     Herman Jones is the Superintendent for the Kansas Highway Patrol and has been since April 2019 ("Defendant Jones"). Defendant Jones has authority to issue orders to members of the highway patrol specifying duty assignments and limitations upon the duties of the members and is empowered to make all necessary rules and regulations for the conduct of the members of the state highway patrol.[9]

24.     Master Trooper Doug Schulte is a Kansas Highway Patrol officer assigned to Troop D and is based in Ellis County, Kansas ("Defendant Schulte"). He participated in the unlawful detentions of Messrs. Bosire, B. Shaw, and S. Shaw. At all times relevant to this Complaint,

---

[9] K.S.A. § 74-2107.

Defendant Schulte has been employed by KHP and acting under the color of state law. Named Plaintiffs sue Defendant Schulte in his individual capacity.

25.     Trooper Brandon McMillan is a Kansas Highway Patrol officer assigned to Troop D and is based in Ellis County, Kansas ("Defendant McMillan").[10] He unlawfully detained Mr. Bosire on February 9, 2019. At all times relevant to this Complaint, Defendant McMillan has been employed by KHP and acting under the color of state law. Mr. Bosire sues Defendant McMillan in his individual capacity.

### FACTUAL ALLEGATIONS

#### *The KHP's General Practice of Targeting Out-of-State Drivers and Colorado-Travelers*

26.     Colorado legalized cultivation, sale, and possession of medicinal marijuana in 2010 and recreational marijuana in 2014.[11]

27.     Kansas law enforcement quickly characterized Colorado's marijuana legalization efforts as a threat to Kansas's public health and safety.[12]

28.     In 2016, Kansas Attorney General Derek Schmidt issued a survey to law enforcement agencies in an attempt to capture the impact Colorado-sourced cannabis was having on Kansas.[13]

---

[10] Collectively, Defendants Jones, Schulte, and McMillan are referred to herein as "Defendants".

[11] Colo. Const. Art. XVIII, Sec. 16.

[12] Oliver Morrison, *Colorado pot isn't affecting Kansas like you think,* THE WICHITA EAGLE, Oct. 12, 2016 (quoting Attorney General Derek Schmidt, "Here you have our sister state—we love them, we get along great with them most of the time. But doggone it, they have done something that federal law says they may not do, and it's Kansans who are paying a price for that.")

[13] *"Legalization" of Marijuana in Colorado: The Impact on Kansas*, Kansas Attorney General, Oct. 18, 2016 available at https://ag.ks.gov/docs/default-source/documents/colorado-marijuana-report.pdf?sfvrsn=9cadd81a_12.

29.     KHP replied to the Attorney General's survey and reported a significant increase in their seizures of marijuana originating from Colorado—suspecting that 69% of all marijuana seized in 2015 came from Colorado.[14]

30.     As a result of Colorado's decision to legalize marijuana, KHP increased scrutiny of drivers traveling to and from Colorado.[15]

31.     Defense attorneys reported an uptick in clients with Colorado travel plans being targeted by KHP troopers for stops, prolonged questioning, and detentions.[16] This trend was noted as particularly true for out-of-state drivers.

32.     Attorney Christopher Joseph succinctly explained KHP's practice of targeting out-of-state drivers going to or leaving Colorado, noting "It's not lawful, but they do it. They know they do it. They're trained to do it . . . ."[17]

33.     KHP  stop  and  forfeiture  data  demonstrates  out-of-state  drivers  are disproportionately stopped by KHP troopers and subjected to civil asset forfeiture proceedings at higher rates.

---

[14] *Id.*

[15] Bruce Kennedy, *Colorado's legal cannabis not welcomed in neighboring states*, CBS NEWS, Jan.  17,  2014,  https://www.cbsnews.com/news/colorados-legal-cannabis-not-welcomed-in-neighboring-states/.

[16] *Id.* (quoting defense attorney Brian Lenninger, "The Kansas Highway Patrol and police agencies out near the border are really looking hard for people who are bringing marijuana into the state from Colorado . . ."); Joy, n.4 *supra* (quoting defense attorney Christopher Joseph "'It works. It makes sense,' Joseph said about stopping out-of-state vehicles. 'To say that they don't do that seems silly because of course they do.'""); Tony Rizzo, *Some note an uptick in marijuana busts near  the  Colorado  border*, THE KANSAS CITY STAR, Feb.  12,  2014, https://www.kansascity.com/news/local/article338976.html (quoting Sean McAllister, a Denver criminal defense attorney and spokesman for the Colorado chapter of the National Organization to Reform Marijuana Laws, "I've had several clients pulled over by police in Kansas, Missouri and Nebraska," McAllister said. "I think there's been a lot of profiling of Colorado plates.")

[17] Moore, n.3 *supra*.

WA 14119616.5

34.      Drivers with out-of-state plates made up 93% of KHP stops in 2017.[18]

35.      Further, out-of-state motorists driving through Kansas on I-70 constituted 96% of all reported KHP civil forfeitures from 2018 to 2019.[19] Two-thirds of those motorists were either drivers of color or had passengers of color in their vehicle.[20]

36.      KHP has admitted that Colorado-traveling, out-of-state drivers are proper targets for trooper suspicion through one of the agency's supervisory officers. In a 2017 Topeka Capitol Journal article, former KHP Lt. Randy Moon noted that "it's not an unreasonable expectation" for troopers to assume drivers with out-of-state plates headed to or returning from Colorado are trafficking marijuana.[21]

37.      KHP troopers engage in unconstitutional detentions of drivers with out-of-state plates in their hunt for Colorado-sourced marijuana.

### The KHP's Unconstitutional Practice of Prolonging Detentions After a Stop Has Ended to Ask Questions About Travel Plans

38.      KHP maintains a practice of detaining drivers on I-70 after the initial purpose of their traffic stop has been resolved in order to question them about their travel plans absent consent or reasonable suspicion of criminal activity.[22]

39.      KHP troopers typically engage in this practice in an attempt to engage stopped drivers in a purported consensual encounter. They frequently do this through a maneuver known as "the Kansas Two Step" or some similar procedure.[23]

---

[18] Joy, n.4 *supra*.

[19] *See* n.5 *supra*.

[20] *Id.* (18 or the 27 KHP stops of out-of-state drivers on I-70 resulting in forfeiture included at least one person of color in the vehicle.)

[21] Moore, n.3 *supra*.

[22] *See Gonzalez*, No. 119,212, 2019 WL 6334041, at *2.

[23] *Id.*

8

40.     The Two Step maneuver is described by the Kansas Court of Appeals in *Gonzalez* as follows: "After telling Gonzalez to have a safe trip, Trooper Marten turned his body, took two steps toward his patrol vehicle, turned back around, and, through the Escalade's still open passenger window, asked Gonzalez if he would answer a few more questions. This maneuver is known as the 'Kansas Two Step' and is taught to all Kansas Highway Patrol officers as a way to break off an initial traffic detention and attempt to reengage the driver in what would then be a consensual encounter." No. 119,212, 2019 WL 6334041, at *2.

41.     The Kansas Two Step is included in KHP's training materials.[24]

42.     KHP troopers who are unable to obtain voluntary consent from a driver to answer additional questions will block the detained vehicle from safely re-entering traffic while questioning its occupants about their travel plans and whether there is anything illegal in the vehicle.[25]

43.     In particular, KHP troopers will detain drivers based on innocent-travel indicia for this type of non-consensual questioning after the original purpose of the traffic stop has dissipated.[26]

### *KHP Troopers Improperly Rely on Out-of-State License Plates and Colorado Travel Plans to Justify Detentions for Canine Drug Searches*

44.     KHP maintains a practice of impermissibly relying on innocent-travel indicia to justify detaining innocent travelers on I-70 for canine drug searches.

---

[24] *See e.g.* Lt. Kirk Simone, EPIC Operation Pipeline: Passenger Vehicle Drug Interdiction, Kansas Highway Patrol, Ex. 8 hereto at pp. 16-17 of 31 (educating KHP troopers to "complete traffic enforcement action and return all paperwork" to the driver, then to "ask the driver if you c[an] talk to him," asking six "interdiction questions" about weapons, marijuana, cocaine, methamphetamine, heroin and large amounts of cash, and then, if the trooper "see[s] indicators," to "ask for consent" to search the vehicle.)

[25] *Id.* at p. 15-17 of 31.

[26] *Id.* p. 15 of 31.

45.     On information and belief, KHP troopers have engaged in the practice of unlawfully detaining drivers on I-70 based on factors consistent with innocent travel for canine searches since at least 2011.[27]

46.     In particular, KHP troopers who are unable to obtain consent to search a driver's vehicle will justify their decision to detain a driver on I-70 on the basis of innocent-travel indicia. This is true even when the trooper is unable to identify other facts that would support reasonable suspicion.

47.     KHP troopers typically execute the practice of impermissibly detaining a driver based on factors consistent with innocent travel after employing "the Kansas Two Step" or a similar technique.

48.     Specifically, the unlawful detention described above begins when a KHP trooper stops a vehicle with out-of-state plates on I-70 under the pretense of a minor traffic violation and conducts some variation of the following:

     a.     The trooper issues the driver a ticket or warning for the infraction or tells the driver that they are receiving the ticket/warning;

     b.     Without breaking contact with the vehicle, the trooper asks the driver to agree to answer "a quick question" or "a few more questions;"

     c.     The trooper then asks about the driver's travel plans, if not already established during questioning about the initial stop;

     d.     If the driver declines to answer or provides travel details that indicate they are coming from or going to Colorado, the trooper asks the driver if they are transporting anything illegal;

---

[27] *See e.g.* Affidavit of Richard Jimerson at ¶¶ 5 & 9, *Vasquez v. Lewis*, No. 5:12-cv-04021-DDC-JPO, Doc. 70-3 (D. Kan. Aug. 1, 2013) (Ex. 9 hereto) (claiming that Aurora, Colorado travel origin and out-of-state destination formed a basis for detention for canine unit search); Deposition Transcript of Trooper Dax Lewis at 59:16-21, *Vasquez,* No. 5:12-cv-04021-DDC-JPO, Doc. 70-6 (Ex. 10 hereto) ("Q: Is it your testimony today that only the Denver area carries significance in drug trafficking, not the rest of Colorado? A: No, not—not totally. That is—that is the main area where we see most of our seizures coming from in the Colorado area.").

WA 14119616.5

     e.     When the driver denies transporting anything illegal, the trooper requests consent to search the car; and/or,

     f.     When the driver declines to give consent to search, the trooper detains the driver for a canine drug search.

49.     In 2016, the Tenth Circuit found that KHP troopers illegally relied on the fact that a driver was traveling from Colorado and other innocuous conduct to support their "reasonable suspicion" that the driver was trafficking drugs. *Vasquez*, 834 F.3d 1132. "[I]t is time to abandon the pretense that state citizenship is a permissible basis upon which to justify the detention and search of out-of-state motorists, and time to stop the practice of detention of motorists for nothing more than an out-of-state license plate." *Id.* at 1138.

50.     During the stop in *Vasquez*, the troopers used the "Kansas Two Step" to improperly detain him for a canine drug search.[28]

51.     Courts across Kansas have suppressed evidence obtained by KHP troopers on I-70 who employed the "Kansas Two Step" to improperly detain drivers for a canine search based on factors consistent with innocent travel.[29] Kansas courts have also decried such stops against other Kansas law enforcement agencies.[30]

---

[28] Transcript at 5:2-6:15, *Vasquez,* No. 5:12-cv-04021-DDC-JPO, Doc. 37, (D. Kan. Sept. 18, 2012) (Ex. 11 hereto).

[29] *See e.g. Gonzalez*, No. 119,212, 2019 WL 6334041, at **2 & 5; Ex 2, Motion to Quash Stop, Detention, and Arrest and Suppress Evidence at pp. 1, 3, 12, 16, *Jones*, No. 2018-CR-000674 (granted, *see* Ex. 3); *United States v. $39,440.00 in U.S. Currency*, 39 F. Supp. 3d 1169, 1171-72, 1172 & 1174 (D. Kan. 2014) ("[Trooper] Littrell told them that they were free to go. The video shows Littrell turn towards his patrol vehicle, take a couple of steps and then turn back around. Littrell immediately leaned back into the passenger window and asked if he could ask them some more questions." Littrell relied on their Colorado travel plans as a basis for continued detention.); *United States v. Medina*, No. 14-40019-EFM-1, 2014 WL 3107965, at *1 (D. Kan. July 8, 2014) (J. Melgren suppressing evidence, describing a break in contact much like the Two Step maneuver, and the trooper's reliance on travel plans as a basis for suspicion); *see also,* Ex. 4, Motion to Suppress Evidence at pp. 1-6, 9-10, 12, *Burton*, 2018-CR-003217 (case dismissed by state after filing, *see* Ex. 5).

[30] *See State v. Lowery*, 308 Kan. 359, 360-363 & 370, 420 P.3d 456, 458 (2018) (in a similar stop, affirming suppression of evidence seized by the Junction City police); *State ex rel. Geary Cty.*

52.     KHP's practice of illegally detaining drivers for canine drug searches is statewide in scope. KHP troopers who police different parts of the state have employed nearly identical maneuvers when unlawfully detaining a driver based on factors consistent with innocent travel.[31]

53.     KHP troopers have also provided affidavits in which they testify to using this maneuver to detain drivers for canine drug searches.[32]

### *KHP Troopers Are Trained to Rely on An Individual's Travel Origin or Destination to Justify Detaining Drivers for a Canine Drug Search*

54.     Targeting drivers traveling from or destined for Colorado is consistent with KHP's long-standing practice of relying on a driver's origin and destination as indicia of criminal activity.[33]

---

*Sheriff's Dep't v. One 2008 Toyota Tundra, VIN: 5TBBV54158S517709*, 55 Kan. App. 2d 356, 371, 415 P.3d 449, 460 (2018) (affirming suppression of evidence seized by the Geary County Sheriff's Department); *State v. Wendler*, 47 Kan. App. 2d 182, 203, 274 P.3d 30, 44 (2012) (in a similar stop, affirming suppression of evidence seized by the Topeka police).

[31] *See e.g. Gonzalez*, No. 119,212, 2019, WL 6334041, at *1 (stop occurred on Interstate 35 in Coffey County, Kansas); *Arrizabalaga*, 57 Kan. App. 2d at 81, 447 P.3d at 394 (along I-70 near Salina); Ex. 6, Notice of Pending Forfeiture at Ex. A thereto, Affidavit of Lt. John Rule at ¶ 2.a., *$27,000 in US Currency, M/L 3 Marijuana Cigarettes*, No. 2019-cv-000014 (stop occurred in Wabaunsee County, Kansas); Ex. 2, Motion to Quash Stop, Detention, and Arrest and Suppress Evidence at p.1, *Jones*, No. 2018-CR-000674 (stop occurred at exit 362 near Topeka); Ex. 7, Notice of Pending Forfeiture at Ex. A thereto, Affidavit of Trooper Bryan Clark at ¶ 1.a., *$16,000 in U.S. Currency, M/L*, 2019-cv-000032 (stop occurred near Wabaunsee, Kansas); *Medina*, No. 14-40019-EFM-1, 2014 WL 3107965, at *1 (stop occurred near exit 333 in eastern Kansas); *see also* Ex. 12, Motion to Suppress Evidence at pp. 4-6, *United States v. Muller*, No. 5:19-cr-40067-HLT, Doc. 43, (D. Kan. Dec. 27, 2019) (Ex. 12 hereto) (trooper based in Wabaunsee County, Kansas, asked the driver and passenger about their travel plans and rental car, gave the driver a verbal warning, told them to "have a safe trip," and then reengaged to "ask[] a few more questions." The trooper asked more about travel plans and then asked if there was anything illegal in the vehicle, eventually ordering a canine drug search when the passenger did not consent to a search.)

[32] *See* n.8 *supra* and exhibits cited there.

[33] Simone, n. 24 *supra*, Ex. 8 hereto at p. 15 of 31.

12

55.     KHP trains its troopers to use a driver's origin or destination to justify reasonable suspicion, directing troopers that a driver's travel plans in conjunction with other factors consistent with innocent travel is sufficient to justify a search.[34]

56.     KHP notably does not train its troopers that using travel origin plus other factors consistent with innocent travel violates the Fourth Amendment.[35]

57.     KHP does not include the 10th Circuit's decision in *Vasquez v. Lewis* in its advanced interdiction training curriculum.[36]

### Defendant Jones Has the Responsibility and Authority to Remedy KHP's Unconstitutional Detention Practices

58.     As the Superintendent of KHP, Defendant Jones is the chief officer of the statewide police force.

---

[34] Washburn, n.1 *supra*, Ex. 1 hereto at p. 5 ("In the 10th Circuit there are no published cases on the use of a "drug corridor." But all the unpublished cases will treat . . . [use of a "drug corridor"] as a potential factor leading to reasonable suspicion when taken as part of the totality of the circumstances"). And, in this particular case, KHP troopers are actively being taught something that is not true. *See e.g. Vasquez,* 834 F.3d at 1137 ("As we have said previously, 'that the defendant[ ] [was] traveling from a drug source city—or . . . a drug source state—does little to add to the overall calculus of suspicion.' . . . Such a factor is "so broad as to be indicative of almost nothing." (internal citations omitted)); *$39,440.00 in U.S. Currency*, 39 F. Supp. 3d at 1174, n.4 ("The court, based on testimony in other I–70 cases, recognizes that persons who have been stopped on I–70 have been found to be in possession of illegal drugs. However, given the volume of traffic on I–70 and its status as the only east-west interstate highway through Kansas, it is hard to consider it to be a drug 'corridor.'"); *United States v. Simpson*, 609 F.3d 1140, 1152, n.3 (10th Cir. 2010) ("We also give no credence to Trooper Bowles's testimony that Mr. Simpson was traveling on a major 'drug corridor.' . . . 'Because law enforcement officers have offered countless cities as drug source cities and countless others as distribution cities, however, the probativeness of a particular defendant's route is minimal.'" quoting *United States v. White*, 584 F.3d 935, 951–52 (10th Cir. 2009); *United States v. Medina*, No. 14-40019-EFM-1, 2014 WL 3107965, at *7 (D. Kan. July 8, 2014) (same, J. Melgren citing *White*).

[35] Washburn, n.1 *supra.*

[36] *Id.*

59.     Defendant Jones has statutory authority to direct the conduct of KHP troopers. Consequently, he is responsible for training, guiding, and directing KHP troopers in the performance of their jobs.

60.     He has authority to end KHP's unconstitutional practices described herein.

### *Named Plaintiffs' Individual Allegations*

61.     Each of the Named Plaintiffs have suffered constitutional violations as a direct result of KHP's unlawful detention practices. They have been targeted for detentions for canine drug searches because of innocent-travel indicia and absent reasonable suspicion. The Named Plaintiffs also regularly travel through Kansas to and from Denver, Colorado along I-70 and plan to travel this route in the future.

62.     Named Plaintiffs' uniform experiences demonstrate that KHP's unlawful stop and detention practices are pervasive and widespread. The events also illustrate the extreme likelihood that the Named Plaintiffs will be subject to unlawful detentions for canine drug searches in the future.

### *Joshua Bosire's Detention*

63.     As detailed above, Mr. Bosire is a Black man who travels monthly on I-70 to Denver, Colorado to see his daughter.

64.     Mr. Bosire uses a rental car for his winter trips as his own vehicle is not equipped for snow and bad weather. His rental cars usually have out-of-state license plates.

65.     On February 10, 2019, Mr. Bosire was on a return trip from visiting his daughter, driving a rented Nissan Altima with a Missouri license plate. He was eastbound on I-70 in Ellis County, Kansas, when he was stopped and detained by KHP troopers, Defendants Schulte and McMillan.

66.     Defendant McMillan told Mr. Bosire he stopped him for exceeding the posted speed limit by six miles per hour.

67.     When Defendant McMillan first approached the car, he asked Mr. Bosire for his drivers' license and informed him that he was driving over the posted speed limit. Defendant McMillan next asked Mr. Bosire where he was traveling from. When Mr. Bosire responded that he was traveling from the west, Defendant McMillan asked him to clarify whether he was traveling from Colorado. Mr. Bosire declined to provide more detail or state the purpose of his trip.

68.     When Defendant Schulte arrived, Defendant McMillan conceded twice that he did not smell drugs in the car and did not believe he could hold Mr. Bosire for a canine search.

69.     Defendant Schulte encouraged Defendant McMillan to try to obtain consent from Mr. Bosire.

70.     Defendant McMillan returned to the car and informed Mr. Bosire that he was going to give him a warning for speeding. However, Defendant McMillan told Mr. Bosire that he was suspicious Mr. Bosire was transporting something illegal because he refused to clarify his travel plans.

71.     Defendant McMillan then asked Mr. Bosire for consent to search his car. When Mr. Bosire refused, Defendant McMillan stated that he was calling a canine unit.

72.     Mr. Bosire was detained for 36 minutes before the canine unit arrived. Mr. Bosire was forced to exit the car, undergo a pat down search of his person, and stand in the cold night while the dog circled the car. The canine searched the exterior of the car but did not alert. Mr. Bosire was released from the detention.

73.     As a result of the detention, Mr. Bosire suffered extreme anxiety and developed a fear of driving by himself at night.

WA 14119616.5

74.     Mr. Bosire refrained from visiting his daughter for two months after his detention out of fear that he would be detained at night again.

75.     Since the detention, Mr. Bosire has changed his travel schedule to ensure he does not have to drive on I-70 at night, electing to stay in a hotel rather than continue to drive after the sun sets.

76.     Additionally, Mr. Bosire missed several days of work to cope with the stress of the detention and in order to submit information requests.

77.     At Mr. Bosire's request, the KHP performed an internal investigation of his stop. On August 9, 2019, the KHP published the findings of that investigation. The findings stated that "after considering everything we had access to, and comparing what we know with what occurred during [Mr. Bosire's] traffic contact, we have determined some of [Mr. Bosire's] concerns had merit. The findings concluded that "the length of time" Mr. Bosire was "detained was unnecessary given the suspicions . . . articulated" by Defendant McMillan.[37]

### *Elontah Blaine Shaw's Detention*

78.     Mr. B. Shaw has family members and friends in Colorado including several cousins who live in Durango and Colorado Springs. He also maintains contact with members of the Osage community who reside in a suburb north of Denver.

79.     Mr. B. Shaw drives through Kansas to Colorado on I-70 several times a year to visit his family and friends and plans to continue to make trips to visit them via I-70 in the future.

80.     On December 20, 2017, Mr. B. Shaw was driving on I-70 with his brother, S. Shaw, in their father's 2010 Chrysler, which has Osage Nation license plates. They were westbound in Ellis County, Kansas, on their way to Denver when pulled over by Defendant Schulte.

---

[37] August 9, 2019, letter from Defendant Jones to Mr. Bosire, Exhibit 13 hereto.

81.     Defendant Schulte told Mr. B. Shaw that he had stopped him because he was driving 91 miles per hour in a 75 mile per hour zone.

82.     During the initial stop, Defendant Schulte twice noted Mr. B. Shaw's Oklahoma residence.

83.     Defendant Schulte wrote Mr. B. Shaw a ticket for speeding, explained how he could pay the ticket, and then told him to have a safe trip. Seconds later, before returning to his patrol car, Defendant Schulte reengaged Mr. B. Shaw, asking whether he could ask Mr. B. Shaw a few questions.

84.     Defendant Schulte asked Mr. B. Shaw where he was traveling and, when told, "Denver," Defendant Schulte immediately asked whether Mr. B. Shaw had anything in the car that he was not supposed to have, specifically asking about weapons, narcotics, and cash. Mr. B. Shaw stated that he did not have any of the listed items.

85.     Defendant Schulte then asked Mr. B. Shaw if he could search the vehicle for such items. Mr. B. Shaw unequivocally declined. Defendant Schulte instructed Mr. B. Shaw to wait while he returned to his patrol car. Five minutes later that Trooper returned to Mr. B. Shaw's vehicle and told him he was being detained for a canine drug search because he refused to consent to a search.

86.     Defendant Schulte detained Mr. B. Shaw for 19 minutes waiting for the canine unit. The trooper ran the dog around the car and it alerted in the backseat of the vehicle. The troopers searched the vehicle for 33 minutes while Mr. B. Shaw waited outside of the vehicle on the side of the road.

87.     During the search, Defendant Schulte did not find any illicit drugs, only medication for which Mr. B. Shaw had a prescription. Defendant Schulte damaged Mr. B. Shaw's bags during the search, breaking zippers on two pieces of luggage.

88.     After the Trooper was unable to locate any drugs, he then directed Mr. B. Shaw to follow him to the station in order to make copies of Mr. B. Shaw's medical paperwork. Mr. B. Shaw followed the Trooper to the station where the Trooper made copies. Mr. B. Shaw was released from detention after approximately one and a half hours.

89.     Mr. B. Shaw dealt with significant anxiety following his detention. He ceased work as an Uber driver for 14 months out of fear that he would be stopped and detained by local police like he was by KHP. As a result of his detention, Mr. B. Shaw feels he no longer has protections or any rights.

### *Samuel Shaw's Detention*

90.     Like his brother, Mr. S. Shaw travels through Kansas on I-70 to Colorado once a year and plans to continue traveling the route with the same frequency for the foreseeable future. Mr. S. Shaw often accompanies his brother Mr. B. Shaw when he travels to Colorado and visits his friend who lives in Aurora and his cousins who live in Durango.

91.     Mr. S. Shaw was riding as a passenger when his brother was stopped and detained by Defendant Schulte on December 20, 2017. He was stopped and detained for the same duration, delaying his trip by over an hour.

92.     As a result of the December 20, 2017 stop, Mr. S. Shaw has become fearful of police and reminded of a traumatic experience with police as a teenager.

### *Detaining Drivers for Canine Drug Searches Because of Factors Consistent with Innocent Travel Violates Clearly Established Federal Law*

93.     The Tenth Circuit has held that detaining a driver because of their travel origin or destination and a combination of other facts consistent with innocent travel violates the Fourth Amendment. *Vasquez*, 834 F.3d at 1138 ("Such conduct does not raise an inference of reasonable suspicion.")

18

94.     Despite the clear illegality of the practice, however, the KHP continues the practice of subjecting drivers to prolonged detentions well past resolution of the original purpose of the stop in order to conduct canine searches without sufficient legal cause.

95.     Pursuant to KHP's practice, Defendants McMillan and Schulte detained Named Plaintiffs for canine drug searches based on factors consistent with innocent travel.

96.     During the stops, there were no other factors that legally justified the decisions of Defendants McMillan and Schulte to detain Named Plaintiffs.

97.     Because Defendants McMillan and Schulte lacked reasonable suspicion of criminal activity, their actions violated established federal law:

> *[United States v.] Wood*[, 106 F.3d 942, 948 (10th Cir. 2007)] "place[s] the statutory or constitutional question beyond debate" and provides "contours [that] are sufficiently clear that a reasonable offic[er] would understand that what he is doing violates that right." . . . Thus, at the time of the detention, it was clearly established that the Officers did not have reasonable suspicion based upon the articulated circumstances.

*Vasquez*, 834 F.3d at 1139 quoting *Carroll v. Carman*, 574 U.S. 13, 16 (2014).

## **CLASS ACTION ALLEGATIONS**

98.     Named Plaintiffs Bosire, B. Shaw, and S. Shaw seek to bring this action on their own behalves and on behalf of a class of persons similarly situated pursuant to Rules 23(a) and (b)(2)&(3) of the Federal Rules of Civil Procedure.

99.     The proposed Class is defined as all persons in the United States who travelled on I-70 as a motorist or passenger, were actually or appeared to be driving to or from Colorado, in a vehicle with license plates from a state other than Kansas, who were stopped, detained by the KHP and subjected to searches of their vehicles or persons by a canine but were not subsequently convicted of a crime as a result of the stop, detainment, arrest, or search by the KHP. Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, employees, officers,

WA 14119616.5

agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.[38]

100.    Certification of Named Plaintiffs' claims for class-wide treatment is appropriate because they can prove the elements of their claims on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claims.

101.    The proposed Class meets all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

102.    The members of the proposed Class are so numerous that joinder is impracticable. Although the exact size of the class is currently unknown, an average of over 10,000 motorists and their passengers drive through Kansas on I-70 on a daily basis.[39] Many of those individuals—approximately 7,820 per day by previous state estimates—are traveling to or coming from Colorado.[40] The precise number or identification of members of the Class are currently unknown to Named Plaintiffs, but may be ascertained from KHP's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

[38] The word "Class" means all persons fitting this description, including the Named Plaintiffs. The phrase "Class Members," refers to members of the class who are not Named Plaintiffs. Collectively, Named Plaintiffs and the Class Members are referred to herein as "Plaintiffs".

[39] Kansas Dep't of Transportation, *Traffic Count Maps*, 2019 TRAFFIC FLOW MAP KANSAS STATE HIGHWAY SYSTEM (July 2019), *available at* http://www.ksdot.org/Assets/wwwksdotorg/bureaus/burTransPlan/maps/CountMaps/Districts/countmap2018.pdf (listing an annual average daily traffic volume of over 10,000 vehicles per day along the entire I-70 corridor in Kansas).

[40] Kansas Historical Society, *Eisenhower Highway/Interstate 70* (February 2013), *available at* https://www.kshs.org/kansapedia/eisenhower-highway-interstate-70/16894 (noting that interstate highway travel into Kansas "averaged from 7,820 per day from the Kansas/Colorado state line").

103. Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting individual members of the Class. These common questions of law or fact include, but are not limited to, the following:

a. Whether Defendants violated Fourth Amendment rights of Class members by conducting illegal stops, detentions, unreasonable searches of persons and/or vehicles, and unreasonable seizures of persons and/or vehicles;

b. Whether Defendant Jones maintains a policy, practice, and/or custom of targeting drivers with out-of-state plates for illegal stops, detentions, and unreasonable searches of persons and/or vehicles in violation of the right to travel protected by Article IV of and the Fourteenth Amendment to the United States Constitution;

c. Whether Defendant Jones maintains a policy, practice, and/or custom of authorizing and encouraging stops that are unsupported by individualized, objective, and articulable reasonable suspicion of criminal conduct as required by the Fourth Amendment;

d. Whether Defendant Jones has failed to properly train, supervise, monitor, and/or discipline KHP troopers, and whether those failures have caused KHP troopers to violate the Fourth Amendment rights of the Class members; and,

e. Whether Defendants have encouraged, sanctioned, acquiesced to, and/or failed to rectify unconstitutional stops and/or stops and frisks by KHP officers of which they were aware or should have been aware, and whether such acts and or omissions have caused KHP officers to violate the Article IV and Fourth and Fourteenth Amendment rights of Class members.

104. Defendants engaged in a common course of conduct giving rise to the legal claims of Named Plaintiffs for enforcement of constitutional rights on behalf of themselves and the Class Members. Similar or identical statutory or common law violations and injuries are involved. Common questions of law and fact predominate over any questions that affect the individual members of the Class.

105. Named Plaintiffs' claims are also typical of the proposed Class Members. Like other members of the Class, the Named Plaintiffs have been and likely will again be victims of Defendant Jones's practice of detaining drivers on I-70 because of factors consistent with innocent

travel in violation of the Fourth Amendment. Further, the harms suffered by the Named Plaintiffs are typical of the harms suffered by the Class Members.

106.    The legal theories under which the Named Plaintiffs are seeking declaratory and injunctive relief are the same or similar to those on which Class Members will rely, and the harms suffered by the Named Plaintiffs are also the harms suffered by the Class Members.

107.    The Named Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with other members of the proposed Class, and will fairly and adequately represent the interests of the Class. All Named Plaintiffs regularly travel on I-70 to or from Colorado in vehicles with out-of-state license plates and intend to continue such trips in the future. The Named Plaintiffs only seek compensatory and punitive damages on an individual basis.

108.    The Plaintiffs are represented by the law firm Spencer Fane LLP and the American Civil Liberties Union Foundation of Kansas, who are competent and experienced in complex class action litigation. Counsel for the Plaintiffs have no known conflicts with Class Members. Counsel fully intend to fairly and adequately protect the interests of the Class.

109.    The proposed Class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants acted on grounds generally applicable to the proposed Class—in that they developed and maintained a policy, practice, and custom of prolonging detentions of drivers on I-70 because of out-of-state license plates and Colorado travel plans—thereby making Class-wide declaratory or injunctive relief appropriate.

## CLAIMS FOR RELIEF

### COUNT 1
### VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES

**(Claims of Plaintiffs Pursuant to 42 U.S.C. §1983 Against Defendant Jones for Violations of the Fourth Amendment)**

110.    Plaintiffs repeat and reallege paragraphs 1-109.

111.    The Fourth Amendment to the United States Constitution protects the people from unreasonable searches and seizures by the government. As such, it prohibits the police from subjecting a person to a stop in the absence of individualized, objective, and articulable reasonable suspicion of criminal activity. The Amendment's protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Vasquez*, 834 F.3d at 1136.

112.    More specifically, the Constitution prohibits police from extending a traffic stop in order to question a driver about issues beyond the scope of the stop absent reasonable suspicion or consent. *United States v. Villa*, 589 F.3d 1334, 1339 (10th Cir. 2009); *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998).

113.    The Fourth Amendment also protects Plaintiffs from detentions for the purpose of conducting a canine search absent reasonable suspicion. *Rodriguez v. United States*, 575 U.S. 348 (2015).

114.    Neither state residency nor travel plans are sufficient to justify a detention, even when combined with other factors consistent with innocent travel. *Vasquez*, 834 F.3d at 1137-38. "Absent a demonstrated extraordinary circumstance, the continued use of state residency as a justification for the fact of or continuation of a stop is impermissible." *Id.* at 1138.

WA 14119616.5

115.    Defendant Jones, by maintaining a practice of detaining drivers on I-70—including Named Plaintiffs and Class Members—using innocent-travel indicia, absent individualized, objective, and articulable reasonable suspicion, has and continues to violate the Fourth Amendment rights of Named Plaintiffs and hundreds of other innocent travelers stopped on I-70 each year.

116.    Ignoring the mandate of the *Vasquez* decision, Defendant Jones continues to train KHP troopers that apparent travel to or from states considered drug source areas supports reasonable suspicion and prolonged detention absent strong indicia of criminal activity.

117.    Defendant Jones, acting under the color of state law, has maintained and continues to facilitate a detention practice that violates the constitutional rights of drivers and passengers along I-70 to be free of unreasonable detentions and creates a continued risk that Named Plaintiffs and Class Members whose travel plans include Colorado will be subject to these unconstitutional detentions in the future.

118.    Declaratory and injunctive relief is required to remedy and prevent future violations of travelers' Fourth Amendment rights.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a.    Enter judgment against Defendant Jones for the declaratory and injunctive relief requested;

b.    Award Plaintiffs attorneys' fees and costs; and,

c.    Award any further relief that this Honorable Court deems just and equitable.

## COUNT 2
## VIOLATION OF ARTICLE IV AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION—THE RIGHT TO TRAVEL

**(Claims Of Plaintiffs Pursuant to 42 U.S.C. § 1983 Against Defendant Jones for Violations of the Article IV and the Fourth and Fourteenth Amendments)**

119.    Plaintiffs repeat and re-allege paragraphs 1-118.

120.     Article IV, Section 2 of the United States Constitution provides that the citizens of each state shall be entitled to all Privileges and Immunities of citizens in the other states. The Privileges and Immunities Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall make any law which shall abridge the privileges or immunities of the citizens of the United States. Both of these clauses establish and protect the right to travel in these United States.

121.     The United States Supreme Court "long ago recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969), overruled in part on other grounds by *Edelman v. Jordan*, 415 U.S. 651 (1974). "For all the great purposes for which the Federal government was formed, we are one people, with one common country. We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States." *Smith v. Turner*, 48 U.S. 283, 492 (1849). "The constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." *United States v. Guest*, 383 U.S. 745, 757 (1966).

122.     "The 'right to travel' . . . embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other

WA 14119616.5

citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). The first and second of these components are implicated by the illegal actions of the KHP addressed herein.

123.    Defendants actively created and enforced a policy to target vehicles with out-of-state license plates as part of their drug interdiction program; thereby penalizing out-of-state motorists for exercising their right to travel or right to free movement.

124.    Defendants did so, while acting under color of state law and without reasonable suspicion, and restricted the right of the Named Plaintiffs and the Class Members to travel freely through Kansas to and from Colorado and to be treated as a welcome visitor in Kansas, which restrictions were based in large part on travelling through Kansas to or from Colorado in a vehicle registered in another state.

125.    At the time of the events described herein, each of the Named Plaintiffs and the Class Members were driving a vehicle registered in a State other than Kansas and was engaged in interstate travel when they were stopped.

126.    Establishing and enforcing a policy to target vehicles with out-of-state license plates for purposes of drug interdiction activities infringes upon the right to travel under Article IV, section 2 and the Fourteenth Amendment of the United States Constitution and/or other laws of the United States.

127.    The constitutional rights of the Named Plaintiffs and Class Members have been violated under the Privileges and Immunities Clauses of Article IV, section 2, and the Fourteenth Amendment of the United States Constitution by the Defendants, as described herein.

WHEREFORE, Plaintiffs ask that this Honorable Court:

    a.    Enter judgment against Defendant Jones for the declaratory and injunctive relief requested;

    b.    Award Plaintiffs attorneys' fees and costs; and,

    c.    Award any further relief that this Honorable Court deems just and equitable.

26

**COUNT 3**
**VIOLATION OF FOURTH AMENDMENT TO THE UNITED STATES**
**CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND**
**SEIZURES**

**(Claims of Named Plaintiffs Against Defendant Schulte, in his Individual Capacity, for**
**Violations of the Fourth Amendment)**

128.    Plaintiffs repeat and re-allege paragraphs 1-127.

129.    As a natural consequence of being innocent persons suspected of a crime and subjected to illegal detentions for invasive searches of their persons and vehicles, Named Plaintiffs have been caused by Defendants to feel humiliated and embarrassed, to lose trust of police, their right to be free from random, unlawful seizures and searches, and to suffer emotional distress.

130.    Defendant Schulte, acting under the color of state law, detained Named Plaintiffs for questioning unrelated to their initial traffic stop and a canine drug search absent reasonable suspicion.

131.    By prolonging the detention of the Named Plaintiffs based on factors consistent with innocent travel, Defendant Schulte violated the Named Plaintiffs' Fourth Amendment rights, as applied to the states by the Fourteenth Amendment, to be free from unreasonable seizures.

132.    It was clearly established at the time of the Named Plaintiffs' seizures that Defendant Schulte's practice of detaining the Named Plaintiffs for canine drug searches based on innocent-travel indicia and in the absence of reasonable suspicion of criminal activity was illegal.

133.    The Named Plaintiffs suffered loss of their fundamental rights and liberty as a result of Defendant Schulte's illegal conduct.

134.    As such, Defendant Schulte is liable to the Named Plaintiffs for damages under 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs ask that this Honorable Court:

    a.     Enter judgment against Defendant Schulte;

    b.     Award Named Plaintiffs compensatory and punitive damages;

    c.     Award attorneys' fees and costs; and,

    d.     Award any further relief that this Honorable Court deems just and equitable.

## COUNT 4
## VIOLATION OF FOURTH AMENDMENT—THE RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES

**(Claims of Joshua Bosire Against Trooper McMillan, in his Individual Capacity, for Violations of the Fourth Amendment)**

135.    Plaintiffs repeat and re-allege paragraphs 1-134.

136.    Mr. Bosire reasonably believes that Defendant McMillan stopped him and conducted an unlawful search and seizure because he is a Black man. This profiling conduct by Defendant McMillan, along with the natural consequences of being an innocent person being accused of a crime and unlawfully detained for an invasive search of his person and car, caused Mr. Bosire to feel humiliated and embarrassed, to lose trust of police and his right to be free from random, unlawful seizures and searches, and to suffer emotional distress.

137.    Trooper McMillan, acting under the color of state law, detained Mr. Bosire for questioning unrelated to his initial traffic stop and had a canine drug search performed on Mr. Bosire's vehicle absent reasonable suspicion.

138.    By prolonging the detention of Mr. Bosire based on factors consistent with innocent travel, Defendant McMillan violated Mr. Bosire's Fourth Amendment rights, as applied to the states by the Fourteenth Amendment, to be free from unreasonable seizures.

139.    It was clearly established at the time of Mr. Bosire's stop that it was unlawful for Defendant McMillan to detain Mr. Bosire for a canine drug search based on innocent-travel indicia and in the absence of reasonable suspicion of criminal activity.

140.     Mr. Bosire suffered loss of his fundamental rights and liberty as a result of Trooper McMillan's actions.

141.     As such, Defendant McMillan is liable to Mr. Bosire for damages under 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs ask that this Honorable Court:

    a.     Enter judgment against Defendant McMillan;

    b.     Award Mr. Bosire compensatory and punitive damages;

    c.     Award attorneys' fees and costs; and,

    d.     Award any further relief that this Honorable Court deems just and equitable.

## PRAYER FOR RELIEF

Wherefore, Named Plaintiffs and other members of the Class they seek to represent, respectfully request that:

    a.     The Court issue an Order certifying this case as a class action pursuant to Rule 23(a) and 23(b)(2)&(3) of the Federal Rules of Civil Procedure, with the Named Plaintiffs as representatives of the Class;

    b.     The Court issue a class-wide judgment declaring that the Defendants' policy, practice, and/or custom of unreasonably searching and seizing persons and vehicles in the absence of reasonable suspicion, including the specific practices alleged herein, violates the rights of the Named Plaintiffs and the Class Members under the Fourth Amendment to the United States Constitution;

    c.     The Court issue a class-wide judgment declaring that the Defendants' policy, practice, and custom of targeting drivers with out-of-state license plates for stops, detentions, searches, and, seizures infringes on Named Plaintiffs' and the Class Members' right to travel under Article IV of and the Fourteenth Amendment to the United States Constitution ;

    d.     The Court issue an Order for the following injunctive relief:

        i.     Enjoining the Defendant Jones from continuing the policy, practice, and custom of prolonging detentions for canine searches without reasonable suspicion of criminal activity;

        ii.     Enjoining the Defendant Jones from continuing the policy, practice, and custom of targeting drivers with out-of-state plates in violation

of the right to travel protected by Article IV of and the Fourteenth Amendment to the United States Constitution;

iii.    Requiring Defendant Jones to implement improved policies and programs with respect to training, supervision, monitoring, and discipline that will eliminate the policy, practice, pattern, and custom of suspicionless detentions and seizures;

iv.    Requiring Defendant Jones to implement appropriate measures for supervision and discipline of KHP troopers who conduct suspicionless detentions and seizures;

v.    Requiring Defendant Jones to implement appropriate measures to ensure that KHP troopers document:

1.    all canine drug searches, including the location, the basis for each such search, the residency and demographics—including the state issuing the license plate on the vehicle—of each individual stopped, regardless of whether the encounter is followed by the use of force, consent search, citation, warning or arrest and,

2.    all citations and arrests, including the location, the basis for each such search, the residency and demographics—including the state issuing the license plate on the vehicle—of each individual stopped, issued and or conducted as a result of a canine drug search,

and to do so in sufficient detail as to permit supervisory review for compliance with Article IV and the Fourth and Fourteenth Amendments;

vi.    Requiring Defendant Jones to implement appropriate measures to ensure that documentation of all canine drug searches is retained in a single, up-to-date computerized database;

vii.    Requiring Defendant Jones to make publicly available data on all canine drug searches conducted by the KHP on a semiannual basis, including information on location, the basis for each such search, the residency and demographics of each individual stopped;

viii.    Requiring Defendant Jones to monitor and audit canine drug search policies, practices, and customs, to ensure that such searches comport with constitutional and statutory requirements, including by, among other things, periodically reviewing forms documenting these searches and analyzing data on such searches;

e.    Awarding Named Plaintiffs compensatory and emotional distress damages against Troopers McMillan and Schulte, in amounts that are fair, just and

reasonable to be determined at trial, caused by the violation of the Named Plaintiffs' Constitutional rights;

f. Awarding Named Plaintiffs punitive damages against Troopers McMillan and Schulte, to the extent their liability is based on reprehensible actions and/or inaction undertaken in their individual capacities in violation of the Named Plaintiffs' Constitutional rights, in amounts that are fair, just and reasonably designed to punish and deter said reprehensible conduct, to be determined at trial;

g. Awarding reasonable attorneys' fees to the Plaintiffs, pursuant to 42 U.S.C. § 1988;

h. Awarding costs of litigation to the Plaintiffs, pursuant to 42 U.S .C. §§ 1920 and 1988; and,

i. Awarding such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

## JURY TRIAL DEMAND

142. Named Plaintiffs demand a jury trial on all of the claims for which they have a right to trial by jury. Named Plaintiffs designate Kansas City, Kansas, as the place of trial.

Dated this 30th day of January, 2020.

Respectfully submitted by,

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS

s/ Lauren Bonds
Lauren Bonds          KS # 27807
Zal Kotval Shroff      KS # 28013
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
lbonds@aclukansas.org
zshroff@aclukansas.org

and

SPENCER FANE LLP

s/ Leslie A. Greathouse

| Leslie A. Greathouse | KS # 18656 |
| Patrick McInerney | KS # 22561 |
| Madison Perry | KS # 27144 |

1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100
Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com
mperry@spencerfane.com

**Attorneys for Plaintiffs**

WA 14119616.5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **BLAINE SHAW, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 19-1343-KHV** |
| | ) | |
| **HERMAN JONES, in his official capacity** | ) | |
| **as Superintendent of the Kansas** | ) | |
| **Highway Patrol, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On January 30, 2020, Blaine Shaw, Samuel Shaw and Joshua Bosire, on behalf of themselves and others similarly situated, filed an amended complaint against Kansas Highway Patrol ("KHP") Superintendent Herman Jones, and KHP troopers Doug Schulte and Brandon McMillan,[1] alleging that based on their travel origins and destinations, defendants subjected them to prolonged detentions and vehicle searches.  First Amended Complaint – Class Action (Doc. #7). Pursuant to 42 U.S.C. § 1983, plaintiffs sue defendants for violating their rights under Article IV and the Fourth and Fourteenth Amendments to the United States Constitution, and they seek compensatory, punitive, declaratory and injunctive relief.  This matter is before the Court on the Motion To Dismiss Defendant Herman Jones (Doc. #14) filed February 28, 2020.  For the reasons stated below, the Court overrules the motion.

---

[1] Plaintiffs sue Jones in his official capacity as KHP Superintendent, and sue Schulte and McMillan in their individual capacities.

**Factual Background**

Highly summarized, plaintiffs' amended complaint alleges the following:

I.      **KHP's Practice Of Targeting Out-Of-State Travelers**

In 2014, Colorado legalized the recreational cultivation, sale and possession of marijuana, which Kansas law enforcement quickly characterized as a threat to the health and safety of Kansas residents.   In 2016, to determine the impact that Colorado-sourced marijuana was having on Kansas, Kansas Attorney General Derek Schmidt issued a survey to law enforcement agencies.   In response, KHP reported a significant increase in seizures of marijuana which originated in Colorado.   KHP suspected that in 2015, 69 per cent of all marijuana that it seized came from Colorado.

As a result, KHP increased its scrutiny of drivers who were traveling to and from Colorado. For individuals who made these trips, defense attorneys reported an uptick in stops and prolonged detentions by KHP, which was particularly true for out-of-state drivers.   KHP's stop and forfeiture data show that it disproportionately stops out-of-state drivers and subjects them to civil asset forfeiture proceedings.    Specifically, in 2017, drivers who had out-of-state license plates constituted 93 per cent of KHP stops.   In 2018 and 2019, out-of-state motorists who were driving through Kansas on I-70 constituted 96 per cent of KHP civil forfeitures.   KHP has also declared that out-of-state drivers who are traveling to and from Colorado are proper targets for suspicion. In a 2017 article in the Topeka Capital Journal, KHP Lieutenant Randy Moon noted that "it's not an unreasonable expectation" for his troopers to assume that drivers who have out-of-state license plates and are traveling to or from Colorado are trafficking marijuana.

### A.     Prolonged Detentions

When KHP troopers suspect that a driver on I-70 is traveling to or from Colorado, they employ a maneuver called the "Kansas Two Step," in which they detain the driver after the initial purpose of the traffic stop has ended and ask questions about his or her travel plans.  KHP does so without the driver's consent or a reasonable suspicion of criminal activity.  KHP training materials include instructions on the Kansas Two Step, which the Kansas Court of Appeals has described as follows:

> After telling [the driver] to have a safe trip, [the trooper] turned his body, took two steps toward his patrol vehicle, turned back around, and, through the Escalade's still open passenger window, asked [the driver] if he would answer a few more questions.  This maneuver is known as the "Kansas Two Step" and is taught to all Kansas Highway Patrol officers as a way to break off an initial traffic detention and attempt to reengage the driver in what would then be a consensual encounter.

State v. Gonzalez, 455 P.3d 419, 423 (Kan. Ct. App. 2019).  To conduct this maneuver, KHP troopers block the detained vehicle from safely re-entering traffic while questioning the occupants about their travel plans and whether the vehicle contains anything illegal.

### B.     Canine Drug Searches

If KHP troopers apply the Kansas Two Step but cannot elicit consent to search, they have canines search the vehicle for drugs based solely on their belief that the driver is traveling to or from Colorado.  KHP has maintained this practice since 2011, and it typically goes as follows: (1) the trooper issues the driver a ticket or warning for a driving infraction, or tells the driver that he or she will receive one; (2) without breaking contact with the vehicle, the trooper asks the driver to answer "a quick question" or "a few more questions;" (3) the trooper asks about the driver's travel plans (if not already established during the initial stop); (4) if the driver declines to answer or provides travel details which indicate that he or she is traveling to or from Colorado, the trooper asks the driver if he or she is transporting anything illegal; (5) if the driver denies transporting

anything illegal, the trooper requests consent to search the vehicle; and (6) if the driver declines to consent, the trooper detains the driver and has a canine search the vehicle.

In 2016, the Tenth Circuit held that even when combined with other factors, a driver's status as a Colorado resident does not give KHP troopers reasonable suspicion to subject the driver to prolonged detention and a vehicle search.  Vasquez v. Lewis, 834 F.3d 1132, 1137 (10th Cir. 2016).  In Vasquez, KHP troopers had used the driver's Colorado residency as partial justification to detain him for a canine drug search.  The Tenth Circuit concluded that factors such as state residency and other indicia of interstate travel are "so broad as to be indicative of almost nothing." Id. (citations omitted).  Specifically, because 25 states permit marijuana use for medical purposes, the troopers' reasoning "would justify the search and seizure of the citizens of more than half of the states in our country."  Id.  The Tenth Circuit reasoned that it "cannot think of a scenario in which a combination of otherwise innocent factors becomes suspicious because the individual is from one of the aforementioned twenty-five states or the District of Columbia."  Id. at 1138.  It concluded that "it is time to abandon the pretense that state citizenship is a permissible basis upon which to justify the detention and search of out-of-state motorists, and time to stop the practice of detention of motorists for nothing more than an out-of-state license plate."  Id.

**C.    KHP Training**

Despite the Tenth Circuit ruling in Vasquez, KHP still instructs its troopers that when combined with other innocuous factors, a driver's travel origin or destination grants reasonable suspicion to search the vehicle.  KHP does not train its troopers that using these factors to search vehicles violates the Fourth Amendment to the United States Constitution, and it does not include Vasquez in its training curriculum.

-4-

As Superintendent of KHP, Herman Jones is the chief officer of the statewide police force. Accordingly, Jones has the statutory authority to direct the conduct of KHP troopers, and he is responsible for training, guiding and directing KHP troopers.  Jones therefore has the authority to stop the Kansas Two Step and canine searches that are based on driver travel origins or destinations.

## II.     Detentions Of Blaine And Samuel Shaw

Blaine Shaw and his brother Samuel Shaw reside in Oklahoma City, Oklahoma, and are members of the Osage Nation Native American tribe.  The Shaws have family and friends who live in Durango and Colorado Springs, Colorado, and they maintain contact with members of the Osage community in a suburb north of Denver.  Several times a year, Blaine drives through Kansas to Colorado on I-70 to visit family and friends, and he plans to continue doing so in the future. Samuel also travels through Kansas on I-70 once a year to visit family and friends in Aurora and Durango.  Samuel often accompanies Blaine when he travels to Colorado, and he plans to continue doing so for the foreseeable future.

On December 20, 2017, Blaine was driving to Denver with Samuel in their father's 2010 Chrysler, which has Osage Nation license plates.  As they travelled westbound in Ellis County, Kansas, KHP trooper Doug Schulte pulled them over.  Schulte told Blaine that he had stopped him for driving 91 miles per hour in a 75 mile per hour zone, and he twice noted Blaine's Oklahoma residence.  Schulte wrote Blaine a ticket for speeding, explained how he could pay the ticket and told him to have a safe trip.

Seconds later, before returning to his patrol car, Schulte re-engaged Blaine, asking whether he could ask Blaine a few questions.  Schulte asked Blaine where he was traveling.  When Blaine said that they were going to Denver, Schulte immediately asked whether Blaine had anything in

the car that he was not supposed to have, such as weapons, narcotics or cash.  Blaine stated that he

did not have any of those items.  Schulte then asked Blaine if he could search the vehicle.  Blaine

refused, and Schulte instructed Blaine and Samuel to wait while he returned to his patrol car.  Five

minutes later, Schulte returned and told Blaine and Samuel that he was detaining them for a canine

drug search because Blaine had refused to consent to a search.  Schulte detained Blaine and Samuel

for 19 minutes before the canine unit arrived.

When the canine unit arrived, the dog circled the car and alerted to the back seat.  The

troopers searched the vehicle for 33 minutes, while Blaine and Samuel waited outside, and

discovered medication for which Blaine had a prescription.  Schulte directed Blaine to follow him

to the station so that he could make copies of Blaine's medical paperwork.  Blaine complied.

Schulte released Blaine and Samuel from detention after approximately one and a half hours.

During the search, Schulte broke the zippers on two of Blaine's bags.

Following his detention, Blaine suffered significant anxiety, and for the next 14 months,

he ceased his job as an Uber driver because he feared that local police would detain him like KHP

had.  Similarly, Samuel has become fearful of police and his detention reminded him of a traumatic

experience that he had with police as a teenager.

## III.   Detention Of Joshua Bosire

Bosire resides in Wichita, Kansas.  Twice each month, he travels on I-70 to Denver,

Colorado to see his four-year-old daughter.  During the winter, he uses a rental car because his

vehicle is not equipped for snow or bad weather.  His rental cars usually have out-of-state license

plates.

On February 10, 2019, after visiting his daughter in Colorado, Bosire was returning to

Wichita in a rented Nissan Altima with Missouri license plates.  While eastbound on I-70 in Ellis

County, Kansas, KHP troopers Schulte and Brandon McMillan stopped and detained him. McMillan asked for Bosire's driver's license, and said that he had stopped Bosire for exceeding the speed limit by six miles per hour. McMillan asked Bosire where he was coming from, to which Bosire responded that he was traveling from the west. McMillan asked him to clarify whether he was traveling from Colorado, but Bosire declined to provide more detail or state the purpose of his trip.

McMillan left Bosire's car to speak with Schulte. Twice, he told Schulte that he did not smell drugs in the car and that he did not believe that he could hold Bosire for a canine search. Schulte encouraged McMillan to try to get Bosire's consent to search the car. McMillan returned to Bosire's car and told him that he was going to give him a warning for speeding, but said that because Bosire had refused to clarify his travel plans, he was suspicious that Bosire was transporting something illegal. McMillan asked Bosire for consent to search his car. Bosire refused, so McMillan called a canine unit.

McMillan and Schulte detained Bosire for 36 minutes before the canine unit arrived. They forced Bosire to exit the car, undergo a pat down search and stand in a cold February night while the dog circled the car. The dog did not alert, so McMillan and Schulte released Bosire from detention.

As a result of the detention, Bosire suffered extreme anxiety and developed a fear of driving alone at night. Based on the stress from the detention, he missed the next several days of work and for the next two months, he refrained from visiting his daughter because he feared that KHP would again detain him at night. Since his detention, Bosire has changed his travel schedule to ensure that he does not have to drive on I-70 at night. He has elected to stay in hotels rather than drive after sundown.

At Bosire's request, KHP performed an internal investigation of his stop.   On August 9, 2019, KHP published findings which stated that "after considering everything we had access to, and comparing what we know with what occurred during [Bosire's] traffic contact, we have determined some of [Bosire's] concerns had merit."   <u>First Amended Complaint – Class Action</u> (Doc. #7) at ¶ 77.  KHP's findings concluded that the length of time Bosire was detained was "unnecessary given the suspicions . . . articulated" by McMillan.  <u>Id.</u>

## IV.   Lawsuit

On January 30, 2020, Blaine and Samuel Shaw and Bosire, on behalf of themselves and others similarly situated,[2] filed an amended complaint against Jones, Schulte and McMillan.[3]  <u>First Amended Complaint – Class Action</u> (Doc. #7).  Pursuant to 42 U.S.C. § 1983, each plaintiff brings several constitutional claims, and they seek various forms of relief.  As to Jones, plaintiffs bring the following claims:

- <u>Count 1</u>: Class action claim that Jones violated their Fourth Amendment rights by maintaining a practice of detaining drivers using innocent indicia of travel, and training KHP troopers to do so.

- <u>Count 2</u>: Class action claim that Jones violated their rights to travel under the Privileges and Immunities Clauses of Article IV, Section 2 and the Fourteenth Amendment by creating and enforcing a policy to target vehicles with out-of-state license plates.[4]

---

[2]   Pursuant to Fed. R. Civ. P. 23, plaintiffs seek to bring their claims on behalf of themselves and on behalf of a particular class of individuals.  Because the specifics of plaintiffs' class claims are not pertinent to the present motion, the Court does not detail them here.

[3]   As the Court explained above, plaintiffs sue Jones in his official capacity, and sue Schulte and McMillan in their individual capacities.

[4]   In the heading of Count 2, plaintiffs also purport to bring their privileges and immunities claims under the Fourth Amendment.  The Court construes these claims as limited to Article IV and the Fourteenth Amendment.

Id. at 23–36.  Plaintiffs seek declaratory and injunctive relief, plus attorneys' fees, costs and any further relief that the Court deems just and equitable.  Plaintiffs do not seek damages from Jones under either count.  See Plaintiffs' Memorandum In Opposition To Defendant Jones's Motion To Dismiss (Doc. #17) filed March 20, 2020 at 8 ("three named Plaintiffs seek damages for themselves from two individual troopers and injunctive and declaratory relief for themselves and the class against Defendant Jones in his capacity as the Superintendent of the KHP").

## Legal Standards

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face.  Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.  Plaintiffs make a facially plausible claim when they plead factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged.  Id. at 678.  However, plaintiffs must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability.  Id. (quoting Twombly, 550 U.S. at 557).  Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleaders are entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case.  Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

The Court need not accept as true those allegations which state only legal conclusions.  See Iqbal, 556 U.S. at 678; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Rather, plaintiffs bear the burden of framing their complaint with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  Twombly, 550 U.S. at 556.  A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Iqbal, 556 U.S. at 678.

## Analysis

As the Court explained above, plaintiffs assert two claims against Jones: (1) violation of their Fourth Amendment rights to be free from unreasonable searches and seizures; and (2) violation of their rights to travel under the Privileges and Immunities Clause of Article IV, Section 2 and the Fourteenth Amendment.  Under these theories, plaintiffs seek declaratory and injunctive relief, and not damages.  Jones asserts that plaintiffs lack standing to pursue these claims.

Federal courts are not "free-wheeling enforcers of the Constitution and laws" — Article III of the United States Constitution limits their jurisdiction to cases and controversies.  Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1087 (10th Cir. 2006).  Accordingly, to maintain suit in federal court, plaintiffs must establish that (1) they suffered an "injury in fact" that is concrete, particularized and actual or imminent, (2) the injury is "fairly traceable to the challenged action" and (3) it is "likely that the injury will be redressed by the relief requested."  Colorado Cross Disability Coal. v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211 (10th Cir. 2014).  Accordingly, plaintiffs who seek prospective relief — such as a declaratory or injunctive order to prevent future injury — must show a real and immediate threat of future harm.  City of Los Angeles v. Lyons,

-10-

461 U.S. 95, 109 (1983); <u>Redmond v. Crowther</u>, 882 F.3d 927, 942 (10th Cir. 2018) (plaintiff who seeks injunctive relief based on threat of future harm must show threat is "real and immediate, not conjectural or hypothetical"); <u>Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1</u>, 859 F.3d 1243, 1250 (10th Cir. 2017) (to seek prospective relief, plaintiff must suffer continuing injury or be under real and immediate threat of future injury).  Although not dispositive, past exposure to wrongful conduct "bears on whether there is a real and immediate threat of repeated injury." <u>Tandy v. City of Wichita</u>, 380 F.3d 1277, 1289 (10th Cir. 2004).

Jones asserts that plaintiffs do not have standing to seek injunctive relief against the KHP practice of detaining and searching vehicles based on the driver's travel origin or destination. Relying heavily on <u>Lyons</u>, Jones argues that even though KHP allegedly subjected plaintiffs to this unconstitutional practice in the past, plaintiffs' allegations do not establish a real and immediate threat that it will do so in the future.  <u>See Lyons</u>, 461 U.S. at 106 (to have standing, plaintiff must allege that he would have future encounter with police).  Specifically, Jones argues that plaintiffs cannot plausibly allege that they will have future encounters with KHP troopers because such encounters will depend on plaintiffs breaking the law, <u>i.e.</u> KHP will stop them for committing a traffic violation.  To show that this unlikely, Jones points out that KHP has not stopped plaintiffs since the traffic stops at issue (on December 20, 2017 and February 10, 2019, respectively) even though they have since continued to travel to and from Colorado on I-70.[5]

---

[5]     The fact that KHP has not stopped plaintiffs since February 10, 2019, tells us nothing.  It does not prove that plaintiffs did or did not break the law.  All it proves is that KHP has not stopped them for traffic violations since that date.  It is not implausible that plaintiffs will violate traffic laws in the future or that defendants will detain them for doing so.

This argument is without merit.  Plaintiffs allege that based on innocuous indicia of travel, KHP troopers stop and subject drivers to prolonged detention.[6]  When the Kansas Two Step fails to procure the driver's consent to search the vehicle, the troopers still conduct a canine search.  In 2016, the Tenth Circuit directed KHP to "abandon the pretense that state citizenship is a permissible basis upon which to justify the detention and search of out-of-state motorists, and . . . to stop the practice of detention of motorists for nothing more than an out-of-state license plate."  Vasquez, 834 F.3d at 1137.

Allegedly disregarding this order, KHP has continued to explicitly train its troopers to target out-of-state drivers.  In a 2017 article in the Topeka Capital Journal, KHP Lieutenant Randy Moon (who apparently disagrees with the Tenth Circuit) vowed that "it's not an unreasonable expectation" for his troopers to assume that drivers who have out-of-state plates and are traveling to or from Colorado are trafficking marijuana.  To date, KHP's advanced training curriculum does not mention Vasquez.  According to plaintiffs' allegations, KHP troopers have continued to

---

[6]       Jones asserts that plaintiffs' amended complaint does not contain any allegations that KHP has a practice of *stopping* vehicles based on indicia of travel — only that it has a practice of subjecting already-stopped drivers to prolonged detentions and vehicle searches.

Although plaintiffs' claims are not based on unlawful stops (i.e., they do not allege that KHP troopers illegally stopped *them*), the amended complaint does contain several allegations that KHP troopers target out-of-state drivers for vehicle stops.  See First Amended Complaint – Class Action (Doc. #7) at ¶ 31 ("Defense attorneys reported an uptick in clients with Colorado travel plans being targeted by KHP troopers for stops, prolonged questioning, and detentions"), ¶ 33 ("KHP stop and forfeiture data demonstrates out-of-state drivers are disproportionately stopped by KHP troopers"), ¶ 34 (in 2017, drivers with out-of-state plates made up 93% of KHP stops), and ¶ 62 ("KHP's unlawful stop and detention practices are pervasive and widespread").

Even if plaintiffs do not claim that out-of-state license plates were the reason for their stops, allegations that KHP maintains a "pervasive and widespread" practice of stopping out-of-state drivers are relevant to whether plaintiffs will have future encounters with KHP troopers.  In other words, if KHP troopers consistently stop vehicles with out-of-state license plates, this increases the likelihood that they will stop plaintiffs on future trips and subject them to the challenged detentions and searches.

consistently apply their training: in 2017, drivers who had out-of-state license plates constituted 93 per cent of KHP's stops.[7]

Here, plaintiffs allege that several times a year, they drive through Kansas on I-70 on their way to and from Colorado. Specifically, Bosire takes I-70 twice a month to see his daughter in Denver, Colorado, and the Shaws travel several times a year to visit family and friends in various cities throughout Colorado. In December of 2017 and February of 2019, just as they consistently do with other out-of-state drivers, KHP troopers allegedly applied their training to plaintiffs: based on nothing except their out-of-state license plates and statements that they were traveling to or from Colorado, KHP troopers subjected them to canine searches and prolonged detentions which ranged from approximately 36 to 90 minutes. Despite these experiences, plaintiffs allege that they will maintain their travel schedule and continue to drive through Kansas to see family and friends in Colorado.

Plaintiffs allege a real and immediate threat that based on innocuous indicia of interstate travel, KHP will stop them for traffic violations (real or pretextual) and subject them to prolonged detentions and vehicle searches. Plaintiffs allege that despite explicit directives from the Tenth Circuit, KHP continues to train its troopers to target and enforce an unconstitutional practice

---

[7]    Jones asserts that this particular allegation is "nonsense to anyone who has lived in Kansas for even a limited time." Reply In Support Of Motion To Dismiss (Doc. #24) at 4 n.2. Jones argues that the transcript which plaintiffs cite in support shows that this statistic was referencing the percentage of out-of-state vehicles that involved "significant seizures" of drugs or cash — not total stops. See Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1105 (10th Cir. 2017) (although Court accepts all well-pleaded allegations as true, content of attached exhibit controls if conflict exists between it and allegations).

The exhibit states, "In 2017 vehicles with Kansas license pla[tes] accounted for just 7 percent of stops by the Highway Patrol. Neighboring Missouri tied Colorado for the top of the out-of-state list – along with vehicles licensed out of California." Nothing surrounding this statement proves that it means something other than what it explicitly says. Accordingly, for purposes of his motion to dismiss, Jones has not established that it contradicts plaintiffs' allegation.

-13-

against interstate travelers, and that the troopers consistently apply this training.  Accordingly, as plaintiffs travel across Kansas with out-of-state license plates, complying with Kansas traffic laws (or not), they face a realistic threat that KHP troopers will target them for prolonged detentions and drug searches.  See Tandy, 380 F.3d at 1284 (plaintiff had standing to challenge bus system which frequently malfunctioned because he had used bus service "for many years" and had asserted intent do so several times per year in future); In re Motor Fuel Temperature Sales Practices Litig., No. 06-2582-KHV, 2012 WL 1672994, at *7 (D. Kan. May 14, 2012) (plaintiff had standing to seek injunctive relief against allegedly unlawful fuel practice because he intended to use defendant's station "many times" that year); Smith v. City of Chicago, 143 F. Supp. 3d 741, 752 (N.D. Ill. 2015) (plaintiffs alleged "ongoing constitutional violations pursuant to an unconstitutional policy or practice" and that officers repeatedly subjected them to unconstitutional stops and frisks, "which leads to the reasonable inference of the likelihood that [the police department's] officers will unlawfully stop and frisk Plaintiffs in the future").

This conclusion is consistent with Lyons, which did not establish the categorical bar that Jones proposes.  From Lyons, Jones discerns a black and white rule: if the alleged wrongful conduct involves any kind of interaction with law enforcement, plaintiffs' allegations are de facto too speculative because such allegations assume that plaintiffs will violate the law.  See Memorandum In Support Of Motion To Dismiss Defendant Herman Jones (Doc. #15) filed February 28, 2020 at 5 ("standing for prospective injunctive relief will not flow" if injury contingent on violating law).

Lyons did not establish such a bright line rule.  Instead, it represents a straightforward application of the requirement that to have standing to seek injunctive relief, a plaintiff must show a real and immediate threat of future harm.  Lyons, 461 U.S. at 102 (injury or threat of injury must

be both "real and immediate," not conjectural or hypothetical), at 111 (plaintiff lacks standing absent sufficient likelihood that he will again be wronged in similar way); see Collins v. Daniels, 916 F.3d 1302, 1315 (10th Cir.), cert. denied, 140 S. Ct. 203, (2019), reh'g denied, 140 S. Ct. 567 (2019) (quoting Lyons for the same).   In Lyons, the Supreme Court held that the plaintiff's allegations did not satisfy this standard, and he therefore did not have standing to seek to enjoin a police force from applying a particular chokehold.   Specifically, the plaintiff had not shown a "real and immediate threat that he would again be stopped for a traffic violation, or for any other offense," by an officer who would apply the chokehold.   Lyons, 461 U.S. at 105.   The Supreme Court explained that to do so, the plaintiff would have had to plausibly allege that he would have another encounter with police, and "either (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner."[8] Id. at 106 (emphasis in original).

As the Court explained above, plaintiffs have established a real and immediate threat of future harm.   They plausibly allege that they frequently drive through Kansas with out-of-state plates on their way to and from Colorado, and that KHP troopers will do what they are trained to do: target them for stops, prolonged detentions and drug searches.   Unlike in Lyons, plaintiffs have

---

[8]        To support his bright line rule, Jones also relies on O'Shea v. Littleton, 414 U.S. 488 (1974), in which the Supreme Court held that the plaintiffs lacked standing to enjoin certain discriminatory enforcement of the criminal law, such as harsher sentences.   As in Lyons, the Supreme Court in O'Shea merely applied the "real and immediate threat" test to the plaintiffs' claims – it did not establish the categorical bar which Jones proposes.   O'Shea, 414 U.S. at 494 (threat of injury must be both real and immediate, not conjectural or hypothetical), 496 (question is whether threat to plaintiffs is "sufficiently real and immediate to show an existing controversy").

As the Court explained above, plaintiffs' allegations are far less speculative than those in Lyons and O'Shea.   Id. (plaintiffs' standing depended on several layers of speculation, including *if* they violated law, *if* they were charged, *if* they were tried and *if* trial proceedings occurred in front of defendant).

plausibly alleged that (1) they will have another encounter with KHP troopers and (2) KHP not only authorizes this practice, it expressly instructs its troopers (presumably all troopers) to apply it. See Uroza v. Salt Lake Cty., No. 11-713-DAK, 2014 WL 4457300, at *5 (D. Utah Sept. 10, 2014) (after Lyons, "several federal courts have held that the victim of an established government policy can sue to enjoin that policy even [if] he would not again be subject to it unless arrested once more"); Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 345 (2d Cir. 1998) (in contrast to Lyons, "the challenged interrogation methods in this case are officially endorsed policies," and therefore "there is a likelihood of recurring injury"); Maneely v. City of Newburgh, 208 F.R.D. 69, 73 (S.D.N.Y. 2002) (following Lyons, "the Second Circuit has held that a plaintiff may have standing to seek injunctive relief against a police department if the alleged improper actions were conducted pursuant to a uniform practice or official policy"); Creedle v. Miami-Dade Cty., 349 F. Supp. 3d 1276, 1290 (S.D. Fla. 2018) (unlike in Lyons, plaintiff is not challenging a "sporadic, random practice of government officers gone rogue, but an established, blanket County policy").

Jones cites no authority that would negate plaintiffs' standing merely because a future encounter with KHP troopers might follow a traffic infraction. Indeed, if Jones' categorical bar was correct — that "standing for prospective injunctive relief will not flow" if an injury is contingent on violating the law — it is difficult to imagine how any plaintiff could ever enjoin unconstitutional conduct which occurs after a police encounter.[9] See Memorandum In Support Of

---

[9]     Jones concludes his motion with a bizarre shot across the bow to any court — presumably this Court, in particular — which might be inclined to grant relief to plaintiffs: "However interesting the issues to personal rights advocates, public officials and most importantly courts cannot become their mice to play with. The Shaws and Bosire have their civil rights damage claims. That is enough." Memorandum In Support Of Motion To Dismiss Defendant Herman Jones (Doc. #15) at 8 n.2. At several points, Jones suggests that plaintiffs' lawyers — not plaintiffs — are the only ones who actually care about this case. Reply In Support Of Motion To Dismiss

(continued…)

Motion To Dismiss Defendant Herman Jones (Doc. #15) at 5.  The Court will not be the first to

adopt such a drastic, blanket rule.

      **IT IS THEREFORE ORDERED** that Jones' Motion To Dismiss Defendant Herman

Jones (Doc. #14) filed February 28, 2020 is **OVERRULED**.

      Dated this 1st day of May, 2020 at Kansas City, Kansas.

                          s/ Kathryn H. Vratil
                          KATHRYN H. VRATIL
                          United States District Judge

---

[9](…continued)
(Doc. #24) at 14 (comparing plaintiffs' lawyers to Justice Marshall's dissent in Lyons: "public interest lawyers are not the only ones who are frustrated that potentially unconstitutional policies cannot be challenged for lack of standing").
     Nothing about plaintiffs' allegations is "academic."  Future pleadings must omit such unprofessional and irrelevant arguments about plaintiffs, their counsel and the Court itself.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Blaine Franklin Shaw, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 6:19-CV-01343 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.*, | |
| Defendants. | |

## ANSWER BY DEFENDANT HERMAN JONES

Defendant Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol (Jones) for his answer to the First Amended Complaint (Complaint) states:

*First Defense*

1.      Concerning the allegations in paragraphs 1, 15 & 16, it is admitted that plaintiffs attempt to state claims for equitable class action relief and damages under 42 U.S.C. § 1983. It is denied that plaintiffs are entitled to this relief.

2.      Answering paragraph 3, the allegation in the first sentence of the paragraph 3 is denied, but this defendant lacks knowledge or information sufficient to form a belief about allegations in the second sentence of the paragraph.

1

3. The allegations contained in the following paragraphs are denied: 2[1], 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 29, 30, 33, 34, 35, 37, 38[2], 39, 41, 42, 43, 44, 45, 46, 47, 48, 51, 52, 54, 55, 56, 62, 87, 94, 95, 96, 98, 99[3], 100, 101, 102, 103, 104, 105, 106, 107, 109, 115, 116, 117, 118, 123, 124 & 127 .

4. Answering paragraphs 12, 23 & 60, while Jones is authorized and empowered to make all necessary rules and regulations for the conduct of the members of the Kansas Highway Patrol (KHP) not otherwise prescribed by law, additional or contrary allegations in the paragraphs are an attempt to state legal opinions to which no responsive pleading is required. Furthermore, as to **paragraph 60, the existence of the "unconstitutional practices" is denied.**

5. Answering paragraph 17, it is admitted that plaintiffs Blaine and Samuel Shaw attempt to state a claim for damages under 42 U.S.C. § 1983 against the trooper defendants for which this Court has subject matter jurisdiction. It is further admitted that this Court has subject matter jurisdiction of the claim for

---

[1] While there is no formal designation, parts of interstate highway I-70 are a recognized **"drug corridor."**

[2] **This answer employs the "two-step" definition described in paragraphs 38 & 39 of the Complaint to answer the successive paragraphs pertaining to the alleged "two-step"** maneuver.

[3] Jones does not dispute plaintiffs have attempted to describe a putative class, but denies the proposed class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member for the relief demanded.

prospective equitable relief, assuming they possess the required constitutional standing, but it is denied that they are entitled to their demanded relief.

6.     The allegations contained in the following paragraphs attempt to state legal opinions to which no responsive pleading is required: 18, 58, 59, 93, 111, 112, 113, 114, 120, 121, 122, 125 & 126.

7.     The allegations contained in the following paragraphs are admitted: 19, 26, 69, 71, 72, 80, 81, 83, 84 & 91, except this defendant cannot respond to the allegation, in paragraph 72, that Bosire was detained for 36 minutes as the **alleged starting time of the "detention" is not stated.**

8.     This defendant lacks knowledge or information sufficient to form a belief about allegations in the following paragraphs: 20, 21, 22, 27, 28, 31, 45, 50, 64, 66, 73, 74, 75, 76, 78, 79, 89, 90, 92 & 108.

9.     The allegations contained in the first, third and last sentences of paragraph 24 are admitted; but the balance of the allegations in the paragraph are denied.

10.     The allegations contained in the first, third and last sentences of paragraph 25 are admitted; but the balance of the allegations in the paragraph are denied based upon information and belief.

11.     Answering paragraph 28, the Kansas Attorney General, through his office, in order to obtain reliable information about the true condition of the crime situation involving Colorado marijuana in Kansas called upon law

3

enforcement agencies and prosecutors to provide information regarding Colorado marijuana. Surveys were sent out on December 30, 2015, and over the following months responses were received from 320 law enforcement agencies and 79 County or District Attorneys.

12.      Regarding paragraph 29, The Kansas Highway Patrol (KHP) **responded to the Kansas Attorney General's 2015 surve**y request by providing a summary of data on KHP marijuana seizures from 2013 through 2015. The data showed that while the total number of KHP marijuana seizures remained roughly **the same since Colorado's "legalization" of recreational marijuana in January** 2014, the percentage of seizures involving marijuana believed to have originated in Colorado has risen steadily to account for roughly 70% of KHP marijuana seizures in 2015. By weight, suspected Colorado marijuana accounted for roughly 50% of marijuana seized by the KHP in 2014 and 2015, up from 18% in 2013. From the KHP data and other survey responses, the Kansas Attorney General office concluded that Colorado marijuana is prevalent in Kansas and, while some jurisdictions reported an increase in overall levels of marijuana crimes, the major **effect of Colorado marijuana "legalization" appears to be that high grade** marijuana from Colorado has to a large extent replaced lower grade marijuana from Mexico and home grown marijuana.

4

13.     Answering paragraph 32, this defendant lacks knowledge or information sufficient to form a belief about the allegation attorney Joseph made the statement quoted in the paragraph but denies his assertion if it was made.

14.     Answering paragraph 36, this defendant lacks knowledge or information sufficient to form a belief about the allegation former KHP Lt. Moore made the statement quoted in the paragraph but denies the allegations contained in the first sentence of the paragraph.

15.     Answering paragraph 40, while it is admitted that the quoted passage is from the cited, unpublished, Kansas Court of Appeals decision, the **"two step" maneuver described in that opinion is different** from the maneuver that plaintiffs allege in the Complaint; accordingly, the first clause of the paragraph is denied.

16.     Answering paragraph 49, the language of *Vasquez v. Lewis*, 834 F.3d 1132 (10th Cir. 2016) (*Vasquez*), speaks for itself and no responsive pleading is required.

17.     Answering paragraph 53, on information and belief, this defendant denies the truth of the general allegation in paragraph 53; this defendant also denies that the documents referenced in footnote 31 are affidavits where KHP troopers testified they used the alleged maneuver described in paragraphs 38 & 39.

18.     Answering paragraph 57, it is admitted that *Vasquez* was not referenced in the Advanced Interdiction Case Outline (Kan. Highway Patrol, 2019).

19.     Answering paragraph 61, the allegations in the first two sentences are denied. This defendant lacks knowledge or information sufficient to form a belief about the allegations in the last sentence.

20.     **Answering paragraph 63, it is admitted that Bosire is a "Black man,"** but this defendant lacks knowledge or information sufficient to form a belief about the balance of the allegations in the paragraph.

21.     Answering paragraph 65, this defendant lacks knowledge or **information sufficient to form a belief about Bosire's travel before he was stopped** for speeding, but admits the allegations that the vehicle stopped was a Nissan Altima with a Missouri license plate and, on information and belief, that the vehicle was rented; the balance of the allegations in the paragraph are denied as phrased.

22.     Answering paragraph 67, the allegations contained in the first sentence are admitted, but the balance of the allegations in the paragraph are denied as phrased.

23.     Answering paragraph 68, it is admitted this defendant could not smell anything—meaning an order of marijuana—**from inside Bosire's vehicle; and** he stated as much twice to defendant Schulte. It is further admitted that, in

discussing the matter with Schulte, this defendant asked for Schulte's opinion on whether there was enough to detain Bosire given this defendant did not smell marijuana. Allegations inconsistent with this in the paragraph are denied.

24.     Answering paragraph 70, it is admitted this defendant informed Bosire that he would receive a warning for speeding and further admitted that this defendant told Bosire he was suspicious that Bosire was doing something **illegal in part from Bosire's evas**ive response to questions about his travel plans. Allegations inconsistent with this in the paragraph are denied.

25.     Answering paragraph 77, it is admitted a professional standards investigation was conducted on the basis of a complaint made by Bosire and, without admitting the admissibility of the conclusions from the referenced KHP professional standards investigations, the language in the August 9, 2019 letter— of which Exhibit 13 to Complaint is an incomplete copy—speaks for itself and does not require responsive pleading.

26.     **Answering paragraph 82, it is admitted B. Shaw's residence in** Oklahoma came up in discussing what a driver must do to respond to law **enforcement's flashing lights and whether his residence remained in Oklahoma** as shown on his drive**r's license. Allegations inconsistent with this in paragraph** 82 are denied.

27.     Answering paragraph 85, it is admitted that this defendant asked B. **Shaw's for his consent to a search and B. Shaw refused to give that consent; and**

this defendant told B. Shaw **he was being detained in response to B. Shaw's statement that he should be allowed to leave if the traffic stop had ended.** The balance of the allegations in paragraph 85 are denied.

28.     Answering paragraph 86, it is admitted that B. Shaw was detained waiting for a canine unit; the canine alerted that drugs were in the vehicle; and the vehicle was searched by KHP troopers with that probable cause. However, this defendant currently lacks knowledge or information sufficient to form a belief about the exact durations before the canine unit was on site or of the search.

29.     Answering paragraph 88, the allegations contained in the first two sentences in the paragraph are denied, except this defendant believes B. Shaw consented to follow this defendant to the KHP station for copying of his medical marijuana paperwork, where a copy was made, and the duration of the traffic stop and subsequent detention—until the plaintiffs Shaw left the station—was probably about 90 minutes.

30.     Answering paragraph 97, the language of *Vasquez* speaks for itself and no responsive pleading is required, however, the balance of the paragraph is denied.

31.     The allegations in paragraphs 129-134 & 136-141 do not apply to this defendant and no responsive pleading is required.

32.    Unless expressly admitted, all allegations in the Complaint or its referenced materials and exhibits are denied.

*Second Defense*

33.    The claims against defendants Schulte and McMillan should not be joined with the claim against this defendant or they should be separately tried.

*Third Defense*

34.    Plaintiffs lack constitutional standing to prosecute this action.[4]

*Fourth Defense*

35.    Many of plaintiffs remedy demands are beyond the scope of appropriate injunctive relief.

*Fifth Defense*

36.    Alternatively, prospective mandatory injunctive relief is not appropriate.

Therefore, Defendant Herman Jones requests that the Court enter judgment in his favor against all of plaintiffs' claims, his costs and such other relief as the Court deems just and proper.

---

[4] The Court found standing at the pleading stage. But standing must exist at each successive stage of litigation.

Respectfully Submitted,

OFFICE OF KANSAS ATTORNEY
GENERAL DEREK SCHMIDT

/s/ Arthur S. Chalmers
Arthur S. Chalmers #11088
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Telephone: 785-368-6244
FAX: 785-291-3767
Email: art.chalmers@ag.ks.gov
*Attorneys for the Defendants*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of May 2020, I electronically filed the foregoing with the Clerk by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Arthur S. Chalmers
Arthur S. Chalmers

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Blaine Franklin Shaw, *et al*., | |
| *Plaintiffs*, | |
| | **Case No. 19-1343-KHV-GEB** |
| v. | |
| Herman Jones in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al*., | |
| *Defendants*. | |

| | |
|---|---|
| MARK ERICH, SHAWNA MALONEY, *Individually and as mother and natural guardian of minors D.M and M.M* | |
| *Plaintiffs*, | **Case No. 20-1067-KHV-GEB** |
| v. | |
| HERMAN JONES, *KHP Superintendent,* | |
| *Defendants*. | |

## CERTAIN PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE

Certain Plaintiffs—Blaine Shaw, Samuel Shaw, and Joshua Bosire ("Named Plaintiffs")—submit this response to the Court's order to show cause regarding class certification. (Dkt. 159, "OSC"). The Court asked the parties to explain why class certification is necessary if all putative class members would benefit from an injunction

1

and the injunction would save money. *Id.* Named Plaintiffs agree that class certification is unnecessary if certain controls are in place.

More specifically, if Defendant Jones would agree or this Court would order that any equitable relief obtained by the Named Plaintiffs in this case would inure to the benefit of the putative class members without certification of a class, then there is no need to certify a class.[1] Simply put, as long as this Court's orders will operate across the Kansas Highway Patrol ("KHP") on all its troopers' interactions with travelers, class certification is unnecessary. "'A class action [is] not demanded here because the same relief [can] be afforded [the class members] without its use . . .'" *Aacen v. San Juan Cty. Sheriff's Dep't*, 944 F.2d 691, 700 (10th Cir. 1991) (brackets in original) quoting *Martinez v. Richardson*, 472 F.2d 1121, 1127 (10th Cir. 1973). In *Aacen*, the issue was whether New Mexico law provided constitutionally sufficient notice of personal property exemptions in execution cases. 944 F.2d at 696-97. The court held that the "post-judgment execution statutes did not require that sufficient notice be given . . . [and] are constitutionally deficient." 944 F.2d at 699. The circuit court went on to note that this holding was "'tantamount to a grant of classwide relief.'" *Aacen*, 944 F.2d at 700, quoting *Everhart v. Bowen*, 853 F.2d 1532, 1538 (10th Cir. 1988) (statewide injunction entered by the district court meant the court could use its discretion to deny class certification), rev'd sub nom. on other grounds, *Sullivan v. Everhart*, 494 U.S. 83 (1990).

---

[1] *See also* Named Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (Dkt. 92) at 2.

Named Plaintiffs in this case pursued class certification because Defendant Jones will not agree that an injunction could apply to the KHP as a whole. KHP troopers have also not changed their ways despite the Tenth Circuit's prior admonition that the conduct challenged here is unconstitutional. *See Vasquez v. Lewis*, 834 F.3d 1132, 1137 (10th Cir. 2016). An important part of the analysis regarding whether class certification is necessary, or an injunction would suffice, relates to whether the Named Plaintiffs have adequate assurances that the KHP would apply any resulting injunction to the benefit of all putative class members. In *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1548 (10th Cir. 1994), the defendants argued that "even if the district court correctly granted plaintiffs' preliminary injunction, it erred in effectively granting class-wide relief without certifying a class pursuant to" Rule 23. The Court of Appeals disagreed, reaffirming the rule it announced in *Everhart, supra*. This line of precedent makes clear that, where a district court "ha[s] *no reason to doubt* that defendants would apply any changes made . . . uniformly . . . [,] class certification [is] unnecessary . . . ." *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 822 F. Supp. 687, 689 (D. Kan. 1993) (emphasis added); *see also Kansas Health Care Ass'n*, 31 F.3d at 1548. Where there is reason to doubt, however, class certification may be appropriate.

Recently, in *Fish v. Kobach*, 318 F.R.D. 450, 454–55 (D. Kan. 2016), Judge Robinson applied the holding of *Kansas Health Care Ass'n*. Referring to the rule as a class

3

"necessity analysis,"[2] Judge Robinson observed that "[c]ases in this circuit suggest that denying class certification on this basis is appropriate: (1) where the nature of the rights asserted require that the injunction run to the benefit of all persons similarly situated; and (2) where there is little risk of the named plaintiffs' claims becoming moot during a live controversy." *Id*. In the specific case before her, Judge Robinson held that class certification was unnecessary in order for final relief to flow to the proposed class members. *Id*. at 455.

However, the *Fish* order was based, at least in part, on the fact that "the defendant stipulated on the record that any injunctive or declaratory relief obtained in the case would apply to all similarly-situated individuals, and not just to the named Plaintiffs." *Id.* Here, Defendant Jones has resisted agreeing that injunctive relief, if any, would have the kind of broad application contemplated in *Everhart* and its progeny, including *Fish*.

Although this Court previously overruled Defendant's Motion to Dismiss, wherein Defendant Jones argued that Plaintiffs lack standing to pursue an injunction altogether, *see* Mem. and Order (Dkt. 36), Defendant will likely raise these arguments again in contesting the applicability of any future injunction to all putative class members. Moreover, despite prior rulings that the conduct challenged in this lawsuit is unconstitutional, *see Vasquez*, 834 F.3d at 1137, Defendant Jones still allows, and in fact encourages, KHP troopers to prolong roadside detentions based on travel plans. *See* Mem. and Order (Dkt. 36) at 12

---

[2] *Fish*, 318 F.R.D. at 455 at n.15 citing 2 Newberg on Class Actions § 4:35 (5th ed.) ("Some . . . courts have . . . read into the 23(b)(2) certification analysis a requirement that the class action be a 'necessary' method for achieving a plaintiff's ends . . . .")

4

(describing the holding of *Vasquez* and noting that "Allegedly disregarding this order, KHP has continued to explicitly train its troopers to target out of state drivers."). The reach of any potential injunction issued in this case is therefore still in dispute, as to date Plaintiffs have no assurance that Defendant Jones would "apply any changes . . . uniformly" absent class certification. *Kansas Health Care Ass'n,* 822 F. Supp. at 689.

Therefore, Named Plaintiffs ask the Court to either certify a class or affirm that Named Plaintiffs meet "the preconditions for asserting an injunctive claim in a federal forum" (*City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)) and have standing to bring this case such that any awarded injunctive relief will—as the Tenth Circuit put it—be "tantamount to a grant of classwide relief". *Aacen*, 944 F.2d at 700; *see also Planned Parenthood of Kansas v. Mosier*, No. 16-2284-JAR-GLR, 2016 WL 3597457, at *26 (D. Kan. July 5, 2016) (discussing the "necessity doctrine"), aff'd in part, vacated in part sub nom. *Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205 (10th Cir. 2018). In short, Named Plaintiffs do not want to find themselves in the spot of having agreed that class certification is unnecessary, only to have Defendant Jones attack the Named Plaintiffs' standing in a way that might remove broad, uniform application of an injunction against the KHP, or force yet another lawsuit by new plaintiffs later on.

Speaking practically, if Defendant Jones will not agree, then this Court can order that the Named Plaintiffs have standing to obtain an injunction that will bar the entire KHP from practices this Court decides should be enjoined. Such an order should avoid future

defense arguments based on *Lyons*.[3] The alternative is for this Court to certify the matter as a class action.

## CONCLUSION

WHEREFORE, Named Plaintiffs respectfully request that the court (1) hold that class certification is necessary if all putative class members would benefit from an injunction and that such an injunction will apply to all similarly-situated individuals, and not just to the Named Plaintiffs or (2) find that the Class meets the requisites of Rule 23(a) and (b)(2) and certify this action as a class action, and, grant all other and further relief that the Court deems equitable and just.

Dated: May 20, 2021

---

[3] This Court's order denying Defendant Jones's motion to dismiss can be interpreted as a determination that the Named Plaintiffs have *Lyons* standing to seek injunctive relief in this case. *See Shaw v. Jones*, No. CV 19-1343-KHV, 2020 WL 2101298, at *8 (D. Kan. May 1, 2020) (Dkt. 36):

> [P]laintiffs have established a real and immediate threat of future harm. They plausibly allege that they frequently drive through Kansas with out-of-state plates on their way to and from Colorado, and that KHP troopers will do what they are trained to do: target them for stops, prolonged detentions and drug searches. Unlike in *Lyons*, plaintiffs have plausibly alleged that (1) they will have another encounter with KHP troopers and (2) KHP not only authorizes this practice, it expressly instructs its troopers (presumably all troopers) to apply it. . . .

> Jones cites no authority that would negate plaintiffs' standing merely because a future encounter with KHP troopers might follow a traffic infraction.

However, the Court may have intended otherwise. As such, Named Plaintiffs seek confirmation from the Court that it considers *Lyons* issues in this case resolved.

Respectfully submitted by,

SPENCER FANE LLP

/s/ Leslie A. Greathouse
Leslie A. Greathouse      KS # 18656
Patrick McInerney         KS # 22561
Madison A. Perry          KS # 27144
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100
Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com
mperry@spencerfane.com

and

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF KANSAS

s/ Sharon Brett
Sharon Brett              KS # 28696
Joshua M. Pierson         *Pro Hac Vice*
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
lbonds@aclukansas.org
sbrett@aclukansas.org

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of May 2021, a copy of the foregoing was filed

and served via the Court's electronic filing system on all counsel of record.

s/ Leslie A. Greathouse
Attorney for Plaintiffs

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Blaine Franklin Shaw, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 6:19-CV-01343 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |
| Mark Erich, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 6:20-cv-01067 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, | |
| Defendant. | |

## RESPONSE TO COURT'S SHOW CAUSE ORDER
## CONCERNING CLASS CERTIFICATION

    a.   *Plaintiffs' invitation*

The attorneys for the plaintiffs in 6:19-CV-01343[1] state:

Defendant Jones would have this Court believe that certification is unnecessary because the requested equitable relief, if granted, would benefit the putative class members without certification of a class. If Defendant Jones would like to stipulate to this position and agree that any equitable relief ordered by this Court applies to the

---

[1] The plaintiffs in Case No. 6:20-cv-01067 have not filed a motion for class certification or formally joined the motion filed by the plaintiffs in Case No. 6:19-CV-01343.

Named Plaintiffs and the Putative Class members such that this Court's orders will operate across the KHP on all its troopers' interactions with travelers, Plaintiffs will agree. However, Defendant Jones has been unwilling to enter into such an agreement to date.

Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, Dkt. Doc. 92, at 4-5 (citation and footnote omitted).

No request has been made that Defendant Jones enter into the stipulation(s) that Plaintiffs describe, unless the plaintiffs' reply memorandum constitutes such an invitation.

Notwithstanding, Defendant Jones stipulates:

• The equitable relief that the named plaintiffs demand against Defendant Jones, if granted, would benefit the putative class members without the certification of a class. *See* Opposition to Class Certification, Dkt. Doc. 88, at 5.

• Stated another way, any declaratory or injunctive relief which has been demanded would run to all persons similarly situated. *See* Dkt. Doc. 88, at 6.

• The persons bound by the Court's injunctive orders demanded by the plaintiffs include all Kansas Highway Patrol troopers. *See* Fed. R. Civ. P. 65(d)(2).

By making these stipulations, Defendant Jones is not agreeing to the merits of the plaintiffs' claims or the appropriateness of the demand for equitable relief. Furthermore, even if the names plaintiffs' could show class action

2

treatment is necessary in this case, Defendant Jones still maintains certification of a class action is inappropriate for the other reasons raised in his opposition to the plaintiffs' motion.

    b.    *Responding to The Court's Show Cause Order.*

The Court asks "why class certification is necessary if all putative class members would benefit from an injunction and the injunction would save money." Dkt. 159.

This Court described the two official capacity claims against Defendant Jones. They are:

> • Count 1: Class action claim that Jones violated their Fourth Amendment rights by maintaining a practice of detaining drivers using innocent indicia of travel, and training KHP troopers to do so.
>
> • Count 2: Class action claim that Jones violated their rights to travel under the Privileges and Immunities Clauses of Article IV, Section 2 and the Fourteenth Amendment by creating and enforcing a policy to target vehicles with out-of-state license plates.

*Shaw v. Jones*, No. CV 19-1343-KHV, 2020 WL 2101298, at *4 (D. Kan. May 1, 2020) (Doc. 36). The constitutionality and existence of alleged "practice" and "policy" (including any custom or policy), not the individual circumstances or interests of the named plaintiffs, are the subjects of the demanded equitable relief against Defendant Jones. Therefore, the equitable relief that the named plaintiffs demand, if granted, would benefit the putative class members [in fact more, future motor vehicle drivers and passengers] without the certification of a class.

In summary, Defendant Jones maintains that class certification is not necessary. *See* Dkt. 88, at 5-7. He also agrees that the expense associated with class certification, including its notices and hearing, is unwarranted.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT
s/ Arthur S. Chalmers
Arthur S. Chalmers, KS S. Ct. #11088
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612
Ph: (785) 368-8426
Fax: (785) 291-3707
Email:  art.chalmers@ag.ks.gov
*Attorney for Defendant Jones*

## CERTIFICATE OF SERVICE

This is to certify that on this 20th day of May, 2021, the above was filed and served via the Court's Electronic Filing System, which sent notification of the same to all counsel of record.

s/ Arthur S. Chalmers

App. Vol. I, 140

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Blaine Franklin Shaw, *et al.*, | |
| *Plaintiffs*, | |
| | **Case No. 19-1343-KHV-GEB** |
| v. | |
| Herman Jones in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.*, | |
| *Defendants*. | |
| | |
| MARK ERICH, *et al.*, | |
| *Plaintiffs,* | |
| | **Case No. 20-1067-KHV-GEB** |
| v. | |
| HERMAN JONES, *KHP Superintendent,* | |
| *Defendant.* | |

**PLAINTIFFS' MOTION TO AMEND THE PRETRIAL ORDER**

Plaintiffs Blaine Shaw, Samuel Shaw, Joshua Bosire, Mark Erich, and Shawna Maloney hereby move to amend the Pretrial Order to add complete requested relief that was inadvertently omitted, but which is without prejudice or surprise to Defendant Herman Jones.

**I.      BACKGROUND FACTS**

Plaintiffs brought this action including a 42 U.S.C. § 1983 claim against Jones in his official capacity as Superintendent of the Kansas Highway Patrol ("KHP"), alleging that the KHP through Jones maintains a policy or practice of detaining drivers using state residency and innocent-travel indicia which violates Plaintiffs' Fourth Amendment rights. Pretrial Order (Doc.

#290 at 2–3, 39–40). Plaintiff Shaw also brings a claim against Defendant Doug Schulte and Plaintiff Bosire brings a claim against Defendant Brandon McMillan for each respective Plaintiff's prolonged detention under § 1983.

Among other relief requested, Plaintiffs sought declaratory relief with respect to their claim against Jones (Count I for the Shaw/Bosire Case and Count II for the Erich/Maloney Case). (Doc. #7 ¶ 118 and Prayer for Relief; *Erich v. Jones*, No. 20-cv-01067, Doc #1-3 at Prayer for Relief). In addition, Plaintiffs sought attorneys' fees and costs under 42 U.S.C. § 1988 for each of their claims. (Doc. 7 ¶¶ 118, 128, 141, and Prayer for Relief; *Erich*, No. 20-cv-01067, Doc. #1-3 at Prayer for Relief).

While each of the claims and theories for such relief is clearly detailed in the Pretrial Order, counsel for Plaintiffs inadvertently failed to include the request for declaratory relief and attorneys' fees and costs in the Requested Relief section of the Pretrial Order. This was an omission attributable to the editing process and was not done in bad faith. As detailed below, neither requested relief would prejudice or surprise Defendants. Plaintiffs' extensive summary judgment briefing sought declaratory and injunctive relief. In addition, as defense counsel acknowledged during the discussion pertaining to settlement at the January 3, 2023 hearing, Plaintiffs continue to request attorneys' fees and costs.

## II.   LEGAL STANDARD

The Court may modify the pretrial order "to prevent manifest injustice." Fed. R. Civ. P. 16; *see also Turner v. Unified Gov't of Wyandotte Cnty. / Kansas City, Kansas*, No. CV 18-2202-KHV, 2020 WL 1888837, at *2 (D. Kan. Apr. 16, 2020) (citing *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2002)). This Court recently recited the following standard:

> The Court exercises discretion in deciding whether to modify the pretrial order. Koch v. Koch Indus., Inc., 203 F.3d 1202, 1222 (10th Cir. 2000). In so doing, the Court considers the following factors: (1) disruption to the orderly and efficient

2

trial of the case by inclusion of the new issue; (2) prejudice or surprise to the party opposing trial of the issue; (3) ability of the party to cure any prejudice; and (4) bad faith by the party seeking the modification. See Koch, 203 F.3d at 1222 (citation omitted). In applying these factors, the Court must strive to ensure "the full and fair litigation of claims." Joseph Mfg. Co. v. Olympic Fire Corp., 986 F.2d 416, 420 (10th Cir. 1993).

The Tenth Circuit has explained that an attempt to add a new claim to the pretrial order is the equivalent of asking leave to amend the complaint, and the Court must evaluate it under the standards set forth in Rule 15(a), Fed. R. Civ. P. Smith v. Aztec Well Servicing Co., 462 F.3d 1274, 1285 (10th Cir. 2006); Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006); see Hunter v. The Buckle, Inc., 488 F. Supp. 2d 1157, 1170 (D. Kan. 2007). Under Rule 15(a), the Court will generally deny leave to amend only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed or futility of amendment. See Duncan v. Manager, Dept. of Safety, City & Cnty. Of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005). Leave to amend is within the sound discretion of the Court. See Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir. 1991). Rule 15(a) instructs the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

*Turner*, 2020 WL 1888837 at *3.

The Tenth Circuit has advised courts to avoid "overly technical applications of pretrial orders," stating:

Proper pretrial orders are indeed powerful, but even at their best they should be "liberally construed to cover any of the legal or factual theories that might be embraced by their language." Rodrigues v. Ripley Industries, Inc., 507 F.2d 782, 787 (1st Cir. 1974). This court has warned that the pretrial order "is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality.

*Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979).

## II.  ARGUMENT

### 1.  Inclusion of Declaratory Relief Would Not Disrupt the Orderly and Efficient Trial of the Case.

There would be no disruption to the orderly and efficient trial of the case by inclusion of a request for additional relief to Shaw/Bosire Count I and Erich/Maloney Count II because the additional relief sought does not impact the trial of those claims against Jones. In other words,

3

seeking declaratory relief does not require additional evidence from what is already contemplated under Shaw/Bosire Count I and Erich/Maloney Count II. In addition, should there be a finding of liability, the Court will address reasonable attorneys' fees. Moreover, the Court granted Defendants' Motion to Sever for Separate Trials (Doc. #350), severing Shaw's and Bosire's trials against Schulte and McMillan, respectively, with one trial beginning February 6, 2023 and the other the following Monday, February 13, 2023. (Doc. #355). The trial for the claims against Defendant Jones is not currently scheduled.

Thus, inclusion of relief requested would not disrupt the orderly and efficient trial of the case and weighs in favor of permitting amendment of the pretrial order to include the requested relief for a declaratory judgment and attorneys' fees and costs.

### 2.     Amendment Would Not Result in Prejudice or Surprise to Defendants.

There is no prejudice to Defendants because they had an opportunity to move for summary judgment on the claims requesting the relief at issue and did so. Defendants cannot claim surprise that Plaintiffs intended to continue to request declaratory relief and attorneys' fees because Plaintiffs' summary judgment motion against Jones sought the declaratory relief they now request to add to the pretrial order, and as defense counsel acknowledged at the January 3 hearing, he was aware from settlement discussions that Plaintiffs intended to continue pursuing attorneys' fees and costs on all claims.

Jones moved for summary judgment "against Plaintiff's Fourth Amendment Claims (Count 1) because (a) Plaintiffs lack the required standing to prosecute the claims in Count 1 and (b) Plaintiffs lack of evidence supporting the existence of an alleged unconstitutional policy or custom, evidence of deliberate indifference and causation." *See* Mot. for Summ. J. Concerning Claims against Def. Jones, (Doc. #295 at 2). In Jones' memorandum in support of his motion, he stated, "plaintiffs present two § 1983 claims against defendant Jones . . . The claims are: Defendant Jones

4

maintains a policy or practice of detaining drivers using state residency and innocent-travel indicia which violates the Fourth Amendment rights of Plaintiffs. Count 1 of Shaw/Bosire First Amended Complaint; Count 2 of Erich/Maloney Complaint)[.]" (Doc. 296 at. 1–2) (footnote omitted); *see also* Pls.' Mot. for Summ. J. Against Def. Herman Jones (Doc. #307 at 1–2) (beginning, "Plaintiffs Blaine Shaw, Samuel Shaw, Joshua Bosire, Mark Erich, and Shawna Maloney hereby move the Court to enter summary judgment in their favor on their claims against Defendant Jones for injunctive *and declaratory relief* (Counts I and II in Case No. 19-1343; Count II in Case No. 20-1067). Plaintiffs seek injunctive *and declaratory relief* against Defendant Jones based on his ongoing practice[,]" and concluding, "[f]or the reasons contained therein [sic], Plaintiffs respectfully request that the Court grant their motion for summary judgment on their claims for injunctive *and declaratory relief* against Defendant Jones." (emphases added)). These illustrations clearly demonstrate that Jones was aware throughout the entire summary judgment briefing process that Plaintiffs continued to assert their claims for declaratory relief.

Attorneys' fees and costs against each individual Defendant flow from any potential finding of liability pursuant to federal law. *See* 42 U.S.C. § 1988. Thus, adding this request for relief back into the Pretrial Order is consistent with the Complaint and well-established law. And, throughout settlement discussions regarding the claims against Schulte and McMillan, Plaintiffs have continued to request attorneys' fees and costs—amending the pretrial order to explicitly state these demands would not prejudice or surprise Defendants.

This factor further weighs in favor of amendment.

### 3.    Defendants Have the Ability to Cure Any Potential Prejudice.

Even if Defendants have a colorable claim of prejudice by the addition of the requested relief—which Plaintiffs assert they do not—there is still time to cure any such prejudice because the trial on the claims against Schulte and McMillan has not occurred, and the trial against Jones

is not yet set. Thus, this factor weighs in favor of permitting Plaintiffs to amend the pretrial order to include a request for declaratory judgment and attorneys' fees and costs.

### 4. Plaintiffs Do Not Request Amendment in Bad Faith.

Plaintiffs' request for additional relief is not made in bad faith, but rather is the result of counsel's inadvertent editing error when submitting a proposed pretrial order to the Court. The fact that Plaintiffs continued to expressly request declaratory relief in their summary judgment papers and attorneys' fees as part of settlement demands supports the absence of bad faith. This is not a case of hiding the ball or attempting to surprise Defendants shortly before trial. Plaintiffs' counsel respectfully request that their inadvertence not impact their clients' additional requested relief.

This factor also weighs in favor of permitting amendment.

### 5. Plaintiffs Satisfy the Rule 15(a) Standard for Amendment.

As noted above, "[t]he Tenth Circuit has explained that an attempt to add a new claim to the pretrial order is the equivalent of asking leave to amend the complaint, and the Court must evaluate it under the standards set forth in Rule 15(a), Fed. R. Civ. P." *Turner*, 2020 WL 1888837 at *3. Plaintiffs assert that amending the pretrial order to include their previously pled and briefed relief is distinctly different from the addition of a new claim, as contemplated by Rule 15(a). However, even the Court finds that if Federal Rule of Civil Procedure 15(a) applies in this situation, Plaintiffs nevertheless satisfy the rule's requirements.

Rule 15(a) instructs the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

> Under Rule 15(a), the Court will generally deny leave to amend only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed or futility of amendment. See Duncan v. Manager, Dept. of Safety, City & Cnty. Of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005). Leave to amend is within the sound discretion of

6

the Court. See Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir. 1991).

*Turner*, 2020 WL 1888837, at *3.

As stated above, there is no undue delay or undue prejudice exists here. Plaintiffs continued to assert their requested relief even after the pretrial order was entered. In addition, Defendants have the ability to cure any prejudice they may claim because the trials have not yet begun, and in the case of Jones, is not even scheduled. Likewise, there is no bad faith or dilatory motive in requesting amendment; rather the omission was due to counsel's inadvertent error. Principles of justice merit amendment so that all avenues of relief Plaintiffs previously briefed and argued are available to them at trial and not restricted merely due to an editing error. Finally, this is Plaintiffs' first request for amendment of the Pretrial Order.

## III.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Pretrial Order (Doc. #290) be amended to include the following under Section 5. Damages and Non-Monetary Relief Requested:

> Plaintiffs' claims for declaratory relief are authorized by the Fourth Amendment to the United States Constitution, 42 U.S.C. Section 1983, and *Vasquez v. Lewis*, 834 F.3d 1132 (10th Cir. 2016), and 28 U.S.C. Section 2201, Federal Declaratory Judgment Act. Specifically, Plaintiffs seek a judgment declaring that Defendant Jones maintains a policy or practice of targeting vehicles with out-of-state license plates and detaining drivers using state residency and innocent-travel indicia which violates the Fourth Amendment rights of Plaintiffs. Alternatively, Plaintiffs seek a declaration that such a practice is inconsistent with prevailing Tenth Circuit law and the Fourth Amendment.

> Plaintiffs' claims for reasonable attorneys' fees and costs is authorized by 42 U.S.C. § 1988.

Respectfully submitted by,

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS**
s/ Sharon Brett
_____
Sharon Brett                    KS # 28696

7

Kunyu Ching                    *Pro hac vice*
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
sbrett@aclukansas.org
kdeloach@aclukansas.org

**AMERICAN CIVIL LIBERTIES**
**UNION FOUNDATION**
Brian Hauss                    *Pro Hac Vice*
125 Broad Street, Floor 18
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
bhauss@aclu.org

and

**SPENCER FANE LLP**
s/ Madison A. Perry
Leslie A. Greathouse          KS # 18656
Patrick McInerney             KS # 22561
Madison A. Perry              KS # 27144
Olawale O. Akinmoladun        KS # 25151
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100
Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com
mperry@spencerfane.com
wakinmoladun@spencerfane.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

     I hereby certify that on the 7h day of January 20223, a copy of the foregoing was filed and served via the Court's electronic filing system on all counsel of record.

s/ Madison A. Perry
Attorney for Plaintiffs

KC 19652189.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Blaine Franklin Shaw, *et al*., | |
| *Plaintiffs*, | |
| | **Case No. 19-1343-KHV-GEB** |
| v. | |
| Herman Jones in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al*., | |
| *Defendants*. | |
| | |
| MARK ERICH, *et al*., | |
| *Plaintiffs,* | |
| | **Case No. 20-1067-KHV-GEB** |
| v. | |
| HERMAN JONES, *KHP Superintendent,* | |
| *Defendants*. | |

## PRETRIAL ORDER

On August 18, 2022, U.S. Magistrate Judge Birzer conducted a pretrial conference in this case by phone.  Plaintiffs Blaine Shaw, Samuel Shaw, and Joshua Bosire from Case No. 19-1343 and Plaintiffs Mark Erich, Shawna Maloney individually and as mother and natural guardian of minor D.M. and M.M. from Case No. 20-1067 appeared through counsel Sharon Brett, Leslie Greathouse, Patrick McInerney, and Madison Perry. Defendants Herman Jones, in his official capacity as the Superintendent of the Kansas

Highway Patrol, Master Trooper Doug Schulte, in his individual capacity, and Technical

Trooper Brandon McMillian, in his individual capacity, for Case No. 19-1343 and Herman

Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol for Case

No. 20-1067, appeared through counsel Arthur Chalmers.

This pretrial order supersedes all pleadings and controls the subsequent course of

this case.  It will not be modified except by consent of the parties and the court's approval,

or by order of the court to prevent manifest injustice.  Fed. R. Civ. P. 16(d) & (e); D. Kan.

Rule 16.2(b).

1.    **PRELIMINARY MATTERS.**

    a.    **Subject-Matter Jurisdiction.**  Subject-matter jurisdiction is invoked under

        28 U.S.C. § 1331 and is not disputed except Defendant Jones maintains that

        plaintiffs lack required standing to prosecute Count I in Case No. 19-1343 and

        Count II in Case No. 20-1067, which will be addressed in a Fed. R. Civ. P. 56

        motion.

    b.    **Personal Jurisdiction.**  The court's personal jurisdiction over the parties is

        not disputed.

    c.    **Venue.**  Venue in this court is not disputed.

    d.    **Governing Law.**  Subject to the court's determination of the law that applies

        to the case, the parties believe and agree that the substantive issues in this case

        are governed by the following law:

        • Case No. 19-1343

2

o Federal law concerning 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution apply to Counts I (Plaintiffs against Defendant Jones), III (Plaintiffs Shaws against Defendant Schulte), IV (Plaintiff Bosire against Defendant McMillan). The Court previously dismissed the portion of the Shaws' claim against Defendant Schulte for prolonged detention subsequent to the dog alert and dismissed Plaintiff Bosire's claim against Defendant Schulte.

o Federal law concerning 42 U.S.C. § 1983 and the right to interstate travel in the Privileges and Immunities, Commerce, and Equal Protection Clauses of the United States Constitution apply to Counts II.

- Case No. 20-1067

o Federal law concerning 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution applies to Count II. The Court previously dismissed Count I against Defendant Trooper Rohr.

## 2.    STIPULATIONS.

**a.**    The following facts are stipulated:

### BOSIRE STOP

1.    On February 10, 2019, KHP Technical Trooper McMillan stopped Bosire while he was driving 82 miles per hour in a 75 mile per hour zone eastbound on Interstate 70. Bosire was driving a rented Nissan Altima.

3

2. After issuing a warning, McMillan detained Bosire for a drug dog sniff of the Altima. The canine sniff concluded without an alert. Bosire was then told he could leave.

3. McMillan was acting under color of state law.

## SHAW'S STOP

1. On December 20, 2017, at about 12:25 p.m., KHP Master Trooper Schulte stopped a minivan traveling 91 miles per hour in the 75 miles per hour zone westbound on Interstate 70. B. Shaw was driving. S. Shaw was a passenger.

2. Schulte requested a drug dog for a sniff of the minivan.

3. Schulte was acting under color of state law.

b. The Parties stipulate to the authenticity of the following exhibits for purposes of summary judgment and trial, but the Parties reserve the right to otherwise object to admissibility of the following on any other basis:

1. All Video produced in this litigation by Jones
2. All Police Service Dog Reports produced in this litigation by Jones
3. All PSU Reports produced in this litigation by Jones
4. All Incident Narrative Reports produced in this litigation by Jones
5. All KHP Training Materials produced in this litigation by Jones
6. All KHP Policies produced in this litigation by Jones
7. All Employee PSU Complaint files produced in this litigation by Jones KHP
8. Organizational charts of the KHP produced in this litigation by Jones
9. Cell phone recordings made by B. Shaw during the stop of the Shaws, produced by B. Shaw
10. Cell phone recording made by Bosire during the stop of Bosire produced by Bosire

4

3.      **FACTUAL CONTENTIONS.**

**Plaintiff(s)' Factual Contentions.**

**BOSIRE STOP**

Mr. Bosire regularly travels to visit his daughter who lives in Denver, Colorado. When he drives to Colorado in the winter, he rents a car because his personal car does not have good snow traction.

He was returning home from visiting his daughter when Trooper McMillian stopped him on February 10, 2019. He was driving a rental car with Missouri license plates.

Shortly before Trooper McMillan pulled him over, Mr. Bosire had been at a Love's Travel Stops and Country Store (Love's) in Ellis, Kansas. While there, Mr. Bosire had problems with his pump and spoke to an attendant for assistance.

In Trooper McMillan's written account of the stop, he described his observations at Love's while on a break with Trooper Schulte: "[a]s we were walking towards the doors, there was a group of several people walking inside the shop. . . . We waited by the doors until we could exit. As the individuals entered the store, I smelled the odor of marijuana emitting from one or more of them as they walked by Master Trooper Schulte and I." Trooper McMillian later testified there was no group of people walking past the Defendant Troopers as they exited.

As Trooper McMillan left Love's, he decided to run the license plate of the Altima and learned it was registered to EAN Holdings. Also, while leaving Love's, Trooper McMillan claims, he "saw a silver Dodge Charger, which appeared to be a rental vehicle,

5

driving west on a street just north of the [Love's] parking lot, apparently toward" Interstate 70 (I-70)'s entrance ramps.

Trooper McMillan claims he suspected the Altima and Dodge Charger may be caravanning in the delivery or acquisition of drugs. Hoping to pull Mr. Bosire over for a traffic infraction, Trooper McMillian drove down the interstate and parked on the median.

Trooper McMillan then stopped Mr. Bosire for going 7 miles per hour over the speed limit while traveling eastbound on I-70. He placed a license plate inquiry that confirmed that the Altima stopped was the one that he had seen at Love's. Mr. Bosire was skeptical of Trooper McMillan because he felt Trooper McMillan had identified him at Love's and was targeting him.

About a minute and a half into the stop, Trooper McMillan approached the Altima and had a first interaction with Mr. Bosire. Trooper McMillan asked where Mr. Bosire was coming from, explicitly asking if he was coming from Colorado, and Mr. Bosire asked if he had to answer the trooper's questions.

Trooper McMillan did not smell marijuana in the vehicle. He then called in an inquiry about Bosire's license and possible warrants and radioed Trooper Schulte for back up.

When Trooper Schulte arrived, Trooper McMillan told Trooper Schulte he could not smell marijuana in the vehicle; he saw a bible in back of the car he claimed to be a notebook, partly under a blanket; that there were several cameras in Bosire's car; and that Bosire was refusing to answer questions.

6

Trooper Schulte responded, "he is playing the game[.]" Trooper Schulte asked Trooper McMillan if he had requested consent to search the Altima. Trooper McMillan said he had not.  Trooper McMillan then told Trooper Schulte, if Mr. Bosire will not consent, "I don't think I can hold him for a dog." Trooper McMillan asked Trooper Schulte to locate the nearest, available drug-detection dog. Trooper McMillan then completed the paperwork to give Mr. Bosire a warning for speeding.

Then, about twelve minutes into the stop, Trooper McMillan returned to the Altima and spoke to Mr. Bosire for a second time. In the second exchange Trooper McMillan asked where Mr. Bosire's "buddy" went—mistakenly assuming the gas station attendant was connected to Mr. Bosire. Trooper McMillan also admitted he was suspicious because Mr. Bosire did not want to answer questions.

After Mr. Bosire refused a search, Trooper McMillan detained him and called a canine unit. The canine sniff did not result in an alert.

Trooper McMillan then returned Mr. Bosire's paperwork and gave him a written warning for speeding. Forty minutes after the targeted stop, Trooper McMillan told Mr. Bosire he could leave.

Mr. Bosire complained to the KHP that the search and detention was unjustified. KHP's Professional Standards Unit investigated the complaint and determined there was no reason for Trooper McMillan to have detained Mr. Bosire for a K-9. The investigation also concluded Trooper McMillan held Mr. Bosire for a longer duration than is legally acceptable. The KHP wrote to Mr. Bosire: "we have determined some of your concerns had merit[;] . . . This contact with you was not what we would consider standard under the

7

confines of investigative reasonable suspicion regarding criminal interdiction[;] . . . we feel the length of time you were detained roadside was unnecessary given the suspicions articulated."

As a result of the KHP's determination that there was no reason to detain Mr. Bosire for a canine search and that McMillan held Mr. Bosire for a longer duration than is legally acceptable, McMillian was required to take one hour of additional training with KHP legal staff and a one hour ride-along with an interdiction trooper. McMillian spent one hour studying the Kansas two-step with a KHP attorney; he also went on a one-hour ride-along where no searches were conducted. Under KHP policies and procedures, legal training and a ride-along qualify as remedial training and counseling, which is a form of corrective action. According to KHP policy, corrective action is different than discipline, with discipline being more severe. Despite KHP policy that a violation of a person's constitutional rights is misconduct that all employee's must report, McMillian was not disciplined as a result of the Bosire stop. And McMillan testified that he "didn't learn anything" from the KHP's investigation and finding that the duration of his detention of Mr. Bosire's was not legally acceptable.

Prior to his encounter with the KHP that is the subject of this lawsuit, Joshua Bosire trusted law enforcement. Since the encounter, he has a distrust of law enforcement. Joshua Bosire experiences anxiety due to this stop and interaction with KHP. His anxiety manifests by heart racing, panic, and fear.

## SHAW'S STOP

On December 20, 2017, the Shaws were traveling on I-70 through Kansas to Colorado.  They were traveling to see friends and family and go camping.  They were driving their father's minivan with Osage Nation license plates.

Trooper Schulte was driving on the interstate, in front of the Shaws, when he activated his patrol car lights to pull the Shaws over for speeding. B. Shaw had never been pulled over by a police car in front of him and did not know he was to pull over immediately when a patrol car activates lights ahead of him. He slowed but did not immediately pull over.

Once stopped, Trooper Schulte received a response to his license plate inquiry and approached the minivan. After approaching the driver's side window, Trooper Schulte had a conversation with B. Shaw that lasted about 50 seconds. Trooper Schulte told B. Shaw he was going 91 miles per hour, chided him for not pulling over fast enough, took his license and insurance, and asked about the car's owner and B. Shaw's address. B. Shaw relayed that the car belonged to his father but that he was listed on the insurance and drove the car for his work with Uber. Trooper Schulte then left, telling B. Shaw to wait in the vehicle.

Once back to his patrol vehicle, Trooper Schulte requested information and learned that B. Shaw's license was valid and there were no outstanding warrants. Schulte then requested backup and completed paperwork.

About ten minutes passed before Trooper Schulte returned to the minivan. When he did, he told B. Shaw the court date and how to resolve the ticket without appearing. They

9

briefly discussed B. Shaw's concerns about insurance, and then Trooper Schulte said, "[S]low down a little bit . . . have a safe trip and drive safely." B. Shaw responded, "All right. Thank you."

Three seconds after Trooper Schulte said "have a safe trip and drive safely," Schulte asked if he could inquire further. When he did, B. Shaw did not believe he could leave and could not have pulled away without endangering Trooper Schulte. The Shaws did not consent to the extended stop or detention after receiving the speeding ticket.

During the additional questioning, Schulte learned that the Shaws were heading to Colorado and that B. Shaw would not consent to a search:

> [Schulte] You are coming from Oklahoma; where are you headed to today?
>
> [B. Shaw] Denver. Headed to see family.
>
> [Schulte] Ok, alright. . . . [Y]ou don't have anything in the vehicle that you are not supposed to have with you? [B. Shaw, denials] – no guns, no knives, no contraband, no illegal narcotics, marijuana, cocaine, opioid, no meth, no large sums of cash, anything like that?
>
> [B. Shaw, denials]
>
> [Schulte] Can we search your vehicle for such items?
>
> [B. Shaw] I don't consent to searches. I am criminology major. It is like the number one golden rule.
>
> [Schulte] OK. Well wait right here, I will be right back with you. OK?

The Denver destination was relevant to Trooper Schulte because, based upon his experience and knowledge, I-70 was a corridor to Colorado (i.e., a source state for marijuana). Trooper Schulte then extended the stop to call for a drug dog which arrived

KC 19120685.1

approximately twenty minutes later. Trooper Schulte does not remember the basis for his reasonable suspicion.

The canine sniff took place. The troopers did not find any drugs. The troopers did not cite the Shaws for possession of anything unlawful. During the search, the troopers damaged on the Shaws' luggage.

Following the stop, B. Shaw did not like to drive. When he saw police while driving, he would get a knot in his stomach and feel anxious even though he was not doing anything wrong. This especially impacted his employment as an Uber driver. After the stop, he was afraid to drive for Uber for some time. After the stop, S. Shaw has experienced fear and anxiety.

## ERICH/MALONEY STOP

Plaintiffs Erich and Maloney were driving to visit family in Alabama from Colorado in March 2018. Mr. Erich was driving and Ms. Maloney was in the passenger seat. In the back, their two children were sleeping in the vehicle ("Erich Vehicle"). Plaintiffs Erich, Maloney, and minor children D.M. and M.M. were Colorado residents at that time. D.M was 13 years old at the time of the stop and M.M was 10 years old at the time of the stop.

Early in the morning on March 9, 2018, Trooper Rohr was travelling on I-70, driving his patrol car. Trooper Gleason was in the patrol car with him. The troopers passed the Erich Vehicle traveling in the opposite direction. Trooper Rohr then slowed, crossed the median, and sped to catch up with the Erich Vehicle.

When Trooper Rohr began following Plaintiff Erich, Plaintiff was traveling in the right lane at or below the speed limit. When Trooper Rohr began following Plaintiff Erich,

11

he had not seen Plaintiff Erich make any traffic violations. After Trooper Rohr caught up to Plaintiffs on the highway. Trooper Rohr did not activate the patrol car's lights. Once he caught up to the Erich Vehicle, Trooper Rohr began following and driving behind it in the left lane. Plaintiff Erich was driving in the right lane. Trooper Rohr observed that the Erich Vehicle had a Colorado temporary license plate.

Trooper Rohr eventually observed the Erich Vehicle cross the dotted-white line separating lanes and activated his patrol car lights, pulling the Plaintiffs over. Once he pulled them over, Trooper Rohr questioned Plaintiffs Erich and Maloney and learned they were traveling from Colorado.

After issuing a written warning for crossing the white line, Trooper Rohr asked Mr. Erich if he, Trooper Rohr, could ask additional questions. Mr. Erich refused and asked if he was free to leave. Trooper Rohr said "Yes." As Mr. Erich was attempting to leave, Trooper Rohr then advised that they were being detained and asked them to step out of the vehicle.

One of the reasons Trooper Rohr detained Plaintiffs was because they were traveling to Alabama. One of the reasons Trooper Rohr detained the Plaintiffs was because they were from Colorado.

After the Plaintiffs stepped out of the vehicle, Trooper Rohr deployed his drug dog and had it sniff the perimeter of the vehicle. According to Trooper Rohr, the dog detected the odor of narcotics. As a result, officers searched the vehicle thoroughly. During the search, the troopers damaged the Erich Vehicle. They found no drugs inside the Erich Vehicle.

12

The Plaintiffs were then told by Trooper Rohr that they were free to go. Two seconds later, Trooper Rohr detained Plaintiffs for a second time to conduct a physical search of the roof of the Erich Vehicle. They again found no drugs.

The stop has impacted Mr. Erich, Ms. Maloney, and their children. The children have been especially impacted with anxiety and fear.

## KANSAS HIGHWAY PATROL

KHP trains officers to use the Kansas Two-Step, a maneuver where officers stopping motorists momentarily break off and end the initial traffic-stop detention, take a few steps towards the rear of the vehicle, and then turn to reengage the motorist, asking something similar to, "Hey, can I ask you a few more questions." KHP trains officers to use the Kansas Two-Step in an attempt to obtain consent for a prolonged detention that would not otherwise be valid and in the hopes of eliciting additional information to support an officer's reasonable suspicion.

> [Defendant Jones' objection: This is an improper attempt to amend plaintiffs' complaints.
>
> In summarizing the alleged policy/customs from the First Amended Complaint, Judge Vratil listed the following: (a) "KHP troopers block the detained vehicle from safely re-entering traffic while questioning the occupants about their travel plans and whether the vehicle contains anything illegal"; (b) "If KHP troopers apply the Kansas Two Step but cannot elicit consent to search, they have canines search the vehicle for drugs based solely on their belief that the driver is traveling to or from Colorado"; and (c) "KHP still instructs its troopers that when combined with other innocuous factors, a driver's travel origin or destination grants reasonable suspicion to search the vehicle"; and "it does not include *Vasquez* in its training curriculum." *See Shaw v. Jones*, No. CV 19-1343-KHV, 2020 WL 2101298, at *1-3 (D. Kan. May 1, 2020).

KC 19120685.1

Plaintiffs were asked to state the principal and material facts that they claim prove 3 policies/customs. And they were asked to identify the witnesses and exhibits that supposedly are evidence of the policies/customs. Their answers referred back to allegations in the First Amended Complaint. As Judge Vratil's summary suggests, alleged illegal conduct from a two-step conducted **without blocking** is not a claim in plaintiffs' pleadings. Doc, 7, ¶ 42.]

[PLAINTIFFS' RESPONSE: This is a statement of relevant facts, not a statement of claims or an attempted amendment to the complaint. To the extent Defendants believe these facts are irrelevant, the issues are evidentiary and should be raised separately. Moreover, Defendants' objection attempts to narrow the scope of the claims inconsistent with the pleadings, briefing, and evidence presented in this case. In addition, Defendants' objection seeks to impose a standard different and higher than what is required. *See* Fed. R. Civ. P. 8.]

The Tenth Circuit has held that detaining a driver because of their travel origin or destination and a combination of other facts consistent with innocent travel violates the Fourth Amendment. *Vasquez v. Lewis*, 834 F.3d 1132, 1138 (10th Cir. 2016). It held that such conduct does not raise an inference of reasonable suspicion. State residency and travel plans are not sufficient to justify detention and KHP has a practice of using such in violation of *Vasquez*. KHP did not make any policy changes after *Vasquez*. KHP policy or practice permits consideration of destination or origin city or state in developing reasonable suspicion.

[Defendant Jones' objection: Like the two-step allegation, this is an improper attempt to amend plaintiffs' complaints.

Although the holding in *Vasquez* is misstated by plaintiffs[1], the policy(ies)/custom(s) asserted "based solely on their belief that the driver is

---

[1] The Vasquez majority stated: "And we cannot think of a scenario **in which a combination of otherwise innocent factors** becomes suspicious because the individual is from one of the aforementioned twenty-five states or the District of Columbia. Even under the totality of the circumstances, it is anachronistic to use state residence as a justification for the Officers'

14

traveling to or from Colorado" and "when combined with other innocuous factors, a driver's travel origin or destination grants reasonable suspicion to search the vehicle" are different from the new claims: (1) "travel plans are not sufficient"; "consideration of destination or origin city or state in developing reasonable suspicion;" "permits consideration of destination or origin." These are an important pivot from initial claims because plaintiffs now assert consideration of travel plans, origin or destination are a Fourth Amendment violation in and of itself, regardless of the presence of reasonable suspicion to detain a motorist.]

[PLAINTIFFS' RESPONSE: Plaintiffs do not fully understand the nature of Defendants' objection, and Defendants contend they have no obligation to meet and confer. Nonetheless, Plaintiffs do not misstate *Vasquez* nor are they expanding the scope of the Amended Complaint. Defendants' objection seeks to impose a standard different and higher than what is required. *See* Fed. R. Civ. P. 8.]

KHP trains that where a driver is coming from and where they are going to are the two most important questions in drug interdiction. KHP trains its troopers that certain travel origins and destination are an indicator of reasonable suspicion. KHP troopers find certain travel origins and destinations to be indicative of criminal activity.

[Defendant Jones' objection: This is an improper attempt to amend plaintiffs' complaints.

Plaintiffs had claimed "KHP still instructs its troopers that when combined with other innocuous factors, a driver's travel origin or destination grants reasonable suspicion to search the vehicle" and "it does not include

---

reasonable suspicion. Absent a demonstrated extraordinary circumstance, the continued use of state residency as a justification for the fact of or continuation of a stop is impermissible." (emphasis supplied).

*US v. Arvizu*, noted "that factors which by themselves were 'quite consistent with innocent travel' [may] collectively amount [ ] to reasonable suspicion." 534 U.S. 266, 274-75.

*Vasquez's* point was only that you don't make a silk purse from a pig's ear. If otherwise innocent factors that don't collectively amount to reasonable suspicion, they don't become suspicios because the driver is "from" – a resident of – a state which sources marijuana. ASC

*Vasquez* in its training curriculum." Now they want to claim it is unconstitutional to consider origin or destination regardless of the presence of reasonable suspicion, under the totality of the circumstances, to detain a motorist from other information and/or in combination with motorist's travel.]

[PLAINTIFFS' RESPONSE: This is a statement of relevant facts, not a statement of claims or an attempted amendment to the complaint. To the extent Defendants believe these facts are irrelevant, the issues are evidentiary and should be raised separately. In addition, Defendants' objection seeks to impose a standard different and higher than what is required. *See* Fed. R. Civ. P. 8.]

KHP troopers are not required to fill out a narrative incident report documenting their reasonable suspicion to extend a traffic stop unless the extension results in a seizure or an arrest. KHP has no way to look at a particular trooper over the course of a period of time, whether it be a month or a 12-month review period, and determine if that trooper was appropriately building reasonable suspicion cases against individuals who they detained for searches. The lack of data gathered by KHP on searches (in general, and specifically when no contraband is seized) and on reasonable suspicion deters their ability to address and correct unlawfully prolonged detentions.

a.      **Defendant(s)' Factual Contentions.**

**Jones:**

1.      The KHP is a state agency with its principal function to enforce traffic and other laws of Kansas relating to highways, vehicles and drivers of vehicles. The KHP is under the direction of the superintendent, who holds the rank of colonel. Colonel Herman T. Jones stepped down as Shawnee County Sheriff and was appointed, by the Governor, as

16

Superintendent of the Kansas Highway Patrol on April 3, 2019 and confirmed by the Kansas State Legislature on January 16, 2020.

2.      The Commission on Accreditation for Law Enforcement Agencies, Inc. (CALEA) accredits agencies who commit to meeting national law enforcement standards. CALEA's Standards for Law Enforcement Agencies© and its Accreditation Programs has become a method for an agency to voluntarily demonstrate their commitment to excellence in law enforcement. CALEA sets standards and best practices for law enforcement.

3.      The KHP is a CALEA TRI-ARC Award holder. Currently, there are only about 20 United States agencies with TRI-ARC award status. The KHP is one of only four state-level agencies in the nation to receive this recognition. The KHP received law enforcement accreditation (Tier One) in July 2018, training academy in July 2020, and communications accreditation in March 2021. To achieve these accreditations, KHP was required to show compliance, after self-assessment and submission to CALEA of proof of compliance in processes, practices and desired outcomes, regarding appropriately 185 law enforcement standards, 185 training academy standards and 199 communication standards. For each of three areas of accreditation, the KHP's written policies and documentation were reviewed by CALEA for compliance to the CALEA criteria and standards. Proofs were provided by the KHP, including statistics in requested categories and tests and survey results. These proofs were to show that the KHP policies, processes and practices provide the desired outcomes, in conformity with the CALEA standards.

4.      The Kansas law enforcement training act created a commission on police officers' standards and training and a law enforcement training center, within the

17

University of Kansas ("KLETC"). The KLETC's director, subject to changes and modifications directed by the Kansas law enforcement training commission, determines the curriculum and minimum hours of instruction for training of persons needed to obtain an active law enforcement certification. KHP troopers must have this certification. KHP's State Troopers are certified law enforcement officers, pursuant to the Kansas Law Enforcement Training Act.

5.      State troopers receive 23 weeks of training at the Kansas Highway Patrol Training Academy ("KHP Academy") in Salina, Kansas.

6.      The KHP Academy's curriculum includes instruction on and law enforcement officers' obligations concerning the United States Constitution's Fourth Amendment rights. The curriculum, among many other topics, includes instruction on searches, seizures, consensual encounters and reasonable suspicion for post-traffic stop detentions.

7.      CALEA has standards for academy curriculum and training procedures or practices. The KHP Academy's curriculum and the KHP's policies and procedures regarding the training at KHP Academy were reviewed and found compliant with CALEA standards.

8.      Upon graduation from the KHP Academy, recruits begin sixteen weeks of field training with a veteran trooper.

9.      Every State Trooper is required to complete annually 40 hours of continuing law enforcement education or training ("in-service training") in subjects relating directly to law enforcement. The in-service curriculum must include annual "legal updates." The

18

KHP provides the annual in-service training to its Troopers. Attendance for some classes, such as legal updates, is mandatory. The KHP in-service training policy has been reviewed and found compliant with CALEA standards.

10.     The KHP also provides to its troopers a 34-hour class on advanced criminal interdiction at least once a year. Troopers have the option to take the class one or more times.

11.     The Lieutenant field supervisors frequently review the work of the troopers under their supervision. They review and approve all Kanas Standard Arrest Reports, Kansas Standard Offense Reports, Incident Narrative Reports and Vehicle Detention reports prepared by their subordinates. These field supervisors are responsible to identify, correct and issue appropriate discipline (subject to grievance processes) of any violation of KHP policy or training by their supervised troopers.

12.     The KHP maintains written policies concerning its administration, communication, equipment, forms, operations and personnel. Policies applicable to troopers' day-to-day activities are provided and taught during academy training. Updated and new KHP policies are provided to troopers electronically as they are approved.

13.     KHP Policy Number ENF-01, Enforcement Guidelines, states "[t]he basic responsibility of an officer is to know the law." KHP Policy Number ENF-07, Criminal Interdiction Traffic Enforcement, states:

II. Policy

Officers are committed to the apprehension of criminals who use Kansas streets and highways in the furtherance of their criminal activity. Therefore, officers are encouraged to employ Criminal Interdiction Traffic Enforcement

(CITE) procedures when, following a lawful traffic stop or other lawful encounter with the person(s), articulable suspicion exists to believe the person(s) is involved in criminal activity.

III. General provisions

***

B. Officers who are not trained in the application of criminal interdiction techniques should request the appropriate assistance when criminal activity is suspected. …

***

D. Officers shall take the appropriate steps to safeguard life and property while preserving the individual dignity and constitutional rights of everyone involved.

***

14.      KHP Policy Number OPS-39 states, in part:

II. Policy

A.      It is the policy of the Agency to conduct arrests, searches and seizures in compliance with the federal and state constitutions and state law. Members of the Agency must balance the constitutionally protected right to be free from unreasonable search and seizure, the evidentiary requirements of any given criminal case, and the need to protect the public and law enforcement officers. Stated guidelines can facilitate all interests.

***

Investigative Stop - A brief detention based on specific articulable reasonable suspicion that a crime is being, is about to be or has been committed. These detentions are justified by KSA 22-2402 and should only be long enough to either confirm or dispel the officer's concerns about the illegal activity. In order to confirm or dispel the officer's concerns he or she should use all reasonable investigative techniques and tools available at that time. These may include but are not limited to: holding the suspect for identification, using a canine to sniff for illegal substances, standardized tests or contact with dispatch or other law enforcement officers with relevant specialties. All detentions shall be based on the totality of the circumstances, which includes articulable reasonable suspicion and the individual officers training and experience.

KC 19120685.1

\*\*\*
B. Search and Seizure

\*\*\*
6. Investigative Detention

a.       A brief detention based on specific articulable reasonable suspicion that a crime is being, is about to be or has been committed. These detentions are justified by KSA 22-2402 and should only be long enough to either confirm or dispel the officer's concerns about the illegal activity. In order to confirm or dispel the officer's concerns he or she should use all reasonable investigative techniques and tools available at that time. These may include but are not limited to: holding the suspect for identification, using a canine to sniff for illegal substances, standardized tests or contact with dispatch or other law enforcement officers with relevant specialties. All detentions shall be based on the totality of the circumstances, which includes articulable reasonable suspicion and the individual officers training and experience.

\*\*\*
C. Knowledge of Laws

Members of the Agency are expected to remain current in the knowledge of laws and judicial opinions as they apply to the issue of search and seizure. Whenever possible, the Agency will provide such updated information.

15.     OPS-39 was reviewed by CALEA, and found by that accrediting entity to be compliant with CALEA's standards.

16.     It is contrary to KHP's policy and training for troopers to (a) conduct or direct a "canine[ sniff of a] vehicle for drugs based solely on [the trooper's] belief that the driver is traveling to or from Colorado"; (b) extend a vehicle stop and/or search a vehicle based only on "a driver's travel origin or destination"; (c) include the state citizenship as a permissible basis upon which to justify a detention and search of out-of-state motorists, and to detain motorists for nothing more than an out-of-state license plate.

21

17.     While not an exhaustive listing, the KHP training includes instruction on the constitutional rights in traffic stops like:

 "ONLY 4 COURT-RECOGNIZED POLICE CITIZEN ENCOUNTERS [are]

1. A 'CONSENSUAL ENCOUNTER'
2. A 'TEMPORARY DETENTION'
3. A 'SAFETY STOP' or 'COMMUNITY CARETAKING FUNCTION'
4. An 'ARREST'"

"Temporary Detention aka 'Terry Stop,' aka 'a car stop,' aka 'Investigative Detention,' aka a 'sidewalk detention;' requires reasonable suspicion to believe a crime has, is, or is about to be committed."

"'Reasonable Suspicion' means a particularized and objective basis for suspecting the person stopped is involved in criminal activity. It is based upon the totality of the circumstances, and is viewed in terms as understood by those versed in the field of law enforcement. It is less than probable cause but more than a gut hunch."

"In making reasonable-suspicion determinations, reviewing courts must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. [ ]
"This process allows officers to draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person.

"REASONABLE SUSPICION FACTORS
• Some carry more weight for court than others
• Little weight: nervousness, drug route, food wrappers, a cellphone or pager
• More weight: inconsistent stories of driver vs. passengers, an incomprehensible story, a rental car with renter not present, fly one way-drive back in rental, numerous air fresheners
• Possible hidden compartment: tool marks, bondo, vehicle riding high or low, metal alterations not seen before in training/experience"

"Indicators are seemingly innocent things heard, smelled, and/or observed during an enforcement encounter, including the contents of the vehicle, what was said, and the manner in which it is said, which when taken in there

KC 19120685.1

totality and compared with the innocent motoring public and traffic patterns of that particular geographical area, along with the officer's training and experience, show reasonable suspicion or probable cause that criminal activity is taking place."

"Police may not extend an otherwise completed traffic stop, absent reasonable suspicion of criminal activity, in order to conduct a dog sniff."

"You CANNOT detain a vehicle or its occupants absent reasonable articulable suspicion."

"If you 'measurably extend' the traffic stop without additional reasonable suspicion to believe there was 'other criminal activity,' any consent you get is invalid."

18.     The Tenth Circuit's 2016 decision in *Vasquez v. Lewis* decision is now discussed in KHP's training. However, even before the *Vasquez* decision was rendered, KHP troopers' training had established that the reasonable suspicion required to extend a traffic stop was not supported by (a) "a driver's travel origin or destination" alone; (b) a drivers' "state citizenship" or (c) "nothing more than an out-of-state license plate."

19.     Not contrary to this, troopers are trained that they may inquire about travel plans, either while multi-tasking during the course of a stop or in a consensual encounter. They are trained, depending upon the totality of the circumstances, the occupant(s)' travel plans—for example implausible travel plans; travel to or from a drug source when combined with other factors and evasiveness or dishonesty about travel in some instances—can produce objective, commonsense judgments and inferences that criminal conduct is present.

23

20.    The *Vasquez* decision did not alter trooper's practices because they have not relied on the state of vehicle's registration (*i.e.*, the state issuing the license plate) or the driver's state of residence in the reasonable suspicion calculus.

21.    For the last several years, notable court decisions are made known to KHP trooper by email or intra-network postings.

22.    It is contrary to KHP policy and training for KHP troopers to block a detained vehicle from safely re-entering traffic after a traffic stop has or should have ended. In the KHP's training, the so-called trooper "two step" maneuver does not block the detained vehicle from safely re-entering traffic or other coercion. Instead, it is described, in training, as the "Columbo Gambit" and a "[b]rief break in the conversation often signified by a re-engagement and a request to speak to said suspect." The maneuver is to help establish any consent to additional conversation or extension of a stop or a search is consensual. Per the KHP training materials, the "trooper two step" is not prohibited, but "not necessary." The materials stress consent must be knowingly, intelligently, and voluntarily made. They explain, "Consent must always be all of the following: — Knowing — Intelligent — Voluntary." Training provides:

> Voluntary encounters after a traffic stop get tricky.
> – You must have a sufficient break in time between the enforcement encounter and the consensual encounter.
> – Trooper Two Step is NOT ENOUGH by itself to purge the taint of the coercive nature of the traffic stop.
>
> • Whether a consensual encounter after a traffic stop is valid depends on whether a reasonable person would have felt free to leave.
> • This is judged on the totality of the circumstances standard.
>
> Voluntary encounters after a traffic stop:

24

– Factors that may render the contact non-consensual:
• You did not return all the driver's documentation.
• You have gone straight from the traffic stop to the consensual encounter without a sufficient break.
• Your tone of voice is accusatory.
• You are still in your patrol car.
• You have made physical contact with the vehicle or subject.

Among the factors listed in the training that would show lack of consent is "an attempt to control the ability to flee," "[p]hysical contact with the person by an officer," "[t]ouching, leaning on or into the vehicle," "officer touching the vehicle when asking for consent," "some physical touching by an officer."

23.     The KHP maintains a Professional Standards Unit ("PSU") which serves as an impartial fact-finding unit whose primary purpose is to safeguard and enhance the integrity of the agency. The unit receives and processes complaints against agency employees or procedures, ensuring employees are afforded due process, to ensure uniformity in their application, and identifying training and supervisory needs.

24.     The approximately 200,000 annual traffic stops conducted by KHP troopers throughout the state is a very small fraction of the traffic in the state. For example, it is 0.41% of traffic only across the seven sites monitored by the KDOT, which in turn is a fraction of statewide traffic.

25.     Annually approximately 290 canine sniffs are conducted at post-traffic stop detentions. This is about 0.15% (between 1 and 2 in 1,000) of all of the annual traffic stops. And compared to the traffic that flows past the seven sites KDOT monitors, the detentions with a canine sniff are about 0.00054%-0.00075% (about 1 in 134,000 to 185,000) of the traffic.

25

26.     The significant seizures of contraband made by KHP troopers by the vehicle's state of registration is tabulated from KHP's seizure documentation. In 2020, the last full year of data then available, 10.9% of the seizures were of associated vehicles from Kansas; and 4.2% were associated with vehicles from Colorado. While only exceeding the Kansas percentage of registered vehicles in 2017, Colorado registered vehicles have provided between 4.2% to 11.3% of the significant contraband seizures.

27.     On March 9, 2018, at 5:41 a.m., KHP Master Trooper Justin Rohr stopped an east bound Winnebago Chalet on Interstate 70 ("I 70"), at mile marker 226, for driving on and over the [shoulder's] white line. Mark Erich was driving. After the traffic stop was complete, Rohr detained Erich and his passenger for a canine sniff of the Winnebago. No drugs were found.

28.     Erich and his passenger were detained based on the particularized and objective reasonable suspicion of legal wrongdoing from the following:

(1) Walking to the vehicle after it pulled over, Rohr smelled the odor of very recently applied fresh paint or bondo at the rear of the Winnebago where spare tires are frequently mounted and where it appeared that the vehicle had been painted over with white paint.[2]

(2) Erich said he had recently purchased the older model Winnebago Chalet. Rohr's training and experience was hidden compartments are frequently added by smugglers to older model, recently purchased, larger vehicles to transport illegal drugs.

(3) It was early in the morning and still dark. Rohr's training and experience is that people trafficking illegal narcotics will sometimes travel overnight to attempt to avoid law enforcement because the least amount of law enforcement is out and present.

---

[2] The term "bondo" is used generically—like Xerox or Kleenex—for an automotive plastic body filler or resin used to repair vehicle dents or damage.

26

(4) After inquiring about the fresh paint/bondo smell, Rohr did not find credible the driver's and passenger's denial of knowledge of recent painting because they said the Winnebago had been purchased, not just a few days before, but about a month earlier.

(5) Rohr also saw white paint on Mr. Erich's hand suggesting he had done the painting, but again was not being honest.

(6) They said that they were traveling from Colorado to Alabama, which added circumstances consistent with Rohr's suspicions because Colorado was a source state for illegal narcotics at the time.

29.     That they had a Colorado temporary plate was not one of the things that led to Rohr's suspicions to detain the Winnebago. Likewise, the fact that someone is from Colorado, in and of itself, was a factor in the reasonable suspicions he formed.

30.     But in their answers to interrogatories, the Shaw/Bosire Plaintiffs state:

INTERROGATORY NO[s]. 2, [ 3 & 4]: Separately for each "policy" ["custom", "practice"] you contend that Defendant Jones has or maintains, which you assert violate federal constitutional rights or statutes, describe the alleged policy ["custom", "practice"], state the material and principal facts supporting your allegations that such a policy ["custom", "practice"] exists, and identify all persons with personal knowledge of some or all such facts and identify all documents or tangible things that tend to prove or constitute, describe or report such facts (excluding documents which are confidential by attorney/client or work product privilege).

ANSWER: Plaintiffs' are still in the process of determining whether widespread and ratified conduct of targeting out of state drivers/drivers with travel plans to and from Colorado constitutes a policy, custom, practice, or consequence of failure to train. [ ] To the extent the conduct is a policy, Plaintiffs' respond as follows: [ ] For the material facts, See Compl. ¶¶26-57; 94-96."

Interrogatory Answers ## 2-4. The Erich Plaintiffs answered: "Discovery continues, but Plaintiffs['] answer, to the extent the conduct is a policy, Plaintiffs respond as follows: For

the material facts, See Shaw and Bosire Compl. ¶¶26-57; 94-96." Interrogatory Answer # 11.The answers have never been amended or supplemented.

**Schulte**:

On December 20, 2017, at about 12:25 p.m., Schulte, a seventeen-year KHP trooper, stopped a minivan traveling 91 miles per hour in the 75 miles per hour zone westbound on Interstate 70 ("I 70"). B. Shaw was driving. He admits he was speeding. S. Shaw was a passenger.

Schulte activated his overhead lights and siren to signal the minivan to stop. The minivan changed lanes, slowed down—braking once for traffic—and eventually stopped on the shoulder of an exit ramp to Hays, Kansas. However, it did not stop for about a minute and one half, and not until after it had traveled about one mile.

While attempting to get the minivan to stop, Schulte requested dispatch "run" the minivan's license plate. He learned Ronald Shaw was the registered owner. Schulte also requested assistance, through dispatch, in anticipation that the driver would not stop.

Schulte stopped his marked patrol vehicle behind the minivan. He repeated his license plate inquiry, received a response to the inquiry, exited his vehicle and walked to the minivan. Walking to and from the minivan vehicle, Schulte saw it was packed full, up into the front seats, with luggage, coolers, a cot, blankets and several other items. To Schulte, it had a "lived-in" appearance. Schulte's training and experience is drug traffickers frequently limit their stops and time from their vehicle to quickly obtain or transport illegal contraband. This results in a lived-in look that Schulte observed in the minivan.

Schulte's first contact with Shaw was by the driver's door. It lasted about one minute. Schulte requested Shaw produce his driver's license and proof of insurance. Shaw represented the minivan was his father's. Once back to his patrol vehicle, Schulte called in the driver's license to dispatch and requested information about warrants and criminal history.

Schulte received the responses Shaw's license was valid, he was not subject to a warrant, and Shaw had a 2009 felony intent to distribute narcotics on his record.

Schulte then had a second exchange with Shaw at the driver's side window, which lasted about 30 seconds. Schulte handed Shaw a ticket for speeding and returned Shaw's license and proof of insurance. Schulte explained the procedure for responding to the ticket and said he could not answer Shaw's question about insurance. Schulte concluded, "have a safe trip and drive safely," turned and started walking back toward his patrol vehicle.

Schulte walked along the side to the back of the minivan until it was taken out of park. Then he reversed to return near the driver's window. Walking back, never touching the minivan and with his hands at his side or slightly in front of his body, Schulte stated: "Hey, Blaine can I ask you a question real quick?" Shaw responded quickly, "Yeah." Schulte was about an arm's length from the minivan when the consent was requested. Schulte did not physically interfere with Plaintiffs' departure when B. Shaw consented to the following very short conversation.

The subsequent exchange went:

[Schulte] You are coming from Oklahoma; where are you headed to today?

[Shaw] Denver. Headed to see family.

29

[Schulte] OK, alright. Running a little fast today, which we talked about. Alright you don't have anything in the vehicle that you are not supposed to have with you? [Shaw, denials] – no guns, no knives, no contraband, no illegal narcotics, marijuana, cocaine, opioid, no meth, no large sums of cash, anything like that? [Shaw, denials]

[Schulte] Can we search your vehicle for such items?

[Shaw] I don't consent to searches. I am criminology major. It is like the number one golden rule . . .

[Schulte] OK. Well wait right here, I will be right back with you. OK?

Schulte felt the passenger in the front passenger seat, S. Shaw, was acting suspiciously. The passenger did not say anything, never looked over at Schulte, never made eye contact with him, had his hands in his lap and looked straightforward, while not moving his head. In Schulte's experience, a passenger usually looks in Schulte's direction at times and speaks with him or the driver during a stop.

Schulte believed the Denver destination was significant when combined with the fact Shaw was not the vehicle's owner and in light of the other circumstances, including the delay in pulling over, the contents of the minivan, Shaw's criminal history and S. Shaw's behavior. By his experience and from other law enforcement officers, Schulte knew non-owned vehicles are frequently used by drug traffickers—one reason is to avoid forfeiture of the driver's vehicle. He also knew drug traffickers, in route to make a purchase, frequently have large sums of cash, drug paraphilia and evidence of drugs with them.

Schulte requested a drug dog for a sniff. About 18 minutes after the traffic ticket part of the stop had concluded, the canine alerted providing positive indications of drugs.

KC 19120685.1

Troopers found pills—a few with different colors and sizes, not in a prescription bottle, which B. Shaw stated were Tramadol; multiple plastic bags had a marijuana smell ("smelly bags"); and Colorado medical marijuana paperwork (registry cards, which appeared to authorize some cultivation, and a Colorado residence identification card which were all issued to Shaw).

Schulte disputes that the Shaws suffered the damages they have claimed and that they suffered from the pre-search detention, although he acknowledges their travel was delayed.

Schulte's conduct was not motivated by an evil motive or intent or reckless or callous indifference to the Shaws' constitutional rights.

**Bosire:**

On February 10, 2019, McMillan, an eleven-year KHP Technical Trooper stopped Bosire for driving 82 miles per hour in a 75 mile per hour zone eastbound on I 70 about 5 miles west of Hays, Kansas. Bosire admits he was speeding. Bosire was driving a rented Nissan Altima.

McMillan saw the Altima at a gas pump in Love's Travel Shop ("Love's") in Ellis, Kansas about ten minutes before the stop. Ellis is part of rural Kansas. It is located just south of I-70 exits and entrances. McMillan and Schulte had just been at the convenience store on a food break. When McMillan saw the Altima there were relatively few vehicles at Love's, and McMillan and another trooper were looking for vehicles and motorists who could have been the source of an odor of marijuana they had smelled leaving the convenience store.

Standing outside the convenience store for less than five minutes, McMillan and Schulte noticed two men by the Altima. McMillan believed one or both of these men could have been the source of the marijuana odor smelled in the store. He thought that the Altima was a rental vehicle. Narcotic traffickers frequently use non-owned vehicles (often short-term rentals) to collect and transport drug.

McMillan left the Love's parking lot before the Altima. When driving from the Love's parking lot, he saw a camera mounted on the Altima's rear passenger's side headrest. McMillan ran the car's Missouri license plate and determined the vehicle was registered to EAN Holdings, confirming to him that it was a rental and a rental with at least one mounted camera that the driver most certainly had to have installed.

At the same time, as McMillan left the Love's parking lot, he and Schulte saw also a silver Dodge Charger leaving Love's lot driving back toward I-70, which appeared to be another rental vehicle. McMillan and Schulte thought the Altima and Charger might be connected. They knew both vehicles left Love's about the same time. Still looking for the source of the marijuana that they had smelled, their experience caused them to suspect possible caravanning to transport or acquire drugs by the men and perhaps others they had seen by the Altima. McMillan was not then thinking, at the time, that the two men had separated, and were separately driving the Altima and Charger. But it was possible because one of the men could have gone to the Charger when McMillan and Schulte were leaving Love's and could no longer see the two men.

About ten minutes later, out on the highway, McMillan clocked a vehicle speeding. McMillan pulled the vehicle over. He placed a license plate inquiry, received a response confirming that the Altima he stopped was the one he saw at Love's.

McMillan approached the Altima's passenger side about a minute and a half after Bosire pulled over. McMillan shined his flashlight and looked into the interior of the car as he circled, counterclockwise, to the driver's door. With the flashlight's assistance, he saw only one of the two men he had seen standing and talking by the Altima at Love's. He also saw a notebook partially covered by a blanket in the backseat.

When McMillan first arrived at the driver's door, it appeared that the window was down less than an inch. While standing beside the window, he requested Bosire lower the window, took Bosire's Kansas driver's license, and received and reviewed the rental agreement. The driver's license showed Bosire had a Wichita, Kansas address, approximately 185 highway miles from the involved stop. McMillan noted the rental was short-term. McMillan also saw a camera, not a speed detector, mounted in the front windshield and a camera mounted on the rear passenger's side headrest.

The exchange between McMillan and Bosire lasted less than two minutes. Their conversation was materially the following:

> [McMillan] Roll you window down please. Kansas Highway Patrol, I checked your speed at 82, speed limit is 75. May I see your driver's license please? Do you have your rental agreement with you? Let me see you other right hand [sic] please. Where are you coming from tonight?
> [Bosire] [after a pause of about 7 seconds] – sighs, "west."
> [McMillan] Ok, where are you coming from tonight?
> [Bosire] West.
> [McMillan] Where at?
> [Bosire] West.

[McMillan] You were coming from west?
[Bosire] Yes, I am heading east.
[McMillan] Is that in Kansas; is that in Colorado; where is west?
[Bosire] Do I have to answer that question?
[McMillan] I am asking what your travel plans are.
[Bosire] I am coming from the west. I'm heading east.
[McMillan] What is that?
[Bosire] I am coming from the west. I'm heading east.
[McMillan] You are coming from the west, heading east?
[Bosire] Yes.
[McMillan] OK, What is the purpose of your trip, sir?
[Bosire] Do I have to have …
[McMillan] I am asking what you travel plans are; I have the right to ask you these questions.
[Bosire] And I have the right to remain silent.
[McMillan] OK, you are telling me you are not going to answer the questions. Is that want you are saying?
[Bosire] No.

McMillan was suspicious because Bosire provided evasive answers to questions that motorists do not have problems answering. Bosire seemed to not want to provide information which might show that he was involved with transporting contraband.

During the exchange, McMillan did not smell marijuana in the vehicle. This left an inference of caravanning from the troopers' observations at Love's and their law enforcement experience concerning the use of rental vehicles and cameras in drug trafficking; but dispelled Bosire had been the source of the marijuana smell in Love's.

After this first exchange ended, McMillan was suspicious Bosire was involved in transporting something illegal. From his law enforcement experience, he knew persons transporting drugs frequently use short-term rented vehicles for the transport. Likewise, he knew people engaged in the delivery or acquisition for delivery of large amounts of drugs will travel in two or more vehicles (caravan), whereby one vehicle can attempt to distract

34

law enforcement from the vehicle transporting contraband. McMillan found the mounted cameras in a rental car (particularly a short-term rental) could be an attempt to (a) facilitate caravanning, (b) make the drug transporter accountable to his or her principal, and/or (c) discourage law enforcement stops. He felt the silver Dodge Charger he saw leaving the convenience store could be associated with the man at the gas pump talking with Bosire and, therefore, caravanning with Bosire. Further, McMillan believed Bosire's responses to his questions about travel raised suspicion about the legality of Bosire's activities in that, according to McMillan, they were entirely atypical of usual conversations with the persons he had stopped during his 13 years in law enforcement. Bosire had been non-responsive and evasive. That Bosire did not fully roll down his window and the partial covered notebook in the back of the rental car added to McMillan's suspicion based on his law enforcement experience.

Back at his vehicle, McMillan called in an inquiry about Bosire's license and possible warrants, and radioed for backup. McMillan received responses and completed the paperwork to give Bosire a warning for speeding, and then walked to the passenger side window of the Altima and spoke to Bosire for a second time. McMillan felt he had reasonable suspicion to detain Bosire for additional questions. He believed additional questioning would either abate suspicion that Bosire was involved in criminal activity or establish it was reasonable to detain Bosire ten or more minutes more for a dog sniff.

The second exchange went materially as follows:

[McMillan] Hey, were did you buddy go?
[Bosire] [No response]
[McMillan] They guy you were with at Loves?

35

[Bosire] Loves?

[McMillan] The gas station you were at.

[Bosire] Did you see two people?

[McMillan] Yeah when you were getting gas.

[Bosire] You saw two people?

[McMillan] I saw two people. Did he get in another car or what?

[Bosire] (Laughs) oh wow, …

[McMillan] You don't know where he went?

[Bosire] I don't know what we are talking about.

[McMillan] You don't know what I am talking about?

[Bosire] No.

[McMillan] You don't remember talking to the guy at loves, at the gas pump?

[Bosire] A state trooper.

[McMillan] What?

[Bosire] There were 3 state troopers, I say that one say hi, I said hi and walked away

[McMillan] OK I am not talking about any troopers, I said the guy at the gas pump that was with you. I was at loves, I saw you.

[Bosire] Me?

[McMillan] Yes, you were getting gas in this car.

[Bosire] Correct.

[McMillan] There was white guy with a hoodie oh talking to you at the gas pump. He walked right by beside you.

[Bosire] [Shakes head side-to-side] unum. I opened the door for somebody, but

[McMillan] No at the gas pump.

[Bosire] What? Oh, was one of the attendants, … pump.

[McMillan] OK. I wasn't seeing things.

***

[McMillan] I am not going to give you a ticket for that you were going 6 over. So, you are making me a little suspicious here because you are not telling me what you are doing. You know what I mean, you got all of these cameras mounted, like why?

[Bosire] Because police f--k with people.

[McMillan] We have cameras too. What are we trying to hide?

[Bosire] Police f--k with people all of the time.

[McMillan] Anyway.

[Bosire] I am just saying. You saw me at the gas station that was the reason. I saw the way you guys looked at each other like yeah we are going to get him. But…

[McMillan] You saw that?

36

[Bosire] Yeah.

[McMillan] You could hear us thinking that in our heads?

[Bosire] No, I saw, I saw the head…

[McMillan] I am not giving you a ticket for speeding, but you are making my highly suspicious that you are transporting something illegal. Is that the case? Is that why you don't want to answer any questions?

[Bosire] No cause, according the Constitution you have the right to remain silent.

***

[McMillan] You make me suspicious, you're not telling me your travel plans, leading me to believe that you are transporting something you shouldn't be transporting, is that the case?

[Bosire] No.

[McMillan] So you don't mind if I look?

[Bosire] Unless you have a warrant.

[McMillan] OK then we'll call a canine here.

***

[McMillan] … it will be about 10 minutes.

McMillan believed Bosire had not honestly (or likely not) answered his questions about the second man at the gas pump at Love's. He believed Bosire's explanation (which was a lie) for the cameras in the rental car did not undermine the suspicion that they were used for criminal activities. McMillan felt, in combination with all other indicators, the second encounter showed reasonable suspicion of criminal activity justified continued detention for a dog sniff. Therefore, McMillan asked Schulte to tell a county sheriff's deputy, who had the nearest available dog, to come to the stop for a canine sniff. The second exchange extended the traffic stop less than 4 minutes.

When the drug dog arrived, approximately 20 minutes later, McMillan returned Bosire's paperwork and gave him a written warning for speeding. The canine sniff concluded without an alert. Bosire was immediately told he could leave. About 28 minutes

KC 19120685.1

had elapsed between the beginning of the second conversation, when Bosire was told he would receive a warning for speeding, and when Bosire was told he could leave.

McMillan possessed reasonable suspicion to detain Bosire from the following:

(1)     McMillan and another trooper smelled a marijuana odor at a Love's Travel Shop in Ellis, which they believed might be associated with two men they saw a few minutes later standing by a rented Altima.

(2)     The troopers saw the Altima had a mounted camera in the back; The Altima and vehicle that the trooper thought was a rental left Love's about the same time.

(3)     Then about ten minutes later, after McMillan pulled over an Altima for speeding, he confirmed it was the Altima from Love's. McMillan did not smell the marijuana odor, but thought the Altima might be "caravanning" with the other vehicle seen leaving Love's.

(4)     During the traffic stop, McMillan saw the two cameras mounted in the rental car and McMillan knew drug traffickers use surveillance cameras to facilitate caravanning, discourage a law enforcement stop, and confirm a "hired" driver appropriately transports drugs or narcotic cash.

(5)     The Altima was a short-term rental. McMillan knew drug traffickers frequently use short-term rentals to transport drugs or narcotic funds.

(6)     Bosire did not fully roll down his window and there was a partially covered notebook in the back of the rental car that appeared to be a ledger which drug transporters use.

(7)     Bosire would only say he was traveling from the West going East, which McMillan found atypical and evasive.

(8)     McMillan's suspicions were heightened in post-stop questioning. He believed Bosire had not honestly answered his questions about the second man at Love's and the cameras in the rental car.

McMillan disputes that Bosire suffered the damages that he has claimed (particularly if the damages are cabined to the less than four minute second encounter) and suffered them because of the detention, although he acknowledges Bosire's travel was delayed.

McMillan's conduct was not motivated by an evil motive or intent or reckless or callous indifference to the Bosire's constitutional rights.

## 4.     LEGAL CLAIMS AND DEFENSES.

### a.     Plaintiff(s)' Claims.

Plaintiffs asserts that they are entitled to recover upon the following theory:

      **i.**    Defendant Jones maintains a policy or practice of detaining drivers using state residency and innocent-travel indicia which violates the Fourth Amendment rights of Plaintiffs. (Count 1 of Shaw/Bosire First Amended Complaint; Count 2 of Erich/Maloney Complaint)

      **ii.**    Defendant Jones maintains a policy or practice of target vehicles with out-of-state license plates and detaining drivers using state residency and innocent-travel indicia which creates actual barriers to, or directly and substantially penalizes interstate travel which violates the Privileges and Immunities Clauses of Article IV, section 2, and the Fourteenth (Count 2 of Shaw/Bosire First Amended Complaint)

      **iii.**    Defendant Schulte prolonged the detention of Plaintiffs B. Shaw and S. Shaw for a canine search based on factors consistent with innocent travel and otherwise without reasonable suspicion in violation of these Plaintiffs Fourth Amendment rights, as applied to the states by the Fourteenth Amendment, to be free from unreasonable searches and seizures. As such, Defendant Schulte is liable to these Plaintiffs for damages under 42 U.S.C. § 1983. (Count 3 of Shaw/Bosire First Amended Complaint)

      **iv.**    Defendant McMillan prolonged the detention of Plaintiff Bosire for a canine search based on factors consistent with innocent travel and otherwise without reasonable suspicion in violation of Plaintiff Bosire's Fourth Amendment rights, as applied to the states by the

KC 19120685.1

Fourteenth Amendment, to be free from unreasonable searches and seizures. As such, Defendant McMillan is liable to Plaintiff Bosire for damages under 42 U.S.C. § 1983. (Count 4 of Shaw/Bosire First Amended Complaint)

**b.     Defendant(s)' Defenses.**

Defendant asserts the following defenses:

All defendants maintain that substantial portions of Plaintiffs' "factual" allegations are irrelevant and evidence concerning these allegation is inadmissible.

**i.     Defendant Jones**

1.     Regarding Count 1 in Case No. 19-1343 and Count II in Case No. 20-1067, Plaintiffs lack standing. Plaintiffs' claim against Defendant Jones is [and must be because of the Eleventh Amendment] only for prospective injunctive relief. Jones has no liability and has not been sued for alleged injuries from the Plaintiffs' traffic stops and detentions. A plaintiff cannot sustain a claim for prospective injunctive relief that is based on "speculative future harm." It is speculative that any of the Plaintiffs will again be stopped and detained by KHP troopers, much less then subjected to the alleged unconstitutional conduct. Plaintiffs lack the required evidence of a persistent pattern of the alleged misconduct to show standing.

2.     Further regarding Count 1 in Case No. 19-1343 and Count II in Case No. 20-1067, no evidence supports that Jones is violating the Fourth Amendment. Plaintiffs must prove a present or imminent violation of federal law, here the Fourth Amendment of the Constitution. They must *identify* a particularized policy or custom that causes the violation. In the case, to establish liability under § 1983 arising from a decision maker's acts or

40

inactions to prevent harm caused by an employee, plaintiffs must show: (1) an official policy or custom, (2) causation, and (3) deliberate indifference.

2.1.    However, there is no evidence of a governmental policy or custom to prevent motorists, while seeking consent, from leaving after the traffic stop has ended to secure consent to prolong a detention for questioning or a dog sniff, no evidence that Jones is deliberately indifferent, and no evidence that Jones' alleged indifference will cause KHP troopers to unconstitutionally block detained vehicles. In fact, Jones is not deliberately indifferent and is not causing, by the alleged indifference, troopers to violate federal law by preventing motorists, without a constitutional basis, from leaving after the traffic stop has concluded in order to secure a consensual encounter.

2.2.    There is no evidence of a governmental policy or custom to have canines sniff vehicles based solely on belief that the driver is traveling to or from Colorado (or out-of-state), no evidence that Jones is deliberately indifferent, and no evidence that Jones' alleged indifference will cause KHP troopers to unconstitutionally detain motorists solely because they are traveling to or from Colorado. Jones is not deliberately indifferent and is not causing, by the alleged indifference, troopers to detain motorists for canine sniffs based **solely** on belief that the driver is traveling to or from Colorado (or out-of-state).

2.3.    There is no evidence of a governmental policy or custom, through KHP's training, of unconstitutionally detaining motorists, i.e., without reasonable suspicion, based on a driver's travel origin or destination, no evidence that Jones is deliberately indifferent, and no evidence that Jones' alleged indifference in training will cause KHP troopers to unconstitutionally detain motorists solely on a driver's travel origin or destination. Jones

41

is not deliberately indifferent and is not causing, by the alleged indifference and troopers' training, troopers to unconstitutionally detain motorists based on a driver's travel origin or destination.

3.      Regarding Count 2 in Case No. 19-1343, the KHP trooper's alleged practices do not violate constitutional rights regarding travel. Plaintiffs claim that Jones has and is enforcing a policy to target vehicles with out-of-state license plates in violation of their right to travel (Jones disputes that there is such a governmental policy). However, the constitutional right to travel is not infringed even if, as the Plaintiffs allege, out-of-state motorists are disproportionately stopped and detained after a traffic stop relative to Kansas motorists. Specifically, the alleged policy does not constitute a significant impediment to a right to freely transverse a state, and it is not an encroachment upon activity basic to the livelihood of the Nation. Moreover, the troopers' alleged practice is not an official policy or custom and not caused by a policy or custom of Jones' deliberate indifference.

4.      The claims against defendants Schulte and McMillan should not be joined at trial with the claim against Jones. First, the claim against Jones is for equitable relief for which the Court is the trier of fact, and is not subject to a jury's adjudication or decision. Second, there is no question of law or fact common to *all* defendants.

5.      The demanded prospective mandatory injunctive relief is not factually or legally appropriate. Equitable relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs. An injunction must be narrowly tailored to remedy the harm shown. Moreover, Fed. R. Civ. P. 65(d) requires that injunctions be "specific in terms" and "describe in reasonable detail, and not by reference

to the complaint or other document, the act or acts sought to be restrained." Thus, injunctions simply requiring the defendant to obey the law are too vague. But the injunction demanded by plaintiffs is not specific or sufficiently detailed.

**ii.** Defendant Schulte

1. Schulte did not deprive the Shaws of a right secured by the Constitution, in particular here the Shaw's detention for a canine sniff was based on specific articulable reasonable suspicion that a crime is being, is about to be or has been committed. [Defendants maintain that in a civil § 1983 suit, the plaintiff has the burden to prove absence of reasonable suspicion.] Schulte's observations and experience establish the facts pertaining to the presence or absence of reasonable suspicion. His subjective motivations and the Shaw's information or intentions that were not communicated to Schulte are not relevant.

2. Alternatively, the plaintiffs may not recover from Schulte under the doctrine of qualified immunity.

3. The claims against defendants Jones and McMillan should not be joined with the claims against Schulte. There are no questions of law or fact common to all defendants that will arise in the action. Moreover, separate trials are appropriate to protect against expense and prejudice from the likely confusion and possible prejudice to Schulte arising from presentation of evidence regarding two wholly separate traffic stops and detentions and evidence that would be inadmissible if the matters were tried separately (e.g., evidence regarding trooper training, KHP policies, other traffic stops and detentions).

KC 19120685.1

4.      Alternatively, the plaintiffs' damages are not of the nature and extent alleged. Award for damages is to damages associated with the brief detention between the conclusion of the valid traffic stop and the canine alert which supported probable cause for the vehicle search. Including, S. Shaw cannot recover the cost to replace luggage from this Fourth Amendment claim that survived summary judgment. Moreover, Schulte disputes the brief detention caused either of the Shaws to suffer the economic and noneconomic damages that they claim.

5.      Alternatively, Schulte's conduct was not motivated by evil motive or intent, or reckless or callous indifference to the Shaws' federally protected rights; and the demanded punitive damages is excessive factually and constitutionally.

###### iii.      Defendant McMillan

1.      McMillan did not deprive Bosire of a right secured by the Constitution, in particular here the Bosire's detention for a canine sniff was based on specific articulable reasonable suspicion that a crime is being, is about to be or has been committed. [Defendants maintain that in a civil § 1983 suit, the plaintiff has the burden to prove absence of reasonable suspicion.] McMillan's observations and experience establish the facts pertaining to the presence or absence of reasonable suspicion. His subjective motivations and the Bosire's information or intentions that were not communicated to McMillan are not relevant.

2.      Alternatively, the plaintiff may not recover from McMillan under the doctrine of qualified immunity.

44

3.      The claims against defendants Jones and Schulte should not be joined with the claims against McMillan. There are no questions of law or fact common to all defendants that will arise in the action. Moreover, separate trials are appropriate to protect against expense and prejudice from the likely confusion and possible prejudice to McMillan arising from presentation of evidence regarding two wholly separate traffic stops and detentions and evidence that would be inadmissible if the matters were tried separately (e.g., evidence regarding trooper training, KHP policies, other traffic stops and detentions).

4.      Alternatively, the plaintiff's damages are not of the nature and extent alleged. First, if McMillan lacked reasonable suspicion for a canine sniff, the award for damages is limited to damages associated with the detention after the traffic stop ended, which was during the parties' second encounter. Second, if McMillan, lacked reasonable suspicion before the second encounter, but possessed the required suspicion from his conversation with Bosire during the second encounter, plaintiff's monetary recovery is limited to damages associated with a detention of less than 4 minutes. Third, Bosire cannot recover $88.70 for expenses incurred for an internal affairs complaint; $75 in open records fees to obtain the videos of his stop. Moreover, McMillan disputes the brief detention caused Bosire to suffer noneconomic damages that he claims.

5.      Alternatively, McMillan's conduct was not motivated by evil motive or intent, or reckless or callous indifference to the Bosire's federally protected rights; and the demanded punitive damages is excessive factually and constitutionally.

## 5.      DAMAGES AND NON-MONETARY RELIEF REQUESTED.

Individual Claims for Damages

   a. Plaintiff Blaine Shaw seeks: $200 for the cost to replace luggage damaged during his stop; $9,435.44 for past wage loss; $18,000 for non-economic damages; and $50,000 for punitive damages.

   b. Plaintiff Samuel Shaw seeks: $10,000 for non-economic damages; and $ 50,000 for punitive damages.

   c. Plaintiff Joshua Bosire seeks: $88.70 for expenses incurred for internal affairs complaint; $75 in open records fees to obtain video of his stop; $40,000 for non-economic damages; and $50,000 for punitive damages.

Injunctive Relief

Plaintiffs' claims for injunctive relief are authorized by the Fourth Amendment to the U.S. Constitution, 42 U.S.C. §1983, and *Vasquez v. Lewis*, 834 F.3d 1132 (10th Cir. 2016). Specifically, Plaintiffs seek injunctive relief:

- Requiring Defendant Jones to implement improved policies and programs with respect to training, supervision, monitoring, and discipline that will eliminate the policy, practice, pattern, and custom of suspicionless detentions and seizures. Including, but not limited to, the cessation of consideration of the following factors when forming reasonable suspicion:
  - Out of state license plates;
  - Travel origin or destination;
  - Travel to or from so-called "drug source" locations or along so-called "drug source" corridors; and
  - Any other factor the Tenth Circuit Court of Appeals or Kansas appellate courts have determined to be unreliable in forming reasonable suspicion.

- Requiring Defendant Jones to implement appropriate measures for supervision and discipline of KHP troopers who conduct detentions and seizures lacking reasonable suspicion or in violation of KHP policy;

- Requiring Defendant Jones to implement appropriate measures to ensure that KHP troopers document the following, and to do so in sufficient detail as to permit supervisory review for compliance with Article IV and the Fourth and Fourteenth Amendments:
  - all canine drug searches, including the location, the basis for each such search, the residency and demographics—including the state issuing the license plate on the vehicle—of each individual stopped, regardless of

46

whether the encounter is followed by the use of force, consent search, citation, warning or arrest;

- ▪ all detentions, including the location, the basis for each such detention, the residency and demographics—including the state issuing the license plate on the vehicle—of each individual stopped, regardless of whether the encounter is followed by the use of force, consent search, citation, warning or arrest; and

- ▪ all citations and arrests, including the location, the basis for each such search, the residency and demographics—including the state issuing the license plate on the vehicle—of each individual stopped, issued and or conducted as a result of a canine drug search.

- • Requiring Defendant Jones to implement appropriate measures to ensure that documentation of all roadside detentions and/or searches is retained in a single, searchable, up-to-date computerized database;

- • Requiring Defendant Jones to make publicly available, on a semiannual basis, data on all roadside detentions and/or searches conducted by the KHP, including information on location, the basis for each detention and/or search, the license plate of the vehicle, and the residency and demographics of each individual stopped;

- • Requiring Defendant Jones and/or an independent, court-appointed neutral to monitor and audit canine drug search policies, practices, and customs, to ensure that such searches comport with constitutional and statutory requirements, including by, among other things, periodically reviewing forms documenting these searches and analyzing data on such searches.

Declaratory Relief

Plaintiffs' claims for declaratory relief are authorized by the Fourth Amendment to the United States Constitution, 42 U.S.C. Section 1983, and Vasquez v. Lewis, 834 F.3d 1132 (10th Cir. 2016), and 28 U.S.C. Section 2201, Federal Declaratory Judgment Act. Specifically, Plaintiffs seek a judgment declaring that Defendant Jones maintains a policy or practice of targeting vehicles with out-of-state license plates and detaining drivers using state residency and innocent-travel indicia which violates the Fourth Amendment rights of Plaintiffs. Alternatively, Plaintiffs seek a declaration that such a practice is inconsistent with prevailing Tenth Circuit law and the Fourth Amendment.

Attorneys' Fees and Costs

Plaintiffs claims for reasonable attorneys' fees and costs is authorized by 42 U.S.C. § 1988.

47

**6.    AMENDMENTS TO PLEADINGS.**

None.

**7.    DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by July 29, 2022.  Discovery is complete.

Unopposed discovery may continue after the deadline to complete discovery so long as it does not delay briefing or ruling on dispositive motions or other pretrial preparations. Although discovery may be conducted beyond the deadline to complete discovery if all parties agree to do so, under these circumstances the court will not be available to resolve any disputes that arise during the course of such extended discovery.

**8.    MOTIONS.**

**a.    Pending Motions.**

Defendants' Motion to Sever or for Separate Trials

**b.    Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

Plaintiffs' Motion to Exclude Testimony of Christie Asbe

Plaintiffs' Motion for Summary Judgment

Plaintiffs' Motions in Limine

Motion for Summary Judgment Concerning Claims against Defendant Jones

Defendants' Motion to Limit or Exclude Testimony from Hassan Adan and Jonathan Mummolo

Defendants' Motion to Sever and/or for Separate Trials

Defendants' Motions in Limine

Defendants' Motion for Sanctions for Failure to Supplement Answers to Contention Interrogatories under FRCP Rules 26(e)(1) & 37(c)(1).

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **September 8, 2022**.  The parties should follow the summary-judgment guidelines on the court's website:

*http://ksd.uscourts.gov/wp-content/uploads/2015/10/Summary-Judgment-Guidelines.pdf*

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda must not exceed 30 pages, absent an order of the court.

**c.    Motions Regarding Expert Testimony.**    All motions to exclude the testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, must be filed by **September 8, 2022**.

**9.    TRIAL.**

The trial docket setting, as established in the scheduling order and any amendments, is **February 6, 2023, at 9:00 a.m., in Wichita, Kansas**. Pending further orders of the Court, all issues will be tried simultaneously (that is, the Court will not conduct separate trials for jury and non-jury issues). The parties agree that Plaintiffs' claims against Defendant Jones are for equitable relief to be decided by the Court. Trial is expected to take approximately 10 days. The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial. If no dispositive motions are timely filed, or if

49

the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

## 10.   ALTERNATIVE DISPUTE RESOLUTION (ADR).

The status of settlement negotiations is as follows:

A mediation was held by Magistrate Judge O'Hara on October 19, 2020 with the Shaw Plaintiffs, Plaintiff Bosire, Defendant Schulte, Defendant McMillan, Defendant Jones, and counsel for each of those parties. The mediation did not resolve any claims.

There has been no mediation for claims brought by Plaintiffs Mark Erich, Shawna Maloney individually and as mother and natural guardian of minor D.M. and M.M. Their claim adopts Count 1 in Case No. 19-1343 (the Fourth Amendment claim against Jones).

The Plaintiffs believe the prospects for settlement of this case are good, but when Plaintiffs suggested ADR, Defense counsel responded that his experience with mediation with governmental entities is inefficient[3] and said that: "If, however, you see a pathway to settle the claims against the individual troopers, feel free to make offers."

---

[3] Payments in settlement from the Kansas Tort Claims Act fund must be approved by the state finance council. K.S.A. § 75-6106(a) and K.S.A. § 75-6117(b)(3). It is Defendants' belief that Kansas open meeting laws make direct negotiations with the council impractical, if not impossible. However, the council has, to date, always adopted/approved any settlement that the Attorney General's office negotiates. And the OAG is able to negotiate and reach a settlement without a mediator's intervention if prospects for settlement are realistic. In this sense, Defendants believe requiring mediation only adds expense and has proved inefficient in cases like this one.

Defendants think prospects for settlement of the trooper claims are poor based on the wild gap between the offers exchanged at the October 2020 mediation and from plaintiffs' apparent unwillingness to make an offer outside of mediation. Defendant Jones is not open to mediation on the injunctive claims for the reasons described in this pleading.

Plaintiffs believe that it would be helpful to participate in a settlement conference and that the most productive time would be after the Court decided summary judgment.

The parties are reminded that, under D. Kan. Rule 40.3, they must immediately notify the court if they reach an agreement that resolves the litigation as to any or all parties. Jury costs may be assessed under this rule if the parties do not provide notice of settlement to the court's jury coordinator at least one full business day before the scheduled trial date.

IT IS SO ORDERED.

Dated _____ 20__, at _____, _____

_____
[Name]
U. S. District Judge (or)
U. S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Blaine Franklin Shaw, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 6:19-CV-01343 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |
| Mark Erich, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 20-CV-01067 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |

## DEFENDANT JONES' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND PRETRIAL ORDER

This pleading responds to Doc. 357**, Plaintiffs' Motion to Amend Pretrial Order** (filed 1/7/2023).

The pretrial order was filed August 19, 2022. Doc. 290. Plaintiffs' motion should be denied because the plaintiffs have failed to establish the amendment they request is necessary to avoid manifest injustice. Bottom line it is too late to

1

permit Plaintiffs to renew a claim for declaratory judgment that they, by all objective appearances, intentionally omitted from their allegations in the August 2023 pretrial order.

The standards for the Court's decision on Plaintiffs' motion do not appear to be disputed.

Under Rule 16(d), Fed.R.Civ.P., the pretrial order "controls the course of the action unless the court modifies it." Fed.R.Civ.P. 16(d); *see also* D. Kan. Rule 16.2(c). A pretrial order may be modified "only to prevent manifest injustice." *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir.2002) (quoting Fed.R.Civ.P. 16(e)). Plaintiff, as the party seeking the amendment, has the burden to prove manifest injustice. *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2002) (*citing Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 588 (10th Cir.1987)). The Court exercises discretion in deciding whether to modify the pretrial order. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1222 (10th Cir. 2000).

Courts in the Tenth Circuit look at the following factors to determine whether a pretrial order may be amended: (1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order. *Koch*, 203 F.3d at 1222.

The Tenth Circuit has explained that an attempt to add a new claim to the pretrial order is "the equivalent of asking leave to amend [the] complaint, and must be evaluated by the court under the standards set forth in Rule 15(a)." *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir.2006) (brackets original) (*quoting Minter v. Prime Equip. Co.*, 451 F.3d 1196 (10th Cir. 2006). Under Rule 15(a), the Court will generally deny leave to amend only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed or futility of amendment. *See Duncan v. Manager, Dept. of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir.2005). Leave to amend is within the sound discretion of the Court. *See Woolsey v. Marion Labs., Inc.,* 934 F.2d 1452, 1462 (10th Cir.1991). Rule 15(a) instructs the Cour**t to "freely give leave when justice so requires." Fed.** R. Civ. P. 15(a).

*Requested Amendment*

Plaintiff would add the following to the relief requested in pretrial order:

> Specifically, Plaintiffs seek a judgment declaring that Defendant Jones maintains a policy or practice of targeting vehicles with out-of-state license plates and detaining drivers using state residency and innocent-travel indicia which violates the Fourth Amendment rights of Plaintiffs. Alternatively, Plaintiffs seek a declaration that such a practice is inconsistent with prevailing Tenth Circuit law and the Fourth Amendment.

Doc. 357 at 7. Plaintiffs do not seek to amend their pretrial factual allegations. *Id.* at 13-16. They do not seek to add any detail to their theory of recovery against

3

Jones. *Id.* at 39. The result being what Plaintiffs claim are the **"a policy or practice" or "practice" are far from clear. Correspondingly**, exactly what Plaintiffs would have the Court declare is also uncertain.

Prejudice to Jones, his inability of that party to cure any prejudice and questionable good faith of Plaintiffs' late motion to modify the pretrial order all **support the motion's denial. Jones unsuccessfully sought clarification of Plaintiffs' claims before the Magistrate in discussion of the pretrial order.** Whether inclusion of a claim for declaratory judgment would have altered the **Magistrate's view is unknown**; but, it is certain the issue could not have been presented because the claim was not in the proposed pretrial order. The deadline for dispositive motion is long past. Jones could not include, in his summary judgment motion, a challenge to entitlement of declaratory relief, particularly under the *Ex parte Young* exception to Eleventh Amendment immunity or for policy reasons declaratory judgment is not appropriate where there is an adequate remedy at law, or asserting the facts Plaintiffs presents concern past alleged misconduct and policy reasons that the Court should not want to adjudicate by declaratory judgment in the abstract policy or practice that is disconnected from the alleged constitutional violations by trooper, not Jones. So, Jones is prejudiced if the late amendment is allowed.

Plaintiffs' amendment offers Jones no vehicle to cure his prejudice. They only say, he can present his position at trial.

Then, good faith does not mean the opposite of ill will or malice. To be clear, Plaintiffs proposed their draft pretrial conference order fact, theory and remedy sections without a claim or hint of a claim for declaratory relief. They say its exclusion was inadvertent and an "an editing error**.**" **How does that happen** with as many lawyers as Plaintiffs tasked in the preparation of the draft pretrial order? Nothing was ever edited out.

Plaintiffs certainly understood that the danger of requesting both declaratory and injunction relief, i.e., that the Court could chose to grant the **declaratory relief alone. Was the reference to declaratory relief in Plaintiffs'** summary judgment briefing[1] or the absence of declaratory relief in the pretrial **order "inadvertent?" Certainly,** Plaintiffs—who bear the burden to show good faith—provide no explanation to how the omission was not meant, sought or intended.

Plaintiffs did not seek amendment to the pretrial order after the Court issued an order to show cause as to why the injunctive relief claim should not be

---

[1] Defendant Jones summary judgment brief observes that Plain**tiffs' Fourth Amendment** claim against him is for prospective injunctive relief. Memorandum in Support of Motion for Summary Judgment Concerning Claims Against Defendant Jones, Doc. 296, filed 8/22/2022, at 33.

**Defendant Jones' brief opposing Plaintiff's motion for summary judgment states: "The** injunctive relief is the only relief sought according to the pretrial order, which supersedes the demands in the Amended Complaint for both injunctive and declaratory relief. See Doc. 290 [Pretrial Order, entered 8/19/2022], at 47-**48." See** Doc. 324, filed 9/28/2022, at 2, n. 2.

dismissed. *See* Doc. 355 (entered January 3, 2022). They took no action to **respond to Jones' position, answering their summary judgment motion, that their** only claim was for injunctive relief. *See supra* at 5, n. 1.

Application of the Rule 15 analysis does not change that Plaintiffs have failed to establish manifest injustice. The delay in requesting the amendment has **been** "undue delay,"[2] with undue prejudice to **Jones. Again, Plaintiffs' motion** does not dispute a dilatory motive in the late amendment request, brought only when they were told that their claim for injunctive relief is in peril.

**In summary, Jones asks that the Court deny Plaintiffs' motion.**[3]

Respectfully submitted,

OFFICE OF KANSAS ATTORNEY
GENERAL KRIS KOBACH

s/ Arthur S. Chalmers
Arthur S. Chalmers #11088
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Telephone: 785-368-6244
FAX: 785-291-3767

---

[2] When determining whether a newly rais**ed claim is untimely under Rule 15(a), "[t]his** Circuit … focuses primarily on the reasons for the delay. We have held that denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay." *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) (internal quotes omitted) (*quoting Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir.2006).

[3] Under 42 U.S.C. § 1988, attorney fees are assessed to a prevailing party as part of the costs for enforcement of 42 U.S.C. § 1983. Defendant Jones does not assert that there is need to amend the relief request portion of the pretrial conference order to demand fees, whether typically included in the pretrial conference order or not.

6

Email: art.chalmers@ag.ks.gov
*Attorneys for the Defendants*

CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of January, 2023, I electronically sent

a copy of **DEFENDANT JONES' OPPOSITION TO PLAINTIFFS' MOTION TO**

**AMEND PRETRIAL ORDER** to all counsel of record.

s/Arthur S. Chalmers

**CLERK'S COURTROOM MINUTE SHEET – CIVIL**

BLAINE FRANKLIN SHAW, *et al.*,

        Plaintiffs,

      v.                           Case No:   19-1343-KHV

HERMAN JONES in his official capacity
As the Superintendent of the Kansas Highway
Patrol, *et al.*,

        Defendant.

**Appearing for Plaintiff(s):**      **Appearing for Defendant(s):**
Madison Perry                      Arthur Chalmers
Brian Hauss
Olawale Akinmoladun
Patrick McInerney
Leslie Greathouse

| JUDGE: | Kathryn H. Vratil | DATE: | 1/24/2023 |
|--------|-------------------|-------|-----------|
| CLERK: | Audra Harper | TAPE/REPORTER: | Nancy Wiss |

**STATUS CONFERENCE**

The parties appear by counsel.

Motion to Amend/Correct Pretrial Order (Doc. #357), filed January 7, 2023
is GRANTED. Plaintiff's counsel shall contact Judge Birzer to handle
logistics.
Plaintiff Shaw to file his additional motion in limine by 5:00 P.M., January 25, 2023.
Defendant's response deadline is set for January 30, 2023, by 5:00 P.M.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Blaine Franklin Shaw, *et al*. | |
| Plaintiffs, | |
| v. | Case No. 6:19-CV-01343 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |
| Mark Erich, *et al*. | |
| Plaintiffs, | |
| v. | Case No. 20-CV-01067 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT

Defendant Herman Jones will move the Court to dismiss Plaintiffs' claims for injunctive and declaratory relief or to find that Plaintiffs' have failed to prove defendant Jones is violating their Fourth Amendment rights. This motion is brought pursuant to Fed. R. Civ. P. 52(c).

1.    *Rule 52(c)*

In a bench trial, a motion for judgment at the close of a plaintiff's evidence is governed by Fed. R. Civ. P. 52(c). *Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10th Cir.2001). Rule 52(c) states in pertinent part:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the

1

party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence.

The court addresses the motion in its role of fact finder. *See* Fed. R. Civ. P. 52(c) advisory committee's note ("The standards that govern judgment as a matter of law in a jury case have no bearing on a decision under rule 52(c)"); *see also United States v. $242,484.00 in U.S. Currency*, 389 F.3d 1149, 1172 (11th Cir.2004) ("In addressing a Rule 52(c) motion, the court does not view the evidence in the light most favorable to the nonmoving party, as it would in passing on a Rule 56 motion for summary judgment or a Rule 50(a) motion for judgment as a matter of law; instead, it exercises its role as factfinder.").

### 2. *Plaintiffs Lack Standing*

It is sufficient for standing purposes that a plaintiff merely ***allege*** concrete injury concerning a motion to dismiss for lack of standing; however, where the case proceeds to summary judgment or to trial, standing is evaluated not on pleadings alone but on basis of all evidence in record and at this stage, a plaintiff must do more than plead standing; plaintiff must prove it. *Aptive Env't, LLC v. Town of Castle Rock, Colorado*, 959 F.3d 961, 973 (10th Cir. 2020), *Glover River Org. v. U.S. Dep't of Interior*, 675 F.2d 251, 254 n. 3 (10th Cir. 1982).

Abstract injury is not enough to confer standing: "(t)he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Thus, a plaintiff cannot sustain a claim for prospective injunctive relief that is based on "speculative future harm." *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019). *See also Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 924 F.3d 375, 396 (7th Cir. 2019) ("Without a 'showing of any real or immediate threat that the plaintiff will be wronged again,' [ ], [plaintiff] lacked standing to request, and the district court lacked jurisdiction to award, the declaratory

judgment and permanent injunction"). Plaintiffs are unable to establish standing to pursue injunctive relief because they cannot show it is likely that they will have another encounter with a KHP trooper that results in an unconstitutional detention.

The reasoning in *Allee v. Medrano*, 416 U.S. 802, 815-16 (1974), *Rizzo v. Goode*, 423 U.S. 362 (1976) and *City of Los Angles v. Lyons,* 461 U.S. 95, 97-98 (1983), is controlling. Plaintiffs have abandoned their claims of widespread (a supposed Jones' policy or custom) unconstitutional post-traffic stop detentions. The hook then, to satisfy the standing requirement at the pleading stage to show standing, is gone. Now there is no evidence of widespread police misconduct, and certainly less than the pattern of misconduct that the Supreme Court found was required to provide standing in *Allee*, *Rizzo* and *Lyons*. There is no evidence of a prevailing and persistent pattern that troopers systematically detain people without reasonable suspicion or voluntary consent because of a policy or custom attributable to Jones.[1]

In *Allee v. Medrano*, 416 U.S. 802, 815-16 (1974), the Supreme Court upheld a permanent injunction restraining further unconstitutional conduct by various Texas state law enforcement officials who had unlawfully threatened, detained, confined, and physically assaulted union leaders engaged in organizing efforts. *Id*. at 804-05. In affirming the district court's injunction, the Supreme Court found that the constitutional violations "were not a series of isolated incidents but a prevailing pattern" of police misconduct. *Id*. at 809. The Court also stated: Isolated incidents of police misconduct under valid statutes would not, of course, be cause for the exercise of a federal court's equitable powers. But …. [w]here, as here, there is a persistent pattern of police misconduct, injunctive relief is appropriate. *Id*., 416 U.S. at 815.

---

[1] Plaintiffs now assert that the "policy or custom" analysis is inapplicable to their claim for equitable relief.

*Rizzo v. Goode*, 423 U.S. 362 (1976), expanded upon the isolated incident/persistent

pattern distinction. In *Rizzo*, equitable relief was granted by the district court in an effort to halt

instances of police brutality directed at minority citizens. The injunction issued by the district

court ordered police officials to submit for approval a comprehensive program for dealing with

civilian complaints alleging police misconduct. *Id.* at 365. The Supreme Court held that nineteen

constitutional violations in a year's time, by only a small percentage of the police, did not

warrant injunctive relief. *Id.* at 367-369.[2] Articulating how the plaintiffs had failed in their proof,

the Court explained that to succeed the plaintiffs needed to show that the police misconduct

flowed from a policy, plan, or a pervasive pattern. Further, this pattern, plan or policy had to be

causally linked to the defendants named in the action. *Id.* at 371. Thus, the evidence in this case

insufficient to avoid application of the rule in *Lyon*, which in turn follows *Rizzo.* They have

failed to show a real and immediate threat of future harm.

---

[2] The Plaintiffs' claims arise from three stops and detentions that happened between approximately 4 and 5 ½ years ago. [Shaw, 12/20/2017; Erich, 3/9/2018; Bosire, 2/10/2019]. There is no pattern in these cases. Rather, the articulated grounds for the alleged reasonable suspicion in each case was materially different.

Plaintiffs also present testimony regard three other stops/detentions. Mr. Kelly was stopped 5/27/2020, approximately 3 years ago. Mr. Martinez was stopped 9/5/2022, just short of 9 months ago. And Ms. Dunn was stopped 2/5/2021, approximately 2 years ago. The parties debate whether the Kelly and Martinez detentions were supported by reasonable suspicion. The articulated grounds for the alleged reasonable suspicion in each case was materially different from each other and the Plaintiffs' stops. Ms. Dunn voluntarily consented to the detention for a canine sniff–she says to be polite and respectful to law enforcement.

Together, the Plaintiffs' detentions and the supposed additional 3 illegal detentions, each be different troopers, falls far short of the nineteen constitutional violations that *Rizzo* held was insufficient.

In sum, Plaintiffs have failed to show a real and immediate threat of future harm in their Fourth Amendment claim, so it must be dismissed.[3]

3.    *The Court Should Not Enter the Demanded Equitable Relief*

Injunctive relief is not proper even assuming (a) Plaintiffs possess the required standing, (b) show their Fourth Amendment rights will be abridged in the future by a KHP trooper, and (c) Jones' actions or inactions culpably cause the future Fourth Amendment violations. First, the plaintiffs have adequate remedies at law so that their alleged harm is not irreparable absent an injunction. Second, the threatened injury from the demanded injunctive relief does not outweigh the harm that the injunction is likely to cause from adverse effects on public interest through interference with the principles and operations of federalism, risks from lack of comity afforded to other courts, and unbounded—or at least unreasonable—burdens in enforcement of the demanded injunctive relief. Third, Plaintiffs' injunction demands[4] are impermissibly vague under Rule 65's standards.

There is no dispute that Federal district courts have the power to order injunctive relief when equity so requires. *See Signature Props. Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1268 (10th Cir. 2002). Yet, guiding this discretion, the Supreme Court has stated that courts must apply the "traditional four-factor test" which governs the award of permanent injunctive relief. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 394 (2006). Courts consider: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4)

---

[3] It is worthy of note, according to the date Plaintiffs' expert collected, in a similar approximately 5-year period of time more than a million citations were issued to motorists. Less than 2,000 stops resulted in canine sniffs during the period, according to the expert's data.

[4] Compare Pretrial Order, Doc. 290, at 46-48 (setting out Plaintiffs' demanded injunction relief) with Plaintiffs' response to Show Cause Order, Doc. 358, at 12.

the injunction, if issued, will not adversely affect the public interest." *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (*quoting Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir.2007)). "[A]ny modified test which relaxes one of the prongs ... and thus deviates from the standard test is impermissible." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). Moreover, "caution is especially appropriate" when "the type of injunction sought is mandatory rather than prohibitory." *Signature Properties Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1269 (10th Cir. 2002).

Furthermore, there are constrains against injunctive relief in Fed. R. Civ. P., Rule 65. That rule requires that an injunction is specific in "its terms" and "describe in reasonable detail-- and not by referring to the complaint or other document--the act or acts restrained or required." *Id.* (d)(1). *See also Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). *See e.g., Keyes v. Sch. Dist. No. 1, Denver, Colo*., 895 F.2d 659, 668 & n. 5 (10th Cir.1990) (cited and quoted in Monreal, 367 F.3d at 1236) ("[G]enerally, injunctions simply requiring the defendant to obey the law are too vague [to satisfy Rule 65]") (brackets original) (striking injunction prohibiting defendants "from discriminating on the basis of race, color or ethnicity in the operation of the school system" and directing defendants "to use their expertise and resources to comply with the constitutional requirement of equal education opportunity for all who are entitled to the benefits of public education in Denver, Colorado" was too vague).

### 3.1.   *Absence of Irreparable Harm*

Where a plaintiff requests equitable relief, a mere showing that he maintains a personal stake in the outcome of the controversy is insufficient. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 [ ] (1983). Rather, a plaintiff must additionally demonstrate "an adequate basis for equitable relief"—that is, "[a] likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *O'Shea v. Littleton*, 414 U.S. 488, 499, 502 [ ] (1974); …

6

*Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011).

The Tenth Circuit not deem harm "irreparable" unless a petitioner can show "a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (*quoting RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)).

There is an adequate remedy at law for an illegal road side detention by a trooper (detention by the trooper, not Jones), under 42 U.S.C. § 1983 and, through the Kansas Tort Claims Act, Kansas common law.[5] Further, the exclusionary rule provides a remedy against illegal searches and seizures. The rule is fashioned specifically in criminal law context to address asserted irreparable harm to the accused.

Plaintiffs argue § 1983 does not provide an adequate remedy at law. They say that the Shaw verdict shows this. Just the opposite. The jury's verdict allowed nominal damages, the damages from the Fourth Amendment violation that Shaw proved. He received the remedy to which he is entitled. Plaintiffs assert that the rights of others may be violated and that these hypothetical other victims will not sue because they don't know that have that remedy. This speculation does not make the legal remedy under §1983 any less available. Further, the rights of "others" is not before the Court in Plaintiffs' demand for injunction. True, Plaintiffs want an injunction that would impact KHP practices to extend beyond Plaintiffs. But their standing and this suit is limited to Plaintiffs alleged right to an injunction. The Plaintiffs have pursued their § 1983 claims.

---

[5] *See also Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) (describing the elements of supervisory liability for damages under 42 U.S.C. § 1983).

Plaintiffs also argue violation of any constitutional right inherently creates irreparable harm. This argument paints with too wide a brush.

While some federal circuits have held irreparable injury should be presumed in constitutional cases, Prof. Anthony DiSarro shows such a blanket rule is poorly founded and contrary to modern Supreme Court jurisprudence on the subject. See Anthony DiSarro, "A Farewell to Harms: Against Presuming Irreparable Injury in Constitutional Litigation," 35 *Harv. J.L. & Pub. Pol'y* 743, 772-74 (2012). *See also Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) ("The court must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm (unless such a 'departure from the long tradition of equity practice' was intended by Congress). *eBay*, 547 U.S. at 391, 393-94 [ ]. Instead, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay*, 547 U.S. at 391 [ ]…") (parenthetical in quote).

To our knowledge, the Tenth Circuit has not adopted the presumptive irreparable harm approach outside of the context of restraints on constitutionally protected speech. *See e.g., Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005) ("We therefore assume that plaintiffs have suffered irreparable injury when a government deprives plaintiffs of their commercial speech rights").[6]

*Floyd v. U.S.*, 860 F.2d 999 (10th Cir. 1988), does offer insight onto our Circuit's view on whether violation of the Fourth Amendment is inherently irreparable. While addressing a

---

[6] Wright and Miller appears to distinguish between harm from violations the right to free speech or freedom of religion and other constitutional violations, citing eBay. *See* Wright & Miller, 11A *Fed. Prac. & Proc. Civ.* § 2948.1 (3d ed.)

claim for return of allegedly illegal seized property[7], the court overruled district court's holding that irreparable harm was not an element of the plaintiff's proof because it was presumed, and the wrote:

> While we express no opinion regarding this issue on remand, we offer guidance on the proper characterization of irreparable harm. In rejecting irreparable harm as a required element of Rule 41(e) jurisdiction, the trial court cited a case indicating that "any deliberate violation of the fourth amendment is constitutionally irreparable." *Floyd*, 677 F.Supp. at 1087 (*citing In re Application of First United Fin. Corp.*, 620 F.Supp. 1450, 1452 (E.D.N.Y.1985)). We cannot approve of the application of this statement to the instant case.

*Id.* at 1005. The court reasoned: "it cannot be said that every individual whose fourth amendment rights are violated suffers irreparable harm such that Rule 41(e)'s remedial provisions are triggered." *Id.* at 1006.[8]

*Bannister v. Bd of County Comm'rs.*, 829 F. Supp. 1249, 1252 (D. Kan. 1993), is the case that Plaintiffs cite from our Circuit that appears to hold irreparable harm is presumed by a violation of the Fourth Amendment. The decision is not controlling here and predates *eBay*.[9] Furthermore, the alleged employee drug testing policy presented a different kind of violation to the Fourth Amendment that is allegedly present here. The defendant's testing policy compelled its employees to forfeit rights or lose their jobs. It was not a case about a subordinate's violation of another's Fourth Amendment rights. The injury from Hobson's choice in Bannister is arguably irreparable without resort to a presumption.

---

[7] *See* Fed.R.Crim.P. 41(e).

[8] *See also Tyler v. Russel*, 410 F.2d 490, 492 (10th Cir. 1969) (pre-Younger decision refusing to enjoin pending state criminal prosecution despite defendant's claim that prosecution violated Fourth Amendment, noting that "[n]o great and irreparable injury results to him which would not result to any other person charged with the same crime").

[9] In addition to applying a presumption of irreparable harm, the court applied a "none of the [four] factors, taken individually, is dispositive" test rejected in eBay.

Finally, it is very noteworthy that *O'Shea v. Littleton*, 414 U.S. 488, 490 (1974), involved claims of alleged patterns and practices of conduct in the administration of the criminal justice which were said to have deprived the plaintiffs of rights secured by the First, Sixth, Eighth, Thirteenth, and Fourteenth Amendments. Yet, *O'Shea* observed that injunctive relief is not granted where there "is adequate remedy at law and [the plaintiff] will not suffer irreparable injury if denied equitable relief." *Id.* at 499. There is no hint in the Court's discussion that the requirement was satisfied simply by the fact constitutional violations was asserted.

In summary, the Court should exercise its discretion to not grant injunctive relief because Plaintiffs' claims do not establish irreparable harm unless the demanded injunction is issued.

3.2.    *Harm and Adverse Effect of Demanded Injunction*

It is not for the Court to author an injunction whole cloth. The harm and adverse effect of the demanded injunction must be measured by what Plaintiffs have submitted as their requested relief.

As in *O'Shea v. Littleton*, Plaintiffs do not seek to strike down a single state statute, either on its face or as applied; nor do they seek to enjoin prosecutions that might be brought under a challenged criminal law. 414 U.S. at 501. Rather, they seek a multipart injunction supposedly aimed at controlling or preventing the occurrence of specific events involving any number of troopers that might take place in the course of future traffic stops.

Because an injunction against acts which might occur in future, compliance and enforcement will be before the Court where there is a charge that the injunction has been disobeyed. When illegal contraband is found during one of these traffic stops, the injunction seems very much like "an ongoing federal audit" of state criminal proceedings, which would indirectly accomplish the kind of interference that *Younger v. Harris, supra*, and related cases

10

sought to prevent," which *O'Shea* held was improper. *Id*. The injury is to federalism and impact from refused comity to other courts, which balances against entry of such an injunction.

Even when criminal proceedings are not involved, the demanded injunction is too intrusive and is unworkable. For the most part, the originally demanded injunction leaves unstated exactly how Jones must train or supervise troopers. It has no objective boundaries for Jones to know that he has complied or failed to comply with the injunction, thereby imposing expense, risk and duties on the KHP's operations.

The demanded injunction insists that the federal courts should direct the details of Jones' executive functions. Plaintiffs then demand continuous supervision by a court appointed "monitor" effectively to perform Jones' duties. Ultimately, the individual cases will come before Court, for enforcement of its injunction, whenever a claim is made that an individual stop or detention lacked reasonable suspicion (by the "monitor" or otherwise). And then, the Court's judgment is placed potentially in conflict with the judgment of state or other federal courts regarding the illegality of the stop/detention. Moreover, the obvious burden on the Court's resources argues against entry of the demanded injunction in this case.

Really, for the reasons stated in *O'Shea*, the demanded injunction is not proper. The Court can and should find that, in an exercise of its discretion, it will not grant the demanded injunction based on facts alleged.

3.3.    *The amended injunction demands are impermissibly vague.*

Plaintiffs appear to acknowledge that the injunction they demanded in the final pretrial order is improper. They demand instead an injunction:

•       KHP Superintendent is hereby enjoined from continuing his practice of permitting KHP troopers to prolong detentions of drivers without reasonable suspicion of criminal activity, in violation of the Fourth Amendment;

11

• KHP Superintendent is hereby enjoined from his practice of targeting out-of-state motorists for roadside detentions without adequate reasonable suspicion;

• The parties are ordered to confer regarding any additional operational changes that must be made to KHP practices to effectuate the two terms of the injunction listed above, and submit those proposals to the Court.

Doc. 358 at 12.

Fed. R. Civ. Pro., Rule 65(d)(1) rule requires that an injunction be specific in "its terms" and "describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." None of Plaintiffs' bullet points come close to satisfying this basic requirement. The first two are just directing Jones to obey the law; thus, they are too vague. *See also Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). The third is no injunction at all. Furthermore, the demanded amended injunction suffers from the same problems address above about the originally demanded injunction.

### 3.4.   *Plaintiffs should not obtain declaratory relief.*

The fate of Plaintiffs' request for declaratory relief should be no different than their claim for an injunction. In *Eccles v. Peoples Bank of Lakewood Village, Cal.*, 333 U.S. 426 (1948), the Supreme Court said "declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Id.* at 431. In that case, the Supreme Court required a showing of the equitable prerequisite irreparable harm in order to obtain Declaratory Judgment. *Id.* at 432-32. More specific to Jones, who is sued in his official capacity only, "[t]he *Ex parte Young* doctrine holds that the Eleventh Amendment generally does not stand as a bar to suits in which a party seeks only prospective equitable relief against a state official." *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1260 (2002) (emphasis added).

12

In *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962), the Court observed that "the Declaratory Judgment Act was an authorization, not a command." The act gives the federal courts competence to make a declaration of rights; it did not impose a duty to do so. *Id*.

Any declaratory judgment must go to future conduct only.[10] Yet, Plaintiffs have offered no justification for a declaration that will tell Jones only to comply with the law. They have provided no support that a declaration would be appropriate given the available remedies at law. Further, they do not explain how a declaratory judgment will not potentially interfere or possibly conflict with other courts' adjudications—and, if not, why a declaratory judgment is needed.

Therefore, judgment is proper against Plaintiffs' injunction and declaratory claims under Rule 52(c).

4.      *Plaintiffs have not proved Defendant is violating or is certain to violate their Fourth Amendment rights.*

There are two overarching elements of a § 1983 claim. The plaintiff must allege and ultimately prove both (1) a deprivation of a federal right, and (2) that the person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988).

Liability under §1983 does not exist in a vacuum. Plaintiffs must prove a present or imminent violation of federal law, here the Fourth Amendment of the Constitution. *Crowson v. Washington Cty. Utah*, 983 F.3d 1166, 1187 (10th Cir. 2020). For example, in an analogous situation, when a § 1983 plaintiff pursues a claim of supervisory liability, he must show the subordinate violated his constitutional rights—a supervisor cannot be liable if the subordinate did not commit a violation. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (stating that the causation element of the affirmative-link test requires a plaintiff

---

[10] This incorporates the Eleventh Amendment's limitation on official capacity suits. *See Green v. Mansour*, 474 U.S. 64, 68-69 (1985).

to show "that the defendant's alleged action(s) caused the constitutional violation" committed by a subordinate, suggesting that an underlying constitutional violation is required).

Then, regarding the deprivation of a federal right, to determine the elements of a constitutional claim under § 1983, courts must first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with the values and purposes of the constitutional right at issue. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022).

This official capacity suit against KHP Superintendent Jones is the equivalent to suing the state itself. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against Pennsylvania Auditor General); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (suit against Commissioner of the Kentucky State Police). The state is not vicariously liable, under 42 U.S.C. § 1983, for the "unconstitutional conduct of [ ] subordinates." *Carr v. El Paso Cty., Colorado*, 757 F. App'x 651, 655 (10th Cir. 2018) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).[11]

Plaintiffs say that they only need to show that a causal nexus between Jones's conduct—specifically his failure as the head of the agency to ensure his troopers are complying with the Constitution—and continuing constitutional violations occurring in the field under his watch, citing the Court's ruling regarding a motion in limine. *See* Doc. #466 at 3. The nexus language is a product of the requirement in *Ex parte Young*, 209 U.S. 123, 157 (1908), for its exception to Eleventh Amendment immunity to apply that, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer *must have some connection*" with the enforcement of the act, or else it is merely

---

[11] "Based on the rules our precedents establish, respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677.

making him a party as a representative of the state, and thereby attempting to make the state a party." Our Circuit has interpreted this "some connection" requirement to be a "nexus," *e.g., Peterson v. Martinez*, 707 F.3d 1197, 1206 (2013), where defendants are not required to have a "special connection," but only "some connection" to the unconstitutional act or conduct. "Rather, state officials must have a particular duty to 'enforce' the statute in question [or we contend here a challenged policy or custom] and a demonstrated willingness to exercise that duty." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (2007). This "nexus" requirement cannot be conflated to state the elements of a § 1983 claim against Defendant Jones.

Back to § 1983, as there is no vicarious liability, what is the required state-of-mind? A deliberate indifference state-of-mind is required to establish municipal liability for an employee's unconstitutional actions. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences," *quoting Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). There is no logical reason that state officials should be held to a lesser or different state-of-mind.[12]

---

[12] The Supreme Court, in *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (a suit against the Pennsylvania Auditor General), stated: "In *Kentucky v. Graham*, [a suit against the Commissioner of the Kentucky State Police] … We emphasized that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.*, at 165 [ ] (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 [ ] (1978)). Suits against state officials in their official capacity therefore should be treated as suits against the State. 473 U.S., at 166 [ ]. … ***Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." Graham, supra, at 166, [ ] (quoting Monell, supra, 436 U.S., at 694)." Id. at*** 25 (emphasis supplied).

Therefore, Defendant contends that Plaintiffs must show both an ongoing, future reasonably certain, denial of their Fourth Amendment rights and (1) "an official policy or custom, (2) causation, and (3) deliberate indifference" flowing from the fact that Jones office is not vicariously liability under § 1983. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020). These "policy or custom" requirements apply to a demand for prospective relief, such as an injunction or a declaratory judgment. *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 31 (2010).

4.1.   *Absence of a constitutional violation*

Plaintiffs argue KHP troopers are violating Fourth Amendment rights in two categories: (1) Troopers detain individuals "in part based on innocent travel plans," citing *Vasquez v. Lewis*,[13] Pl. Trial Brief, Doc. 484, at 2, and (2) employ a "Two-Step" maneuver, *id.* at 5.

In neither category has Plaintiffs shown an on-going or reasonably certain future Fourth Amendment violation.

*Travel*: Detention based in part on innocent travel plans is not a constitutional violation.

"Reasonable suspicion" is "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). The inquiry depends on "the totality of the circumstances." *Navarette v. California*, 572 U.S. 393, 397 (2014). The law requires looking at each nuance of an encounter as part of a larger mosaic to determine whether the "whole picture" suggests that criminal behavior may be afoot. *Cortez*, 449 U.S. at 418. The emphasis is on the "whole picture," rejects a "divide-and-conquer analysis" of a situation's relevant circumstances. *United States v. Arvizu*, 534 U.S. 266, 274

---

[13] Plaintiffs include an assertion that Trooper have asserted reasonable suspicion in part based out-of-state license plates and residence. Doc. 484, at 5.

(2002) (found reasonable suspicion in part by defendant's use of a "little-traveled route used by smugglers," *id.* at 277) "[B]ecause the mosaic which is analyzed for a reasonable-suspicion … is multi-faceted, 'one determination will seldom be a useful 'precedent' for another'"; the "exception" being when precedent is "so alike," without "any substantial basis for distinc[tion]," "remarkably similar." *Ornelas v. United States*, 517 U.S. 690, 698 (1996). Furthermore, the analysis is an objective one. An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." *Brigham City v. Stuart*, 547 U.S. 398, 404-05 (2006). The officer's subjective motivation is irrelevant. *Id.; see also Wren v. United States*, 517 U.S. 806, 813 (1996) ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers").

Therefore, because the Fourth Amendment concerns objective reasonableness under the totality of the circumstances, an officer's "[c]onsideration of [ ] unpersuasive factors does not negate the otherwise valid bases for his objectively reasonable suspicion." *United States v. Lopez*, No. 5:21-CR-40026-TC, 2021 WL 5279923, at *9 (D. Kan. Nov. 12, 2021). *E.g. United States v. Berg*, 956 F.3d 1213, 1219 (10th Cir.), *cert. denied sub nom. Berg v. United States*, 2020 WL 6037395 (U.S. Oct. 13, 2020) (finding reasonable suspicion, while noting traveling at night along a known drug corridor, using a slightly indirect route, was too innocuous to support reasonable suspicion under the fact of the case); *United States v. Santos*, 403 F.3d 1120, 1133 (10th Cir. 2005) (finding reasonable suspicion while concluding some offered factors were "pure makeweights").

Moreover, circumstances involving the motorist's travel frequently plays a recognized factor in law enforcement's reasonable suspicions. The Circuit's cases where the motorist's

17

travel combined with other circumstances to establish reasonable suspicion to detain a motorist after the traffic stop concluded are ubiquitous. *E.g., United States v. Mercado-Gracia*, 989 F.3d at 839; *United States v. Torres*, 786 Fed. Appx. 726 (10th Cir., Aug. 23, 2019) (unpublished); *United States v. Ma*, 254 F. Appx. 752, 756 (10th Cir. 2007) (unpublished); *United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001) (place of departure or destination was factor). *See also United States v. Mendoza*, 817 F.3d 695, 700 (10th Cir. 2016); *United States v. Karam*, 496 F.3d 1157, 1165-66 (10th Cir. 2007); *United States v. Pettit*, 785 F.3d 1374, 1381 (10th Cir. 2015); *United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011); *United States v. Santos*, 403 F.3d 1120, 1130-32 (10th Cir. 2005); *United States v. Kopp*, 45 F.3d 1450, 1453-54 (10th Cir. 1995) (implausible travel plans were factors). *See also United States v. Orozco-Rivas*, 810 F. Appx. 660, 667 (10th Cir. 2020) (unpublished); *United States v. Torres*, 786 F. Appx. 726, 738 (10th Cir. 2019) (unpublished); *United States v. Sanchez-Valderuten*, 11 F.3d 985, 989 (10th Cir. 1993) (failure to disclose travel history or plans were factors); *United States v. Mendez*, 118 F.3d 1426, 1432 (10th Cir. 1997); *United States v. Soto*, 988 F.2d 1548, 1556 (10th Cir.1993) (vague travel plans were a factor). And, during the course of a traffic stop, an officer may inquire about the driver's travel plans and the identity of the individuals in the vehicle. *Cortez*, 965 F.3d at 838 (*citing Pettit*, 785 F.3d at 1379).[14]

While a particular motorist's route "is not entitled to much weight" in the reasonable suspicion calculus, *United States v. Mercado-Gracia,* 989 F.3d 829, 839 (10th Cir. 2021), *cert.*

---

[14] *Cortez*, 965 F.3d at 839 ("Such questioning is consistent with both the public's expectations regarding ordinary inquiries incidental to traffic stops and taking the least burdensome approach to ensuring officer safety"); *United States v. Holt*, 264 F.3d 1215, 1221 (10th Cir. 2001) (*en banc*), *overturned on other grounds by Muehler v. Mena*, 544 U.S. 93 (2005) (such inquiries are justified because "[t]ravel plans typically are related to the purpose of a traffic stop") *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) (travel questions are permissible as the type of "negligibly burdensome" inquiries directed at ensuring officer safety).

18

*denied*, 142 S. Ct. 1374 (2022)[15], courts have found it can add to the calculus. *See United States v. Farmer*, 215 F.3d 1338 (10th Cir. 2000) ("We have previously considered the fact that a car is traveling at night on a known drug corridor, from a known drug source city when evaluating whether an officer had reasonable suspicion"); *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995) (considering in determination that officer had reasonable suspicion the fact that the car was traveling between Los Angeles and Detroit, two cities known for high drug usage). *See e.g., United States v. Barbee*, 968 F.2d 1026, 1029 (10th Cir.1992); *Mercado-Gracia*, 989 F.3d 829, 839; *United States v. Betances*, 650 F. App'x 615, 618 (10th Cir. 2016) (unpublished); *United States v. Westhoven*, 562 F. App'x 726, 728 (10th Cir. 2014) (unpublished); *United States v. Arjon*, 573 F. App'x 683, 688 (10th Cir. 2014) (unpublished) (driving slowly back and forth and stopping on a remote stretch of highway widely known as a drug-smuggling corridor only a few miles from the border provided reasonable suspicion); *United States v. Gutierrez*, 498 F. App'x 786, 793 (10th Cir. 2012) (unpublished); *United States v. Guerrero-Sanchez*, 412 F. App'x 133, 140 (10th Cir. 2011) (unpublished). *Cf. United States v. Cortez*, 965 F.3d 827, 835 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 1250, (2021) ("geography ["fifty miles from the Mexico border"] and context of the stop generated suspicion"). *See also, United States v. Arvizu*, 534 U.S. 266, 277 (2002) (border patrol agent had reasonable suspicion to believe illegal activity was occurring where vehicle was stopped during a patrol shift change on a "route used by smugglers to avoid [a] checkpoint").

And factors that are typically "consistent with innocent travel" may contribute to reasonable suspicion depending on the circumstances. *United States v. Ahmed*, No. 18-4092,

---

[15] *Accord Vasquez v. Lewis*, 834 F.3d 1132, 1137 (10th Cir. 2016); *Shaw v. Schulte*, 36 F.4th 1006, 1015 (10th Cir. 2022).

2020 WL 5415813, at *2 (10th Cir. Sept. 10, 2020). *Accord, United States v. Pettit*, 785 F.3d 1374, 1379-80 (10th Cir. 2015). In *Arvizu, supra*, the Supreme Court rejected the lower court's analysis that gave no weight to observations which were "readily susceptible to an innocent explanation" and that attempted to "clearly delimit the extent to which certain factors may be considered by law enforcement officers in making stops." *See also United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts"). For example, *Arvizu* stated: "*Terry*, however, precludes this sort of divide-and-conquer analysis. The officer in *Terry* observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was "perhaps innocent in itself," we held that, taken together, they "warranted further investigation." 534 U.S. at 274. *Arvizu*, cited *Sokolow* as standing for the proposition "that factors which by themselves were "quite consistent with innocent travel" [may] collectively amount[ ] to reasonable suspicion." *Id.* at 274-75.

In sum, even if it is assumed that "innocent travel" cannot be factor in the reasonable suspicion calculus, the consideration of such by troopers is not a constitutional violation. Thus, the allegations regarding travel, even if true, do not establish the first element of a § 1983 suit, *i.e.,* a violation of federal law.

*Two-Step*: The Two-Step is also not a violation of the Fourth Amendment. Stated another way, the procedure through which a trooper completes a traffic enforcement action and then reengages the driver to ask additional questions does not unconstitutionally prolong the stop.

An officer may constitutionally prolong a stop after the traffic stop is or should be complete when (1) the seized individual consents or (2) the officer has independent reasonable suspicion of criminal wrongdoing on behalf of the seized individual that justifies further

investigation. *United States v. Cortez*, 965 F.3d 827, 833 (10th Cir. 2020). Thus, the procedure through which a trooper completes a traffic enforcement action and then reengages the driver to ask additional questions in a consensual encounter does not unconstitutionally prolong the stop. *See e.g.*, *Ohio v. Robinette*, 519 U.S. 33, 35 (1996). *See also United States v. Lopez*, No. 5:21-CR-40026, 2021 WL 5279923, at *10 (D. Kan. Nov. 12, 2021) (collecting some of the cases). This process has been referred to as the "two-step", *Lopez,* 2021 WL 5279923, at *10, or "Columbo Gambit," *State v. Thompson*, 284 Kan. 763, 778, 166 P.3d 1015 (2007), *as modified* (Oct. 17, 2007). In the application of the procedure, the issue becomes whether any consent granted for post-stop detention or a search was voluntary.

It is not necessary to read *Miranda* rights or even inform the driver of their right to not consent, *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Moreover, the driver need not be explicitly told that he or she has the right to leave. *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996). "Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions" … If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed. *Florida v. Royer*, 460 U.S. 491, 497-98 (1983).

The argument that the Two-Step, by itself, violates the Fourth Amendment has been rejected directly and indirectly in numerous decisions. If a motorist is willing to answer questions, the issue becomes whether any consent granted for post-stop detention or a search was voluntary and the Two-Step does not prevent this voluntary consent. *See e.g., United States v. Gomez-Arzate*, 981 F.3d 832, 842 (10th Cir. 2020) (found a consensual encounter permitted

extended detention even after issuing the citation, the driver began walking back to his car when Deputy Mora turned around and yelled to him to ask if he would talk); *United States v. Martin*, No. 18-CR-40117, 2019 WL 6682990, at *1 (D. Kan. Dec. 6, 2019) (found consent was given after trooper issuing and explained a warning, told the defendant to have a safe trip, back towards his patrol car but then re-approached defendant and asked whether he could ask Defendant some questions; to which Defendant replied "sure" and then also said sure to a vehicle search); *United States v, Beltran*, No. 17-40105-01, 2018 WL 5720247 (D. Kan. Nov. 1, 2018) (found consent was granted after trooper "told Mr. Beltran that he was going to give him a warning and instructed him to watch his speed in construction zones… asked Mr. Beltran if he had any questions" then "told Mr. Beltran to 'have a safe trip" and "began to walk back to his patrol vehicle," but when the trooper reached the rear edge of Mr. Beltran's vehicle, he pivoted and started back in the direction of the driver's side window of Mr. Beltran's car" and "asked him, 'Hey, can I ask you a question, Juan?'"); *United States v. Delgado-Lopez*, No. 18-10095-01, 2018 WL 6200032 (D. Kan. Nov. 28, 2018) (found consent granted, responding "Defendant complains that [Trooper] Parr asked for consent almost immediately after telling Defendant he was free to go, without allowing him time to get out of the car.… But regardless of the timing, the unequivocal message to Defendant that he was "free to go" was sufficient to convey to a reasonable person that he was not required to stay and answer questions."); *United States v. Ochoa*, No. 16-40028-01, 2017 WL 119628, at *5 (D. Kan. Jan. 12, 2017) (found consent to talk and search, Ms. Ochoa gave permission after trooper told her to have a safe trip, she opened the patrol vehicle, but before she exited the trooper asked her a few more questions and if he could search her truck and trailer).

Therefore, as with travel, use of the Two-Step is not a violation of the Fourth Amendment.[16] Again, the first element of the § 1983 claim is not established.

4.2. *Plaintiffs have not proved an official policy or custom, causation, and deliberate indifference.*

Largely, Plaintiffs' evidence and their expert's opinions focus on past detentions, past training and past data collection. This is not legitimate fodder for entry of equitable relief concerning current and future conduct.

The Court may not share Defendant's view of the elements of Plaintiffs' official capacity claim against Jones. Yet, there should be no dispute that Plaintiffs have failed to prove deliberate indifference and an unconstitutional official custom or policy. Over the last 5 ½ years[17] there have been, according to Plaintiffs' six detentions that are claimed to have been illegal. Each has a different set of facts, each a different set of factors presented to support reasonable suspicion. Only the Shaw and Bosire detentions have been found to violate the Fourth Amendment.

---

[16] A few witnesses have testified that they did not think that they could safely leave after a trooper turned to walk away from the vehicle because to trooper was too close. Their subjective belief is not relevant to whether the traffic stop had concluded. Furthermore, the worry about the trooper safety is at most a single factor in whether consent provided was voluntary. In the examples provided, only Ms. Dunn consented to a canine sniff. She testified had been told by her father to wait for the trooper to return to his vehicle before leaving. She testified, that she consented to the dog sniff to be polite and respectful to police-that is, the consent was voluntary. She also understood she did not need to consent, as she refused consent to a search of her vehicle.

[17] See *supra*, n. 2.

Defendant challenges that conclusion regarding the other four.[18] The evidence required to show a policy or custom and deliberate indifference simply is not present.

But given the questions about what proof Plaintiffs' must present to establish a required § 1983 state-of-mind and culpable conduct by Defendant Jones, the central problem with Plaintiffs' § 1983 claim against Jones is lack of causation. Plaintiffs do not challenge the substance of the training provided to troopers and the KHP policies that, if followed, proscribe unconstitutional detentions. Plaintiffs do not establish earlier training on *Vasquez*, old reporting requirements, current data collection and analysis, current ill-defined short comings in supervision, and a past singular failure require more punishment of Trooper McMillan, cause current or will cause future unconstitutional detentions. Plaintiffs have offered nothing but speculation on this point.

Therefore, Plaintiffs fail to establish the second element of a § 1983 claim, *i.e.*, that Jones deprived the plaintiffs of the federal (here constitutional) right.

5. *Conclusion.*

In summary, judgment is proper against Plaintiffs' claim under Fed. R. Civ. P. 52(c). Plaintiffs' lack standing. The Court should not grant the equitable relief demanded. Plaintiffs have not proved the required elements of a § 1983 claim in their official capacity suit against Defendant Jones.

---

[18] There are multiple and different reasons that the troopers had reasonable suspicion to call for canine sniffs in the Erich stop [principally new white paint or bono smelled and located in area on van that suggested a hidden compartment combined with driver's denial of painting, but having white paint on his hand]; Kelly stop [principally extreme and unusual nerviness after being advised he was receiving a warning and a history of multiple drug crimes and possession of a sawed-off shotgun]; and Martinez stop [principally attempting to evade the trooper and by all reasonable appearances lying about his speeding, reason to leave (evade) the highway, and his bullying tactics.] The Dunn detention was consensual canine sniff. The validity or lack of the same of the trooper's suspicions in that case are not relevant.

Respectfully Submitted,

OFFICE OF KANSAS ATTORNEY GENERAL
KRIS KOBACH

/s/ Arthur S. Chalmers
Arthur S. Chalmers #11088
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Telephone: 785-368-6244
FAX: 785-291-3767
Email: art.chalmers@ag.ks.gov
*Attorneys for the Defendant Jones*

## **CERTIFICATE OF SERVICE**

This is to certify that on this 9th day of May, 2023, I electronically sent a copy of

MEMORANDUM IN SUPPORT OF JUDGMENT to all counsel of record.

s/Arthur S. Chalmers
Arthur S. Chalmers

App. Vol. I, 233

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Blaine Franklin Shaw, *et al*.,<br><br>        *Plaintiffs*,<br><br>v.<br><br>Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al*.,<br><br>        *Defendants*. | **Case No. 6:19-CV-1343-KHV-GEB** |
| Mark Erich and Shawna Maloney, i*ndividually and as mother and natural guardian of minors D.M and M.M,*<br><br>        *Plaintiffs,*<br><br>v.<br><br>HERMAN JONES, in his official capacity as the Superintendent of the Kansas Highway Patrol*,*<br><br>        *Defendant.* | **Case No. 20-CV-01067-KHV-GEB** |

<u>**PLAINTIFFS' RESPONSE TO DEFENDANT JONES'S MOTION FOR JUDGMENT**</u>

Plaintiffs submit the following response to Defendant Herman Jones's Memorandum in Support of Motion for Judgment (Doc. #515).

In Defendant Jones' Memorandum in Support of Motion for Judgment, he indicates he will move pursuant to Federal Rule of Civil Procedure 52(c) for the Court to dismiss Plaintiffs' claims for injunctive and declaratory relief or for a finding that Plaintiffs have failed to prove he is

1

violating their Fourth Amendment rights. Defendant Jones's brief is nothing more than a recitation and rehashing of arguments that the Court has already heard and overruled. Specifically, the Court's prior rulings already rejected these same arguments regarding standing and the proper liability standard. *See, e.g.*, Case No. 19-1343, Doc. #36 (overruling Defendant. Jones's Motion to Dismiss for lack of standing); Case No. 19-1343, Doc. #466 (sustaining Plaintiffs' Motion in Limine to exclude Testimony of Christi Asbe finding deliberate indifference inapplicable to this case). Plaintiffs therefore incorporate the arguments and authorities set forth in Plaintiffs' prior briefing, including Plaintiffs' Bench Brief for the Trial Against Defendant Jones (Case No. 20-1067, Doc. #53; Case No. 19-1343, Doc. #484) and Plaintiffs' Response to the Court's Order to Show Cause Regarding Plaintiffs' Claim for Injunctive Relief (Case No. 19-1343 at Doc. #358).

The evidence presented at trial, in conjunction with the authorities cited in prior briefing, establishes Defendant Jones is not entitled to judgment in his favor. Plaintiffs ask the Court to consider Plaintiffs' closing arguments in further support of their opposition to Defendant Jones' Motion for Judgment.

Furthermore, the Court can most appropriately weigh the evidence in this case through post-trial briefing. To that end, Plaintiffs respectfully request that they be permitted to submit proposed findings of fact and conclusions of law, with citations to the actual trial record, to assist in the Court's ultimate ruling in this case.

WHEREFORE, Plaintiffs respectfully request that the Court overrule Defendant Jones's Motion for Judgment (Doc. #515).

Respectfully submitted by,

**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION OF KANSAS**
s/ Sharon Brett
Sharon Brett                    KS # 28696
Kunyu Ching                     *Pro hac vice*
10561 Barkley Street, Suite 500
Overland Park, KS 66212
Phone: (913) 490-4110
Fax: (913) 490-4119
sbrett@aclukansas.org
kching@aclukansas.org

**AMERICAN CIVIL LIBERTIES**
**UNION FOUNDATION**
Brian Hauss                     *Pro Hac Vice*
125 Broad Street, Floor 18
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
bhauss@aclu.org

and

**SPENCER FANE LLP**
s/ Madison A. Perry
Leslie A. Greathouse           KS # 18656
Patrick McInerney              KS # 22561
Madison A. Perry               KS # 27144
Olawale O. Akinmoladun KS # 25151
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100
Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com
mperry@spencerfane.com
wakinmoladun@spencerfane.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of May 2023, a copy of the foregoing was filed and served via the Court's electronic filing system on all counsel of record.

s/ Madison A. Perry
Attorney for Plaintiffs

KC 20405067.2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Blaine Franklin Shaw, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 6:19-CV-01343 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |
| Mark Erich, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 20-CV-01067 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |

**DEFENDANT JONES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF**

**LAW**

**Findings of Fact**

1. The Plaintiffs are Blaine Shaw ("B. Shaw"), Samuel Shaw, Joshua Bosire ("Bosire"), in Case No. 6:19-CV-01343, and Mark Erich ("Erich") and Shawna Maloney ("Maloney"), in Case No. 20-CV-01067.

2. Herman Jones is sued in his official capacity as the Superintendent of the Kansas Highway Patrol.

3. Plaintiffs' claim is:

   "Defendant Jones maintains a policy or practice of detaining drivers using state residency and innocent-travel indicia which violates the Fourth Amendment rights of Plaintiffs." Doc. 290, at 39.

1

4.  Plaintiffs seek injunctive and declaratory relief.

5.  The Kansas Highway Patrol ("KHP") is a state agency.

6.  The KHP is under the direction of the superintendent, who holds the rank of colonel. Colonel Herman T. Jones assumed that position April 3, 2019.

7.  KHP's State Troopers are certified law enforcement officers, pursuant to the Kansas Law Enforcement Training Act who enforce Kansas laws. These troopers have law enforcement jurisdiction throughout the state. Their daily responsibilities include performing traffic stops, providing emergency medical assistance, assisting motorists, investigating crashes, detecting and deterring criminal activity, and assisting other law enforcement agencies.

8.  There are approximately 440 KHP State Troopers.

9.  The KHP is organized into several divisions, and each are overseen by an executive commander. Each division or region is further divided by its geographical area of responsibility (known as a "troop") or its function. Each troop or functional group is overseen by a commander who holds the rank of captain. Administrative groups are overseen by a civilian director. Each troop is further divided into "zones" of one or several counties. Each zone is overseen by a field supervisor who holds the rank of lieutenant. Ex. 914a.

10. State Troopers receive 23 weeks of training at the Kansas Highway Patrol Training Academy ("KHP Academy") in Salina, Kansas.

11. The Kansas law enforcement training act created a commission on police officers' standards and training and a law enforcement training center, within the University of Kansas ("KLETC"). *See* K.S.A. 74-5601 *et seq*. The KLETC determines the curriculum and minimum hours of instruction for training of persons needed to obtain an active law enforcement certification. KHP troopers must have this certification.

12. The KHP Academy's curriculum includes instruction on an law enforcement officers' obligations concerning the United States Constitution's Fourth Amendment rights. The curriculum, among many other topics, also includes instruction on searches, seizures, consensual encounters and reasonable suspicion for post-traffic stop detentions.

13. Upon graduation from the KHP Academy, recruits begin sixteen weeks of field training with a veteran trooper (FTO). They ride along and observe a FTO for seven days, and then they have 70 working days of active training from the FTO.

14. Under Kansas statute and pursuant to KHP policy, beginning the second year after certification, every State Trooper is required to complete annually 40 hours of continuing law enforcement education or training ("in-service training") in subjects relating directly to law enforcement.

15. The KHP provides the annual in-service training to its Troopers. Attendance for some classes, such as legal updates, is mandatory. A smaller portion of the offered training is elective classes. The annual mandatory in-service includes instruction on recent or noteworthy legal decisions regarding constitutional issues pertaining to troopers' law enforcement activities.

16. Additionally, troopers are provided summaries, in updates, of noteworthy recent legal decisions about constitutional issues pertaining to their activities by email and/or on the KHP software called Power DMS.

17. The KHP also provides to its troopers a 34-hour class on advanced criminal interdiction at least once a year. Completion of the class is necessary for career advancement opportunities.

18. The Lieutenant front-line field supervisors frequently review the work of the troopers under their supervision. They conduct formal annual reviews. They review and approve all Kanas Standard Arrest Reports, Kansas Standard Offense Reports, Incident Narrative Reports and Vehicle Detention reports prepared by their subordinates. They have access to and review 15-day reports prepared by their troopers that outline the troopers' daily activities. They are required to watch a sampling (at least 3) of each of their supervised troopers' dash cam video/recordings each quarter.

19. These field supervisors are responsible to identify, correct and recommend appropriate discipline (subject to grievance processes) of any violation of KHP policy or training by their supervised troopers.

20. The KHP maintains written policies concerning its administration, communication, equipment, forms, operations and personnel. A copy of these policies is available to all troopers on-line. Policies applicable to troopers' day-to-day activities are provided and taught during academy training. Updated and new KHP policies are provided to troopers electronically as they are approved, through the KHP software, Power DMS. Troopers are required to read these policy changes and confirm that they have done so. Sometimes a few questions are tested on to confirm that troopers have read the changes.

21. KHP Policy Number ENF-01, Enforcement Guidelines, states "[t]he basic responsibility of an officer is to know the law." Ex. 902, ENF-01. KHP Policy Number ENF-07, Criminal Interdiction Traffic Enforcement, states:

II. Policy

Officers are committed to the apprehension of criminals who use Kansas streets and highways in the furtherance of their criminal activity. Therefore, officers are encouraged to employ Criminal Interdiction Traffic Enforcement (CITE) procedures when, following a lawful traffic stop or other lawful encounter with the person(s), articulable suspicion exists to believe the person(s) is involved in criminal activity.

III. General provisions

***

B. Officers who are not trained in the application of criminal interdiction techniques should request the appropriate assistance when criminal activity is suspected. …

***

D. Officers shall take the appropriate steps to safeguard life and property while preserving the individual dignity and constitutional rights of everyone involved.

***

Ex. 903, ENF-07.

22. KHP Policy Number OPS-39 states, in part:

II. Policy

A. It is the policy of the Agency to conduct arrests, searches and seizures in compliance with the federal and state constitutions and state law. Members of the Agency must balance the constitutionally protected right to be free from unreasonable search and seizure, the evidentiary requirements of any given criminal case, and the need to protect the public and law enforcement officers. Stated guidelines can facilitate all interests.

***

Investigative Stop - A brief detention based on specific articulable reasonable suspicion that a crime is being, is about to be or has been committed. These detentions are justified by KSA 22-2402 and should only be long enough to either confirm or dispel the officer's concerns about the illegal activity. In order to confirm or dispel the officer's concerns he or she should use all reasonable investigative techniques and tools available at that time. These may include but are not limited to: holding the suspect for identification, using a canine to sniff for illegal substances, standardized tests or contact with dispatch or other law enforcement officers with relevant specialties. All detentions shall be based on the totality of the circumstances, which includes articulable reasonable suspicion and the individual officers training and experience.

***

B. Search and Seizure

***

6. Investigative Detention

a. A brief detention based on specific articulable reasonable suspicion that a crime is being, is about to be or has been committed. These detentions are justified by KSA 22-2402 and should only be long enough to either confirm or dispel the officer's concerns about the illegal activity. In order to confirm or dispel the officer's concerns he or she should use all reasonable investigative techniques and tools available at that

time. These may include but are not limited to: holding the suspect for identification, using a canine to sniff for illegal substances, standardized tests or contact with dispatch or other law enforcement officers with relevant specialties. All detentions shall be based on the totality of the circumstances, which includes articulable reasonable suspicion and the individual officers training and experience.

\*\*\*

C. Knowledge of Laws

Members of the Agency are expected to remain current in the knowledge of laws and judicial opinions as they apply to the issue of search and seizure. Whenever possible, the Agency will provide such updated information.

Ex. 905, OPS-39.

23. It is contrary to KHP's policy and training for troopers to (a) conduct or direct a canine sniff of a vehicle for drugs based solely on the trooper's belief that the driver is traveling to or from Colorado; (b) extend a vehicle stop and/or search a vehicle based only on a driver's travel origin or destination; (c) include the state citizenship as a permissible basis upon which to justify a detention and search of out-of-state motorists, and to detain motorists for nothing more than an out-of-state license plate.

24. While not an exhaustive listing, the KHP training includes instruction on the constitutional rights in traffic stops like:

"ONLY 4 COURT-RECOGNIZED POLICE CITIZEN ENCOUNTERS [are] 1. A 'CONSENSUAL ENCOUNTER' 2. A 'TEMPORARY DETENTION' 3. A 'SAFETY STOP' or 'COMMUNITY CARETAKING FUNCTION' 4. An 'ARREST'" [Legal Issues in Car Stops 2020, at bate stamped OAG000205. Also "Vehicle Stops – Legal Issues," Ganieany & Washburn (2021), at bate stamped OAG028886].

"Temporary Detention aka 'Terry Stop,' aka 'a car stop,' aka 'Investigative Detention,' aka a 'sidewalk detention;' requires reasonable suspicion to believe a crime has, is, or is about to be committed." [Legal Issues in Car Stops 2020, at bate stamped OAG000204].

"'Reasonable Suspicion' means a particularized and objective basis for suspecting the person stopped is involved in criminal activity. It is based upon the totality of the circumstances, and is viewed in terms as understood by those versed in the field of law enforcement. It is less than probable cause but more than a gut hunch." [Legal Issues in Car Stops 2020, at bate stamped OAG000202. Also "Vehicle Stops – Legal Issues," Ganieany & Washburn (2021), at bate stamped OAG028889].

"In making reasonable-suspicion determinations, reviewing courts must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. [ ] "This process allows officers to draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to

them that "might well elude an untrained person. [ ]" [2021 "4th Amendment Issues in Vehicle Stops," Luther Ganieany, at bate stamped OAG028567].

"REASONABLE SUSPICION FACTORS • Some carry more weight for court than others • Little weight: nervousness, drug route, food wrappers, a cellphone or pager • More weight: inconsistent stories of driver vs. passengers, an incomprehensible story, a rental car with renter not present, fly one way-drive back in rental, numerous air fresheners • Possible hidden compartment: tool marks, bondo, vehicle riding high or low, metal alterations not seen before in training/experience" [Legal Issues in Car Stops 2020, at bate stamped OAG000215].

"Indicators are seemingly innocent things heard, smelled, and/or observed during an enforcement encounter, including the contents of the vehicle, what was said, and the manner in which it is said, which when taken in there totality and compared with the innocent motoring public and traffic patterns of that particular geographical area, along with the officer's training and experience, show reasonable suspicion or probable cause that criminal activity is taking place." 2021 Advanced Interdiction, Troop N, at bate stamped OAG028421].

"Police may not extend an otherwise completed traffic stop, absent reasonable suspicion of criminal activity, in order to conduct a dog sniff." [Laws of Search & Seizure (2019), at bate stamped OAG001467; "Laws of Search & Seizure" (2021) at bate stamped OAG028754].

"You CANNOT detain a vehicle or its occupants absent reasonable articulable suspicion. THIS IS ILLEGAL!!!!" 2021 Advanced Interdiction, Troop N, at bate stamped OAG028440].

"If you 'measurably extend' the traffic stop without additional reasonable suspicion to believe there was 'other criminal activity,' any consent you get is invalid." [Laws of Search & Seizure (2019), at bate stamped OAG001465. Also "Laws of Search & Seizure" (2021), at bate stamped OAG028752].

Ex. 901, at the bates pages noted.

25. The Tenth Circuit's 2016 decision in *Vasquez v. Lewis* decision is now discussed in KHP's training. For example:

"EXTENDING THE STOP: INDICATORS

- Drug corridor / travel to or from a source or destination city for narcotics illegal in Kansas.
    - "that the defendant was traveling from a drug source city–or a drug source state–does little to add to the overall calculus of suspicion." The Court in *Vasquez* found that this factor was so "broad as to be indicative of almost nothing." *Vasquez v. Lewis*, 834 F.3d 1132, 1137 (10th Cir. 2016).
    - It is wholly improper to assume that an individual is more likely to be engaged in criminal conduct because of his state of residence, and thus any fact that would inculpate every resident of a state cannot support reasonable suspicion." *Vasquez* at 1138 (10th Cir. 2016).

Ex. 90 at OAG29212. See also, Ex. 901, at OAG28580 *et seq.*

However, even before the *Vasquez* decision was rendered, KHP troopers' training had established that the reasonable suspicion required to extend a traffic stop was not supported by (a) a driver's travel origin or destination alone; (b) a drivers' state citizenship or (c) nothing more than an out-of-state license plate.

26. Not at all contrary to this, troopers are trained that they may inquire about travel plans, either while multi-tasking during the course of a stop or in a consensual encounter. They are trained, depending upon the totality of the circumstances, the occupant(s)' travel plans—for example implausible travel plans; travel to or from a drug source when combined with other factors and evasiveness or dishonesty about travel in some instances—can produce objective, commonsense judgments and inferences that criminal conduct is present.

27. Troopers testified that the *Vasquez* decision did not alter their practices because they have not relied on the state of vehicle's registration (i.e., the state issuing the license plate) or the driver's state of residence in the reasonable suspicion calculus. KHP Lt. J. Doug Rules' email comment, which discussed a then recent Utah federal district court decision, explained:

> In my opinion the [Utah] trooper made a big mistake saying he was interested in the truck because it had California plates (***a license plate is never a factor for a traffic stop***) and failed to articulate any reasonable suspicion before calling for a dog.
>
> And the trooper made a big mistake when he testified to the fact the truck having California plates was what sparked his interest. Remember, ***we work an interstate highway which has cars coming from all over the county and we never do anything because of tag or race***.

Ex. 101 (emphasis supplied).

28. It is contrary to KHP policy and KHP training for KHP troopers to block a detained vehicle from safely re-entering traffic after a traffic stop has or should have ended. In the KHP's training, the so-called trooper "two step" maneuver does not block the detained vehicle from safely re-entering traffic or other coercion. Instead, it is described, in training, as the "Columbo Gambit" and a "[b]rief break in the conversation often signified by a re-engagement and a request to speak to said suspect." [Legal Issues in Car Stops 2020, at bate stamped OAG000241-44; Reasonableness is the touchstone of the Fourth Amendment (2018), at bate stamped OAG014239] The maneuver is to help establish any consent to additional conversation or extension of a stop or a search is consensual. Per the KHP training materials, the "trooper two step" is not prohibited, but "not necessary." [Reasonableness is the touchstone of the Fourth Amendment (2018), at bate stamped OAG014239]. The materials stress consent must be knowingly, intelligently, and

voluntarily made. ["Vehicle Stops – Legal Issues," Ganieany & Washburn (2021), at bate stamped OAG028924; Laws of Search & Seizure (2019), at bate stamped OAG001381]. They explain, "Consent must always be all of the following: — Knowing — Intelligent — Voluntary." ["Laws of Search & Seizure" (2021), at bate stamped OAG028672]. 2021 training at the KHP Academy explains:

> Traffic Stops
> - Voluntary encounters after a traffic stop get tricky.
>   – You must have a sufficient break in time between the enforcement encounter and the consensual encounter.
>   – Trooper Two Step is NOT ENOUGH by itself to purge the taint of the coercive nature of the traffic stop.
>
> Traffic Stops
> - Voluntary encounters after a traffic stop:
>   – Factors that may render the contact non-consensual:
>     • You did not return all the driver's documentation.
>     • You have gone straight from the traffic stop to the consensual encounter without a sufficient break.
>     • Your tone of voice is accusatory.
>     • You are still in your patrol car.
>     • You have made physical contact with the vehicle or subject.
>
> Traffic Stops
> - Whether a consensual encounter after a traffic stop is valid depends on whether a reasonable person would have felt free to leave.
> - This is judged on the totality of the circumstances standard.

["Laws of Search & Seizure" (2021), at bate stamped OAG028756-58]. Among the factors listed in the training that would show lack of consent is "an attempt to control the ability to flee" [Reasonableness is the touchstone of the Fourth Amendment (2018), at bate stamped OAG014238], "[p]hysical contact with the person by an officer" [Laws of Search & Seizure (2019), at bate stamped OAG001462], "[t]ouching, leaning on or into the vehicle" [Legal Issues in Car Stops 2020, at bate stamped OAG000243], "officer touching the vehicle when asking for consent" [2021 Advanced Interdiction, Troop N, at bate stamped OAG028445], "some physical touching by an officer" [2021 "4th Amendment Issues in Vehicle Stops," Luther Ganieany, at bate stamped OAG028608], "Physical contact with the person by an officer," [Laws of Search & Seizure" (2021) at bate stamped OAG028750].

Ex. 901 at the bates pages noted.

29. There is no evidence that KHP troopers fail to follow their training that consent must be knowingly, intelligently, and voluntarily made--in a "two-step" maneuver or otherwise.

30. Under KHP Policy ENF-07, entitled "CRIMINAL INTERDICTION TRAFFIC ENFORCEMENT":

KHP officers "are committed to the apprehension of criminals who use Kansas streets and highways in the furtherance of their criminal activity."

Interdiction processes are for "the pursuit, detection, and apprehension of persons engaged in criminal activity."

Ex. 905.

31. KHP interdiction is not the classic pretextual traffic stop. The purpose of the stop is to address a traffic infraction, but troopers are asked to "look past the traffic violation(s) for indications of criminal activity." In this sense, the Erich stop [discussed below] is the exception, where the trooper considered the older model RV's early morning travel something that he wanted to investigate if he observed a traffic infraction.

32. KHP trains its troopers that for them to be successful in interdiction that the troopers must "[b]e able to look past the traffic violation(s) for indications of criminal activity" and "[m]ust make high volume traffic stops." Ex. 901 at OAG28402.

33. This recognizes that generally traffic stops do not involve a motorist engaged in criminal activity. So, to increase the probability of detect and apprehend the criminals, more contacts with motorists is needed.

34. That said, the KHP troopers conducted approximately 1 million traffic stops between June 2016 and August 2021. The number of traffic stops was estimated as 200,000 or 300,000 annually. About 1000 canine sniffs were conducted in post-traffic stop detention in 6 years that Plaintiffs' expert reviewed. In sum, the best evidence is that canine sniffs during post-stop detentions account for less than ¼ of 1 percent of KHP traffic stops.

35. The KHP maintains a Professional Standards Unit ("PSU") which serves as an impartial fact-finding unit whose primary purpose is to safeguard and enhance the integrity of the agency. The unit receives and processes complaints against agency employees or procedures, ensuring employees are afforded due process, to ensure uniformity in their application, and identifying training and supervisory needs. Ex(s). 90 & 914a.

36. PSU's primary function is to investigate serious allegations of misconduct involving agency employees. PSU is also responsible for monitoring the progress of all agency complaint investigations to ensure the efficient and timely completion of reports. Ex. 90.

37. Any citizen or Patrol employee may present a complaint to PSU. Complaints may be made in person, in writing, by email, or by telephone. Information about to whom and how to make a complaint is publicly available through a general inquiry with KHP and on the KHP website at https://www.kansashighwaypatrol.org/233/Professional-Standards-Unit. However, all KHP employees are required to accept a complaint if a

supervisor is not immediately available to do so. All complaints then are forwarded to the PSU at General Headquarters in Topeka for appropriate action. Investigators contact the complainant (unless the complaint is anonymous), the accused employee, and witnesses; examine physical evidence; review reports and records; and document the facts surrounding the incident. The investigator's report is provided to the PSU commander, where it is reviewed for completeness and objectivity, and then forwarded to the assistant superintendent for review. The Superintendent ultimately reaches any conclusions about the accused employee's conduct and writes a letter to the complainant summarizing the results of the investigation. Disciplinary action is initiated when deemed appropriate, but is considered a confidential matter and is not to be disclosed to the complainant. Ex. 90.

38. Plaintiffs present evidence regarding six traffic stops where the motorists were detained for a canine sniff. The stops are

| Date | Stop/Detention | Passage of Time[1] |
|------|----------------|--------------------|
| 12/20/2017 | Plaintiffs Blaine and Samuel Shaw | 5 years, 5 months, 6 days |
| 3/9/2018 | Plaintiffs Mark Erich and Shawna Maloney | 5 years, 2 months, 17 days |
| 2/10/2019 | Plaintiff Joshua Bosire | 4 years, 3 months, 16 days |
| 5/27/2020 | Daniel Kelly | 2 years, 11 months, 29 days |
| 2/5/2021 | Suzanne Dunn | 2 years, 3 months, 21 days |
| 9/5/2022 | Curtis Martinez | 8 months, 21 days |

39. Each of the Plaintiffs' stops/detentions predate Defendant Jones becoming the KHP's Superintendent, on April 3, 2019.

40. On December 20, 2017, KHP Master Trooper Doug Schulte stopped a minivan traveling 91 miles per hour in the 75 miles per hour zone westbound on I 70. B. Shaw was driving. Schulte issued a speeding citation; B. Shaw acknowledged he was speeding and paid the fine. Samuel Shaw was a passenger. After the traffic stop was complete, Schulte detained the Shaws for a canine sniff of the minivan.

41. Schulte asserted that he had reasonable suspicion to detain the Shaws for a canine sniff of their vehicle from the following:

(1) B. Shaw did not timely pull over.
(2) B. Shaw had a criminal history for felony intent to sell narcotics.
(3) The minivan was registered to someone other than B. and Samuel Shaw and was traveling on I 70, a known corridor to drug sources in Colorado.

---

[1] As of May 26, 2023.

(4) The minivan was crammed full of stuff, with a lived-in look, suggesting the hard travel characteristic of drug traffickers.

(5) Schulte found that Samuel Shaw was acting suspiciously because he refused to look at Schulte (looking forward only).

Ex. 4.

42. Schulte did not physically interfere with Plaintiffs' departure when B. Shaw consented to a very short conversation after Schulte handed to B. Shaw and explained a ticket for speeding, returned B. Shaw's license and proof of insurance, said "have a safe trip and drive safely." Schulte started walking back to toward his patrol vehicle, but returned to side of the vehicle after seeing B. Shaw had put the van into "drive." Before fully returning to stand before the driver side front window and while separated from the van by approximately 2 feet, Schulte asked if Shaw would answer some questions. Shaw readily agreed to answer the questions. However, when Schulte asked permission to search the van, Shaw refused the request.

43. On February 8, 2023, a jury found Schulte lacked the reasonable suspicion to detain the B. Shaw for a canine sniff and, as such, the detention violated B. Shaw's Fourth Amendment rights. It found B. Shaw suffered nominal damages of $1. Doc. 438.

44. On February 10, 2019, KHP Technical Trooper Brandon McMillan stopped Joshua Bosire for driving 82 miles per hour in a 75 mile per hour zone eastbound on I 70 about 5 miles west of Hays, Kansas. Bosire was driving a rented Nissan Altima. After the traffic stop was complete, McMillan detained Bosire for additional questioning and then for a canine sniff of the Altima.

45. McMillan asserted that he possessed reasonable suspicion from the following:

(1) McMillan and another trooper smelled a marijuana odor at a Love's Travel Shop in Ellis, which they believed might be associated with a rented Altima at the Travel Shop's gas pumps.

(2) The troopers saw the Altima had a mounted camera in the back; The Altima and vehicle that the trooper thought was a rental left Love's about the same time.

(3) Then about ten minutes later, after McMillan pulled over an Altima for speeding, he confirmed it was the Altima from Love's. McMillan did not smell the marijuana odor, but thought the Altima might be "caravanning" with the other vehicle seen leaving Love's.

(4) During the traffic stop, McMillan saw the two cameras mounted in the rental car and McMillan knew drug traffickers use surveillance cameras to facilitate caravanning, discourage a law enforcement stop, and confirm a "hired" driver appropriately transports drugs or narcotic cash.

(5) The Altima was a short-term rental. McMillan knew drug traffickers frequently use short-term rentals to transport drugs or narcotic funds.

(6) Bosire did not fully roll down his window and there was a partially covered notebook in the back of the rental car that appeared to be a ledger which drug transporters use.

(7) Bosire would only say he was traveling from the West going East, which McMillan found atypical and evasive.

(8) McMillan's suspicions were heightened in questioning immediately after the traffic stop should have concluded. McMillan believed that Bosire had not honestly answered his questions about the second man at Love's and the cameras in the rental car.

Ex. 9.

46. McMillan did not ask Bosire to enter into a consensual encounter. McMillan did ask Bosire if he would permit a search of the rental car, but Bosire refused the request.

47. On April 27, 2023, McMillan lacked the reasonable suspicion to detain the Bosire for a canine sniff and, as such, the detention violated his Fourth Amendment rights. It found that Bosire suffered compensatory damages of $20,163.70 and that punitive damages against McMillan were warranted in the amount of $20,000. Doc. 438.

48. On March 9, 2018, at 5:41 a.m., KHP Master Trooper Justin Rohr stopped an east bound Winnebago Chalet on I 70, at mile marker 226, for driving on and over the [shoulder's] fog line. Mark Erich ("Erich") was driving. Erich was given a warning citation. After the traffic stop was complete, Rohr detained Erich and his passenger for a canine sniff of the Winnebago. *Id.*

49. Rohr asserts a particularized and objective basis for suspecting legal wrongdoing from the following:

(1) Walking to the vehicle after it pulled over, Rohr smelled an odor of very recently applied fresh paint or bondo at the rear of the Winnebago where spare tires are frequently mounted and where it appeared that the vehicle had been painted over with white paint to potentially conceal a hidden compartment. Rohr's partner confirmed the presence of fresh white paint or bono by touching the RV and seeing a white substance on his hands from the RV.
(2) Erich said he had recently purchased the older model Winnebago Chalet. Rohr's training and experience was hidden compartments are frequently added by smugglers to older model, recently purchased, larger vehicles to transport illegal drugs.
(3) It was early in the morning and still dark. Rohr's training and experience is that people trafficking illegal narcotics will sometimes travel early morning or late night in an attempt to avoid law enforcement because the fewer law enforcement is out.

12

(4) After inquiring about the fresh paint/bondo smell, Rohr did not find credible the driver's and passenger's denial of knowledge of the obviously recently applied paint or bondo. In particular, Rohr saw white paint on Mr. Erich's hand suggesting he had done the painting and was not being honest.

(6) Erich and his passenger wife said that they were traveling from Colorado to Alabama, which added circumstances consistent with Rohr's suspicions because Rohr believed Colorado was a source state for illegal narcotics at the time. Although this, according to Rohr, was not the sole factor in his reasonable suspicions.

50. That the RV had a Colorado temporary plate was not one of the things that led to Rohr's suspicions to detain the Winnebago. The fact the RV was registered in Colorado was also not a factor in Rohr's reasonable suspicion calculus.

51. Rohr had the required reasonable suspicion for a canine sniff of the RV.

52. The canine alerted to the odor of narcotics. The RV was searched, but the source of the odor was not located.

53. On May 27, 2020, KHP Trooper James McCord stopped an east bound rented Nissan for following another vehicle too closely on I 70, near mile marker 192. Daniel Kelly ("Kelly") was driving. Only a warning citation was provided. After the traffic stop was complete, McCord detained Kelly for a canine sniff of the rented Nissan.

54. The dash cam video does not show Kelly's non-verbal response, but Kelly apparently agreed to answer a few questions posed by McCord. However, Kelly refused to give McCord consent to search of the Nissan.

55. McCord asserts a particularized and objective basis for suspecting legal wrongdoing from the following:

(1) Kelly's extreme and persistent nervousness. Kelly's hands were trembling and he was bouncing his right leg. McCord described the expression on his face as a "nervous smile." These behaviors continued, before the detention, even after McCord told Kelly he was only receiving a warning.

(2) Kelly's criminal history. Dispatch reported that Kelly's criminal history showed multiple entries for possession of narcotics with the intend to distribute and weapons violation for having a saw-off shotgun. Kelly was 32 years old at the time.

(3) According to McCord, Kelly's explanation for his travel, in a rented vehicle, to Shawnee, Kansas from California, to transport his niece or nephew back to California, was implausible.[2]

---

[2] Kelly's travel plans were not implausible from in any objective sense. This "factor" is entitled to very little or no weight in the reasonable suspicion determination.

56. McCord had the required reasonable suspicion for a canine sniff of the Kelly's rented vehicle, exclusive of his subjective suspicion about Kelly's travel plans.

57. The canine alerted to the odor of narcotics. A search located marijuana vape pen, with a battery under the front passenger seat in the rented vehicle. Kelly said they were not his and agreed that the troopers could get rid of them.

58. On February 5, 2021, KHP Trooper Chandler Rule stopped a west bound rented Mercedes on I 70, near mile marker 340, for driving for speeding and failing to drive in right lane on 4-lane highway. Suzanne Dunn ("Dunn") was driving. Only warning citations were provided. After the traffic stop was complete, Dunn consented to a canine sniff of the rented vehicle at Rule's request.

59. Dunn knowingly, intelligently and voluntarily consented to the canine sniff. She thought she was being polite and respectful to law enforcement.

60. A canine alerted to the odor of narcotics. The rental was searched, but the source of the odor was not located.

61. Rule did not detain Dunn after the traffic stop had concluded from his suspicions. There is no evidence that he would or would not have detained her if she had refused the canine sniff. However, Rule articulated a particularized and objective basis for suspecting legal wrongdoing from the following:

    (1) Dunn's implausible travel plans. Dunn claimed to be driving across county (1,677 miles), to Denver, to pick up a van. Rule developed the one-way rental car expense was about $1,000, which he knew is substantially more than the cost to ship the van to Dunn's home in Arlington. Dunn claimed to be at high risk to Covid-19 as to why she did not fly to out to pick up the RV. However, paying for the RV's shipment would have avoided any Covid-19 exposure.
    (2) Traveling alone with inclement weather coming.
    (3) Traveling to known narcotics distribution hub (Denver).[3]

62. On September 5, 2022, KHP Lieutenant Scott Proffitt stopped an east bound Chevy which had been speeding on I 70 near mile marker 319. Curtis Martinez ("Martinez") was driving. After the traffic stop was complete, Proffitt detained Martinez for a canine sniff of the Chevy.

63. Proffitt had been west bound on I 70 when his radar indicated two east bound vehicles were speeding, the Chevy Cruze was going the fastest of the two. Proffitt could tell the driver of the Chevy saw Proffitt's patrol vehicle as did he U-turned in the median to pursue the speeding vehicles. The Chevy driven by Martinez

---

[3] It is not clear if Rule felt Dunn's level of nervousness was suspicion. But the nervousness he described and his reliance on Denver as a narcotic hub would have been entitled to little, if any, weight in the reasonable suspicion calculus.

immediately took an exit off I 70 to elude Proffitt, Exit 322. The Chevy travelled north (turning left) through a tunnel under I 70 immediately after taking the exit. This maneuver showed an intent to avoid the patrol car Martinez would have seen turning around on I 70 before Martinez took the exit. If Martinez was looking for place to relieve" himself, he would have turned south (turning right), relieved himself and traveled back onto the eastbound lanes to the highway.[4]

64. Exit 322 leads to Tall Grass road, which is a gravel, mostly one-lane road. There is no signage displaying an amenity at the exit. In fact, there are no buildings near the exit to the farming road. However, Proffitt knew a few miles to the west on I 70, where the Chevy has come from, there were several Junction City exits that had public restrooms. Proffitt also knew a sign on east bound I 70, located about a mile west of marker 319, reported a public rest stop was only a few more miles ahead after the Exit 322.

65. While up by the Chevy for the first time, after Proffitt told Martinez that the Exit 322 was not he was used to people taking, Martinez said he was looking for a bathroom. Proffitt, correctly so, believed Martinez's statement was not truthful. Martinez also denied he had been speeding. Proffitt knew Martinez was again being untruthful.

66. Also, while up by the Chevy for the first time, collecting information during the traffic stop, Martinez said the Chevy was his wife's. Martinez said his wife's name was Samantha. The insurance information Martinez showed Proffitt gave a different first and last name. Martinez said the insurance was in his mother-in-law's name. Martinez could not provide the current registration to the vehicle, he said they had just received new tags and the paperwork was at home. An old registration, Martinez provided Proffitt, showed that it was expired as of October 2021 and gave the owner's name as Samantha with a last name that was different from "Martinez." During this encounter, Proffitt saw Martinez's wallet had an image of "El Chapo," who is notorious drug cartel leader. During this first encounter, Proffitt felt that Martinez and his passenger were being aggressively argumentative and were attempting to bully or intimidate him into ending the stop.

67. Back at his patrol vehicle, Proffitt requested and received information about Martinez and the Chevy's registration. Martinez's criminal record was clear, but there was no new registration. Apparently Martinez had not been truthful about the renewal.

68. Returning to the Chevy, Proffitt returned paperwork, issued a warning for speeding and a citation for expired registration, explained the citation, and asked Martinez if he had any questions. Martinez did not have a question. Proffitt said "have a safe one," turned and walked back toward his patrol vehicle. But as Martinez started to pull away–the car moving forward a few feet–Proffitt walked back to the side of driver's side front window and, while standing a few feet away, asked "can I ask you

---

[4] Neither Martinez nor his passenger asked about relieving themselves during the detention for a dog sniff or during the search of the vehicle.

something." Martinez said yeah. Then after a few quick questions and Proffitt having stated "you guys turning off is overly suspicious," Proffitt requested consent to search the car. The consent was denied.

69. Proffitt asserts a particularized and objective basis for suspecting legal wrongdoing from the following:

(1) The Chevy immediately took an exit off I 70 to nowhere to elude Proffitt. Proffitt experience is such motorists have usually been doing something illegal.

(2) Martinez was untruthful about the reason he took the exit [there was nothing near the exit to that would lead a motorist to think there was a bathroom] and in his denial of speeding and about his speeding and the supposed new tag/registration. These untruths suggested that he was trying to hide illegal activity.

(3) Uncertainty, about Martinez's alleged relationship to the owner of the Chevy which could not be confirmed from the information provided to Proffitt. Drug traffickers frequently use non-owned vehicles.

(4) The El Chapo wallet. Proffitt's training and experience is drug traffickers will carry items showing affiliation or sympathy with notorious criminals like Joaquin "El Chapo" Guzmán.

(5) The behavior of Martinez and his passenger which was bullying and apparently intended to intimidate Proffitt suggesting they had something illegal in the vehicle and wanted to stop any investigation or his questioning that might lead him to find it.

70. A Sheriff county's canine alerted to the odor of narcotics. The Chevy was searched and a green vegetation residue in a cupholder was pin pointed as the probable source of the canine's alert.

71. In summary, the articulated suspicions for the canine sniffs presented in Plaintiffs' case are all very different.

| Articulated Suspicions | Stops |
|---|---|
| | |
| Bullying | Martinez |
| Criminal history regarding drugs | Martinez, Shaw |
| Early morning or overnight travel | Erich |
| El Chapo wallet | Martinez |
| Evasive answers regarding travel | Bosire |
| Extreme nervousness, even after told only a warning | Kelly |
| Failure to fully roll down car window | Bosire |
| Failure to promptly pullover | Shaw |
| Implausible travel | Dunn*, Kelly |
| Non-owned vehicle | Shaw |
| Older model RV | Rohr |
| Lived-in appearance | Dunn, Shaw |
| Passenger would not look at trooper and said nothing | Shaw |

| | |
|---|---|
| Possible caravanning | Bosire |
| Possible hidden compartment in area of new paint or bono | Erich |
| Possible drug ledger in vehicle | Bosire |
| Questionable relationship to vehicle owner | Martinez |
| Quick exit to elude law enforcement | Martinez |
| Smell of marijuana at rural convivence store where driver had been | Bosire |
| Surveillance cameras in rental | Bosire |
| Travel from Colorado and/or on drug corridor | Erich |
| Travel to Denver and/or on drug corridor | Dunn, Shaw |
| Unique rental | Bosire, Dunn |
| Untruthful or believed to be untruthful responses to questions | Bosire, Erich, Martinez |
| | |
| ***Colorado or other particular state license plate*** | ***NONE*** |
| ***Colorado or other particular state residency\**** | ***NONE*** |

72. No evidence was presented any KHP trooper searched a vehicle from consent provided by the vehicle's driver after a "two-step" or similar encounter.

73. No evidence was presented of a court's suppression of evidence recovered in a road-side search of a vehicle by a KHP trooper, except in Lt. Greg Jirak's deposition testimony regarding *U.S. v. United States v. Jurado-Vallejo* [misspelled in the transcript *"Gerardo Vallejo"*] (Jirak Depo, p. 127). Jirak testified that the district court's suppression, ruling predicated on the validity of consent Jirak used incorrect Spanish words to secure the consent, was overruled by the appellate court.[5]

74. No evidence was presented of an incident where a KHP trooper asserted reasonable suspicion required to extend a traffic stop was supported by (a) a driver's travel origin or destination alone; (b) a driver's state citizenship or (c) nothing more than an out-of-state license plate.

75. No evidence was presented of an incident where a KHP trooper extended a traffic stop on the basis of (a) a driver's travel origin or destination alone; (b) a driver's state citizenship or (c) nothing more than an out-of-state license plate.

76. The only evidence of a complaint made to PSU about any traffic stop was a complaint by Bosire about the February 10, 2019 stop/detention described above. PSU comprehensively investigated the complaint. The investigation's findings and PSU's recommendations were presented to Defendant Jones. Jones found that McMillan had violated KHP policy by detaining Bosire for a canine sniff. McMillan was given an hour of one-on-one training by a KHP lawyer and was required to spend a ½ day

---

[5] *See United States v. Jurado-Vallejo*, 380 F.3d 1235, 1237 (10th Cir. 2004) (remanded for findings regarding probable cause for the search from evidence of a hidden compartment).

patrolling with a lieutenant. Jones felt this adequately assured that McMillan would not repeat his policy violation.

77. Major Mitchell Clark believes that KHP employees may be reluctant to present complaints about other employees to PSU. However, no evidence was presented that KHP employees are or were aware of incidents where KHP troopers have improperly or unconstitutionally detained motorists without their voluntary consent, required reasonable suspicion or probable cause.

78. Professor Jonathan Mummolo testified to opinions that a higher percentage of out-of-state motorists are stopped by KHP troopers relative to Kansas motorists and that out-of-state drivers are disproportionately searched (subject to a dog sniff). These opinions are all a comparison of a baseline or benchmark ratio of in-state to out-of-state drivers that Mummolo expected to have been traveling on I 70, based on mobile-phone data, against KHP's data pertaining stops/detentions on the highway. To establish his baseline, Mummolo used the mobile-phone data collected by a private vendor, SafeGraph. This data concerns phone usage at business within ¼ mile of I 70, whether the businesses are directly accessible to I 70 or not. The SafeGraph data is inadmissible hearsay. Mummolo acknowledged that he was not aware of anyone who had used the mobile-phone data to form expert opinions concerning the make-up of traffic on a highway near the businesses where the mobile-phone data supposed to have been collected. This data is not the kind that statistic experts use in forming opinions on the subject of the characteristic of drivers on highways. *Cf.* Fed. R. Evid. 703. Accordingly, Mummolo's opinions, which are based on the comparison of the mobile-phone data baseline, should not have been admitted and they are not considered by this Court.

79. Furthermore, Prof. Mummolo's opinions about higher percentage of out-of-state motorists stops and detentions are not relevant to whether troopers had the required reasonable suspicions to stop and detain motorists or to whether troopers violated motorists' Fourth Amendment rights. This case does not involve a denial of equal protection claim. Plaintiffs' claim that their right to travel is abridged has been dismissed, as without legal merit.

80. However, Prof. Mummolo also conducted an "outcome" analysis. This was his only opinion which did not rely on the SafeGraph data, relying instead on review of KHP reports and digiTicket citations. He claimed that the analysis could address whether troopers applied a different level of reasonable suspicion to out-of-state motorists when the trooper's detained motorists for canine dog sniff. He concluded there was no statistically significant difference among in-state and out-of-state drivers between the rates that drugs are discovered after a canine alert. He testified this disputed a claim that troopers apply lower standard for reasonable for reasonable suspicion to out-of-state drivers.

81. Hassan Aden testified:

- KHP does not effectively train its troopers on changes or developments in the relevant constitutional matters.
- KHP's policies addressing stops, searches, seizures and arrests are insufficient.
- KHP's unity command (supervisors working the same shift and areas as supervised troopers) is less than optimal and Jones lacks awareness of data that might inform him of problematic patterns and trends.
- KHP fails to hold troopers accountable to policies and laws pertaining to search and seizures carried out by KHP troopers.

82. Aden claims that his opinions were based upon "national police practices," but these alleged practices are not published and are really Aden's opinions on best practices. Aden acknowledged may, if not most, law enforcement agencies do not follow the practices he recommends.

83. Defendant objected to Aden's opinions on the basis that they are neither reliable, nor helpful. See Fed. R. Evid. 702. After considering the matter, the Court agrees. It has not accepted any of Aden's opinions in reaching the judgment in this case.

84. Moreover, the grounds for Aden's opinions all concern past, antidotal behaviors. They are not relevant to whether Jones is or will be violating motorist's Fourth Amendment rights or whether Jones is the cause of any hypothetical violation of motorist's Fourth Amendment rights by troopers.

85. Aden was not critical of the content of KHP's training regarding the Fourth Amendment issues in this case. Aden's limited training opinion concerned only a claimed failure to immediately provide updated training on the Tenth Circuits' *Vasquez v. Lewis* decision before Defendant Jones was KHP's Superintendent. No evidence was presented of a recent decision, after *Vasquez*, that required updated training. Aden does not criticize the current training on the *Vasquez* decision.

86. Aden's supervision opinions are mostly that Jones delegates too much supervision to frontline supervisors and KHP had not collected data regarding the ground for reasonable suspicion justifying a roadside detention for a canine sniff when there has been no arrest or forfeiture.

87. Plaintiffs presented no evidence of how Jones delegation causes or contributes to present or future Fourth Amendment violations by KHP troopers. Even for a historical perspective, there was not testimony that supported a different level of Jones' involvement in day-to-day supervision would have had any effect on the six detentions referenced in the testimony. The import of changed supervision is speculative, just as it is speculative that there will be future illegal detentions based upon the using state residency and innocent-travel indicia.

88. As of September 2022, KHP collects and analyzes the data that Aden asserted should have been collected before. Ex. 905. Troopers must complete a report that reports the basis of their reasonable suspicions to detain a motorist for a canine sniff. The report

is reviewed and analyzed for compliance with the policies requiring compliance with the Constitution's Fourth Amendment and other requirements by frontline supervision, PSU and Trooper N [the Interdiction troop].

89. However, Plaintiffs presented no evidence of how the earlier practice that did not require reports when there was no arrest or forfeiture caused or contributed Fourth Amendment violations by KHP troopers. There is no evidence of trend or practice that troopers are violating their training and KHP policies which the report might discover.

90. Aden's opinion that frontline supervisors fail to review, analyze and respond if issues are observed regarding the reports provided by their subordinates about roadside detentions is based on his misunderstanding of Lt. Rohr's testimony. Rohr testified that his canine deployment reports [which generally do not list the reasonable suspicions of other troopers] were generally reviewed by and given only grammatical correction by his former supervisor. This is no evidence that Rohr's supervisor did not also evaluate the substance of the report regarding Rohr's compliance with KHP policy and training. There is no evidence that any of Rohr's canine reports showed Rohr needed correction or discipline.

91. Aden's opinion on accountable is that McMillan should have received discipline, not just corrective training. There is no evidence that McMillan or any other trooper have filed or will fail to comply with KHP policy and training because of McMillan was not brought more to account for Bosire stop/detention. Only a few individuals with the KHP even knew about Jones' response to Bosire's complaint. There is no evidence, therefore, that the response to McMillan is viewed by troopers as insufficient so as to encourage and not deter other from similar misconduct.

92. There is no evidence that troopers fail to follow their training that consent must be knowingly, intelligently, and voluntarily made--in a "two-step" maneuver or otherwise.

Conclusions of Law

*A. Plaintiffs Lack Standing*

1.      Where a case proceeds to trial, standing is evaluated on basis of evidence in the record. At this stage, a plaintiff must do more than plead standing, the plaintiff must prove it.

*Aptive Env't, LLC v. Town of Castle Rock, Colorado*, 959 F.3d 961, 973 (10th Cir. 2020), *Glover River Org. v. U.S. Dep't of Interior*, 675 F.2d 251, 254 n. 3 (10th Cir. 1982).

2.      Abstract injury is not enough to confer standing: "(t)he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Thus, a plaintiff cannot sustain a claim for prospective injunctive relief that is based on "speculative future harm." *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019). *See also Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 924 F.3d 375, 396 (7th Cir. 2019) ("Without a 'showing of any real or immediate threat that the plaintiff will be wronged again,' [ ], [plaintiff] lacked standing to request, and the district court lacked jurisdiction to award, the declaratory judgment and permanent injunction").

3.      Plaintiffs are unable to establish standing to pursue injunctive relief because they cannot show it is likely that they will have another encounter with a KHP trooper ***that results in an unconstitutional detention*** because of Jones' conduct.

4.      The reasoning in *Allee v. Medrano*, 416 U.S. 802, 815-16 (1974), *Rizzo v. Goode*, 423 U.S. 362 (1976), and *City of Los Angles v. Lyons,* 461 U.S. 95, 97-98 (1983), is controlling. Plaintiffs have abandoned their claims that Jones directs or requires constitutionally conducted post-traffic stop detentions. There is no evidence of widespread police misconduct, and certainly less than the pattern of misconduct that the Supreme Court found was required to provide standing in *Allee*, *Rizzo* and *Lyons*. Furthermore, there is no evidence of a prevailing and persistent pattern that troopers systematically detain people without reasonable suspicion or voluntary consent because of a policy or custom attributable to Jones.[6]

5.      In *Allee v. Medrano*, 416 U.S. 802, 815-16 (1974), the Supreme Court upheld a permanent injunction restraining further unconstitutional conduct by various Texas state law

---

[6] In fact, Plaintiffs now assert that the "policy or custom" analysis is inapplicable to their claim for equitable relief.

enforcement officials who had unlawfully threatened, detained, confined, and physically assaulted union leaders engaged in organizing efforts. *Id*. at 804-05. In affirming the district court's injunction, the Supreme Court found that the constitutional violations "were not a series of isolated incidents but a prevailing pattern" of police misconduct. *Id*. at 809. The Court also stated: Isolated incidents of police misconduct under valid statutes would not, of course, be cause for the exercise of a federal court's equitable powers. But …. [w]here, as here, there is a persistent pattern of police misconduct, injunctive relief is appropriate. *Id*., 416 U.S. at 815.

6.      *Rizzo v. Goode*, 423 U.S. 362 (1976), expanded upon the isolated incident/persistent pattern distinction. In *Rizzo*, equitable relief was granted by the district court in an effort to halt instances of police brutality directed at minority citizens. The injunction issued by the district court ordered police officials to submit for approval a comprehensive program for dealing with civilian complaints alleging police misconduct. *Id.* at 365. The Supreme Court held that 16 to 20 constitutional violations in a year's time, by only a small percentage of the police, did not warrant injunctive relief. *Id.* at 367-69. While not resting on its holding on lack of case or controversy, the Court's reasoning expressed doubt that a pattern existed for standing when the defendant was not directly "casually linked" to it, *i.e.*, the officers engaged in the complained of police brutality, not the governmental executive defendants. *Id.* at 375. The same concerns are present in our case, which explains why 5 or 6 allegedly illegal detentions by troopers do not support Plaintiffs' standing to sue Jones.

7.      Plaintiffs' claims arise from three stops and detentions that happened between approximately 4 and 5 ½ years ago. [Shaw, 12/20/2017; Erich, 3/9/2018; Bosire, 2/10/2019]. Jones had no direct involvement with the stops. Jones was not even the KHP superintendent

22

when the three stops took place. There is no pattern in these cases. Rather, the articulated grounds for the alleged reasonable suspicion in each case was materially different.

8.      Additionally, Defendant disputes Plaintiffs' claim that the trooper in the Erich stop lacked the required reasonable suspicion to support a detain for a canine sniff. The Court agrees with the Defendant that there was reasonable suspicion of criminal activity.[7]

9.      Plaintiffs also presented testimony regard three other stops/detentions. The parties debate whether the Kelly and Martinez detentions were supported by reasonable suspicion. The Court finds the KHP troopers possessed the required reasonable suspicion to detain Kelly and

---

[7] The most persuasive facts are that the trooper was investigating the likelihood the RV had a hidden compartment from the age of the RV after smelling and actually locating fresh white paint or bondo on the back of the RV, where a hidden compartment would be located, and the driver had white paint on his hand, but denied painting the RV or knowledge of recent application of paint or bondo. *Cf., United States v. Toro-Pelaez*, 893 F. Supp. 963, 966 (D. Kan. 1995), *aff'd*, 107 F.3d 819 (10th Cir. 1997) (existence of a hidden compartment indicated the presence of drugs or drug-related currency providing probable cause for a search); *United States v. Stephenson,* 452 F.3d 1173, 1177-78 (10th Cir. 2006) (suspicion of hidden compartment supported reasonable suspicion).

Martinez for a canine sniff in each respective case.[8] However, the articulated grounds for the alleged reasonable suspicion in each case was materially different from each other and the Plaintiffs' stops. Dunn voluntarily consented to the detention for a canine sniff. Again, Jones had no direct involvement with the stop.

      10.    Together, the Plaintiffs' detentions and the supposed additional 3 illegal detentions, each by different troopers, falls far short of the nineteen constitutional violations that *Rizzo* held was insufficient to support more than speculative future harm caused by Jones.

---

[8] Kelly is a close case. However, as a general rule courts must "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) (*quoting United States v. Zubia–Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001). The trooper observed excessive nervousness, which persisted even after Kelly told he was only getting a warning, *e.g., United States v. Contreras*, 506 F.3d 1031, 1036 (10th Cir.2007) (excessive nervousness added to reasonable suspicion calculous); *United States v. Komsonekeo*, No. 20-6064, 2021 WL 4496465, at *3 (10th Cir. Oct. 1, 2021); *United States v. Williams*, 271 F.3d 1262, 1269 (10th Cir. 2001) (same and the nervousness did not dissipate); and Kelly, at age 32, had multiple drug arrests/convictions for possession of narcotics with the intent to sell and a history of possessing an illegal sawed-off shotgun, *United States v. White*, 584 F.3d 935, 951 (10th Cir. 2009) (with other factors, criminal history contributes powerfully to the reasonable suspicion calculus).

Martinez is not a close case. Martinez attempted to evade the trooper, and lied about it. *See e.g., Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (flight allows officers to stop and investigate); *United States v. Ballance*, No. 20-3141, 2022 WL 108330, at *6 (10th Cir. Jan. 12, 2022), *cert. denied*, 213 L. Ed. 2d 1016, 142 S. Ct. 2778 (2022) (same); *United States v. Madrid*, 713 F.3d 1251, 1257 (10th Cir. 2013) (same). *See also United States v. McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996) (untruthful answer to question provided further articulable suspicion); *United States v. Carhee*, 27 F.3d 1493, 1497-98 (10th Cir.1994) (same); *United States v. Moore*, 22 F.3d 241, 243 (10th Cir.), *cert. denied*, 513 U.S. 891 (1994) (same); *United States v. Beltran*, No. 17-40105, 2018 WL 5720247, at *8 (D. Kan. Nov. 1, 2018) (same). His explanation for why he was driving some else's vehicle and aggressive behavior (including an unsupported denial that he had been speeding) just added to the trooper's reasonable suspicions that Martinez was involved in some illegal activity. Then, Martinez possessed a wallet that appeared to aggrandize drug smuggling, by the picture of a famous cartel kingpin. *See e.g., United States v. Lopez-Gutierrez*, 334 F. App'x 880, 881–82 (10th Cir. 2009) (contributing to reasonable suspicion, the officer recognized the images of Jesus Malverde, who is considered a patron saint by some drug traffickers, in a picture on the dashboard). Lt. Proffitt explained how these circumstances, together, were reasonable suspicions of illegal activity based on Proffitt's extensive experience.

11.     In summary, Plaintiffs have failed to show a real and immediate threat of future harm in their Fourth Amendment claim. As a result, the evidence in this case insufficient to avoid application of the rule in *Lyon*, which in turn follows the instructions provided in *Rizzo,* and Plaintiffs claim against Jones must be dismissed.[9]

*The Court Will Not Enter the Demanded Equitable Relief*

12.     Injunctive relief is not proper even assuming (a) Plaintiffs possess the required standing, (b) show their Fourth Amendment rights will be abridged in the future by a KHP trooper, and (c) Jones' actions or inactions culpably cause the future Fourth Amendment violation(s). First, the plaintiffs have adequate remedies at law so that their alleged harm is not irreparable absent an injunction. Second, the threatened injury from the demanded injunctive relief does not outweigh the harm that the injunction is likely to cause from adverse effects on public interest through interference with the principles and operations of federalism, risks from lack of comity afforded to other courts, and unbounded—or at least unreasonable—burdens in enforcement of the demanded injunctive relief. Third, Plaintiffs' injunction demands[10] are impermissibly vague under Rule 65's standards.

13.     There is no dispute that Federal district courts have the power to order injunctive relief when equity so requires. *See Signature Props. Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1268 (10th Cir. 2002). Yet, guiding this discretion, the Supreme Court has stated that courts must apply the "traditional four-factor test" which governs the award of permanent injunctive relief. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 394 (2006). Courts consider:

---

[9] It is worthy of note, according to the data that Plaintiffs' expert collected, in a similar approximately 5-year period of time more than a million citations were issued to motorists. Less than 2,000 stops resulted in canine sniffs during the period, according to the expert's data.

[10] Compare Pretrial Order, Doc. 290, at 46-48 (setting out Plaintiffs' demanded injunction relief) with Plaintiffs' response to Show Cause Order, Doc. 358, at 12.

"(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (*quoting Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir.2007)). "[A]ny modified test which relaxes one of the prongs ... and thus deviates from the standard test is impermissible." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). Moreover, "caution is especially appropriate" when "the type of injunction sought is mandatory rather than prohibitory." *Signature Properties Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1269 (10th Cir. 2002).

14.     Furthermore, there are constrains against injunctive relief in Fed. R. Civ. P., Rule 65. That rule requires that an injunction is specific in "its terms" and "describe[d] in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." *Id.* (d)(1) (bracket added). *See also Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). *See e.g., Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 668 & n. 5 (10th Cir.1990) (cited and quoted in Monreal, 367 F.3d at 1236) ("[G]enerally, injunctions simply requiring the defendant to obey the law are too vague [to satisfy Rule 65]") (brackets original) (striking injunction prohibiting defendants "from discriminating on the basis of race, color or ethnicity in the operation of the school system" and directing defendants "to use their expertise and resources to comply with the constitutional requirement of equal education opportunity for all who are entitled to the benefits of public education in Denver, Colorado" was too vague).

15.     The Tenth Circuit does not deem harm "irreparable" unless a petitioner can show "a significant risk that he or she will experience harm that cannot be compensated after the fact

by money damages." *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (*quoting RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)).

16.      There is an adequate remedy at law for an illegal road side detention by a trooper under 42 U.S.C. § 1983, the Kansas Tort Claims Act, and Kansas common law.[11] Further, the exclusionary rule provides a remedy against illegal searches and seizures. The rule is fashioned specifically in the criminal law context to address asserted harm to the accused.

17.      Plaintiffs argue § 1983 does not provide an adequate remedy at law. They say that the Shaw verdict shows this. Just the opposite. The jury's verdict allowed nominal damages, the damages from the Fourth Amendment violation that Shaw proved. He received the remedy to which he is entitled. Plaintiffs assert that the rights of others may be violated and that these hypothetical other victims will not sue because they don't know that they have that remedy. This speculation does not make the legal remedy under §1983 any less available. Furthermore, the rights of "others" are not before the Court in Plaintiffs' demand for injunction. True, Plaintiffs want an injunction that would impact KHP's practices to extend beyond Plaintiffs. But their standing and this suit is limited to Plaintiffs' alleged right to an injunction. The Plaintiffs have pursued their own § 1983 claims.

18.      Plaintiffs also argue violation of any constitutional right inherently creates irreparable harm. This argument paints with too wide a brush. While some federal circuits have held irreparable injury should be presumed in constitutional cases, Prof. Anthony DiSarro shows such a blanket rule is poorly founded and contrary to modern Supreme Court jurisprudence on the subject. See Anthony DiSarro, "A Farewell to Harms: Against Presuming Irreparable Injury

---

[11] *See also Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) (describing the elements of supervisory liability for damages under 42 U.S.C. § 1983).

in Constitutional Litigation," 35 *Harv. J.L. & Pub. Pol'y* 743, 772-74 (2012). *See also Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) ("The court must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm (unless such a 'departure from the long tradition of equity practice' was intended by Congress). *eBay*, 547 U.S. at 391, 393-94 [ ]. Instead, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay*, 547 U.S. at 391 [ ]…") (parenthetical in quote).

19.     No authority has been presented that the Tenth Circuit has adopted a presumptive irreparable harm approach outside of the context of restraints on constitutionally protected speech. *See e.g., Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005) ("We therefore assume that plaintiffs have suffered irreparable injury when a government deprives plaintiffs of their commercial speech rights").[12]

20.     *Floyd v. U.S.*, 860 F.2d 999 (10th Cir. 1988), does offer insight onto our Circuit's view on whether violation of the Fourth Amendment is inherently irreparable. While addressing a claim for return of allegedly illegal seized property[13], the court overruled district court's holding that irreparable harm was not an element of the plaintiff's proof because it was presumed, and wrote:

> While we express no opinion regarding this issue on remand, we offer guidance on the proper characterization of irreparable harm. In rejecting irreparable harm as a required element of Rule 41(e) jurisdiction, the trial court cited a case indicating that "any deliberate violation of the fourth amendment is constitutionally

---

[12] Wright and Miller appears to distinguish between harm from violations the right to free speech or freedom of religion and other constitutional violations, citing eBay. *See* Wright & Miller, 11A *Fed. Prac. & Proc. Civ.* § 2948.1 (3d ed.)

[13] *See* Fed.R.Crim.P. 41(e).

irreparable." *Floyd*, 677 F.Supp. at 1087 (*citing In re Application of First United Fin. Corp.*, 620 F.Supp. 1450, 1452 (E.D.N.Y.1985)). We cannot approve of the application of this statement to the instant case.

*Id.* at 1005. The court reasoned: "it cannot be said that every individual whose fourth amendment rights are violated suffers irreparable harm such that Rule 41(e)'s remedial provisions are triggered." *Id.* at 1006.[14]

21.    *Bannister v. Bd of County Comm'rs.*, 829 F. Supp. 1249, 1252 (D. Kan. 1993), is the case that Plaintiffs cite from our Circuit that appears to hold irreparable harm is presumed by a violation of the Fourth Amendment. The decision is not controlling here and predates *eBay*.[15] Furthermore, the alleged employee drug testing policy presented a different kind of violation to the Fourth Amendment than that allegedly present here. The defendant's testing policy compelled its employees to forfeit rights or lose their jobs. It was not a case about a subordinate's violation of another's Fourth Amendment rights. The Hobson's choice in *Bannister* is arguably irreparable without resort to a presumption.

22.    Finally, it is very noteworthy that *O'Shea v. Littleton*, 414 U.S. 488, 490 (1974), involved claims of alleged patterns and practices of conduct in the administration of the criminal justice which were said to have deprived the plaintiffs of rights secured by the First, Sixth, Eighth, Thirteenth, and Fourteenth Amendments. Yet, *O'Shea* observed that injunctive relief is not granted where there "is adequate remedy at law and [the plaintiff] will not suffer irreparable

---

[14] *See also Tyler v. Russel*, 410 F.2d 490, 492 (10th Cir. 1969) (pre-Younger decision refusing to enjoin pending state criminal prosecution despite defendant's claim that prosecution violated Fourth Amendment, noting that "[n]o great and irreparable injury results to him which would not result to any other person charged with the same crime").

[15] In addition to applying a presumption of irreparable harm, the court applied a "none of the [four] factors, taken individually, is dispositive" test rejected in eBay.

injury if denied equitable relief." *Id.* at 499. There is no hint in the Court's discussion that the requirement was satisfied simply by the fact constitutional violations was asserted.

23.     In summary, the Court will not exercise its discretion to grant injunctive relief because Plaintiffs' claims do not establish irreparable harm unless the demanded injunction is issued.

24.     Moreover, it is not for the Court to author an injunction whole cloth. The harm and adverse effect of the demanded injunction must be measured by what Plaintiffs have submitted as their requested relief.

25.     As in *O'Shea v. Littleton*, Plaintiffs do not seek to strike down a single state statute, either on its face or as applied; nor do they seek to enjoin prosecutions that might be brought under a challenged criminal law. 414 U.S. at 501. Rather, they seek a multipart injunction supposedly aimed at controlling or preventing the occurrence of specific events involving any number of troopers that might take place in the course of future traffic stops.

26.     An injunction against acts which might occur in future, compliance and enforcement will be before the Court where there is a charge that the injunction has been disobeyed. When illegal contraband is found during one of these traffic stops, the injunction seems very much like "an ongoing federal audit" of state criminal proceedings, which would indirectly accomplish the kind of interference that *Younger v. Harris, supra*, and related cases sought to prevent," which *O'Shea* held was improper. *Id*. The injury is to federalism and impact from refused comity to other courts, which balances against entry of such an injunction.

27.     Even when criminal proceedings are not involved, the demanded injunction is too intrusive and is unworkable. For the most part, the originally demanded injunction leaves unstated exactly how Jones must train or supervise troopers. It has no objective boundary for

Jones to know that he has complied or failed to comply with the injunction, thereby imposing expense, risk and duties on the KHP's operations.

28.     The demanded injunction insists that the federal courts should direct the details of Jones' executive functions. Plaintiffs then demand continuous supervision by a court appointed "monitor" effectively to perform Jones' duties. Ultimately, the individual cases will come before the Court, for enforcement of its injunction, whenever a claim is made that an individual stop or detention lacked reasonable suspicion (by the "monitor" or otherwise). And then, the Court's judgment is placed potentially in conflict with the judgment of state or other federal courts regarding the illegality of the stop/detention. Moreover, the obvious burden on the Court's resources argues against entry of the demanded injunction in this case.

29.     *Rizzo v. Goode,* 423 U.S. 362 (1976), is against instructive, if not outright controlling. After raising, but not resting the holding on standing, the Court considered whether the district court could have granted an injunction that required the defendant city and its police executives to adopt a comprehensive program that revised policies and practices, including policies for investigating and resolving civilian complaints, in order to prevent or minimize future police brutality, which the district court found was likely to continue without the revised policies and practices. *Id.* at 368-69. The district court required the parties to jointly draft the changes and submit for its approval and order. *Id.* The district court found the changes that it approved and ordered were consistent with generally recognized law enforcement minimum standards. *Id.* at 370. However, the Supreme Court found injecting significantly revised police procedures was a limitation on the defendants' latitude in the dispatch of its internal affairs. *Id.* at 608. This, it concluded, impermissibly encroached on principles of federalism, reasoning Congress did not intend that § 1983 would allow an injunction by a federal court against an

31

executive of "state or local" government where there was no affirmative link between the

unconstitutional practices and the governmental executives. *Id.*

30.     Really, for the reasons stated in *Rizzo* and *O'Shea*, the demanded injunction is not

proper.[16] The Court will not grant the demanded injunction based on facts alleged.

31.     Plaintiffs appear to acknowledge that the injunction they demanded in the final

pretrial order is improper. They demand instead an injunction:

> •     KHP Superintendent is hereby enjoined from continuing his practice of permitting
> KHP troopers to prolong detentions of drivers without reasonable suspicion of criminal
> activity, in violation of the Fourth Amendment;

> •     KHP Superintendent is hereby enjoined from his practice of targeting out-of-state
> motorists for roadside detentions without adequate reasonable suspicion;

> •     The parties are ordered to confer regarding any additional operational changes
> that must be made to KHP practices to effectuate the two terms of the injunction listed
> above, and submit those proposals to the Court.

Doc. 358 at 12.

32.     Fed. R. Civ. Pro., Rule 65(d)(1) rule requires that an injunction be specific in "its

terms" and "describe in reasonable detail--and not by referring to the complaint or other

document--the act or acts restrained or required." None of Plaintiffs' bullet points come close to

---

[16] Plaintiffs claim that *Floyd v. City of New York*, 959 F. Supp. 2d 540, 658, 667 (S.D.N.Y. 2013), supports an injunction may be entered in this case despite the problems with entry of the equitable relief identified in *Rizzo* and *O'Shea.* There are many features about *Floyd* that make it unpersuasive and that distinguish it from this case. However, the most important to this discussion is that the district court understood that "[b]ecause vicarious liability is inconsistent with section 1983's causation requirement," "the 'official policy' requirement was intended to distinguish acts of the municipality from acts of municipal employees, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible." *Floyd v. City of New York*, 813 F. Supp. 2d 417 (S.D.N.Y. 2011) (*quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988)). Judge Shira Scheindlin found injunctive relief was appropriate only after finding unconstitutional municipal conduct. This starkly contrasts with the claimed basis of injunction in *Rizzo* and here that is premised on alleged failure to prevent employees allegedly continued unconstitutional conduct.

satisfying this basic requirement. The first two are just directing Jones to obey the law; thus, they are too vague. *See also Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). The third is no injunction at all. Furthermore, the demanded amended injunction suffers from the same problems address above about the originally demanded injunction.

33.     The fate of Plaintiffs' request for declaratory relief should be no different than their claim for an injunction. In *Eccles v. Peoples Bank of Lakewood Village, Cal.*, 333 U.S. 426 (1948), the Supreme Court said "declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Id.* at 431. In that case, the Supreme Court required a showing of the equitable prerequisite irreparable harm in order to obtain Declaratory Judgment. *Id*. at 432-32. More specific to Jones, who is sued in his official capacity only, "[t]he *Ex parte Young* doctrine holds that the Eleventh Amendment generally does not stand as a bar to suits in which a party seeks only prospective equitable relief against a state official." *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1260 (2002) (emphasis added).

34.     In *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962), the Court observed that "the Declaratory Judgment Act was an authorization, not a command." The act gives the federal courts competence to make a declaration of rights; it did not impose a duty to do so. *Id*.

35.     Any declaratory judgment must go to future conduct only.[17] Yet, Plaintiffs have offered no justification for a declaration that will tell Jones only to comply with the law. They have provided no support that a declaration would be appropriate given the available remedies at

---

[17] This incorporates the Eleventh Amendment's limitation on official capacity suits. *See Green v. Mansour*, 474 U.S. 64, 68-69 (1985).

law. Further, they do not explain how a declaratory judgment will not potentially interfere or possibly conflict with other courts' adjudications—and, if not, why a declaratory judgment is needed.

36.     For declaratory relief to be available to Plaintiffs, they must be entitled to appropriate prospective injunctive relief–which they are not. *See Robledo-Valdez v. Dick*, No. 16-CV-00192-MSK-KLM, 2017 WL 8942563, at *4 (D. Colo. Feb. 27, 2017), report and recommendation adopted in part, rejected in part, No. 16-CV-00192-MSK-KLM, 2017 WL 1190560 (D. Colo. Mar. 31, 2017). This is because the Eleventh Amendment bars federal court from ordering notice or declaratory relief in a suit against the state "unless it is ancillary to a judgment awarding prospective injunctive relief." *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir.1995) (*citing Green v. Mansour*, 474 U.S. 64, 70–74 (1985)). *Accord, Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998).

37.     Therefore, even if Plaintiffs possessed the required standing, judgment is proper against Plaintiffs' injunction and declaratory claims.

> *Plaintiffs have not proved Defendant is violating or is certain to violate their Fourth Amendment rights.*

38.     There are two overarching elements of a § 1983 claim. A deprivation of a federal right; and Defendant is a "person" who deprived the plaintiff of that right acting under color of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988).

39.     Liability under §1983 does not exist in a vacuum. Plaintiffs must prove a present or imminent violation of federal law, here the Fourth Amendment of the Constitution. *Crowson v. Washington Cty. Utah*, 983 F.3d 1166, 1187 (10th Cir. 2020). For example, in an analogous situation, when a § 1983 plaintiff pursues a claim of supervisory liability, he must show the subordinate violated his constitutional rights—a supervisor cannot be liable if the subordinate did

not commit a violation. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (stating that the causation element of the affirmative-link test requires a plaintiff to show "that the defendant's alleged action(s) caused the constitutional violation" committed by a subordinate, suggesting that an underlying constitutional violation is required).

40.     Once again, *Rizzo* is instructive. In *Rizzo*, like here, the defendant government officials did not directly violate anyone's rights. Rather, the claim was that they permitted or did not prevent the police brutality. 423 U.S. at 371. This is very much like Plaintiffs' claim that Jones fails to ensure his troopers comply with the Fourth Amendment. Articulating how the plaintiffs had failed in their proof, *Rizzo* explained that to succeed the plaintiffs needed to show that the police misconduct flowed from a policy, plan, or a pervasive pattern. Further, this pattern, plan or policy had to be causally linked to the defendants named in the action. *Id.* at 371. More specifically, the Court stated that the statistics, which showed arguably 19 past incidents of unlawful conduct by police officers, and even the district court's finding that the conduct was not "rare" or "isolated incidents," *id*. at 368, failed to establish "common thread" "flowing from a deliberate plan" by government officials, *id*. at 375. Without this, the Court concluded there was no basis to grant an injunction against the government officials under § 1983.

41.     *Lewis v. Hyland*, 554 F.2d 93, 98 (3d Cir. 1977), summarized Rizzo ruling as follows:

> *Rizzo's* § 1983 discussion, like its "standing" discussion, was aimed at the failure of plaintiffs to prove the existence of an unconstitutional policy or plan adopted and enforced by the official defendants. Throughout, the Court emphasized the complete absence of any causal link between the individual police officers' conduct and the responsible authorities. Mere invocation of the words "pattern" or "plan" did not suffice without this causal link. Nor was it sufficient in *Rizzo* to have proved 16 to 20 incidents "of constitutional dimension" where the number of police-citizen contacts was many times greater.

*Rizzo's* focus was on the absence of any evidence (beyond what was dismissed as "(t)he District Court's unadorned finding of a statistical pattern") of participation by the named defendants in a plan or scheme to suppress constitutional rights. Such a plan, once proved, could be enjoined in federal court. *Allee v. Medrano*, 416 U.S. 802, 815-16 [ ] (1974); *Hague v. CIO*, 307 U.S. 496, [ ] (1939); *Lankford v. Gelston*, 364 F.2d 197, 202 (4th Cir. 1966) (*en banc*) (enjoining the "effectuation of a plan conceived by high ranking (police) officials").

The *Rizzo* Court refused to infer the existence of a plan of concerted action from the facts before it. A mere "failure to act (by responsible authorities) in the face of a statistical pattern" was found to provide no basis for injunctive relief.

42.     Then, regarding the deprivation of a federal right, to determine the elements of a constitutional claim under § 1983, courts must first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with the values and purposes of the constitutional right at issue. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022).

43.     This official capacity suit against KHP Superintendent Jones is the equivalent to suing the state itself. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against Pennsylvania Auditor General); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (suit against Commissioner of the Kentucky State Police). The state is not vicariously liable, under 42 U.S.C. § 1983, for the "unconstitutional conduct of [ ] subordinates." *Carr v. El Paso Cty., Colorado*, 757 F. App'x 651, 655 (10th Cir. 2018) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).[18]

44.     Plaintiffs say that they only need to show that a causal nexus between Jones's conduct—specifically his failure as the head of the agency to ensure his troopers are complying with the Constitution—and continuing constitutional violations occurring in the field under his watch, citing the Court's ruling regarding a motion in limine. *See* Doc. #466 at 3. The nexus

---

[18] "Based on the rules our precedents establish, respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677.

language is a product of the requirement in *Ex parte Young*, 209 U.S. 123, 157 (1908), "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer *must have some connection*" with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." Our Circuit has called this "some connection" requirement a "nexus," *e.g., Peterson v. Martinez*, 707 F.3d 1197, 1206 (2013), where defendants are not required to have a "special connection," but only "some connection" to the unconstitutional act or conduct. "Rather, state officials must have a particular duty to 'enforce' the statute in question [or we contend here a challenged policy or custom] and a demonstrated willingness to exercise that duty." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (2007).

45.     This "nexus" requirement cannot be conflated to state the elements of a § 1983 claim against Defendant Jones. Back to § 1983, as there is no vicarious liability, the Court must find a required state-of-mind is established. Our Circuit's law shows the deliberate indifference state-of-mind is required to establish municipal liability for an employee's unconstitutional actions. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences," *quoting Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). There is no

logical reason that state officials should be held to a lesser or different state-of-mind.[19]

46.     Therefore, Plaintiffs must show both an ongoing denial of their Fourth Amendment rights and (1) "an official policy or custom, (2) causation, and (3) deliberate indifference" flowing from the fact that Jones office is not vicariously liability under § 1983. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020). Important here, these "policy or custom" requirements apply to a demand for prospective relief, such as an injunction or a declaratory judgment. *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 31 (2010).

47.     Plaintiffs argue KHP troopers are violating Fourth Amendment rights in two categories: (1) Troopers detain individuals "in part based on innocent travel plans," citing *Vasquez v. Lewis*,[20] Pl. Trial Brief, Doc. 484, at 2, and (2) employ a "Two-Step" maneuver, *id.* at 5.

48.     In neither category has Plaintiffs shown an on-going (or reasonably certain future) Fourth Amendment violation by Jones or anyone.

49.     "Reasonable suspicion" is "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18

---

[19] The Supreme Court, in *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (a suit against the Pennsylvania Auditor General), stated: "In *Kentucky v. Graham*, [a suit against the Commissioner of the Kentucky State Police] … We emphasized that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.*, at 165 [ ] (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 [ ] (1978)). Suits against state officials in their official capacity therefore should be treated as suits against the State. 473 U.S., at 166 [ ]. … ***Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." Graham, supra, at 166, [ ] (quoting Monell, supra, 436 U.S., at 694)." Id. at*** 25 (emphasis supplied).

[20] Plaintiffs include an assertion that Trooper have asserted reasonable suspicion in part based out-of-state license plates and residence. Doc. 484, at 5.

(1981). The inquiry depends on "the totality of the circumstances." *Navarette v. California*, 572 U.S. 393, 397 (2014). The law requires looking at each nuance of an encounter as part of a larger mosaic to determine whether the "whole picture" suggests that criminal behavior may be afoot. *Cortez*, 449 U.S. at 418. The emphasis is on the "whole picture," rejects a "divide-and-conquer analysis" of a situation's relevant circumstances. *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (found reasonable suspicion in part by defendant's use of a "little-traveled route used by smugglers," *id.* at 277) "[B]ecause the mosaic which is analyzed for a reasonable-suspicion … is multi-faceted, 'one determination will seldom be a useful 'precedent' for another'"; the "exception" being when precedent is "so alike," without "any substantial basis for distinc[tion]," "remarkably similar." *Ornelas v. United States*, 517 U.S. 690, 698 (1996). Furthermore, the analysis is an objective one. An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." *Brigham City v. Stuart*, 547 U.S. 398, 404-05 (2006). The officer's subjective motivation is irrelevant. *Id.; see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers").

50.     Reasonable suspicion does not require an officer to rule out the possibility of innocent conduct. *United States v. Deluca*, No. 20-8075, 2022 WL 3451394, at *3 (10th Cir. Aug. 18, 2022). "[R]easonable suspicion may exist even if it is more likely than not that the individual is not involved in any illegality." *Donahue v. Wihongi*, 948 F.3d 1177, 1188 (10th Cir. 2020).

51.     In *Arvizu*, 534 U.S. 266 (2002), the Supreme Court rejected the lower court's analysis that gave no weight to observations which were "readily susceptible to an innocent

explanation" and that attempted to "clearly delimit the extent to which certain factors may be considered by law enforcement officers in making stops." The Court approved: "that factors which by themselves were 'quite consistent with innocent travel' [may] collectively amount[ ] to reasonable suspicion." *Id.* at 274-75 (*citing United States v. Sokolow*, 490 U.S. 1, 9 (1989)).[21] The Court reasoned: "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* at 273. Thus,

> When finally weighing the totality of the circumstances, we must be careful to "tak[e] into account an officer's reasonable inferences based on training, experience, and common sense," *Rice*, 483 F.3d at 1083 (emphasis added), and to that extent "we look at the objective facts, not the officer's state of mind" when "measuring the actions of a police officer under the Fourth Amendment," *United States v. Neff*, 300 F.3d 1217, 1222 (10th Cir.2002). In the end, reasonable suspicion must meet only a "minimum level of objective justification." *Garcia*, 751 F.3d at 1143 (*quoting* Rice, 483 F.3d at 1083) (internal quotation marks omitted). This level "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 [ ] (2002).

*United States v. Fager*, 811 F.3d 381, 386 (10th Cir. 2016).

52.     In *United States v. Zambrano*, 76 Fed.Appx. 848, 2003 WL 21694590 (10th Cir. 2003) (unpub.), the Circuit acknowledged sometimes motorists' behaviors, which are claimed suspicious when described broadly, seems contradictory. But the proper analysis is about whether the behaviors law enforcement sees and interprets combine, in the totality of the circumstances, to show reasonable suspicion. The Court said:

---

[21] Plaintiffs have incorrectly argued that $0 + 0 + 0$ does not equal reasonable suspicion. However, "[r]easonable suspicion may exist even if each of the factors alone is susceptible of innocent explanation." *United States v. Cervine*, 347 F.3d 865, 871 (10th Cir.2003). The *Vasquez* dissent accused the majority to using the "$0 + 0 + 0$ cannot = reasonable suspicion" to employ a "divide-and-conquer analysis" that is repudiated in *Arvizu. See Vasquez*, 834 F.3d at 1140. The majority did not dispute that the "$0 + 0 + 0$" approach was improper. Rather, it stated "[o]fficers [must] explain how these factors, taken together, indicate suspicious behavior." Id., 834 F.3d at 1137 n. 2.

Indeed, the behavior descriptions sometime appear contradictory from case to case. An officer's suspicion is aroused: when a subject looks at him carefully or refuses to look at him; when a subject drives exactly at the speed limit or drives too slowly; when a subject appears too nervous or too nonchalant. But we recognize the dynamic that well trained and experienced officers bring to the process, and hence, require that their suspicions be reasonable and articulable, not necessarily universal or profound.

76 Fed.Appx. at 851, n. 3.

53.     Therefore, because the Fourth Amendment concerns objective reasonableness under the totality of the circumstances, an officer's "[c]onsideration of [ ] unpersuasive factors does not negate the otherwise valid bases for his objectively reasonable suspicion." *United States v. Lopez*, No. 5:21-CR-40026-TC, 2021 WL 5279923, at *9 (D. Kan. Nov. 12, 2021). *E.g. United States v. Berg*, 956 F.3d 1213, 1219 (10th Cir.), *cert. denied sub nom. Berg v. United States*, 2020 WL 6037395 (U.S. Oct. 13, 2020) (finding reasonable suspicion, while noting traveling at night along a known drug corridor, using a slightly indirect route, was too innocuous to support reasonable suspicion under the fact of the case); *United States v. Santos*, 403 F.3d 1120, 1133 (10th Cir. 2005) (finding reasonable suspicion while concluding some offered factors were "pure makeweights").

54.     Moreover, circumstances involving the motorist's travel frequently plays a recognized factor in law enforcement's reasonable suspicions. The Circuit's cases where the motorist's travel combined with other circumstances to establish reasonable suspicion to detain a motorist after the traffic stop concluded are ubiquitous. *E.g., United States v. Mercado-Gracia*, 989 F.3d at 839; *United States v. Torres*, 786 Fed. Appx. 726 (10th Cir., Aug. 23, 2019) (unpublished); *United States v. Ma*, 254 F. Appx. 752, 756 (10th Cir. 2007) (unpublished); *United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001) (place of departure or destination was factor). *See also United States v. Mendoza*, 817 F.3d 695, 700 (10th Cir. 2016);

41

*United States v. Karam*, 496 F.3d 1157, 1165-66 (10th Cir. 2007); *United States v. Pettit*, 785 F.3d 1374, 1381 (10th Cir. 2015); *United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011); *United States v. Santos*, 403 F.3d 1120, 1130-32 (10th Cir. 2005); *United States v. Kopp*, 45 F.3d 1450, 1453-54 (10th Cir. 1995) (implausible travel plans were factors). *See also United States v. Orozco-Rivas*, 810 F. Appx. 660, 667 (10th Cir. 2020) (unpublished); *United States v. Torres*, 786 F. Appx. 726, 738 (10th Cir. 2019) (unpublished); *United States v. Sanchez-Valderuten*, 11 F.3d 985, 989 (10th Cir. 1993) (failure to disclose travel history or plans were factors); *United States v. Mendez*, 118 F.3d 1426, 1432 (10th Cir. 1997); *United States v. Soto*, 988 F.2d 1548, 1556 (10th Cir.1993) (vague travel plans were a factor). And, during the course of a traffic stop, an officer may inquire about the driver's travel plans and the identity of the individuals in the vehicle. *United States v. Cortez*, 965 F.3d 827, 838 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 1250 (2021) (*citing Pettit*, 785 F.3d at 1379).[22]

55.     While a particular motorist's route "is not entitled to much weight" in the reasonable suspicion calculus, *United States v. Mercado-Gracia,* 989 F.3d 829, 839 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 1374 (2022)[23], courts have found it can add to the calculus. *See United States v. Farmer*, 215 F.3d 1338 (10th Cir. 2000) ("We have previously considered the fact that a car is traveling at night on a known drug corridor, from a known drug source city

---

[22] *Cortez*, 965 F.3d at 839 ("Such questioning is consistent with both the public's expectations regarding ordinary inquiries incidental to traffic stops and taking the least burdensome approach to ensuring officer safety"); *United States v. Holt*, 264 F.3d 1215, 1221 (10th Cir. 2001) (*en banc*), *overturned on other grounds by Muehler v. Mena*, 544 U.S. 93 (2005) (such inquiries are justified because "[t]ravel plans typically are related to the purpose of a traffic stop") *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) (travel questions are permissible as the type of "negligibly burdensome" inquiries directed at ensuring officer safety).

[23] *Accord Vasquez v. Lewis*, 834 F.3d 1132, 1137 (10th Cir. 2016); *Shaw v. Schulte*, 36 F.4th 1006, 1015 (10th Cir. 2022).

when evaluating whether an officer had reasonable suspicion"); *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995) (considering in determination that officer had reasonable suspicion the fact that the car was traveling between Los Angeles and Detroit, two cities known for high drug usage). *See e.g., United States v. Barbee*, 968 F.2d 1026, 1029 (10th Cir.1992); *Mercado-Gracia,* 989 F.3d 829, 839; *United States v. Betances*, 650 F. App'x 615, 618 (10th Cir. 2016) (unpublished); *United States v. Westhoven*, 562 F. App'x 726, 728 (10th Cir. 2014) (unpublished); *United States v. Arjon*, 573 F. App'x 683, 688 (10th Cir. 2014) (unpublished) (driving slowly back and forth and stopping on a remote stretch of highway widely known as a drug-smuggling corridor only a few miles from the border provided reasonable suspicion); *United States v. Gutierrez*, 498 F. App'x 786, 793 (10th Cir. 2012) (unpublished); *United States v. Guerrero-Sanchez*, 412 F. App'x 133, 140 (10th Cir. 2011) (unpublished). *Cf. United States v. Cortez*, 965 F.3d 827, 835 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 1250, (2021) ("geography ["fifty miles from the Mexico border"] and context of the stop generated suspicion"). *See also, United States v. Arvizu*, 534 U.S. 266, 277 (2002) (border patrol agent had reasonable suspicion to believe illegal activity was occurring where vehicle was stopped during a patrol shift change on a "route used by smugglers to avoid [a] checkpoint").

56.     And factors that are typically "consistent with innocent travel" may contribute to reasonable suspicion depending on the circumstances. *United States v. Ahmed*, No. 18-4092, 2020 WL 5415813, at *2 (10th Cir. Sept. 10, 2020). *Accord, United States v. Pettit*, 785 F.3d 1374, 1379-80 (10th Cir. 2015).

57.     In sum, even if it is assumed that "innocent travel" cannot be a factor in the reasonable suspicion calculus, the consideration of such by troopers is not a constitutional

violation. Thus, the allegations regarding travel, even if true, do not establish the first element of a § 1983 suit, *i.e.,* a violation of federal law.

58.     The "Two-Step" is also not a violation of the Fourth Amendment. Stated another way, the procedure through which a trooper completes a traffic enforcement action and then reengages the driver to ask additional questions does not unconstitutionally prolong the stop.

59.     An officer may constitutionally prolong a stop after the traffic stop is or should be complete when the seized individual consents. *United States v. Cortez*, 965 F.3d 827, 833 (10th Cir. 2020). Thus, the procedure through which a trooper completes a traffic enforcement action and then reengages the driver to ask additional questions in a consensual encounter does not unconstitutionally prolong the stop. *See e.g.*, *Ohio v. Robinette*, 519 U.S. 33, 35 (1996). *See also United States v. Lopez*, No. 5:21-CR-40026, 2021 WL 5279923, at *10 (D. Kan. Nov. 12, 2021) (collecting some of the cases). This process has been referred to as the "two-step", *Lopez,* 2021 WL 5279923, at *10, or "Columbo Gambit," *State v. Thompson*, 284 Kan. 763, 778, 166 P.3d 1015 (2007), *as modified* (Oct. 17, 2007). And, in the application of the procedure, the Fourth Amendment issue becomes whether any consent granted for post-stop detention or a search was voluntary.

60.     "Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions" … If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed. *Florida v. Royer*, 460 U.S. 491, 497-98 (1983).

61.     The driver need not be explicitly told that he or she has the right to leave. *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996). Moreover, it is not necessary to read *Miranda* rights or even inform the driver of their right to not consent, *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).

62.     The argument that the Two-Step, by itself, violates the Fourth Amendment has been rejected directly and indirectly in numerous decisions. If a motorist is willing to answer questions, the issue becomes whether any consent granted for post-stop detention or a search was voluntary and the Two-Step does not prevent this voluntary consent. *See e.g., United States v. Gomez-Arzate*, 981 F.3d 832, 842 (10th Cir. 2020) (found a consensual encounter permitted extended detention even after issuing the citation, the driver began walking back to his car when Deputy Mora turned around and yelled to him to ask if he would talk); *United States v. Martin*, No. 18-CR-40117, 2019 WL 6682990, at *1 (D. Kan. Dec. 6, 2019) (found consent was given after trooper issuing and explained a warning, told the defendant to have a safe trip, back towards his patrol car but then re-approached defendant and asked whether he could ask Defendant some questions; to which Defendant replied "sure" and then also said sure to a vehicle search); *United States v. Beltran*, No. 17-40105-01, 2018 WL 5720247 (D. Kan. Nov. 1, 2018) (found consent was granted after trooper "told Mr. Beltran that he was going to give him a warning and instructed him to watch his speed in construction zones… asked Mr. Beltran if he had any questions" then "told Mr. Beltran to 'have a safe trip" and "began to walk back to his patrol vehicle," but when the trooper reached the rear edge of Mr. Beltran's vehicle, he pivoted and started back in the direction of the driver's side window of Mr. Beltran's car" and "asked him, 'Hey, can I ask you a question, Juan?'"); *United States v. Delgado-Lopez*, No. 18-10095-01, 2018 WL 6200032 (D. Kan. Nov. 28, 2018) (found consent granted, responding "Defendant complains

that [Trooper] Parr asked for consent almost immediately after telling Defendant he was free to go, without allowing him time to get out of the car.… But regardless of the timing, the unequivocal message to Defendant that he was "free to go" was sufficient to convey to a reasonable person that he was not required to stay and answer questions."); *United States v. Ochoa*, No. 16-40028-01, 2017 WL 119628, at *5 (D. Kan. Jan. 12, 2017) (found consent to talk and search, Ms. Ochoa gave permission after trooper told her to have a safe trip, she opened the patrol vehicle, but before she exited the trooper asked her a few more questions and if he could search her truck and trailer).

63.    Therefore, as with travel, use of the Two-Step is not a violation of the Fourth Amendment.[24] Again, the first element of the § 1983 claim is not established.

64.    Largely, Plaintiffs' evidence and their expert's opinions focus on past detentions, past training and past data collection. This is not legitimate fodder for entry of equitable relief concerning current and future conduct.

> [I]njunctive relief can only be obtained for current or prospective injury and cannot be conditioned on a past injury that has already been remedied. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 n. 6 (10th Cir.2005) (*quoting San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir.1996) ("Because plaintiffs seek declaratory and injunctive relief only ... it is insufficient for them to demonstrate only a past injury")). Further, to the extent that Plaintiff suggests that nothing would prevent Defendants from [engaging in the claimed illegal activity] in the future, generally, an injunction is only appropriate "to prevent existing or presently threatened injuries. One will not be granted against

---

[24] A few witnesses have testified that they did not think that they could safely leave after a trooper turned to walk away from the vehicle because to trooper was too close. Their subjective belief is not relevant to whether the traffic stop had concluded. Furthermore, the worry about the trooper safety is at most a single factor in whether consent provided was voluntary. In the examples provided, only Dunn consented to a canine sniff. She testified had been told by her father to wait for the trooper to return to his vehicle before leaving. She testified, that she consented to the dog sniff to be polite and respectful to police-that is, the consent was voluntary. She also understood she did not need to consent, as she refused consent to a search of her vehicle.

something merely feared as liable to occur at some indefinite time in the future."
*Connecticut v. Massachusetts*, 282 U.S. 660, 674, 51 S.Ct. 286, 75 L.Ed. 602
(1931).

*Hale v. Ashcroft*, 683 F. Supp. 2d 1189, 1197–98 (D. Colo. 2009) (statement in bracket

supplied).[25]

65.     Plaintiff proffers no witness with knowledge in law enforcement or constitutional

standards to identify or explain how this incident could be viewed as a predictable result of the

City's alleged lack of training its officers to differentiate between persons with panic disorder

and intoxicated persons.

66.     Plaintiffs have failed to prove deliberate indifference and an unconstitutional

official custom or policy. Over the last 5 ½ years[26] there have been, according to Plaintiffs' six

detentions that are claimed to have been illegal. Each has a different set of facts, each a different

set of factors presented to support reasonable suspicion. Only the Shaw and Bosire detentions

have been found to violate the Fourth Amendment.

---

[25] Voluntary cessation of active illegal conduct can provide an exception to the mootness
doctrine. *See United Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kansas*,
491 F.3d 1143, 1150 (10th Cir. 2007). The exception is inapplicable here because no one says
Plaintiffs' claims are moot and there was no halted active illegal conduct. Certainly, training on
*Vasquez* and a new report policy are not cessation of illegal conduct. The exception to mootness
cannot be sued to circumvent that Plaintiffs may only obtain prospective equitable relief.
Necessarily, this focuses on Jones' present conduct and policies, including current training and
the new, but current, KHP report policy, even assuming these "changes" were after and, in some
measure, a response to Plaintiffs' claims in this lawsuit.
[26] See *supra*, n. 2.

67.     Defendant challenges that conclusion regarding the other four.[27] The evidence required to show a policy or custom and deliberate indifference simply is not present.[28]

68.     But given the questions about what proof Plaintiffs' must present to establish a required § 1983 state-of-mind and culpable conduct by Defendant Jones, the central problem with Plaintiffs' § 1983 claim against Jones is lack of causation. *Baker v. McCollan*, 443 U.S. 137, 142 (1979) ("a public official is liable under § 1983 only if he causes the plaintiff to be subjected to deprivation of his constitutional rights"). Plaintiffs do not challenge the substance of the training provided to troopers and the KHP policies that, if followed, proscribe unconstitutional detentions. Plaintiffs do not establish earlier training on *Vasquez*, old reporting requirements, current data collection and analysis, current ill-defined short comings in supervision, and a past singular failure require more punishment of Trooper McMillan, cause current or will cause future unconstitutional detentions. Plaintiffs have offered nothing but speculation on this point.

69.     Therefore, Plaintiffs fail to establish the second element of a § 1983 claim, *i.e.*, that Jones deprived the plaintiffs of the federal (here constitutional) right.

---

[27] There are multiple and different reasons that the troopers had reasonable suspicion to call for canine sniffs in the Erich stop [principally new white paint or bono smelled and located in area on van that suggested a hidden compartment combined with driver's denial of painting, but having white paint on his hand]; Kelly stop [principally extreme and unusual nerviness after being advised he was receiving a warning and a history of multiple drug crimes and possession of a sawed-off shotgun]; and Martinez stop [principally attempting to evade the trooper and by all reasonable appearances lying about his speeding, reason to leave (evade) the highway, and his bullying tactics.] The Dunn detention was consensual canine sniff. The validity or lack of the same of the trooper's suspicions in that case are not relevant.

[28] Proving "deliberate indifference" is not easy. The Tenth Circuit rejects the argument that § 1983 liability can attach where the defendant "should have known" of the unconstitutional behavior. *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty., Kan.*, 996 F.2d 1035, 1042 (10th Cir. 1993). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal [here state] actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 70 (2011) (*quoting Bryan Cnty.*, 520 U.S. at 410).

*Conclusion.*

In summary, judgment is proper against Plaintiffs' claim under Fed. R. Civ. P. 52(c). Plaintiffs' lack standing. The Court should not grant the equitable relief demanded. Plaintiffs have not proved the required elements of a § 1983 claim in their official capacity suit against Defendant Jones.

> Respectfully Submitted,
>
> OFFICE OF KANSAS ATTORNEY GENERAL
> KRIS KOBACH
>
> /s/ Arthur S. Chalmers
> Arthur S. Chalmers #11088
> Assistant Attorney General
> 120 SW 10th Avenue, 2nd Floor
> Topeka, Kansas 66612-1597
> Telephone: 785-368-6244
> FAX: 785-291-3767
> Email: art.chalmers@ag.ks.gov
> *Attorneys for the Defendant Jones*

## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of May, 2023, I electronically sent a copy of DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW to all counsel of record.

> s/Arthur S. Chalmers
> Arthur S. Chalmers

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing APPELLANT'S APPENDIX, as submitted in digital form is an exact copy of the document filed with the Clerk.

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2024, the foregoing APPELLANT'S APPENDIX was electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system. I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. I also certify that within five business days of the issuance of notice that the electronic filing is compliant, one paper copy will be delivered by Federal Express to the Clerk's Office.


DATED: April 24, 2024                   /s/ Kurtis K. Wiard_____