Nos. 23-3264, 23-3267

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

BLAINE FRANKLIN SHAW, et al.,

*Plaintiffs-Appellees*,

v.

ERIK SMITH, in his official capacity as Superintendent of the Kansas Highway Patrol,

*Defendant-Appellant*.

MARK ERICH, et al.,

*Plaintiffs-Appellees*,

v.

ERIK SMITH, in his official capacity as Superintendent of the Kansas Highway Patrol,

*Defendant-Appellant*.

## BRIEF OF LEGAL SCHOLARS AS *AMICI CURIAE* IN SUPPORT OF APPELLEES

Appeal from the United States District Court for the District of Kansas
The Honorable Kathryn H. Vratil, Senior District Court Judge
Nos. 19-CV-1343-KHV and 20-CV-1067-KHV-GEB

Halle H. Edwards
Melissa Arbus Sherry
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
halle.edwards@lw.com
melissa.sherry@lw.com

May 31, 2024

*Counsel for* Amici Curiae

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT OF INTEREST .............................................................................. 1

ARGUMENT ........................................................................................................ 1

I.    *YOUNGER* ABSTENTION IS A NARROW DOCTRINE THAT DOES
      NOT APPLY HERE ..................................................................................... 2

      A.    Federal Courts Have An Obligation To Exercise The Jurisdiction
            Granted To Them ............................................................................... 2

      B.    *Younger* Abstention Is A Narrow Exception To The General Rule ............. 3

      C.    All Agree *Younger* Abstention Does Not Apply In This Case ................... 6

II.   THIS COURT SHOULD NOT APPLY THE PRINCIPLES OF *YOUNGER*
      OUTSIDE THE LIMITS OF *YOUNGER* ABSTENTION ................................... 6

      A.    *O'Shea* And *Rizzo* Are Best Understood As A Limited Gloss On
            *Younger* ........................................................................................... 7

      B.    *O'Shea* And *Rizzo* Have No Application Outside Interference With A
            State Court Proceeding ...................................................................... 9

      C.    *O'Shea* And *Rizzo* Have No Application In This Case ............................. 14

III.  SMITH'S APPROACH WOULD TRANSFORM A CAREFULLY
      LIMITED EXCEPTION INTO THE RULE ........................................................ 15

CONCLUSION .................................................................................................... 17

CERTIFICATE OF COMPLIANCE .................................................................... 18

CERTIFICATE OF DIGITAL SUBMISSION ...................................................... 18

CERTIFICATE OF SERVICE ............................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bell v. Hood*,
327 U.S. 678 (1946) ................................................................................... 3

*BP P.L.C. v. Mayor & City Council of Baltimore*,
141 S. Ct. 1532 (2021) ............................................................................... 2

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................................................... 10

*Cohens v. Virginia*,
19 U.S. (6 Wheat.) 264 (1821) ................................................................... 2

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ............................................................................ 2, 16

*Courthouse News Service v. Brown*,
908 F.3d 1063 (7th Cir. 2018) .................................................................. 11

*Courthouse News Service v. Gilmer*,
48 F.4th 908 (8th Cir. 2022) ..................................................... 11, 12, 15

*Courthouse News Service v. Harris*,
No. CV ELH-22-0548, 2022 WL 17850125 (D. Md. Dec. 22, 2022) ......... 12

*Courthouse News Service v. New Mexico Administrative Office of the Courts*,
53 F.4th 1245 (10th Cir. 2022) .................................... 10, 11, 12, 15

*Courthouse News Service v. Omundson*,
598 F. Supp. 3d 929 (D. Idaho 2022) ....................................................... 12

*Courthouse News Service v. Planet*,
750 F.3d 776 (9th Cir. 2014) ....................................................... 11, 12 15

*Courthouse News Service v. Schaefer*,
2 F.4th 318 (4th Cir. 2021) ....................................................................... 12

*Courthouse News Service v. Schaeffer*,
429 F. Supp. 3d 196 (E.D. Va. 2019) ....................................................... 12

**Page(s)**

*Disability Rights New York v. New York*,
    916 F.3d 129 (2d Cir. 2019) ................................................................. 14

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ............................................................................. 6

*Huffman v. Pursue, Ltd.*,
    420 U.S. 592 (1975) ......................................................................... 4, 6

*Johns v. Stewart*,
    57 F.3d 1544 (10th Cir. 1995) ............................................................ 3

*Jonathan R. ex rel. Dixon v. Justice*,
    41 F.4th 316 (4th Cir.), *cert. denied*, 143 S. Ct. 310 (2022) ...................... 13

*Lexmark International, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................. 2

*Lynch v. Household Finance Corp.*,
    405 U.S. 538 (1972) ............................................................................. 3

*Maehr v. United States Department of State*,
    5 F.4th 1100 (10th Cir. 2021) ............................................................. 3

*Marbury v. Madison*,
    1 Cranch. 137 (1821) ........................................................................... 3

*Martin v. Stewart*,
    499 F.3d 360 (4th Cir. 2007) .............................................................. 13

*McGirt v. Oklahoma*,
    140 S. Ct. 2452 (2020) ....................................................................... 13

*Middlesex County Ethics Committee v. Garden State Bar Association*,
    457 U.S. 423 (1982) ............................................................................. 5

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ........................................................................... 10

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989) ................................................................. 2, 4, 5, 6

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................ 1, 7, 8, 9

**Page(s)**

*Oglala Sioux Tribe v. Fleming*,
    904 F.3d 603 (8th Cir. 2018) .................................................................... 14

*Pickup v. District Court of Nowata County*,
    No. CIV 20-0346, 2023 WL 1394896 (N.D. Okla. Jan. 31, 2023)....................... 13, 14

*Quackenbush v. Allstate Insurance Co.*,
    517 U.S. 706 (1996) ................................................................................... 2

*Rizzo v. Goode*,
    423 U.S. 362 (1976) ................................................................... 1, 7, 8, 9, 16

*Simmat v. United States Bureau of Prisons*,
    413 F.3d 1225 (10th Cir. 2005) ................................................................... 3

*Sprint Communications Co., L.P. v. Jacobs*,
    690 F.3d 864 (8th Cir. 2012), *rev'd*, 571 U.S. 69 (2013) ............................... 5

*Sprint Communications, Inc. v. Jacobs*,
    571 U.S. 69 (2013) ..................................................................... 2, 4, 5, 11, 16

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ................................................................................... 4

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ................................................................................... 2

*Walker v. City of Calhoun*,
    901 F.3d 1245 (11th Cir. 2018) ................................................................. 13

*Younger v. Harris*,
    401 U.S. 37 (1971) ................................................................................. 3, 4

### OTHER AUTHORITIES

Erwin Chemerinsky, *Federal Jurisdiction* (5th ed. 2007).................................. 9

Patrick J. Fackrell, *Closing the Courthouse Doors to First Amendment
    Claims Seeking Access to State Court Records: Is Abstention
    Warranted?*, 68 Drake L. Rev. 445 (2020).................................................... 9

Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and
    the Federal System* (7th ed. 2015) ............................................................. 9

**Page(s)**

John Harland Giammatteo, *The New Comity Abstention*,
111 Cal. L. Rev. 1705 (2023) ............................................................................ 5

Alezeh Rauf, Comment, *Abstaining from Abstention: Why* Younger
*Abstention Does Not Apply in 42 U.S.C. § 1983 Bail Litigation*,
171 U. Pa. L. Rev. 535 (2023) ........................................................................ 13

Fred O. Smith, Jr., *Abstaining Equitably*, 97 Notre Dame L. Rev. 2095
(2022) ................................................................................................................ 5

Laurence H. Tribe, *American Constitutional Law* (3d ed. 2000) ....................... 9

## STATEMENT OF INTEREST[1]

*Amici curiae* are professors at law schools throughout the United States. *Amici*'s expertise encompasses constitutional law, federal courts, and federal jurisdiction. *Amici* have a strong interest in assisting this Court in resolving the questions of law implicated by this appeal that relate to their professional expertise and scholarship—namely, application of the *Younger* abstention doctrine and general principles of federalism and comity. *Amici* are Erwin Chemerinsky, the Jesse H. Choper Distinguished Professor of Law and Dean of Berkeley Law; Fred O. Smith, Jr., the Charles Howard Candler Professor of Law, Emory University School of Law; and David C. Vladeck, the A.B. Chettle Chair in Civil Procedure at the Georgetown University Law Center.

## ARGUMENT

Adjudicating and enjoining constitutional violations by state actors is at the core of a federal court's jurisdiction. There are limited exceptions to that rule, and *Younger* abstention is one such exception. But *Younger* abstention applies only in a narrow set of circumstances. Smith does not dispute that none of those circumstances are present here. He nonetheless relies heavily on some of *Younger*'s progeny—*O'Shea v. Littleton*, 414 U.S. 488 (1974) and *Rizzo v. Goode*, 423 U.S. 362 (1976)—to argue that the Court cannot affirm the district court's injunction. Smith takes language from *O'Shea* and *Rizzo* out of context, and advocates for a broad reading of those cases. General principles of comity

---

[1] Pursuant to Federal Rule of Appellate Procedure 29, counsel for *amici* state that all parties have consented to the filing of this brief. No party's counsel authored any part of this brief, and no party, party's counsel, or any person other than *amici* or their counsel contributed any money that was intended to fund preparing or submitting this brief.

and federalism provide no grounding to expand and apply the functional equivalent of abstention outside the limited scope of abstention doctrine. This Court has previously held as much and it should do so again here.

## I. *YOUNGER* ABSTENTION IS A NARROW DOCTRINE THAT DOES NOT APPLY HERE

### A. Federal Courts Have An Obligation To Exercise The Jurisdiction Granted To Them

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction granted to them. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) (Chief Justice Marshall observing that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."). The Supreme Court has repeatedly—and recently—reaffirmed this principle. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."); *see also, e.g.*, *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1537 (2021); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). And the Court has made clear the principle extends equally to litigation brought against state actors: "[i]n the main, federal courts are obliged to decide cases within the scope of federal jurisdiction . . . and should not 'refus[e] to decide a case in deference to the States.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) (alteration in original) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* ("*NOPSI*"), 491 U.S. 350, 368 (1989)).

2

Adjudicating and enjoining constitutional violations by state actors is not just within the jurisdiction of a federal court; it is a paradigmatic exercise of federal court authority. It has "been the rule from the beginning" that "where federally protected rights have been invaded," the federal courts will "adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684 (1946) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch.) 137, 162-63 (1803)). "[I]t is established practice for th[e Supreme] Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." *Id.*; *see also Lynch v. Household Fin. Corp.*, 405 U.S. 538, 546-48 (1972) (discussing Congress's expansion of federal court authority to adjudicate constitutional violations by the states in the wake of the Civil War). And this Court has similarly noted the "long-recognized" jurisdiction of federal courts to "'protect rights safeguarded by the Constitution.'" *Maehr v. United States Dep't of State*, 5 F.4th 1100, 1106 (10th Cir. 2021) (quoting *Bell*, 327 U.S. at 684); *see also Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1230-31 (10th Cir. 2005) (noting that a claim arising under the constitution "easily" falls within the federal courts' jurisdiction); *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) (discussing authority of federal courts to enjoin ongoing violations of federal law committed by state officials).

**B.    *Younger* Abstention Is A Narrow Exception To The General Rule**

In *Younger v. Harris*, the Supreme Court articulated a narrow abstention doctrine intended to prevent "federal court interference" in "state criminal prosecutions." 401 U.S. 37, 43, 53 (1971). The plaintiff brought suit in federal court challenging the constitutionality of California's Criminal Syndicalism Act and asking the court to enjoin

enforcement in the then-pending criminal prosecution in state court. *Id.* at 38-39. In those circumstances, the Court held that abstention was necessary to "prevent erosion of the role of the jury and [to] avoid a duplication of legal proceedings and legal sanctions." *Id.* at 44. And the need to abstain was reinforced by considerations of "comity" and "[f]ederalism" implicated because of the ongoing state criminal prosecution. *Id.* That is, the core teaching of *Younger* is that federal courts cannot enjoin pending state criminal prosecutions. *See Steffel v. Thompson*, 415 U.S. 452, 462, 475 (1974) (when a state prosecution is not pending, "considerations of equity, comity, and federalism have little vitality").

In the ensuing years, the Supreme Court has expanded *Younger* abstention slightly to cover some civil proceedings—but the expansion has been narrowly confined. The only civil proceedings that qualify are those that (i) closely relate to enforcement of a state's criminal statutes or (ii) affect a state court's ability to control its own judicial functions. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975) (abstaining when a plaintiff challenged the constitutionality of an ongoing civil proceeding related to the showing of obscene movies, because the proceeding was "in aid of and closely related to [the State's] criminal statutes"); *NOPSI*, 491 U.S. at 368 (refusing to abstain when federal court proceeding would not have interfered with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions"). And even within these narrow categories, *Younger*'s scope is limited further. Abstention is warranted only when a federal ruling would interrupt an "ongoing state judicial proceeding" which "implicates important state interests" and when the state forum "provide[s] an adequate opportunity to raise [federal] challenges." *Sprint*, 571 U.S. at 81

(alterations in original) (quoting *Sprint Commc'ns Co., L.P. v. Jacobs*, 690 F.3d 864, 867 (8th Cir. 2012), *rev'd*, 571 U.S. 69 (2013), and citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

The Supreme Court has resisted any broader expansion. In *NOPSI*, the Court explained that expanding the doctrine further would "make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." 491 U.S. at 368. And in *Sprint*, the Court rejected a rule that "would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." 571 U.S. at 81. As the Court explained, that would be "irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" *Id.* at 81-82 (citation omitted). "[O]nly exceptional circumstances" can "justify a federal court's refusal to decide a case in deference to the States." *NOPSI*, 491 U.S. at 368. And in *Sprint*, the Court made clear that the "three 'exceptional' categories"—*i.e.*, "state criminal proceedings," certain "civil enforcement proceedings," and "'civil proceedings involving certain orders'" that are "'uniquely in furtherance of the state courts' ability to perform their judicial functions'"—"define *Younger*'s scope." 571 U.S. at 78 (citation omitted).[2]

---

[2]    *See also* John Harland Giammatteo, *The New Comity Abstention*, 111 Cal. L. Rev. 1705, 1715-16 (2023) (discussing the Supreme Court's "cabin[ing]" of *Younger*); Fred O. Smith, Jr., *Abstaining Equitably*, 97 Notre Dame L. Rev. 2095, 2105-08 (2022) (discussing limits of *Younger* abstention doctrine).

### C.    All Agree *Younger* Abstention Does Not Apply In This Case

*Younger* abstention does not apply here.  This case concerns a constitutional challenge to repeated stops and detentions of out-of-state motorists by the Kansas Highway Patrol (KHP)—that is, it only involves federal questions.  *See* App. II, 1-2.  There are no ongoing state proceedings arising out of the traffic stops at issue in the case—criminal or civil.  *See* App. II, 12-13 (Shaw), 16-20 (Erich/Maloney), 27-28 (Bosire), 30-32 (Kelly), 33-36 (Dunn).  As such, this case falls outside of the core of *Younger*: there is no pending criminal prosecution.  *See Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975).  And neither of the other two exceptions applies.  *See Huffman*, 420 U.S. at 604; *NOPSI*, 491 U.S. at 368.  Not surprisingly, then, Smith does not argue the Court can or should abstain under *Younger*.

## II.    THIS COURT SHOULD NOT APPLY THE PRINCIPLES OF *YOUNGER* OUTSIDE THE LIMITS OF *YOUNGER* ABSTENTION

Without invoking *Younger* abstention, Smith relies on the same principles that underlie the doctrine to argue the district court "exceeded its equitable authority" in granting a permanent injunction in this case.  Opening Br. 11.  Specifically, relying on *Rizzo* and *O'Shea*, Smith argues that principles of federalism, comity, and equitable restraint counsel against affirming the district court's injunction.  *See id.* at 21-22; *see also id.* at 22-24, 31.  But those cases are outgrowths of *Younger*, and their appeals to principles of federalism and comity must be understood in that context.  There is no way to square Smith's approach with the Supreme Court's modern jurisprudence or this Court's understanding of the same.

### A.     *O'Shea* And *Rizzo* Are Best Understood As A Limited Gloss On *Younger*

To understand precisely how Smith is overreading two Supreme Court decisions from the 1970s, it is important to first understand what was actually at issue in both cases.

In *O'Shea*, nineteen individuals brought a civil rights action in federal court, individually and on behalf of a class of citizens of Cairo, Illinois, alleging that city officials and police had engaged in discriminatory practices with respect to the criminal cases they chose to bring. *See* 414 U.S. at 490-91. The Supreme Court held the plaintiffs lacked Article III standing and affirmed dismissal of their complaint because the general pattern of discrimination they alleged lacked specificity as to past harms and was too speculative as to future harms. *Id.* at 493-99. The Court then observed, in the alternative, that even if plaintiffs had established a justiciable controversy, the requested relief would be unavailable because "[w]hat [plaintiffs] seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials." *Id.* at 500. This, the Court explained, would amount to "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger* . . . and related cases sought to prevent." *Id.* For that reason, it would be "antipathetic" to "comity" to allow "such a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings." *Id.* at 501-02.

*Rizzo*, decided two years later, largely follows from the reasoning in *O'Shea*. *See* 423 U.S. at 378-79. In *Rizzo*, the plaintiffs filed a class action suit in federal court seeking to enjoin the Philadelphia police department from engaging in allegedly racially motivated

police brutality. *Id.* at 365-66. Like in *O'Shea*, the Court's analysis centered on Article III standing and the availability of relief under Section 1983. *See id.* at 371-73 (holding "[p]ast exposure to illegal conduct" not sufficient to meet the "case or controversy" requirement (citation omitted)); *id.* at 373-77 (finding equitable relief not warranted under Section 1983 on the basis of a vague "statistical pattern" of wrongs). But again, the Court went on to observe that, even if the plaintiffs had standing, the district court's injunction requiring the police commissioner to "put into force a directive governing the manner by which citizens' complaints against police officers should henceforth be handled" could not stand because it did not comport with "important considerations of federalism." *Id.* at 365, 377-78 (citing *O'Shea*, 414 U.S. at 500).

The Supreme Court cautioned that "[w]here, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Id.* at 378 (quoting *O'Shea*, 414 U.S. at 500). And the Court drew on *O'Shea*'s observation that "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized *in the decisions previously noted*"—namely, *Younger*. *Id.* at 379-80 (emphasis added) (quoting *O'Shea*, 414 U.S. at 502). The Court then concluded that "the principles of federalism which play such an important part in governing the relationship between federal courts and state governments, though initially expounded and perhaps entitled to their greatest weight in cases where it was sought to enjoin a criminal prosecution in progress, have not been

limited either to that situation or indeed to a criminal proceeding itself." *Id.* at 380.  And the Court ultimately concluded the district court had erred in "inject[ing]" itself into the affairs of the state government. *Id.*

Read together, two things are clear.  First, the relatively brief discussion of federalism and comity is not the primary focus or holding of either case. *See O'Shea*, 414 U.S. at 504 (Blackmun, J., concurring in part) (noting that the "Court's additional discussion of the question whether a case for equitable relief was stated amounts to an advisory opinion that we are powerless to render"); Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System* 125 & n.20, 232 (7th ed. 2015) (discussing *O'Shea* for its justiciability holding).  Second, that discussion is best understood as a gloss on *Younger* abstention.  *O'Shea* cites *Younger* directly when discussing principles of comity and federalism, 414 U.S. at 499-500, and *Rizzo* cites *O'Shea* for the same, 423 U.S. at 378.[3]

### B.    *O'Shea* And *Rizzo* Have No Application Outside Interference With A State Court Proceeding

In the wake of the Supreme Court's more recent *Younger* jurisprudence, the *Younger*-grounded, alternative federalism and comity discussions in *O'Shea* and *Rizzo* provide courts no license to abstain from granting equitable relief unless there is, at the

---

[3]    *See also* Erwin Chemerinsky, *Federal Jurisdiction* § 13.3, at 856 (5th ed. 2007) (discussing *Rizzo* as a "criticized" "expansion" of *Younger*); Laurence H. Tribe, *American Constitutional Law* § 3-30, at 592 (3d ed. 2000) (explaining *Rizzo* "invoked the principles underlying *Younger*"); Patrick J. Fackrell, *Closing the Courthouse Doors to First Amendment Claims Seeking Access to State Court Records: Is Abstention Warranted?*, 68 Drake L. Rev. 445, 459-60 (2020).

very least, some interference with a state court proceeding. Smith has not and cannot point to any such interference here.

1.      The Supreme Court, for its part, has not squarely confronted how *Rizzo* and *O'Shea* fit (or do not fit) into the three "exceptional" *Younger* categories. The Court has cited *O'Shea* and *Rizzo* only sparingly in recent decades for their discussion of how comity and federalism principles bear on injunctive relief. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 380-81 (1992). And in those limited instances, the cases were cited alongside *Younger* or its progeny. *See, e.g.*, *Lyons*, 461 U.S. at 112 (citing *O'Shea* and *Younger* for proposition concerning "the need for a proper balance between state and federal authority" in issuing injunctions, and *Rizzo* alongside a string of cases in the *Younger* line concerning "normal principles of equity, comity, and federalism"); *Morales*, 504 U.S. at 380-81 (citing *O'Shea* and *Younger* together for proposition concerning propriety of awarding injunctive relief). After *Sprint*—which did not mention either case—it is questionable whether they can be applied in ways that expand *Younger* abstention beyond the three exceptions identified by the Court as defining the doctrine's limits.

2.      To the extent *O'Shea* and *Rizzo* could still be read to support a broader *Younger* abstention doctrine *today*, any such expansion has been understood by this Court and others as strictly circumscribed.

In *Courthouse News Service v. New Mexico Administrative Office of the Courts* ("*NMAOC*"), this Court held that *O'Shea* cannot be used to require abstention in the absence of an actual state court proceeding. 53 F.4th 1245, 1259-60 (10th Cir. 2022). In

10

that case, Courthouse News filed suit against the New Mexico state courts asserting a First Amendment right to timely access to court filings. *Id.* at 1250. The district court had entered a preliminary injunction enjoining the New Mexico courts from withholding press and public access to newly filed, non-confidential civil complaints for longer than five business hours. *Id.* On appeal, the courts argued abstention was required under *O'Shea* because the requested relief "involve[d] the continuing federal oversight of state court operations." *Id.* at 1258 (emphasis omitted). This Court disagreed.

This Court quickly rejected the argument that *Younger* abstention was applicable: the injunction did not implicate an ongoing state proceeding that fit within any of the three narrow *Sprint* categories. *Id.* at 1256-57 (citing *Sprint*, 571 U.S. at 73). The Court next considered whether *O'Shea* requires abstention "where a case would interfere with 'state court operations' divorced from any specific state court proceedings." *Id.* at 1258. This Court recognized that, on similar facts, the Seventh Circuit had "acknowledged that none of the 'principal categories of abstention' constituted 'a perfect fit,' yet it still determined that abstention was warranted based 'on the more general principles of federalism.'" *Id.* at 1259 (citing *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018)). But the Court noted that other circuits had rejected the Seventh Circuit's approach and held that applying *O'Shea* in similar circumstances would run afoul of Supreme Court precedent where there was no risk the injunction would interrupt "any state court proceeding" or "individual cases." *Id.* at 1259-60 (citing *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 914 (8th Cir. 2022) and *Courthouse News Serv. v. Planet*, 750 F.3d 776, 790 (9th Cir. 2014)). This Court sided with the latter circuits, rejected an "expansive" reading of

*O'Shea*, and held that abstention under *O'Shea* was improper absent actual interference with state court operations. *Id.* at 1258-59 & n.7. Because the Court found no risk the injunction would interfere with any state court proceeding, it declined to abstain. *Id.* at 1260-63.[4]

In limiting the application of *O'Shea* (and, in turn, *Rizzo*) to injunctions that actually interfere with state court proceedings, this Court is in good company. As the Court recognized, in similar challenges brought by Courthouse News seeking to enjoin state courts from withholding court filings in violation of the First Amendment, the vast majority of courts have held that *Younger*, *O'Shea* and *Rizzo* do not warrant abstention in the absence of intrusion into actual state proceedings—and principles of comity and federalism cannot independently compel the same result. *See Planet*, 750 F.3d at 789-90; *Gilmer*, 48 F.4th at 914; *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 n.2 (4th Cir. 2021); *Courthouse News Serv. v. Schaeffer*, 429 F. Supp. 3d 196, 207 (E.D. Va. 2019); *Courthouse News Serv. v. Omundson*, 598 F. Supp. 3d 929, 939-41 (D. Idaho 2022); *Courthouse News Serv. v. Harris*, No. CV ELH-22-0548, 2022 WL 17850125, at *24-26 (D. Md. Dec. 22, 2022).

In other contexts too, courts have rejected similar attempts to use *O'Shea* and *Rizzo* to expand *Younger* abstention post-*Sprint*. As the Fourth Circuit observed, *Sprint* "recast" the earlier cases interpreting *Younger* by clearly and narrowly defining the scope of the

---

[4] The Court reversed and remanded only for the district court to revisit a portion of the injunction requiring the state courts to comply with the five-hour rule with no differentiation based on court size and no exceptions for emergencies. *NMAOC*, 53 F.4th at 1271-73.

doctrine: "if the case falls into one of the three settled categories, courts should go on to determine if federal involvement will in fact put comity at risk, but if the case does not, courts need go no further." *Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 329 (4th Cir.), *cert. denied*, 143 S. Ct. 310 (2022); *see Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (abstention is not "a license for free-form *ad hoc* balancing of . . . state and federal interests").

In a challenge to pre-trial bail practices under the Fourteenth Amendment, the Eleventh Circuit held *Younger* and *O'Shea* were no bar to an injunction requiring a jail not to indefinitely detain arrestees if they were indigent and could not post bail. *See Walker v. City of Calhoun*, 901 F.3d 1245, 1253 (11th Cir. 2018). The Eleventh Circuit observed that *Younger* abstention, which was "disfavored," did not "readily apply because Walker is not asking to enjoin any prosecution." *Id.* at 1254. And *O'Shea* was of no moment because the injunction "d[id] not ask for the sort of pervasive federal court supervision of State criminal proceedings that was at issue in *O'Shea*," but merely required "a prompt pretrial determination of a distinct issue, which will not interfere with subsequent prosecution." *Id.* at 1255.[5]

Likewise, in *Pickup v. District Court of Nowata County*, a large putative class action was brought by members of the Cherokee nation in the aftermath of *McGirt v. Oklahoma*,

---

[5]    The majority of courts to consider the issue post-*Sprint* have likewise concluded that neither *Younger* nor *O'Shea* abstention applies in Section 1983 bail litigation. *See* Alezeh Rauf, Comment, *Abstaining from Abstention: Why* Younger *Abstention Does Not Apply in 42 U.S.C. § 1983 Bail Litigation*, 171 U. Pa. L. Rev. 535, 558-61 (2023) (collecting cases).

140 S. Ct. 2452 (2020), alleging violations of due process in the State's prosecution of members of the Cherokee Nation. *See* No. CIV 20-0346, 2023 WL 1394896, at *5 (N.D. Okla. Jan. 31, 2023). The district court declined to abstain under either *Younger* or *O'Shea*, noting that none of the *Younger* categories were at issue and there was no ongoing state proceeding to consider—despite the close involvement the case would necessitate with the state court system. *Id.* at *65-66.

In each of these cases, the federal court injunctions would have some impact on the administration of state courts and processes. But that was not enough to evade the narrow scope of *Younger* abstention post-*Sprint*.[6] And the federalism and comity concerns set forth in *Younger*, *O'Shea*, and *Rizzo* could not themselves provide an independent bar to injunctive relief in the absence of any connection to a state court proceeding.

### C.     *O'Shea* And *Rizzo* Have No Application In This Case

*O'Shea* and *Rizzo* provide no basis to abstain in this case. Smith relies on general principles of comity and federalism. But Smith does not and cannot identify *any* state court proceeding (ongoing or future) that would be impacted by the district court's injunction.

To remedy unconstitutional practices on the part of KHP troopers, the district court enjoined KHP from: (1) giving any weight in the reasonable suspicion calculus to the fact that a motorist is traveling to or from a "drug source" or "drug destination" state or on a drug corridor; and (2) using the "Two-Step" to extend traffic stops of motorists without

---

[6]     Post-*Sprint* cases that have applied *O'Shea* to require abstention have done so only when injunctive relief would have necessitated "case-by-case oversight of state courts" and implicated actual state proceedings. *Disability Rights N.Y. v. New York*, 916 F.3d 129, 136 (2d Cir. 2019); *see also Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 610 (8th Cir. 2018).

reasonable suspicion or without the motorists' consent.  App. II, 213.  The district court also ordered KHP to undertake remedial measures requiring KHP to "document all investigatory stops and detentions," analyze the reports and data gathered by this documentation using KHP's own "protocol," update its policies to ensure motorists consent to voluntary searches, update its trainings, use cameras to monitor KHP troopers' compliance with the law, and submit performance compliance reviews to the court.  App. II, at 213-24 (footnote omitted).  And the court provided the injunction will remain in effect for between two and four years, provided KHP can bring itself into compliance with the injunction's objectives.  App. II, 212-13.

No part of the district court's injunction relates to an ongoing (or even future) state proceeding.  The injunction merely directs KHP to update its policies, to determine a manner to supervise traffic stops for Fourth Amendment compliance, and to submit performance reviews.  Whatever the "'administrative burden,'" there is no "ongoing monitoring of the substance of state proceedings" that this Court deemed necessary to require abstention under *O'Shea*.  *See NMAOC*, 53 F.4th at 1259-60 (quoting *Gilmer*, 48 F.4th at 914, and citing *Planet*, 750 F.3d at 790).  That should be the end of the matter.

## III.   SMITH'S APPROACH WOULD TRANSFORM A CAREFULLY LIMITED EXCEPTION INTO THE RULE

The district court in this case exercised one of the most paradigmatic functions of a federal court: it enjoined the unconstitutional actions of a state actor.  If the mere invocation of comity and federalism were enough to require a federal court to abstain from granting equitable relief in these circumstances, constitutional violations would go unremedied in

15

instances where federal courts plainly have jurisdiction to act. That gets the law backwards. Abstention would no longer be a narrow exception to general principle that the federal courts have a "virtually unflagging obligation" to exercise the jurisdiction granted to them. *Colo. River*, 424 U.S. at 817. Abstention would instead be the rule any time a plaintiff sought to enjoin a state from engaging in unconstitutional practices.

That is exactly what Smith is asking the Court to hold when he argues that, "in this context, the Supreme Court has held that 'principles of equity . . . militate heavily against the grant of an injunction except in the most extraordinary circumstances." Opening Br. 22-23 (alteration in original) (quoting *Rizzo*, 423 U.S. at 379). But that is not the law. As the Supreme Court made clear in *Sprint*, its "dominant instruction" is that "abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" 571 U.S. at 81-82 (citation omitted). Absent the three narrow circumstances in which *Younger* abstention applies or, at the very least, intrusion into a state court proceeding of some sort under *O'Shea* and *Rizzo*, the general rule applies. Smith has not even invoked *Younger* and it has not identified any interference with a state proceeding. This Court should apply the governing law and reject Smith's request for abstention by some other name.

## CONCLUSION

For the foregoing reasons, this Court should affirm.

Dated: May 31, 2024                     Respectfully submitted,

*/s/ Halle H. Edwards*
Halle H. Edwards
Melissa Arbus Sherry
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
halle.edwards@lw.com
melissa.sherry@lw.com

*Counsel for* Amici Curiae

17

## CERTIFICATE OF COMPLIANCE

The foregoing document complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a) because it contains 4,581 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Tenth Circuit Rule 32(b).

The document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 and a typeface of 13 points.

Dated: May 31, 2024                     */s/ Halle H. Edwards*
                                        Halle H. Edwards


## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that the foregoing Brief of Legal Scholars as *Amici Curiae* in Support of Appellees, as submitted in digital form via CM/ECF, is an exact copy of any additional hard copies filed with the Clerk of the Court. This document has been scanned for viruses with the latest version of Microsoft Defender, and, according to that program, is free of viruses. Any required privacy redactions have been made.

Dated: May 31, 2024                     */s/ Halle H. Edwards*
                                        Halle H. Edwards

**CERTIFICATE OF SERVICE**

I, Halle H. Edwards, hereby certify that I electronically filed the foregoing Brief of

Legal Scholars as *Amici Curiae* in Support of Appellees with the Clerk of the Court for the

United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF

system on May 31, 2024, which will send notice of such filing to all registered CM/ECF

users.

Dated: May 31, 2024                                    By: */s/ Halle H. Edwards*
                                                           Halle H. Edwards